1            IN THE UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF DELAWARE

3   NATERA, INC.,              )
                               )
4           Plaintiff,         )
                               )   C.A. No. 20-cv-38-CFC
5     v.                       )
                               )
6   CAREDX, INC.,              )
                               )
7           Defendant.         )
                               )

8

9

10               Wednesday, December 7, 2022
                          9:00 a.m.
11                     Markman Hearing

12

13                    844 King Street
                   Wilmington, Delaware
14

15   BEFORE: THE HONORABLE COLM F. CONNOLLY
     United States District Court Judge
16

17

18   APPEARANCES:

19

                   MORRIS NICHOLS ARSHT & TUNNELL
20                 BY:  JACK B. BLUMENFELD, ESQ.
                   BY:  DEREK J. FAHNESTOCK, ESQ.
21                 -and-

22

                   QUINN EMANUEL URQUHART & SULLIVAN, LLP
23                 BY:  SANDRA L. HABERNY, PH.D., ESQ.
                   BY:  ABIGAIL CLARK, ESQ.
24                 BY:  BIANCA FOX, ESQ.

25                         Counsel for the Plaintiff

1

2     APPEARANCES CONTINUED:

3

4                   FARNAN LLP
                    BY:  BRIAN E. FARNAN, ESQ.
5                   -and-

6                   WEIL, GOTSHAL & MANGES LLP
                    BY:  EDWARD R. REINES, ESQ.
7                   BY:  DEREK C. WALTER, ESQ.
                             Counsel for the Defendant
8

9

10

11

12

13                        _ _ _ _ _ _ _ _ _

14

15

16

17

18

19

20

21

22

23

24

25

```
1                      P R O C E E D I N G S

2

3          (Proceedings commenced in the courtroom beginning at

4     9:00 a.m.)

5

6          THE COURT:  Good morning.  Please be seated.

7                I saw Mr. Blumenfeld.  I'm like, where is he,

8     but he's back there.  Okay.

9          MR. FAHNESTOCK:  Good morning, Your Honor.

10         THE COURT:  Good morning.  How are you?

11         MR. FAHNESTOCK:  Doing well.  Hope you're doing

12    well.

13               Derek Fahnestock from Morris Nichols for

14    Natera.  With me at counsel table, we have Sandra Haberny,

15    Abigail Clark, and Bianca Fox from Quinn Emanuel.

16               We're going to be dividing up the terms, so

17    actually, Ms. Clark and Ms. Fox will be making the first

18    Markman arguments today.

19               Jack Blumenfeld from my firm is also here.  And

20    from Natera, Arka Chatterjee and Luke Burton.

21         THE COURT:  Okay.  Thank you.

22               Mr. Farnan.  Good morning.

23         MR. FARNAN:  Good morning, Your Honor.

24    Brian Farnan on behalf of CareDX.  With me is Ed Reines

25    and Derek Walter from Weil Gotshal.
```

1          **THE COURT:**  Great.  Thank you.

2          Okay.  Do the first term.

3          **MS. HABERNY:**  Good morning, Your Honor.

4  Sandy Haberny on behalf of Natera.

5          We've prepared some slides.  Would Your Honor

6  like a copy?

7          **THE COURT:**  Yes, please.

8          **MS. HABERNY:**  May I approach?

9          **THE COURT:**  Sure.

10          **MS. HABERNY:**  Your Honor, if you would like, if

11  it would please the Court, we've prepared some brief

12  slides to overview the technology and the claims before we

13  get into the terms.

14          So these technologies use information gleaned

15  from DNA that's present in the blood.  And for these

16  claims in particular, this DNA comes from samples where

17  the blood contains DNA originating from more than one

18  person.

19          So this can happen in situations where the

20  blood is from a pregnant woman that contains the mother's

21  blood and the fetus' blood, or it can happen in samples

22  from a -- an organ transplant recipient that contains DNA

23  from the recipient and the organ donor.

24          And these claims relate to preparing the DNA

25  from these samples and analyzing it and gaining

1    information from it.

2          So the reason that DNA is so useful for this is

3    because it's a molecule that stores information.  And the

4    information contains instructions that make our bodies

5    work, but also information that makes each individual

6    unique.

7          So as Your Honor probably knows, DNA typically

8    resides in chromosomes in the nucleus of most cells in the

9    body.  It's a double-stranded molecule made up of four

10   bases:  Adenine, which is also referred to as A; thymine,

11   referred to as T; guanine, referred to as G; and cytosine,

12   referred to as C.

13         The strands of DNA are held together by a

14   complementary base pairing, which means that A, the base

15   A, always binds with the base T; and G, always binds to C.

16   And this will be an important concept for some of the

17   terms we'll be discussing today, such as sequencing by

18   synthesis.

19         So the claims in these patents processes

20   certain kind of DNA called cell-free DNA.  DNA typically

21   resides, as I mentioned, in the cells of the body, but it

22   also can be found outside of the cells in other bodily

23   fluids, and that's what's referred to as cell-free DNA.

24         So here's how it gets there.  When cells die in

25   a process called apoptosis, enzymes within the cell chew

1    up everything in the cell, and they also chew up and

2    fragment the DNA.  The cells then essentially burst and

3    release the cell-free DNA.  And they release it into the

4    blood and into other bodily fluids where it circulates,

5    along with all the other components that are found in the

6    blood, such as cells, nutrients, proteins, many other

7    things that are found in the blood.

8             So cell-free DNA, like all DNA, is useful for

9    providing information because it's made up of a string of

10   bases in an ordered sequence.  And the sequence can be

11   read and translated into data that provides information

12   about the DNA and also about the person that it came from.

13            This is because each person has a unique

14   sequence of bases in their DNA.  So every human's DNA is

15   about 99.999 percent the same, but there are parts of it

16   that differ.  And that's what makes one individual

17   different from another.

18            So the places in the genome where individuals

19   may differ are called polymorphisms.  And a particular

20   type of polymorphism that appears in the claims that we're

21   construing today is called a single nucleotide

22   polymorphism.  And that's also sometimes pronounced as a

23   SNP.

24            So SNPs are loci in which there is only one

25   base pair that may differ between individuals.  And as you

1    can see in this picture, the yellow highlighted locus

2    represents a SNP.  And the red person has a SNP that

3    contains an A allele.  And the green person has a SNP that

4    contains a G allele.

5          So I've used the term "allele."  And allele

6    refers to the different possible variants at a polymorphic

7    locus.

8          Another relevant term we may be discussing

9    today is "genotype."  And genotype refers to the identity

10   of the alleles at an individual's polymorphisms.  So if

11   we're looking at 100 different SNPs, a person would have

12   100 different allele genotypes, each allele genotype for

13   each SNP.

14         And putting this into context, as I said, there

15   are different scenarios in which more than one person's

16   DNA could be present in a biological sample.  And that DNA

17   will contain SNPs and alleles specific to each person

18   that's in the mix sample.

19         So in the transplant context, for example, SNP

20   alleles can be used to monitor organ transplant rejection,

21   or status.  In any organ transplant, there will be cells

22   from both the recipient and the donated organ present.

23   And those cells in a healthy transplant -- for example, in

24   the figure at the bottom left -- the cells will naturally

25   die at some rate, and the DNA from both the donor and the

1    recipient will be released into the blood, and there will

2    be cell-free DNA from both individuals in that sample.

3           Where a transplanted organ is rejected, the

4    organ cells die at a faster rate, at a higher rate.  And

5    so more of the organ divide, cell-free DNA will be present

6    in the cell -- or in the blood, I'm sorry.

7           So in the context of an organ transplant, for

8    example, there will always be more recipient cell-free DNA

9    in the recipient's blood, the donor DNA.  And that's

10   because the recipient's DNA comes from all of the cells in

11   the whole entire body.  And the donor's cell-free DNA only

12   comes from the organ, which is much smaller and has much

13   fewer cells to begin with.

14          One of the applications of some of the claims

15   today is to measure how much of the cell-free DNA in the

16   blood comes from the donor relative to the recipient.  And

17   the way this is done, is that you look for the allele

18   frequency of the donor-derived cell-free DNA in the blood.

19          So this is shown here in a very heavily

20   oversimplified example.  In real life, we'd be looking at

21   millions of pieces of cell-free DNA.  But for purposes of

22   illustrating the point here, we have shown ten.  And in

23   real life, also, the allele frequency of donor-derived DNA

24   in the blood would be much smaller.  Maybe on the order of

25   1 or 2 percent.  But again, just to illustrate what allele

1    frequencies are, we've shown it in this example.

2           So here, if one out of ten alleles in the

3    sample, in the cell-free DNA, are the donor's allele, then

4    you would say that there's a 10 percent donor allele

5    frequency.  If three out of ten of the alleles belong to

6    the donor, then we'd say there's a 30 percent donor allele

7    frequency.

8           So the allele frequency refers to the fraction

9    of certain individuals' cell-free DNA in the blood as a

10   fraction of all of the DNA in the blood.

11          So I'll go through the claims quickly.  There

12   are three patents at issue.  The '544 patent and '724

13   patent are related.  They're in the same family.  And the

14   '544 patent is a continuation, in part, of the '724.

15          Here, we show Claim 1 of the '544 patent for

16   simplicity.  I will note that there are many differences

17   between the '544 and '724 patent, but those differences

18   are not necessarily material to the claim terms that we're

19   discussing today.  So we're showing this as an example.

20          The '544 and '724 patent claims relate to

21   determining genetic data for DNA from a -- a first

22   individual in a biological sample of a second

23   individual -- so that would be a mixed sample -- with two

24   different individuals' DNA present in it.

25          And you do this first by extracting cell-free

1    DNA -- so that's the cell-free DNA extracted -- and then

2    amplifying a plurality of target loci -- for example, SNPs

3    can one example, there are other types of target loci --

4    to generate amplified products.  And then those amplified

5    products are sequenced by a specific type of sequencing

6    called sequencing by synthesis.  And that obtains genetic

7    data for the plurality of target loci.

8           And then the final step of these claims is to

9    determine the most likely genetic data for DNA from the

10   first individual based on the allele frequencies -- we

11   just looked at allele frequencies -- based on the

12   proportion of that person's DNA out of all of the DNA in

13   the sample at the plurality of target loci.

14          The '180 patent is very different from the '544

15   and '724 patents.  It's not related to them.  It's in a

16   different family.  But there are some concepts that are

17   relevant today that overlap.

18          For example, this is measuring an amount of DNA

19   in a biological sample, similarly -- or extracting

20   cell-free DNA.  We will go through that term.  It's one of

21   the terms to be construed today -- performing targeted PCR

22   amplification at SNP loci, and then determining genotypes

23   by high sequencing.  And finally, measuring an amount of

24   the DNA using the amount of one or more alleles that were

25   determining by genotyping at the simplest...

1            So that's an overview of the claims.

2            And, Your Honor, I thought maybe we might

3    discuss briefly ordering the terms --

4            **THE COURT:**  Sure.

5            **MS. HABERNY:**  -- we've construed.  So we've

6    discussed with counsel for CareDX, and some of the terms

7    have much more substantive argument than others.  So we

8    propose to Your Honor, construing them in the following

9    order.  First, sequencing by synthesis.  I'll go back,

10   actually.

11           **THE COURT:**  Okay.

12           **MS. HABERNY:**  Can you pull up slide 2, please.

13           So we have them here in the order that they

14   were briefed, but we have proposed reordering them for the

15   argument.

16           First, starting with sequencing by synthesis.

17   And then second term, cell-free DNA extracted from the

18   biological sample.  And then after that, moving to label

19   Number 5 here, wherein the method is performed without

20   prior knowledge.  And then following that, the one appears

21   last here, targeted PCR.  And then going to, finally, the

22   remaining terms, which are labeled Number 4 here, targeted

23   PCR amplification of the cell-free DNA and more than --

24   it's a very long term, but -- and more than 100 SNP loci.

25           And then, finally, the two terms which we've

1    combined for efficiency here, which are labeled Number 6,

2    amplifying the plurality of target loci, amplifying the

3    plurality of SNP loci.

4              **THE COURT:**  And why do you want to change the

5    order?

6              **MS. HABERNY:**  Well, just some of these have

7    more substantive argument than others.  So we believe that

8    there will be probably much less to say about the final

9    terms.

10             **THE COURT:**  Okay.

11             **MS. HABERNY:**  You can go to the sequence by

12   synthesis.

13             So the terms "sequencing by synthesis" appears

14   in the claims of the '724 and '544 patents.  And here,

15   we've shown one example of a claim containing this term,

16   which is Claim 38 of the '544 patent.  And it appears in

17   the term as follows:  Analyzing the preparation of

18   amplified DNA by sequencing the amplified DNA using

19   sequencing by synthesis.

20             So Natera proposes a plain and ordinary meaning

21   for this term, which is exactly what the term says.

22   Determining the sequence of a DNA molecule by synthesizing

23   something, which is understood to be -- by persons of

24   skill in the art to be a complementary strand to that DNA.

25             There are many ways to do this as of the 2005

1    data, the patent.  But CareDX is seeking to narrow the

2    meaning of this term to one embodiment only, which is

3    pyrosequencing.  And that's based on one sentence in the

4    written description, and one sentence only.  That is

5    literally the only support that CareDX points to.

6    CareDX's construction is not supported by the claim

7    language.  And importantly, it would exclude sequencing by

8    synthesis embodiments that are not pyrosequencing and that

9    are part of the intrinsic record.

10         So the claim language says sequencing by

11   synthesis.  The claim language itself says that it does

12   not say pyrosequencing.  The claim could have said

13   pyrosequencing, but does not, and that's because the

14   patentee chose this broader word, sequencing by synthesis.

15   And that word must be given effect as the patentee's

16   choice in how to claim their invention.

17         Sequencing by synthesis, at the time of the

18   patents, was a term of art.  You can see here in this 2005

19   publication, which is incorporated by reference into the

20   patent, and it demonstrates the understanding of a person

21   skilled in the art at that time.

22         Sequencing by synthesis was known to be -- to

23   rely on polymerase mediated addition of nucleotides to a

24   primed single strand of DNA.  That polymerase mediated

25   addition of nucleotides is known as synthesis.  That's how

 1    synthesis occurs.

 2              So I will explain briefly how this works.  At a

 3    high level, after you --

 4          THE COURT:  Actually, why don't I, at this

 5    point, hear from them.  I mean, you think it's a plain and

 6    ordinary meaning?

 7          MS. HABERNY:  Correct, Your Honor.

 8          THE COURT:  Let's hear from them.

 9          MR. REINES:  Your Honor, may I approach?

10          THE COURT:  Sure, please.

11          MR. REINES:  Thank you, Your Honor.

12              Thank you, Your Honor.  So the body of evidence

13    on this term is fairly narrow.  I'm sure the Court will

14    have its reactions.  I'll explain where we're coming from,

15    and the Court will be able to obviously make its own

16    conclusion.

17              There's one paragraph on the topic of

18    pyrosequencing, or sequencing by synthesis, so it's --

19    doesn't take long.  It's about six sentences.  Five of

20    them are exclusively about pyrosequencing.  And then

21    there's this top sentence, "Pyrosequencing, or sequencing

22    by synthesis can also be used for genotyping."

23              So largely, the debate is one of syntax,

24    whether that implies a definition or not.  And that's

25    basically it.  I will explain.  And then there's just a

1    little more background about the -- about the prior art I

2    want to explain for context.

3        So in the *Medicines* case, you know, obviously

4    you can limit the term if that's appropriate, based on the

5    specification.

6        The *McCarthan* case, you know, starts to address

7    the syntax and how it's treated in legal language.  The

8    word more commonly introduces synonym or definitional

9    equivalence.  That's a case that says so.

10       We cited *Scalia & Garner*.  I don't know how the

11   Court feels about that treatise, but we think that has a

12   good discussion on this that enlightens.  And they talk

13   about it as definitional equivalent.

14       There is examples in the patent of them using

15   it this way.  Down syndrome and Trisomy 21, 21 being the

16   chromosome that's tied to Downs.  That's an example of it

17   being used in a definitional --

18           **THE COURT:**  Well, actually on that.

19           **MR. REINES:**  Yeah.

20           **THE COURT:**  Let's go back.

21           **MR. REINES:**  Sure.

22           **THE COURT:**  Is Trisomy 21, you're saying that

23   is a definition of Down syndrome?

24           **MR. REINES:**  It's a -- the way I look at it is

25   sort of a.k.a.  I know that's colloquial.  But it's also,

1      "also known as."

2              **THE COURT:**  But it's not exactly the same

3      thing.

4              **MR. REINES:**  Actually, I think those are.  In

5      that -- in this instance, they're the same thing.  In this

6      instance, they're the same thing.

7              **THE COURT:**  Okay.

8              **MR. REINES:**  Because there's -- there's Trisomy

9      that affect other chromosomes that aren't Downs, like

10     Edwards' syndrome and things like that, 18 and 13.  Most

11     of them you can't survive.  So if there's three

12     chromosomes at most, you can't survive.  But for Downs,

13     Downs is only tied to chromosome 21.

14             **THE COURT:**  Well, I understand it's tied and

15     it's only tied to chromosome 21, but that just -- that's

16     partly why I asked the question:  Is it exactly

17     synonymous?  You want to argue as well?

18             **MR. REINES:**  Well, I believe it to be so, yes.

19             **THE COURT:**  Okay.

20             **MR. REINES:**  There's other examples of this

21     syntax in the patent with circular products in closed

22     patent on...

23             Here's an example where they're using the term

24     for short.  This is clearly definitional use of "or" with

25     the setoff commas.  So its "CNC or" or "QCNC" for short.

1    So that's plain definitional use of "or."

2         Here's another example of a -- it's an acronym.

3    So it's plainly definitional with a setoff by commas.

4         One of the arguments is the fact of a

5    definition section's essentially nullifies the potential

6    for the rest of the specification to either contain

7    lexicography or imply a definition.  I don't know.  It's

8    something to consider.  But I -- it's hard to believe that

9    would be a determinative outcome.  The fact that the

10   definition section sort of nullifying the ability of the

11   Court to construe terms based on other matter within the

12   specification in a tailored way, which you follow me

13   there.

14        Because that was the debate between the

15   parties, is what's the consequence of --

16        **THE COURT:**  I didn't buy their argument about

17   Medicines.

18        **MR. REINES:**  Okay.  Then I won't bother you

19   with it.

20        **THE COURT:**  I mean, I think your -- there's at

21   least two other instances in the patent where there's a

22   "comma or," where it's not purely definitional.

23        **MR. REINES:**  That is -- that is true.

24   There's -- well, in those cases, yes.  If they're the same

25   ones that I'm thinking of in that situation, it's "or."

 1    It's a traditional disjunctive.

 2              So if your point there is that then the commas

 3    can't be that important if they're using the commas for

 4    the pure disjunctive, there's -- there's a point there to

 5    be made.

 6         **THE COURT:**  I think the problem is, right

 7    there, that -- and you have the right to concede there's a

 8    point there.  Sometimes "or" is definitional, sometimes

 9    it's not.

10         **MR. REINES:**  Absolutely.

11         **THE COURT:**  And you've got a really high

12    burden, right?

13         **MR. REINES:**  I've got a burden.

14         **THE COURT:**  Yeah.

15         **MR. REINES:**  How high it is, you know, is a

16    separate question.

17              But, the thing -- let me move to -- well, the

18    *Loughrin* case is interesting because -- the reason I think

19    that burden is met, Your Honor, is here, if it's not

20    definitional, what is it, right?  It doesn't have a

21    natural -- it's not disjunctive.

22              Essentially, I think it's attempt -- and I

23    don't think anyone is saying it's disjunctive because you

24    have arguable species, geno situations, so.

25              But I think it's an including.  It's like it's

1    inclusive.  It's -- and, you know, the Supreme Court quite

2    recently said, including, your know, "or" is including is

3    not the way we think of it being used.

4            Now, I know everything's not hard.  There's

5    nothing hard -- this isn't hard and fast, you know.  I

6    mean, none of this is hard and fast, but it sheds light.

7            But the main thing I wanted to convey that

8    might not have come through in the papers, some things

9    just are better orally, is, you know, what Natera relies

10    on for disclosure of other forms of sequencing by

11    synthesis, there's some nuance there.

12            One is, they put in three publications.  They

13    didn't argue.  We covered.  It wasn't like that kind of --

14    **THE COURT:**  No.  But are you going to dispute

15    that Jarvies doesn't disclose other forms?

16    **MR. REINES:**  No.

17    **THE COURT:**  Okay.

18    **MR. REINES:**  No.  We're staying with our

19    briefing on that.  But I do want to point one thing.

20            They cite frequently to the other two

21    references which are -- they're claiming a 2005 critical

22    date, which is fairly early in this.

23            And the two -- other two publications -- so

24    Your Honor's right to focus on Jarvie -- are after the

25    priority date.  So that's not really shedding light.

 1          This one is, like, just a couple of months

 2     before the claimed priority date.  So this is kind of like

 3     a realtime look, at least what the inventors thought the

 4     field was, at most.  They didn't include this in the

 5     specification.  So one is, it's omitted.

 6          But what this says -- and, again, you know,

 7     you're sharp as a whip -- is that there's only one that's

 8     commercial that's out there, the '454, which is

 9     pyrosequencing.

10          And then there's other people that are working

11     and talking about it, but they don't have a release system

12     yet.  So that is what it is.  You know, I'm not making

13     more or less than that's what it is.

14          So at the time of filing, what the record shows

15     you, based on the one piece of evidence that both parties

16     are relying on, which is Jarvie, is that at the time of

17     their claim date, there's one type of sequencing that

18     someone like the Natera people could have gotten, because

19     they're not in court, they're not in Solexa.  I mean,

20     Solexa, which became Illumina.  I don't know if the Court

21     remembers that.  You've got so much to know.

22          But that wasn't released until well after --

23     well, well, after -- you know, not right at the critical

24     date.  It's was, I think, at the end of 2006.  This is

25     2005.

 1            So they didn't have access to this -- to these

 2     systems, so they couldn't have been confident that it

 3     would be used.  So that's the other context, is at the

 4     time, if they knew of these and thought they were

 5     alternatives, you know, it would have been much more

 6     logical to do -- to use them.

 7            I think they were thinking -- you know, it's

 8     easy -- and the Court knows about the problem of

 9     hindsight.

10            It's easy for us to look now and say, well, of

11     course, the Illumina sequencing was something they were

12     thinking of.  Well, no, it wasn't, I don't think, because

13     they would have referenced it, or this article would have

14     been cited in the paper -- you know, not in the subsequent

15     file history down the road, would have been filed

16     originally.  And so that's why they used the linguistic

17     formulation of pyrosequencing, or sequencing by synthesis.

18            You know, and if it was exemplary, you would

19     have thought, you know, from a syntax perspective, you

20     would use sequencing by synthesis or pyrosequencing,

21     maybe, as example, even that's awkward.  But

22     pyrosequencing, or sequencing by synthesis, that's

23     equating it.  That's what I honestly believe, and I ask

24     the Court to believe that too.  That is equating it.

25            And then the only thing they discuss of

1    pyrosequencing -- and the other thing, Your Honor, the

2    reason why this is so short, other than the fact that

3    these people weren't very familiar with sequencing, is

4    that they were thinking of a lot of other types of

5    technologies as being the way to do their genotyping.  And

6    it could be a little confusing.  Illumina had a -- what's

7    called a ray technology.  That's not the sequencing

8    technology.  Illumina hadn't bought Solexa yet.

9          So there is vast -- not vast, I shouldn't

10   say -- but there's relatively vast disclosure of other

11   types of genotyping, other than sequencing.  So this is

12   kind of like "and, oh, by the way, you can do this too"

13   kind of comment that's thrown in.  Often, patent

14   prosecutors are spurring you to do that.  So that's

15   important to appreciate.

16         I don't want to take more of your precious

17   time.  But we do think a syntax -- like, especially

18   leading with pyrosequencing, instead of leading with the

19   other, it just -- very awkward to read it another way.

20         If you have any questions, I'm happy to answer.

21         **THE COURT:**  Okay.  Thank you.

22         **MR. REINES:**  Thank you.

23         **THE COURT:**  All right.  I'm going to give the

24   term its plain and ordinary meaning.

25         The Court should construe claim terms according

1    to the plain and ordinary meaning that the terms would

2    have to an artisan of ordinary skill when read in the

3    context of the written description of the prosecution

4    history and the specification, which is generally, which

5    includes those, as well as the claims.

6          There are only two exceptions to this general

7    rule, as you all know.  When we have the patentee acting

8    as a lexicographer, and when the patentee disavows the

9    full scope of the claim, either in the specification or

10   during prosecution.  And in either event, lexicography or

11   disavowal must be clear and unmistakable.

12         CareDX argues that Natera acted as its own

13   lexicographer by defining "sequencing by synthesis" as

14   pyrosequencing.  And the argument is based on a single

15   sentence in the written description, which reads, quote,

16   "Pyrosequencing, or sequencing by synthesis, can also be

17   used for genotyping and SNP analysis," unquote.

18         And just to be clear, there's a comma that

19   separates "pyrosequencing" in that sentence from the

20   clause "or sequencing by synthesis."  The clause "or

21   sequencing by synthesis" is set off by commas,

22   essentially, from the rest of the sentence.

23         The intrinsic evidence, however, shows that

24   Natera did not clearly express an intent to redefine

25   "sequencing by synthesis" as "pyrosequencing."

1          So first, looking at the claims, they refer to

2    sequencing by synthesis not pyrosequencing.  CareDX does

3    not argue that anything in the claims would disclose to

4    the artisan of ordinary skill that "sequencing by

5    synthesis" means "pyrosequencing."

6          And there's no indication from CareDX that the

7    claims themselves require or suggest that an artisan of

8    ordinary skill must use pyrosequencing as opposed to any

9    other method of sequencing by synthesis to practice the

10   claimed invention.

11         Looking to the written description, the only

12   mention of either pyrosequencing or sequencing is in the

13   sentence that CareDX has argued is definitional.  And

14   that's not counting there are references to sequencing by

15   synthesis in titles of the cited references.

16         But this suggests that Natera intentionally

17   used the term "sequencing by synthesis" in the claims to

18   encompass more methods of sequencing by synthesis than

19   just pyrosequencing.  Had it intended to refer to

20   pyrosequencing in the claims, it presumably would have

21   done so.

22         And I refer the parties, in this regard, to the

23   decision *Takeda Pharmaceuticals*, found at 743 F.3d 1359,

24   in particular, Page 1365, where the Federal Circuit said,

25   quote, "Plainly then, had the inventors desired the

1    average particle diameter to include a margin of error,

2    they could have included the word about in the claim

3    language.  In the absence of their decision to do so,

4    however, we will not take it upon ourselves to rewrite the

5    claim in that way."  And I'm not going to take it upon

6    myself to rewrite the claim here in that way.

7            The prosecution history further supports

8    Natera's argument that it did not intend to define

9    "sequencing by synthesis" as "pyrosequencing."  And, in

10   particular, I found, very probative, the Jarvie

11   references -- Jarvie reference, rather, which discusses

12   several sequencing by synthesis methods, not just

13   pyrosequencing.

14           Now, we've just heard, in the briefing, CareDX

15   argued that because pyrosequencing was the only

16   commercially available form of sequencing by synthesis at

17   the time, that Natera defined "sequencing by synthesis" as

18   "pyrosequencing."  Claims, however, can capture even after

19   arising technologies depending on how they are written.

20   The language again, the claim controls.

21           And I refer the parties, in this regard, to

22   *Superguide Corp. against Directv*, found at 358 F.3d 870,

23   in particular, Page 878.

24           The terms here are written broadly enough to

25   capture after arising technology.  And those technologies

1       are at least referenced in one.  I think undisputedly

2       referenced in one prior art reference.

3              I think it's fair that CareDX's argument is

4       characterized as one of ultimately syntax, relying

5       primarily on the dictionary definition of "or" and how

6       that word is used in the sentence that's relied upon.

7              And CareDX argues that Natera used "or."  It

8       acknowledges it could in one of two possible ways:

9       Definitionally or to specify distinct alternatives.  But

10      the definition of "or" that CareDX cites, does not include

11      the word "distinct."  It speaks only of alternatives.  The

12      definition is, therefore, consistent with the way that

13      Natera used "or" in the written description to introduce

14      alternatives.

15             For instance, the written description refers

16      to -- I'm going to quote here -- quote, "Data from a

17      single cell, or a single strand of DNA, as would be

18      required," unquote.

19             It also states, quote, "By a small number of,

20      or no, crossovers," unquote.  These examples are similar

21      to the structures used in the sentence that CareDX argues

22      is definitional.

23             In short, I don't think CareDX has established

24      clear intention by Natera to define "sequencing by

25      synthesis" as "pyrosequencing."  And for that reason, I'm

1    going to give the words plain and ordinary meaning.

2            I'm not going to bother addressing Natera's

3    *Medicines* argument, but I do think it was overstated, and

4    I didn't find it persuasive in my construction of the

5    term.  All right.

6            Next.

7            **MS. HABERNY:**  Thank you, Your Honor.

8            The next term is "cell-free DNA extracted."

9    And this term appears in several claims of the '724 and

10   '544 patents.  Here's one example, which is Claim 1 of the

11   '724 patent.  And it's -- in context it reads, "amplifying

12   a plurality of polymorphic loci on cell-free DNA extracted

13   from the biological sample to generate amplification

14   products."

15           Here again, Natera proposes the plain and

16   ordinary meaning.  "DNA extracted" means "DNA removed."

17   All of the DNA.  It doesn't say anything about separating

18   one person's DNA from another person's DNA.

19           But CareDX's proposal completely rewrites the

20   claim.  It inserts into the claims concepts and

21   limitations that do not stem from any claim language

22   whatsoever, or any disclosure in the patents.

23           In fact, CareDX can't even figure out which

24   term it wants to bring this concept in through.  At first

25   it proposes construing "DNA extracted," and saying that

1    means separating one person's DNA from another's.  And

2    then later in its briefing, it pivots and says, no,

3    actually, DNA data is separately analyzed from -- as

4    between the two individuals.  And that means their

5    molecules must be separately -- you know, the molecules

6    must be separately removed and isolated from one another.

7    And none of that is anywhere in any of the claims.

8            So this is the plain and ordinary meaning of

9    "extracted."  And, in fact, CareDX doesn't dispute that

10   the term "extracted" has a plain and ordinary meaning, or

11   that it just means removing all the DNA from a sample.

12           CareDX is trying to redefine it as something

13   other than the plain and ordinary meaning.  But the plain

14   and ordinary meaning is well known and well accepted to

15   persons of skill in the art.

16           And it simply means you start with a tube of

17   blood.  You start with a sample.  And there are lots of

18   things in that sample.  There are cells, there are

19   proteins, there are wastes, there are viruses.  All kinds

20   of things floating around in the sample.

21           And in a step-wise process, this is what

22   extracting DNA means:  In a step-wise process, you remove

23   the DNA from all of those other things.  So first, there's

24   separation of the blood into plasma.  And plasma contains

25   none of the cells, so you're slowly removing some of the

1    stuff in there.

2              And then from plasma, you capture all the

3    cell-free DNA.  This can be done in different ways, but

4    one common way is using magnetic beads.  And so you can

5    use magnetic beads.  And the cell-free DNA comes to the

6    bottom with a magnet, and the rest of the stuff that's in

7    the plasma floats to the top and you remove it.  And then

8    you put the DNA into another tube.  It is physically

9    impossible at this point -- and this is what extraction

10   is -- physically impossible to pull down only some -- one

11   person's DNA and not the other person's DNA.  Nobody knows

12   how to do that.

13             And this is a very important step.  DNA

14   extraction, the term of art, specific process is very

15   important because it's done in order to amplify the DNA.

16   You cannot amplify DNA in blood.  It just won't work.

17   There's too much stuff in there.  It's a gobbledygook.

18   There is proteins.

19             When you're doing amplification, for example,

20   using PCR, there are changes in temperature, very dramatic

21   changes in temperature.  If you did that to blood, you'll

22   have coagulation.  It's just -- it'll be a mess.

23             There's specific molecular interactions.  So

24   when you amplify DNA, you need a very controlled system.

25   Just only the DNA you're amplifying.  Just the preliminary

1    enzymes.  Just the reagents.  It has to be completely

2    pure.

3              And that's what extraction is for.  It's not

4    meant to separate one person's DNA from another.  This is

5    just a term of art.

6              So here's the claim language.  Nothing in the

7    claim language says extracting one person's DNA, but

8    leaving the other person's behind.  It says, "cell-free

9    DNA extracted."  All of it.  That's the plain reading of

10   these terms.

11             And CareDX's rewrite is simply inconsistent

12   with that purpose.  They are just literally writing the

13   claim term out and adding a completely different idea into

14   the claims.

15             Now, it is possible to do other things, to get

16   information or to generate a population of molecules from

17   one person that's different than another, but that doesn't

18   happen during extraction.

19             You can do that, for example, by PCR.  Say,

20   this is a pregnant woman's sample.  You can do PCR to

21   amplify only locations on a Y chromosome.  And there, you

22   get amplification products only from a male fetus.  But

23   that's a separate amplification process.  And none of

24   that's recited in these claims.

25             The amplification recited in these claims is

1    simply amplifying extracted DNA.  It doesn't say selecting

2    chromosome -- selecting, you know, loci specific to one,

3    not another.

4            So they're adding in steps that just aren't

5    there.  And the patent doesn't explain how to extract

6    using the claim term "only one individual's DNA."  Again,

7    it's just not possible.

8            In fact, what CareDX's proposal would do is

9    completely change the claim's purpose.  So there are

10   limitations in the claims to determining the most likely

11   genetic data for DNA from a first individual based on

12   allele frequencies.

13           If you physically isolate that person's DNA,

14   and that's the only DNA that you're analyzing, you won't

15   have most likely genetic data.  All of the genetic data

16   will be for that individual.  And you won't have allele

17   frequencies.  100 percent of the alleles will be from that

18   individual, because that's the only DNA that was processed

19   and analyzed.

20           So the notion of what CareDX proposes is not

21   consistent at all with the purpose of the claims.  The

22   claims -- in fact, this step is directed to

23   bioinformatically determining information about one

24   individual because it's a mixed sample, and because DNA

25   from more than one individual is analyzed.

1          And this is done, again, using allele

2     frequencies.  Without mixed sample, you wouldn't even have

3     allele frequencies.

4          What CareDX is doing is -- I believe CareDX's

5     argument is, because you are determining most likely

6     genetic data for a first individual, you must have

7     isolated their molecules from the other molecules in this

8     sample.  It's pulled out of thin air, but that's the, you

9     know, conclusion that they draw -- several steps removed

10    from the claim language.

11         But what that does is, it confuses the concept

12    of cell-free DNA, which are molecules with data, which is

13    information.  Yes, the claim does say that you -- I won't

14    say isolate data, but you determine most likely genetic

15    data about a first individual.  But that's data.  You're

16    doing that bioinformatically.  Data is not molecules.

17         And CareDX's proposal also reads out

18    embodiments.  I mean, there's a very clear embodiment here

19    about contaminated DNA.  And you're cleaning contaminated

20    DNA bioinformatically, a contaminated sample

21    bioinformatically.

22         If you could just remove the contamination

23    molecules out of the sample, there would be no need to

24    then go do some bioinformatics to remove the data from the

25    contamination.  You just -- you just physically suck it

1    out and go on about processing your sample.

2          So what CareDX also does is point to

3    disclosures in the written description that refer to

4    isolating DNA from blood.  And they turn that into -- and

5    here's a quote from CareDX's briefing -- "DNA isolated

6    from maternal blood is separate from maternal DNA."

7    That's simply an extrapolation that's not supported by the

8    disclosure.

9          Blood is not DNA.  You can isolate DNA from

10   blood, but that doesn't mean you're separating one

11   person's DNA from another's.

12         And CareDX points to embodiments, but they do

13   not, at all, support even CareDX's erroneous reading of

14   isolating.

15         So here's one example of an embodiment CareDX

16   cites.  It simply says, measurements on smaller amounts of

17   D that can be isolated from the mother's blood.  This says

18   all DNA.  This is an embodiment that says you're isolating

19   all DNA from the blood.

20         So "isolation" doesn't mean "extraction."

21   Extraction is a term of art.  But even if isolation did

22   mean extraction, there are embodiments in the written

23   description that say you're isolating all of the DNA from

24   the mother's blood.

25         And there are some embodiments that say

1    cell-free fetal DNA isolated from the mother's blood.

2    Fetal cell-free DNA isolated from the mother's blood.  But

3    that's not using the term "extraction."  That's not the

4    term that the patentee chose to use in its claim.

5    Patentee said "extracted," not "isolated."

6              And, again, isolating DNA from a mother's

7    blood -- you can isolate all of the DNA from a mother's

8    blood as long as it contains fetal DNA.  That's not

9    inconsistent with this disclosure either.

10             CareDX also chooses an embodiment in one of the

11   provisionals to which Natera -- that the Natera claim

12   patents claim priority.  And this embodiment is even

13   further off.  This embodiment, it's describing SNPs from a

14   single cell.  And the claims very clearly recite cell-free

15   DNA.  So any embodiment about a single cell is just wholly

16   inapposite to claims directed to cell-free DNA.

17             CareDX also points to this Illumina case, which

18   I believe probably is what -- what, you know, led to

19   this -- to their seeking the construction.  But the claim

20   that was construed in the Illumina case is very different

21   than the claim here.

22             So there was an Illumina v Natera case where

23   Judge Illston in the Northern District of California

24   construed a claim.  And the patent term was "producing

25   genetic data at a plurality of at least 100 loci on the

1    chromosome or chromosome segments of interest in the

2    individual."  And the presence of that term "in the

3    individual," was a very big focus of Judge Illston's

4    construction.

5             So our term at issue here just says, "cell-free

6    DNA exacted from the biological sample."  It doesn't say,

7    the cell-free DNA of the individual extracted from the

8    biological sample.  To be analogous, it would have had to

9    say that, and it doesn't.

10            So, you know, CareDX is just reading in a

11   construction from a completely different case, completely

12   different patent.  It wasn't this patent.  It was a

13   different patent.  Completely different term.  And there

14   is no relation.

15            **THE COURT:**  Okay.

16            **MS. HABERNY:**  Thank you, Your Honor.

17            **MR. WALTER:**  Good morning.

18            **THE COURT:**  Good morning.

19            **MR. WALTER:**  So what was notable to me about

20   that discussion was how little there was regarding what's

21   actually in the specification of these patents, that we're

22   talking about here, that have this term.  So I'm going to

23   do a background on that, because I really feel like we

24   need a reset on that.

25            Let's first talk about the problem that this

1    patent tries to overcome.  There's a challenge that's

2    identified, which is, what do you do when you have a small

3    amount of a genetic material?

4              So, for instance, the history of this company

5    is wound up in in vitro fertilization.  They wanted to

6    test embryos to find out if they were going to be good

7    embryos or bad embryos.  But if you want to test the

8    genetic data from the embryo, you need to get a little bit

9    of material from the embryo.  But if you get too much

10   material, you're going to destroy it.

11             And so you get a little bit of genetic material

12   and you measure it, and you try to use that as a measure

13   of whether the embryo is going to be a good embryo that

14   doesn't have genetic defects or a bad one that does.  But

15   if you've got such little genetic material, the data is

16   going to be noisy.  Okay.

17             And another situation where that might arise is

18   if you're talking about cells that are in the mother's

19   blood.  When a woman is pregnant, it was known many years

20   ago, that sometimes you can get little fetal cells in the

21   mother's blood.  And for years and years, people tried to

22   isolate those cells and analyze genetic material to make

23   determinations regarding the state of the fetus.  But,

24   again, the material was limited in scope, and so the

25   measurements would be noisy.

1          And so you can see this in the patent, it talks

2     about the inherently noisy nature of the measured genetic

3     data in cases where limited genetic material is available.

4     And the problem that the patent is trying to solve is, how

5     can you clean that data when you have only that limited

6     noisy genetic data.

7          And what you see in this patent is -- the

8     solution they present is, when you have limited genetic

9     data from, say, a fetus, and the data is noisy, what you

10    can do is, you can try to clean it by -- for instance,

11    getting data from the mother.  And you're going to have

12    unlimited amount of genetic material from the mother.  And

13    because you have unlimited amounts of genetic material,

14    you can get very accurate non-noisy genetic data.

15         And then, you can take into account information

16    regarding the relationship between the fetus and the

17    mother.  The mother is related to the fetus.  The fetal

18    DNA came, in part, from the mother.  You can use that

19    information to make inferences about what the actual

20    correct genetic data is in the fetus.

21         So you use information from the parent or the

22    uncle or the father to try to clean the noisy data that

23    you've gotten from the fetus.

24         But the point is, in all these methods that are

25    in this patent, you're measuring data from these two

1    sources separately.  You have the noisy data from the

2    fetus.  And it's noisy because you have limited genetic

3    material.  You make a separate measurement of that.  And

4    then you have a separate source, which you're measuring

5    separately, that's not noisy.  And you can use the latter

6    to do the former.

7         You can see that in the title system and method

8    for cleaning noisy genetic data from target individuals

9    using genetic data from genetically related individuals.

10        You go to the specification, one of the first

11   things the patent tells you about this invention is it

12   relates to a field where you're trying to do medical

13   prediction and it says specifically to a system in which

14   imperfectly measured genetic data is made more precise by

15   using known genetic data of genetically related

16   individuals.

17        This is not talking about a system where you

18   have a sample that contains DNA from two sources and you

19   analyze it and you don't know which DNA came from which

20   individual.  This is talking about a system where you have

21   data from one source, the fetus, and it's noisy, and it's

22   measured separately, and then you try to clean it by

23   coming in after the fact and getting data from another

24   source that's not noisy, but, you know, relates to the

25   first source and you clean it.

1          Now, the thing that kind of clinches this --

2     and I'm going to go through more of this evidence -- is

3     that this patent does talk about situations where you're

4     talking about a sample that has DNA from two sources.  It

5     talks about cell-free DNA.  Okay.

6          Cell-free DNA in the context of pregnant woman.

7     If you have a woman who's pregnant -- what was discovered

8     in the 1990s, and the late 1990 time frame -- is that

9     there's small fragments of DNA from the fetus that are in

10    the maternal blood stream alongside DNA from the mother.

11         And so if you take a blood draw from a pregnant

12    woman, there's going to be DNA from both the fetus and the

13    mother.  There's going to be DNA from two individuals.

14    And it talks about that kind of DNA sample in the patent.

15         But in every instance where it talks about that

16    kind of a blood sample, it says that the fetal DNA is

17    isolated.  The fetal DNA is isolated from the mother's

18    blood.  And they make a -- they say a lot.  Their main

19    answer on this -- and there's a lot of evidence on this,

20    but their main answer is, well, "isolate" is not the same

21    thing as "extraction."  Well, I don't think someone would

22    look at this so narrowly.  Okay.

23         And so I don't think anybody's going to look at

24    this and say, when the patent tells you that you've got to

25    isolate the fetal DNA from the mother's blood, it doesn't

1    mean you're not extracting it from the mother's blood.

2    Yes, you are.

3              So, you know, another thing we heard was they

4    said, oh, the patent doesn't tell you.  There's no way you

5    could get the fetal DNA from the mother's blood.  Well,

6    actually, the patent does tell you.  The patent tells

7    you you can do this.  It says "fetal DNA isolation."  This

8    is talking about cell-free DNA from a pregnant woman.  It

9    says "fetal DNA isolation has been demonstrated using PCR

10   amplification using primers with fetal-specific

11   sequences."

12             See, the point is, is every time the patent

13   talks about this type of blood sample, it's talking about

14   separating the DNA.  One source, the fetus, from the

15   other.

16             So let's go more through -- you know, I want to

17   make one more point about these patents.

18             This is about cleaning.  You use genetic data

19   from the parent to clean the genetic data from the fetus.

20             How do you do that?

21             Math.  Okay.  That's one way.  There's a

22   fantastic amount of math in these patents.  And if there's

23   any invention in these patents, it's this math to do the

24   cleaning.  Okay.

25             And they've tried to strip that from the

1    claims.  No question.  And you're right, they have changed

2    the claims somewhat from the claims that were originally

3    before Judge Illston in California.

4         And this is definitely a situation where

5    they're trying to draft claims that can be interpreted to

6    go beyond the scope of invention and the law doesn't

7    support that.  And I'm going to show more of the evidence

8    on this point.

9         Okay.  So let's go through the evidence on this

10   point.

11        The claim term is here "cell-free DNA extracted

12   from a biologic sample."  Here's our construction.  We

13   understand that to be interpreted as -- should be

14   interpreted as "cell-free DNA from the first individual,

15   isolated from the biological sample of the second

16   individual."

17        Here's the claim language.  It talks about a

18   method for "determining genetic data for DNA from a first

19   individual in a biological sample of a second individual."

20        So this is talking about that first individual

21   is, for instance, the fetus.  Okay.  And you've got DNA,

22   you've taken it from the fetus and you want to clean it.

23   Okay.  And you're going to clean it using DNA from the

24   second individual.  Okay.

25        But the point is, is this is talking about

1    determining genetic DNA -- genetic data for DNA from a

2    first individual.  So it's talking about DNA from a first

3    individual.  You talk about determining the most likely

4    genetic data from DNA from the first individual.  So this

5    is referring to a first individual.  Okay.  You're getting

6    DNA from a first individual.

7            Nothing about our claim construction is

8    inconsistent with the claims.

9            THE COURT:  What's the "most likely" mean?

10           MR. WALTER:  Most likely -- okay.  So most

11   likely -- that's a great question.

12           So if you go back -- here's the math.  If you

13   go back and look at the math, and there's this cleaning

14   process I described, where you get the data from the

15   second individual -- for instance, the parent -- and you

16   use that to clean the data that you get from the fetus,

17   that's all done based on probabilistic calculations.

18           THE COURT:  But if you isolated it, then why do

19   you have to determine whether it's most likely or not?

20           MR. WALTER:  Okay.  Because -- because you had

21   so little of it, and so when you put it on the sequencer,

22   you don't actually have accurate information about what it

23   is.  The measurement is noise.

24           It's like your signal is low because you've got

25   so little data -- so little genetic material to start

1    with.  So the signal that you get is low, and it's error

2    prone.  That's the way these sequencers work.

3         **THE COURT:**  But it's only error prone if you

4    didn't fully isolate it.

5         **MR. WALTER:**  No.  No, that's not -- that's

6    right.  Yeah, that's not right.

7         It's error prone just by virtue of the fact

8    that you started with a small amount of it.  The way --

9    the way these sequencers work actually, is when you do

10   these short-read sequencing experiments, there's errors in

11   the sequencing data.

12        And if you want to find out really accurately

13   what a particular sequence is in a region of genome, you

14   actually have to sequence that region of the genome

15   multiple times.

16        So in a Illumina sequencer, there's something

17   called sequencing depth.  And what that is referring to is

18   the concept that you're actually sequencing a piece of DNA

19   from a particular region of the genome multiple times.

20   And by sequencing that multiple times, you can arrive at

21   an accurate picture.

22        And if you want to make, for instance, accurate

23   allele calls on an Illumina sequencer, you have to have

24   like a sequence depth, you know, I think at least ten.

25   You have to sequence the same region at least ten, because

1    if you don't, you're not going to be able to tell whether

2    you've got errors.

3            So it's not -- the noise arises from the fact

4    that you've got a little bit of data and you can't

5    actually get enough sequencing depth to get it accurate.

6    That's where that comes from.  Does that make sense?

7            **THE COURT:**  Well, it makes sense in only this

8    way.  It makes sense to me that you may not -- if you had

9    the word "complete" in the claim, it would make sense.  In

10   other words, it's most likely the complete genetic data.

11   But it's saying the most likely genetic data for DNA from

12   the first individual.

13           **MR. WALTER:**  Right.

14           **THE COURT:**  So I think I could make sense of

15   what you're saying if it was talking about, do we have a

16   complete compilation or sequencing of the genetic data for

17   the individual.

18           But this claim language seems to be clearly

19   referring to whether or not it's going to the first -- to

20   the DNA of the first individual, relative to some other

21   DNA that's present in the sample.

22           **MR. WALTER:**  What it's referring to when it

23   says "determining the most likely genetic data" is the

24   most likely sequence based on the limited information

25   you've got from the sequencer.  Okay.

1          So you have information from the sequencer.

2     Because you have like a limited amount of genetic

3     material, there's certain regions of the genome where in

4     order to get it really accurately, you'd like to be able

5     to sequence it 50 times.

6          **THE COURT:**  Right.

7          **MR. WALTER:**  But you're only able to sequence

8     it two times or three times.  Okay.

9          **THE COURT:**  Right.

10         **MR. WALTER:**  And some of the measurements there

11    are going to disagree.  Okay.  Maybe you're able to

12    sequence it five times and you've got three measurements

13    that say one thing, and two measurements that say another

14    thing.

15         And so the question is:  What is the actual

16    most likely answer based on those measurements?

17         **THE COURT:**  The premise of the claim, if you

18    look at the introductory clause, it's trying to

19    distinguish the DNA from the first individual in the

20    sample from the second individual's DNA.

21         **MR. WALTER:**  It's not trying to distinguish.

22    It's trying to determine the genetic data --

23         **THE COURT:**  Right.

24         **MR. WALTER:**  -- for DNA from a first

25    individual.  So that's just saying where you got the DNA.

1    You're saying you got the DNA in the sample of a second

2    individual.  So the second individual in this case is the

3    mother, for instance.

4           And you get the DNA from the first individual

5    from the mother's sample.  And you've got a limited amount

6    of it.  You've got a limited amount of it, because when

7    you have a pregnant woman, the fraction of DNA in the

8    mother's bloodstream that's coming from the fetus is a

9    small fraction.

10          And so you can get a small fraction of DNA from

11   the mother's bloodstream and then you sequence it, and

12   it's going to be noisy.  It's going to be really noisy.

13          And so what you have to do is, you have to go

14   through the cleaning process and you can determine the

15   most likely genetic data based on that cleaning process;

16   even though, you have the noisy data.

17          Okay.  So the '544 claim language, it's

18   similar.  But there's, I think, something that's worth --

19   worth noting about this.  It talks about amplifying the

20   plurality of target loci on cell-free DNA.

21          The term "locus" is defined in the patent.

22   It's defined as particular region of interest on the DNA

23   of an individual.  Parties agree that loci are particular

24   regions of interest on the DNA of an individual.

25          So this amplification, this is talking about

1   amplifying loci from an individual.  Okay.  So we're

2   talking about DNA.  When we're talking about this

3   extracted DNA, it's from an individual.  It's from the

4   fetus in this patent.  So that's the claim language.

5          Let's start looking at the specification.  The

6   specification is the clearest evidence on this point.

7   This is the material opposing counsel skipped over

8   completely.  They didn't address any of this in the

9   specification.

10          If you look at the specification, it tells you

11   over and over and over that these patents are about a

12   process of getting data from one source, and then cleaning

13   it using data from another source.

14          The invention, which relates to a system

15   specifically in which imperfectly measured genetic data is

16   made more precise by using known genetic data of

17   genetically related individuals.

18          So what it's talking about is, you have a

19   pregnant woman, you isolate fetal DNA from the bloodstream

20   of the pregnant woman, you measure it, it's a noisy.  You

21   don't know if it's right.  So you go back to the mother,

22   you get pure DNA from the mother, which you have an

23   abundance of, you get that information, and then you use

24   the fact that the fetus is related to the mother to clean

25   the noisy data that you got from the fetus.

1           It says it over and over.  The "system
2      disclosed enables the cleaning of incomplete or noisy
3      genetic data using secondary genetic data."
4           "Disclosed system makes use of the similarities
5      between genetic data of related individuals, and the
6      information contained in that secondary genetic data, to
7      clean the noise in the target genome."
8           Disclosed method, namely combining the
9      measurement of the parents' DNA, the measurement of the
10     DNA of one or more embryos, and the knowledge of the
11     process of myosis in order to obtain a better estimate of
12     the embryonic SNPs.
13          It's very clear.  It's over and over.  So what
14     you're --
15          **THE COURT:**  I mean, you say it's very clear.
16     I've got togotta tell you, I mean, I think this is a slam
17     dunk.  I really do.
18          I mean, "isolated" and "extracted" are two
19     different things.  You've got very, very clean language.
20     I mean, you don't dispute anywhere in your briefing that
21     an artisan of ordinary skill would understand extracting
22     cell-free DNA from a sample to mean extracting the cfDNA
23     that's present in the sample.
24          **MR. WALTER:**  I think that's the whole point of
25     our brief.

1          The whole point of the brief is this person of

2     ordinary skill in the art reading these patents would

3     understand this patent claim and everything in this patent

4     to be referring to a process in which you measure DNA from

5     the one source separately from the DNA of another source.

6          Now --

7          **THE COURT:**  I mean, where -- and, actually, can

8     you show me anywhere where there's any indication that

9     "isolate" is synonymous with "extract"?

10         Because that's effectively what you want me to

11    do, which is why you really want me to redefine the claim.

12    You want me to take out "extract" and put "isolate."

13         **MR. WALTER:**  I don't think I -- well, I think

14    if you want to have cell-free DNA -- if you want to keep

15    it as "extract" -- the point we want to make is that the

16    fetal DNA is measured separately from the maternal DNA.

17    You do have separate fetal DNA and separate maternal DNA.

18         If you want to use "extract" or "isolate," I

19    don't care.  That's not the dispute.  The dispute is that

20    you do have the fetal DNA separate from the maternal DNA,

21    and you do measure those two sources of DNA separately.

22         You're not doing an experiment where you have

23    fetal and maternal DNA mixed together, and you measure the

24    DNA as a whole, and you don't know which genetic data

25    comes from which source.  The patent doesn't support that

1     at all.

2              So I don't care if it's "extract" or "isolate."

3     That's our point.  And that point is very clear.  And you

4     wouldn't be the -- you're not the first judge to consider

5     this.

6              Judge Illston in the Northern District of

7     California, she previously considered exactly this

8     specification in a related patent.  And her view on the

9     specification was pretty clear.  I mean, she looked at the

10    specification -- and you can look at her order.  She came

11    to the same conclusion in her slides.  You can -- she came

12    to the same conclusion in her opinion.

13             **THE COURT:**  Oh, so she construed "cell-free DNA

14    extracted from the biological sample."

15             **MR. WALTER:**  It was a different term.  The

16    claim language was different.

17             But here's her conclusion:  The specification

18    repeatedly states that for fetal genetic material, for

19    example, cell-free fetal DNA, is isolated from maternal

20    blood prior to analysis.

21             **THE COURT:**  Right.  From the blood.

22             **MR. WALTER:**  From the blood, yes.

23             **THE COURT:**  Right.

24             **MR. WALTER:**  Okay.  Yes.

25             The specification makes clear, the

1    specification makes clear that the target of analysis is

2    fetal DNA.  Accordingly, fetal and maternal DNA are

3    measured separately.

4           That's what we're asking for.  I don't care if

5    you used "extracted" or "isolated."  That's not the

6    dispute.

7           The point is, is you do get the fetal DNA

8    separate from the maternal DNA, so that you can measure

9    the fetal DNA, you can get the noisy data from the fetus,

10   and then you come back afterwards, get maternal DNA, which

11   you know is separate, which you know is clean, and then

12   you can use the latter -- the maternal -- the parental DNA

13   to clean the fetal DNA.  Okay.

14          And that conclusion was based -- you know, the

15   claim language is a little bit different.  I'm not going

16   to deny that they didn't come in after the fact and try to

17   broaden their claims to try to avoid the same kind of

18   thing that Judge Illston found.  I'm not going to deny it,

19   not trying to do that.  They are.  Okay.

20          But the specification is clear.  And you can

21   see this over and over and over in the specification where

22   it talks about using the maternal DNA to clean the fetal

23   DNA.  Over and over and over.

24          And the point is, is you can't do that unless

25   you know what genetic data comes from the fetus and what

```
 1        genetic data comes from the mother.  And you can't do that

 2        unless you've got the genetic data from the fetus --

 3        genetic material from the fetus separated from the genetic

 4        material from the mother.

 5                And I don't care if you use "isolated" or

 6        "exacted."  I don't care.  That's not the issue.

 7                THE COURT:  Do you agree that there are

 8        disclosed embodiments that involve determining genetic

 9        data from a mixed sample?

10                MR. WALTER:  So let's talk about the mixed

11        sample.

12                THE COURT:  Well, first of all, could you just

13        answer?

14                MR. WALTER:  It depends what you mean by "mixed

15        sample."  Okay.

16                What I don't believe is that there's anything

17        that's consistent with the claims when we're talking about

18        determining genetic data from a first individual and a

19        second individual.

20                There are, in the patent, disclosure of mixed

21        sample embodiments that they've pointed to.  And -- these

22        are the ones, I think.  Yes.  These mixed sample.  These

23        mixed female origin and mixed male origin.  Okay.

24                This has got nothing whatsoever to do with the

25        claims.  Okay.  This experiment in this patent, this mixed
```

 1   female --

 2           **THE COURT:**  Well, it's got enough that if I

 3   read the claim your way, it would read the embodiment --

 4           **MR. WALTER:**  No.  No.  That's absolutely wrong.

 5           **THE COURT:**  You know what?  Could you do me a

 6   favor?  Could you stop yelling?

 7           **MR. WALTER:**  Sorry.  I'm sorry.

 8           **THE COURT:**  Okay.  And just for the record, I

 9   mean, I -- you know, at the beginning of this argument I

10   had to point out --

11           **MR. WALTER:**  Okay.

12           **THE COURT:**  -- because it was probably not

13   clear what I was referring to very early on at the outset

14   about the demonstrative behavior that you are exhibiting,

15   shaking your head pretty vigorously, and now you're

16   yelling.  And I've asked you a question.  I don't know why

17   you're yelling at me.

18           **MR. WALTER:**  Okay.  I'm sorry.

19           **THE COURT:**  The court reporter is nodding her

20   head in acknowledgment.  Could you just calm down for some

21   reason.

22           **MR. WALTER:**  Okay.  Sorry.

23           So, no, this is not an embodiment of the claim.

24   This is not something that would be read out of the

25   claims.  Okay.

1              And what this was, was an experiment where

2      they're trying to assess whether some method in the patent

3      that's unrelated could find out if, when you have a sample

4      from a female, where you're going to have two X

5      chromosomes, as opposed to a sample from a male, where you

6      have one X chromosome, whether you can correctly determine

7      that there's two X chromosomes versus one X chromosome in

8      the sample.  Okay.

9              And what they did in this particular experiment

10     was, they mixed up DNA from multiple females, and then

11     they mixed up DNA from multiple males.  And they were

12     never trying to see if they could figure out the genetic

13     data of one male from another male.

14             What they were trying to do is, they were

15     trying to see if they could correctly call two chromosomes

16     versus one chromosome in a situation where there was going

17     to be a wide distribution of alleles because it was coming

18     from multiple samples.  They spiked up the number of

19     alleles.

20             But this is not an embodiment of the claim.

21     And, in fact, if you look at these embodiments in the

22     patent, these embodiments are based on approaches where

23     you don't make allele calls.

24             You can see that right here.  This is

25     techniques that do not make allele calls.  Techniques that

1   do not make allele calls.  And what is going on in these

2   patents -- these claims are based on allele frequencies.

3          So this mixed sample thing that they point to,

4   it's got nothing whatsoever to do with the claims.  It's

5   not an embodiment.  It's not something that would be read

6   out.  They're just pointing to language that they think

7   helps them.  But it's substantively completely inaccurate

8   and it's not just not appropriate to rely upon.

9          It looks good on its face because we're first a

10   mixed sample, but it's got nothing to do with what these

11   claims are talking about where you have a biologic sample.

12   Say, for instance, a mother and you extract the fetal DNA

13   from the cell-free fetal DNA sample, then you try to clean

14   that DNA using the material from the mother.  That's --

15          **THE COURT:**  How is it physically possible to

16   isolate one individual's DNA from the rest of the

17   free-flowing DNA in a mixed sample?

18          **MR. WALTER:**  Well, here you go.  You don't have

19   to take my word for it, you can look -- it's in the

20   patent.  It's right there.  "Fetal DNA isolation has been

21   demonstrated using PCR amplification using primers with

22   fetal-specific DNA sequences."

23          So what you do is, you get the blood sample,

24   okay, and you do PCR on the DNA that you get from that

25   blood sample -- and boom, there you go -- you have the

1    fetal DNA separate from the maternal DNA.  The patent

2    tells you can do it.

3            And, you know -- here it says, it says, CareDX

4    points to no protocol in the patents that would teach a

5    POSA how to isolate one person's cell-free DNA.

6            It's right there.  It does tell you to do it.

7    And the patent, over and over and over, every time, every

8    single time, it talks about these sources of DNA where

9    you've got DNA from multiple blood samples.

10           Every single time, every single time, it talks

11   about isolating the fetal DNA.  Every single time.

12   Fragments of fetal DNA have been isolated.  Fetal genetic

13   material is isolated.  Cell-free fetal DNA, isolated in

14   the mother's blood.

15           **THE COURT:**  And that's -- you're dealing here

16   with amplification as opposed to extraction, right?

17           **MR. WALTER:**  That's what they tried to do.

18   They've tried to say -- they're tried to use the word

19   "extraction."  And they're trying to --

20           **THE COURT:**  Well, when you say "they tried to

21   use the word," that's the word --

22           **MR. WALTER:**  That is the --

23           **THE COURT:**  That's what you're asking us to

24   construe, right?

25           **MR. WALTER:**  I am asking you to construe.

1          THE COURT:  Okay.  So when you say they're

2     trying to use it, the patent uses it.

3          MR. WALTER:  Yes.  And they're trying to come

4     in and say, hey, "extraction" is a different word.

5     They're trying to bypass this.  They're trying to bypass

6     this language in the specification that says over and over

7     and over that you get a separate -- you get the DNA from

8     the fetus separated from the mother.

9          THE COURT:  No.  Hold up.  I mean, look at the

10    claim.  You want to construe the "cell-free DNA extracted

11    from the biological sample," correct?

12          MR. WALTER:  Yes.

13          THE COURT:  Right.  Okay.  Now, that's --

14    you're trying to construe the phrase using the verb or the

15    past participle of "extracting."

16          "Amplifying" is discussed at least twice

17    separately in the claim, correct?

18          MR. WALTER:  Yes.

19          THE COURT:  Okay.

20          MR. WALTER:  Yes.  And so that -- I'm not

21    saying that there's not going to be another additional

22    amplification step.

23          But what we want to make clear here is that in

24    this patent, based on the specification, based on what's

25    disclosed, based on what this patent teaches the invention

1    is -- you've got to have the DNA from the fetus separated

2    from the DNA from the mother.

3              And the reason have to do that is because you

4    need to know which genetic data comes from which source.

5    You have the noisy source --

6         **THE COURT:**  And does the patent disclose how

7    the isolation is obtained, and specifically, does it

8    distinguish the isolation being achieved through

9    amplification versus extraction?

10        **MR. WALTER:**  The specification teaches that

11   the -- I believe the specification is teaching that the --

12   part of the extraction process is this amplification

13   process, using PCR primers.  I think that's what's

14   happening.

15             And I think standing up here and --

16        **THE COURT:**  So you think they're collapsing

17   "amplification" into "extraction"?

18        **MR. WALTER:**  I think they're trying to -- I

19   think they're trying to actually --

20        **THE COURT:**  "They," when we're referring to --

21   let's be clear.  The pronoun we were referring to is "the

22   written description."

23        **MR. WALTER:**  Yes.  That's right.  And I thought

24   you were referring to them, yes.

25             Yes.  Yeah, I think that extraction is part of

```
 1    the --

 2              THE COURT:  You're saying that their written

 3    description collapses "amplification" and "extraction,"

 4    effectively.

 5              MR. WALTER:  I don't think they distinguish the

 6    two.  I think that in this patent, that extraction -- that

 7    isolation process is something -- here's what I think:  I

 8    think someone --

 9              THE COURT:  Well, let me just step -- look, put

10    a finer point on it.  Okay.

11              In Column 2, Lines 25 through 30, there's

12    discussion in the written description of fetal isolation

13    being achieved through amplification.  The claims

14    distinguish "amplification" from "extraction."

15              I've asked you if you can point to me where

16    there's evidence of isolation being achieved through

17    extraction.

18              MR. WALTER:  First off, Your Honor, on your

19    first point, I'm not sure that the claims distinguish

20    "amplification" from "extraction."

21              I think amplification can be one part of

22    extraction.  Okay.  Amplification is just a general

23    process for increasing the amount of DNA you have relative

24    to another.  So I don't think that it distinguishes that

25    amplification can be part of extraction.
```

1            Now, does this passage refer to extraction?

2            **THE COURT:**  Well, just to be clear, the claim

3    reads, in part, the method comprising "amplifying a

4    plurality of target loci on cell-free DNA extracted."

5            So the amplification in that particular

6    subclause is done after there's been extraction.

7            **MR. WALTER:**  And that's right.  And there's

8    nothing about that that says that previous extraction step

9    could not have also included an amplification process.

10   That's my point.

11           That previous extraction step, that may well

12   have included an amplification.  And there's nothing in

13   this specification that says that the extraction step

14   can't use amplification.  Nothing whatsoever.

15           And, in fact, someone reading the

16   specification, based on every embodiment and every

17   example, would understand that you're likely going to do

18   that.  Because in this patent, what you do is, you get the

19   DNA from the fetus that's noisy, and you separate it.  You

20   separate it from the mother, and you do that so that you

21   can come in later, clean it using the data that you get

22   from the mother.

23           And the patent tells you that the way you can

24   get that DNA separate is to do PCR amplification.

25           So the notion that someone would not think that

1    that extraction step can use the amplification, it just

2    doesn't -- there's no reason to think that whatsoever when

3    the specification is overwhelmingly to the contrary.

4          **THE COURT:**  All right.  Bottom line here is,

5    you've got to prove that there's a clear and unmistakable

6    disclaimer, if you will, that this cell-free DNA, that's

7    referred to in the claim, is not the cell-free DNA of both

8    individuals.

9          **MR. WALTER:**  I don't think I need to

10   necessarily -- I mean, I think claims should be

11   interpreted in view of the specification.  And you don't

12   always need to have --

13         **THE COURT:**  Yeah.  But I mean, you read the

14   claim -- if you read the claim, there's no -- it's

15   referring to cell-free DNA.  It doesn't say cell-free DNA

16   of a particular individual, right, of the first or second

17   individual.  It just says the cell-free DNA.  And we know

18   for sure it's a mixed sample, correct?

19         **MR. WALTER:**  You start with the mixed sample.

20         **THE COURT:**  You start with the mixed sample.

21   Right.

22         Okay.  So then the burden is on you to show

23   that that cell-free DNA being discussed is of the first

24   individual.

25         **MR. WALTER:**  Yeah.  And --

1             **THE COURT:**  Right?  You agree with that?

2             **MR. WALTER:**  Clearly, yes.

3             **THE COURT:**  You've got to show that clearly and

4 unmistakably.

5             **MR. WALTER:**  I don't know that I need to show a

6 clear and unmistakable disavowal.  I don't think I need to

7 show that.  I think the law is clear, that I don't need to

8 show a clear and unmistakable disavowal.

9             **THE COURT:**  What do you have to show it

10 through, then?  You're just saying it's plain --

11             **MR. WALTER:**  No, I'm not saying it's plain and

12 ordinary meaning.  I'm saying that based on the

13 overwhelming disclosure in the specification, a person of

14 ordinary skill, read in light of the specification, may

15 not see a clear and unmistakable disavowal.  They would

16 understand this language, when it's talking about genetic

17 data from a first individual, the extraction process --

18             (Court reporter clarification.)

19             **MR. WALTER:**  Sorry.  Sorry.

20             That they would understand that to refer to a

21 situation that leads you to DNA from just the one

22 individual.  And that's based on the disclosure in the

23 specification.  I don't think you need clear and

24 unmistakable disavowal to show that in this case.

25             And it's true, the most important evidence here

1    is the specification and the overwhelming disclosure in

2    the specification that points only to one thing.  Okay.

3    Which is that you have separate genetic data, separate

4    data from the fetus and separate data from the mother, so

5    that you can use the latter to clean the former.

6          They didn't mention any of that in their

7    discussion.

8          **THE COURT:**  Do you think I need to resort to

9    extrinsic evidence to make the determination?

10          **MR. WALTER:**  No.  I don't think you need to

11    resort to intrinsic evidence.

12          I think if you sit down and you look at these

13    patents and what they teach, it's overwhelmingly clear

14    that you're going to get separate data from the fetus and

15    separate data from the mother, so that you can do the

16    latter to clean the former.

17          I don't think you need to do that in this case.

18          Jill Illston didn't need to do that in the

19    Northern District of California.

20          **THE COURT:**  Why didn't you argue, then, this

21    was plain and ordinary meaning?

22          **MR. WALTER:**  Look, I'm not going to deny that

23    there's -- there is a -- the claim language, on its face,

24    is susceptible in a vacuum to an interpretation.  That

25    they would like to ascribe to it in a vacuum.  But you

1    don't read claims in a vacuum.  You read claims in the

2    context of the specification.  And that context is what's

3    most critical here.  Okay.  That's why.

4              That happens all the time where claims are

5    interpreted in view of the specification, slightly

6    differently than what you might ascribe to the meaning of

7    the claims, based on just a reading of the claims in the

8    vacuum.

9              **THE COURT:**  Okay.  So you do agree, it's not

10   plain and ordinary meaning, it's interpreting slightly

11   differently?

12             **MR. WALTER:**  Our construction is not plain and

13   ordinary meaning.

14             **THE COURT:**  Right.

15             **MR. WALTER:**  Yes.

16             **THE COURT:**  That's what I'm saying.  Right.

17             **MR. WALTER:**  Yeah.  Yeah.  And I also agree,

18   that the most important evidence here is the

19   specification, and I think I've acknowledged candidly this

20   is definitely a situation --

21             **THE COURT:**  No, the most -- well, in the

22   specification, the most important thing is what the claims

23   say.  We start with the claims.

24             **MR. WALTER:**  I understand that the claims are

25   part of the specification, and I understand that's a

1    starting point.  But when I was referring to the

2    specification, I was referring about the disclosure that

3    precedes the specification.  That's not what I was trying

4    to say.  Okay.

5            So that is the most important evidence here.

6    And it's overwhelming and clear.  And there's a reason

7    Judge Illston said, in the Northern District of

8    California, that the specification makes clear that the

9    target analysis of fetal DNA, accordingly fetal and

10   maternal DNA are measured separately.

11           And I don't deny that after that case, they

12   tried to get claims that were broader.  They tried to

13   avoid it.

14           And I'm telling you now that they shouldn't be

15   allowed to do that based on the disclosure and the

16   specification.

17           Now, I do want to hit upon this provisional

18   application, this prosecution history that they rely upon.

19           They claim the benefit of their 2005

20   application.  They say that this is entitled to a priority

21   date of 2005, based on what they disclosed in 2005.  Okay.

22   Let's look at what they disclosed in 2005.

23           Genetic data, information derived from the

24   parents may be combined with noisy measurements of genetic

25   information derived from the embryo.

 1             So we're talking about an embryo here.  When

 2    you have an embryo, you're going to have fetal genetic

 3    material separate from the maternal genetic material.  You

 4    can't have any other thing than the fetal genetic material

 5    because you have an embryo.  Okay.

 6             So this thing that they're claiming the benefit

 7    of in 2005, the only thing it discloses is that situation.

 8    And I don't care if you use "isolation" or "extraction."

 9    the exact words don't matter.

10             But a person of skill in the art reading this

11    patent, reading what they say you can claim the benefit of

12    would understand that in these patents, you have separate

13    fetal material and separate genetic material.

14             **THE COURT:**  Okay.  Thank you.

15             Here's what I'm going to do.  I think the

16    plaintiffs have a much better reading of this.  But what

17    I'm going to do is -- because you guys are just constant

18    litigators here.  And I see you how many times a month, I

19    don't know.  It seems a lot.

20             So I'm not going to finally construe it right

21    now, and I'm going to let you, basically, pursue the case

22    in the alternative.  And you can have your experts opine.

23             I've got to tell you, at the end of the day, I

24    would be very, very surprised if I were ultimately to

25    adopt the defendant's position.

1        And, but I'm going to try this as an experiment

2   and see how it goes.  And so just have your experts posit

3   both sides, and as we approach a trial, we'll figure out

4   what to do.  Okay.

5        So I'm going to hold off construing the term.

6        **MS. HABERNY:**  Thank you, Your Honor.

7        **THE COURT:**  And part of it is because -- see,

8   my suspicions tell me that it could very well be that an

9   expert would say, for instance, no, it's physically

10  impossible to isolate.  I mean, we get into those things.

11  And if I had two experts, it would be very interesting to

12  see what they say.  Okay.

13       So next term.

14       **MS. CLARK:**  Good morning, Your Honor.  My

15  name's Abigail Clark, here for Natera.  And I will be

16  arguing the next term, "wherein the method is performed

17  without prior knowledge of genotypes of the genetically

18  distinct individual."

19       This terms appears in the '180 patent, which is

20  all about taking a blood sample from a person and

21  measuring the total amount of DNA present in that sample.

22  The sample contains DNA from at least two people.

23       For instance, in the transplant context, there

24  will be genetic material from two individuals.  The first,

25  the subject, is the person that received the organ; the

1    second, the genetically distinct individual, is the person

2    that donated the organ.

3          Your Honor, Natera's position is that the claim

4    language of this term is unambiguous and clear.  We have

5    the claim here for you.

6          The highlighted portion shows, Your Honor,

7    "wherein the method is performed without prior knowledge

8    of genotypes of the genetically distinct individual."

9          Prior knowledge is the crux of the dispute

10   between the parties as to this term.

11         Natera proposes plain and ordinary meaning.

12   CareDX's proposal is shown here on the right.  Their

13   construction requires completing the method without ever

14   requiring knowledge as to which genotype corresponds to

15   which individual's cfDNA present in the sample, either the

16   subject or the genetically distinct individual.

17         Here, we show CareDX's rewrite.  They add words

18   to create an impossible method.

19         Your Honor, CareDX proposes the entire method

20   must be, quote, "completed" without ever acquiring

21   knowledge.  And we'd like to show why that is nonsensical

22   in the context of the claims.

23         Here, we have prepared a timeline slide showing

24   the general flow of the claim method to illustrate the

25   impossibility of CareDX's proposal.

1          Now, we covered the first two substeps here:

2    Extracting cfDNA and performing targeted PCR at length

3    earlier in the presentation.

4          So I'd like to focus on step 1(c).  This is the

5    determining step where sequencing occurs.  At this point,

6    both genotypes must become known.

7          Now, step(d) is the measuring step.  And at

8    this step, you must know which genotype is associated with

9    which individual.  To measure DNA, you must know whose DNA

10   you are measuring.

11         Now, I know we've seen something similar

12   earlier in the presentation, but I wanted to hone in on

13   this example for clarification of how step(d) works.

14         As Your Honor can see, step(d) requires using

15   the amount of one or more alleles at the SNP loci to

16   measure the amount of DNA from the genetically distinct

17   individual.

18         This graphic is an extremely oversimplified

19   example of how this process works, how you conduct the

20   measurement process using the amount of one other more

21   alleles at the SNP loci.

22         The loci highlighted in yellow represents a SNP

23   loci of interest.  As we can see, the subject, the one

24   with the greater majority of cfDNA present, carries the G

25   allele at that loci.

1          On the other hand, the DNA in red at the top

2     right, from the genetically distinct individual, has a

3     different allele there, and therefore a different genotype

4     in A.  This represents a difference in the alleles between

5     the subject and the generally distinct individual that

6     differentiates the genetic material in the sample.

7          Only after assigning an identity to the DNA on

8     the left and the DNA on the right can you perform this

9     simple calculation -- again, simplified example -- that

10    allows to you calculate the amount from the genetically

11    distinct individual, and that's 10 percent.

12         Your Honor, under CareDX's proposed

13    construction, this simple calculation could not be

14    performed because you must complete the method without

15    knowledge of the genotypes of the genetically distinct

16    individual.

17         As shown here, it would be simply impossible to

18    calculate the amount from genetically distinct individual,

19    the exact language in the claims, without first assigning

20    identities.

21         Your Honor, finally --

22         **THE COURT:**  So can I ask like a -- I was just

23    thinking about this hypothetically last night.

24         **MS. CLARK:**  Yeah.

25         **THE COURT:**  So under their reading, let's say I

1    had a mother, right, had Baby Number 1, and I went through

2    and practiced the patent, and then five years later, she

3    had another baby.  I guess I couldn't practice the patent.

4         **MS. CLARK:**  Well, Your Honor, it's without

5    prior knowledge of the genetically distinct individual.

6    So it's a different individual in that sample, so you

7    don't have prior knowledge.

8         **THE COURT:**  Okay.

9         **MS. CLARK:**  Your Honor, I'd also to like to

10   point out that the written description does not provide

11   any support for CareDX's proposed construction.  There are

12   no embodiments that teach completing the method without

13   obtaining knowledge.

14        In fact, the written description acknowledges

15   the importance of this improvement over the prior art.

16        Old methods, which are present in the appendix

17   for our brief, required having knowledge before you start

18   it.  That's how you would compare the two.

19        The inventive concept in this patent is being

20   able to not know the genotypes of either individual and

21   then make a determination, measure it using the allele

22   frequencies to make a determination about the amount from

23   the genetically distinct individual.

24        So in short, Your Honor, CareDX's proposed

25   construction lacks foundation in the patent, common sense,

1    and the written description.

2          **THE COURT:**  All right.  Thank you.

3          **MR. WALTER:**  All right.  So here is the claim

4    term in the claim.  The term at the end is "wherein the

5    method is performed without prior knowledge of the

6    genotypes of the genetically distinct individual."

7          This is a method for measuring an amount of DNA

8    in a biological sample.  So, for instance, whether a fetus

9    has two or three copies of a chromosome.  Okay.

10         The dispute pertains, here, to when you can

11   have this knowledge of the genotypes of the genetically

12   distinct individual.  Okay.  So you have a step here that

13   talks about determining genotypes.

14         **MS. HABERNY:**  That's our clicker.

15         **MR. WALTER:**  That's why.  That's why.

16         All right.  And so the question here is --

17   there's this term here that refers to determining the

18   genotypes of the amplified SNP loci.  So this is clear.

19   This is different, notably, from the patent we just looked

20   at.  It talks about extracting cell-free DNA of mixed

21   origin.  Okay.

22         And so you are going to have DNA from both the

23   mother and the fetus in your DNA sample.  And at some

24   point, you determine the genotypes of the amplified SNP

25   loci, but you don't know which genotype, which DNA

1      sequence is corresponding to which individual, whether

2      it's the DNA or the fetus.

3              And the claim step refers to when the method is

4      performed without prior knowledge of the genotypes of the

5      genetically distinct individuals.

6              And the question is:  When can you have that

7      knowledge and still infringe the claim?

8              In our opinion -- in our view is that this

9      claim step here is making clear that you can complete the

10     method.  When you complete the method, you still don't

11     know which genotype corresponds to the fetus and which

12     genotype corresponds to the mother.

13             You've made a determination of, for instance,

14     the aneuploidy status of the fetus, that is, whether the

15     fetus has two copies of a chromosome or three copies of a

16     chromosome without actually knowing which SNP corresponds

17     to the fetus or which SNP corresponds to the mother.

18     Okay.

19             And we think that just follows primarily from

20     the plain language of the claim, where it says the method

21     is performed.  It's performed.  It's completed, past

22     tense.

23             Now, they don't give an answer as to when you

24     can have this knowledge.

25             **THE COURT:**  How did you get that "performed,

1    past tense," is the same thing as "completed"?

2           **MR. WALTER:**  Yeah.  Because it's performed.

3    The method is performed.  The method is done.  That's how

4    I interpret this -- "without prior knowledge of the

5    genotype of the genetically distinct individual."

6           **THE COURT:**  "Is performed."  And do you want to

7    cite something that tells me that "is performed" means

8    that whatever it is that is being performed is completed?

9           **MR. WALTER:**  I don't -- in view of the

10   specification, I don't know how else to interpret this.

11   Okay.  That some point in the process you do get the

12   information, because there's nothing -- in view of the

13   claim language and the specification, I don't know how

14   else to interpret this.  Okay.

15          With this past tense language here, I think

16   this is saying --

17          **THE COURT:**  Then why don't you say it's plain

18   and ordinary meaning?

19          **MR. WALTER:**  Well, because I think that we have

20   a dispute here.  I think they -- that they're saying

21   something different and that's -- we want to make clear --

22   and if they agree with us, then we can go ahead and go

23   forward, but I don't think they do.  I think we wanted to

24   bring the dispute to the Court's attention.  Okay.

25          So...

1          **THE COURT:**  Well, it has to be at some -- it

2     just seems to me very obvious, just plain old English,

3     that at some point, and when the claim is practiced,

4     during the performance.

5          **MR. WALTER:**  Okay.  The question is, is --

6          **THE COURT:**  And you want to -- but you want to

7     add to it after it's been performed.  That's what you want

8     is, it's when it's completed.  And the language doesn't

9     allow for that.  I mean, it doesn't require that.

10         **MR. WALTER:**  Okay.  Then I'd like to know when.

11    When is it okay to have the knowledge?

12         **THE COURT:**  Well, you know, now maybe you bring

13    in -- you know, you've got a different argument, but not a

14    claim construction argument.

15         **MR. WALTER:**  That's right.  And we might be

16    headed towards an indefiniteness issue.

17           **THE COURT:**  Yeah.  I can see that.

18         **MR. WALTER:**  Okay.

19         **THE COURT:**  I can totally see that, but I don't

20    understand in the terms of claim construction.  It says

21    "wherein the method is performed."  So at some point

22    during performance, it has to be performed without prior

23    knowledge.

24           **MR. WALTER:**  Okay.  So if that's where we're

25    at, if the Court's going to construe it --

1              **THE COURT:**  Well, that's what I'm inclined to

2    construe.  And that's why -- if you want to make a claim

3    construction argument, go ahead.  But, I mean, I think

4    what you're really marking is that it's inherently

5    ambiguous.

6              **MR. WALTER:**  I think that's where -- yeah.

7              **THE COURT:**  And I'm -- it could be.  When I

8    read it as a layman, not as an artisan of ordinary skill,

9    doesn't jump out at me when you have to have the -- when

10   you can't have prior knowledge.  But I don't believe "is

11   performed" -- unless you want to show me something -- is

12   synonymous with "is completed."

13             **MR. WALTER:**  Okay.  So two points on that.  I

14   think that that is -- I thought, coming in today, that

15   that might be where we end up, is that we might end up

16   here with an indefiniteness issue.

17             I mean, I thought the interpretation

18   question --

19             **THE COURT:**  I'm inclined to.  I mean, you're

20   not pointing to me anything that I -- the normal tools of

21   claim construction.  And I just don't see that.

22             **MR. WALTER:**  Okay.  Well, in that case, I would

23   ask that you let us preserve the ability to argue

24   indefiniteness --

25             **THE COURT:**  You definitely have.  You always

 1    preserve that.  That's fine.

 2            **MR. WALTER:**  All right.  And then the other

 3    thing I'd say along this is that, you know, some of the

 4    arguments we're getting from them that it's impossible to

 5    do this without knowing the -- you know, which genotype

 6    corresponds to the fetus or the mother, you can't

 7    determine the amount.

 8            It's a little surprising to me to hear those

 9    arguments, because the patent does teach that.  The patent

10    teaches that overwhelmingly.

11            But what the patent teaches are methods based

12    on measuring distributions of alleles.  And you don't ever

13    figure out whether a particular allele corresponds to the

14    fetus or the mother, but you get these distributions of

15    alleles.  And you look at these broad distributions and

16    you make conclusions based on the broad distributions.

17    And so I'm a little surprised to hear that.

18            But I think for today, if that's where we're

19    at, if the Court's going to adopt their construction,

20    allow us to preserve the ability to pursue indefiniteness

21    later on, then I think that that's where we'll end up

22    today.

23            **THE COURT:**  Okay.  Then let's do that.  I'm

24    going to -- for right now, I'm going to adopt the plain

25    and ordinary meaning.  And inherency -- or rather,

1  indefiniteness is something obviously the defense is free

2  to raise.  Okay?

3       Next term.

4       **MS. FOX:**  Good morning, Your Honor.  My name is

5  Bianca Fox.  I'm here on behalf of Natera, and I will be

6  arguing the next term, "targeted PCR."

7       Here are some examples of where target PCR

8  appears in the claim of the '544 patent.

9       Natera has proposed the plain and ordinary

10  meaning of the term "targeted PCR," and CareDX has

11  proposed its term -- or its construction for certain

12  claims of the '544 patent.

13       CareDX's proposed limitations are inconsistent

14  with a person of ordinary skill in the art's understanding

15  of what targeted PCR means.

16       Notably, Your Honor, CareDX did not assert an

17  issue with the term "targeted PCR" in the '724 patent.

18  Briefing was done on that patent over a year ago when it

19  was the only patent in the case, and they did not bring up

20  the term then, they did not have an issue with it.

21       Their issue seems to be new found and a

22  litigation tactic.  And while they're now construing the

23  term in the '544, but not the '724 patent, their

24  construction does not make this term any clearer.

25       The term "targeted PCR" is understood by a POSA

1    to have its plain and ordinary meaning.  It does not need

2    to be construed at all, and certainly not in the way that

3    CareDX proposes.

4         Particularly, CareDX's proposed construction is

5    inconsistent with the fact that "targeted PCR" can include

6    targeting either single or multiple loci.  And the

7    construction is also inconsistent with the well-understood

8    fact that targeted PCR can be used to target a single

9    locus; thus, these inconsistencies do not need to be read

10   into the claim term.

11        Lastly, a POSA would understand that "targeted

12   PCR" may include reagent, such as primers, enzymes, and

13   buffers, and other lab equipment that is used with PCR.

14   And the details of PCR do not need to be read into the

15   term because they are already understood by a POSA to be

16   included in the term "targeted PCR."

17        Natera respectfully asks that Your Honor adopt

18   the plain and ordinary meaning of the term "targeted PCR."

19        **THE COURT:**  All right.  Thank you.

20        **MR. WALTER:**  So "targeted PCR" -- here's their

21   brief.  They state the patent does not provide a special

22   definition for "targeted PCR" in the definition section or

23   elsewhere.  This is a technical term.  Okay.  "Targeted

24   PCR" is not something a lay jury is going to understand.

25        And I think the idea that the patent doesn't

1   provide a specific definition in the definition section or

2   elsewhere, that's not a reason not to construe it.  That

3   is a reason to provide some sort of definition for the

4   technical term.

5          Now, this is a claim instructed to amplifying a

6   plurality of target loci.

7          **THE COURT:**  I guess, I don't think that you're

8   really proffering a construction.  You're like...

9          **MR. WALTER:**  It's PCR using multiple primers

10  directed to a set of particular loci of interest.  We want

11  to make clear that in this claim, you are using a set of

12  primers directed to multiple loci.  That's the

13  construction.  Okay.

14         And I don't think they dispute that in PCR you

15  use primers.  And I don't think they dispute in this claim

16  they're amplifying a plurality of loci.  So I would like

17  to know how they think in this claim you can do the

18  targeted PCR unless you're doing multiple primers directed

19  to a set of particular loci of interest.

20         I don't see how our construction is wrong.

21  They have never explained how it's wrong in the context of

22  this claim where you have multiple loci.  If they think

23  you can amplify a plurality of loci in this claim without

24  using a particular set of primers to a loci of interest,

25  I'd like to know how.

1          **THE COURT:**  Can you have a single loci?  Can

2     you have a locus?

3          **MR. WALTER:**  In this claim, you have a

4     plurality of loci.

5          **THE COURT:**  Okay.  But I'm just asking, can

6     you -- in terms of what a "targeted PCR" is.

7          **MR. WALTER:**  I think if you were talking about

8     a single locus, you wouldn't call it "targeted PCR," you'd

9     just call it "PCR."

10          The reason it's "targeted PCR" is because

11     you're talking about a plurality of loci.  If you're only

12     talking about one thing, there's no reason to call it

13     "targeted."

14          The reason they're calling it "targeted" is

15     because they're distinguishing from the situation called

16     universal PCR where you tag all your DNA fragments with

17     the universal primers and then you do primer with a single

18     set of PCR, with a single set of primers.  This is not

19     what this is referring to.

20          Again, I'd like to know, if they think you can

21     do this claim without a plurality of primers, then I think

22     they should say so.  And then I think they're going to

23     have a big enablement problem, and we can move on.

24          But I've never heard them say that they think

25     you can perform this claim without multiple primers

 1    directed to a set of particular loci of interest.

 2              **THE COURT:**  Give me a second.

 3              Put back the claim up, please, for me.  Thank

 4    you.

 5              You all threw me for a loop when you switched

 6    the order.  I was on the "targeted PCR" and had the wrong

 7    patent and I got very, very confused.

 8              **MR. WALTER:**  Yeah.  One of us should have said

 9    something about that, probably.  Yeah.

10              **THE COURT:**  So you are on -- you're on your

11    last term.  Okay.  I was really focused on "targeted PCR,"

12    so give me a minute.  I've got to change my mindset.

13              **MS. HABERNY:**  Apologies, Your Honor.

14              **MR. WALTER:**  We should have said something,

15    because that is -- that is confusing.

16              **THE COURT:**  Okay.  Have a seat for a second.

17    Okay.  Can you come up, please?

18              **MS. HABERNY:**  Your Honor, may I respond?

19              **THE COURT:**  Well, no.  I thought somebody else

20    was arguing.

21              Just so the record -- that might look very

22    weird.  But the person who just stood, wasn't the person

23    who argued, so I've asked the attorney who's arguing.

24              So at trial, what are you going to do to

25    explain to the jury what "targeted PCR" is?

 1             **MS. FOX:**  Well, a person of ordinary skill in

 2    the art would understand what "targeted PCR" is.

 3             **THE COURT:**  Yeah, I gotcha.  But the jury is

 4    not person of ordinary skill.  I'm not.

 5             **MS. FOX:**  Yeah, absolutely.

 6             **THE COURT:**  So what are you going to do at

 7    trial to tell the jury, by the way, "targeted PCR," this

 8    is what this means.

 9             **MS. FOX:**  Yeah.  So we have actually proposed

10    to CareDX that the plain and ordinary meaning is, PCR

11    amplification targeting one or more parts of a nucleic

12    acid sequence.

13             **THE COURT:**  Okay.

14             **MS. FOX:**  This was a proposal done after the

15    meet and confer.

16             **THE COURT:**  So this is not in the briefing?

17    Because I didn't see it.  Was it in the briefing?

18             **MS. FOX:**  No.  It was after the meet and

19    confer.  We agreed --

20             **THE COURT:**  Okay.  So wait.  So what are you

21    proposing?  Give me your definition, then.

22             **MS. FOX:**  Yes.  PCR amplification targeting one

23    or more parts of a nucleic acid sequence.

24             **THE COURT:**  What's CareDX's response to that?

25             **MR. WALTER:**  The issue is, is it leaves out the

1    multiple primers.  If they think they can do targeted PCR

2    to a plurality of loci without doing multiple primers, I'd

3    like to know how they're doing it.

4         THE COURT:  Okay.  But let's at least start --

5    let's just ask their definition they've proposed.  PC

6    amplification of one or more parts of a nucleic acid

7    sequence.

8         What's your reaction to that?

9         MR. WALTER:  The reaction is that it omits the

10   reference to "multiple primers."  That's the issue.  Okay.

11        THE COURT:  But it doesn't preclude it, does

12   it?  What -- does their definition preclude that?

13        MR. WALTER:  It seems to suggest that you can

14   do that targeted PCR without the multiple primers.  And a

15   person of skill in the art would understand that targeted

16   PCR to a plurality of loci would necessarily involve

17   multiple primers.

18        So to the extent that their construction is

19   intended to suggest that it's not required, I'm a little

20   confused.

21        And if they're going to stand up here and tell

22   me that they're not arguing that, that would be different.

23   But I think they are going to try to make some sort of the

24   argument that you don't require the multiple primers.  And

25   if you don't require the multiple primers, I'd sure like

1    to know how you're going to do it.

2            We think our's is right.  You use multiple

3    primers.  And that's what a person of ordinary skill in

4    the art would understand.  I don't understand the

5    objection to it.

6            **MS. FOX:**  Your Honor --

7            **THE COURT:**  Do you object to it?

8            **MS. FOX:**  Well, PCR -- it's understood that PCR

9    includes primers.  So if you will need one or more primers

10   to complete the amplification, then that's understood by

11   the word "PCR" itself.

12           **THE COURT:**  Right.  Incidentally, you're using

13   "multiple" to mean "numerous"; is that right?  More than

14   one?

15           **MR. WALTER:**  Right.  Multiple -- the key thing

16   here is, multiple primers directed to a set of particular

17   loci of interest.

18           So the way this normally would be done is, you

19   have a pair of primers for loci one, a pair of primers for

20   loci two, and so.  That's the concept that that's trying

21   to convey.

22           **THE COURT:**  But "multiple" means more than one.

23           **MR. WALTER:**  Multiple primers, but we also

24   include --

25           **THE COURT:**  I've got -- I've just asked:  Does

1      "multiple" mean more than one?  I just want to understand

2      it.  Is that right?

3              **MR. WALTER:**  "Multiple" does mean more than

4      one, yes.

5              **THE COURT:**  Okay.

6              And then, what were you saying?

7              **MS. FOX:**  I was just explaining that PCR, it's

8      understood that it includes primers.  So whether you need

9      multiple primers for multiple loci is going to be

10     understood as read in connection with the claims.

11             There are instances, not in our claims, where

12     you could have -- you could use one primer in a targeted

13     PCR sequence.

14             **THE COURT:**  But you said not in your claims.

15             **MS. FOX:**  Not in the claims as -- Claim 5 is

16     read with Claim 1.

17             **THE COURT:**  Well, then why do you object to

18     CareDX's proposal?

19             **MS. FOX:**  We're objecting because they're

20     adding in unnecessary words to an already simple term.  I

21     mean, "PCR" includes different reagents, including

22     primers, buffers, thermocyclers.  It's the entire PCR

23     process that's already included in "PCR."

24             **THE COURT:**  Right.  But, look, here's the

25     bottom line, the jury's not going to know what "targeted

1    PCR" means.  And they've offered something that would help

2    explain it in the context of this case, presumably.

3              **MS. FOX:**  Yes.

4              **THE COURT:**  Right?  So if you don't dispute it,

5    I don't know why we're fighting about it.

6              **MS. FOX:**  We think that we could explain to the

7    jury that "PCR" is PCR amplification targeting one or more

8    parts of a nucleic acid sequence.  So it's explaining what

9    "targeted PCR" is.  That you're targeting one or more

10   parts of the sequence.

11             **THE COURT:**  I mean, this is very unsatisfying

12   to me.  It's that I don't hear you objecting to, I guess,

13   the scientific accuracy of their proffered construction.

14   Whether you've admitted or not, I think it's implied in

15   your comments.

16             And I think just, it's common sense, you can't

17   just tell a jury to do something -- or rather, you can't

18   just leave undefined to a jury targeted PCR.  We're going

19   to need some definition for it to make sense.

20             And presumably, both experts are going to

21   testify about what it means when they testify.

22             So it would just seem -- I mean, I don't know

23   if we're headed to a claim construction dispute or not.

24   But you're not really objecting -- I don't hear it -- to

25   the accuracy of what they've said "target PCR" includes.

1    You might think it includes some other things.

2              Am a wrong?

3         **MS. FOX:**  No, you're not wrong, Your Honor.

4    May I have a second to confer with counsel?

5              Your Honor, there are -- there could be future

6    claims down the line in other patents.  And construing

7    "targeted PCR" to this multiple primers when other patents

8    in the same family could use targeted PCR to one loci with

9    one primer, it's reading in unnecessary words into the

10   claim that are already in there.

11        **THE COURT:**  It's just for -- it is just for

12   this claim.  For the same reason that I didn't really

13   listen to them very carefully when they started talking

14   about some other judge interpreting similar language in

15   another claim.  I mean, I think any judge should do that.

16             So I'm just -- I mean, we're only talking about

17   this claim.  We're only going to be litigating this claim

18   with this language in front of the jury.  Look, I guess

19   there are some others ones.

20             But my point would be that, we just -- the

21   whole purpose of construction here is to explain to the

22   jury what the terms of the patent mean in the claims that

23   they've been asked to adjudicate.

24        **MS. FOX:**  And I think that an expert can do

25   that, Your Honor.  I think they can explain to the jury

```
1    what "targeted PCR" is.

2         THE COURT:  But then you're pointing out why

3    your expert could disagree with what's been offered.  In

4    fact, it doesn't even sound like you're challenging what's

5    been offered.  You might just want to add some more

6    information, it sounds like.

7         MS. FOX:  We don't actually want to add any

8    more information.  We just want "targeted PCR" to be the

9    two words as they are.

10        THE COURT:  I know, but I don't know what

11   "targeted PCR" is.  And you're admitting your expert's

12   going to have to explain it, so there must be a dispute

13   here, right?

14        This is like -- I mean, I have no idea where

15   this goes.  I don't know whether it -- well, I'm presuming

16   they think their proposed construction favors them.  And

17   you, for some reason, either don't think it does favor

18   you, or you're suspicious it might favor them, and you

19   can't figure out how.

20        But the bottom line is, I'm not making my

21   decision on that.  What I -- I am of the mind is that

22   "targeted PCR," since you appear to not agree on a

23   definition, needs to be construed.  And they've offered

24   something, and you haven't.

25        And you -- again, I don't hear you challenging
```

1   the accuracy of what they've offered, which would make me

2   inclined to just adopt their position.

3          Now, mind you, you know, this is not applying

4   kind of your regular rules of claim construction, you

5   know.  There's been lexicography or whether there's been

6   disclaim or disavowal.

7          It just seems that they've said the term needs

8   to be explained.  I think they're right.  You said you're

9   going to have your expert explain it.  You haven't said

10  how the expert is going to explain it.  And you don't seem

11  to dispute their definition.  So why don't we just adopt

12  their definition?

13         **MS. FOX:**  Well, we did offer a construction,

14  Your Honor.

15         **THE COURT:**  Well, you did -- not to me.  You

16  apparently did at a meet and confer, I don't know when.

17  And then you just offered it in court this morning, and

18  they've objected to that.

19         **MS. FOX:**  Yes.  We did -- there is one in our

20  brief --

21         **THE COURT:**  Where?

22         **MS. FOX:**  Well, it's one sentence about

23  amplifying particular loci of interest.

24         **THE COURT:**  Well, what page is it on?

25         **MS. FOX:**  Eighty-eight, I believe.

1              **THE COURT:**  I'm looking at it right now,

2      Page 88.  Where?

3              **MS. FOX:**  The last sentence.  Is to -- "the

4      purpose of 'standard targeted PCR' is 'to amplify a

5      particular loci of interest.'"

6              And then we proposed to them another

7      construction after the meet and confer to see if that

8      would resolve the issue.

9              **THE COURT:**  Yeah.  I mean, even that sentence

10     you just read, I mean, that certainly -- that does not

11     count as an offered term in a claim construction brief.

12             But what you said is, "The written description

13     discloses only that the purpose of the standard targeted

14     PCR."  It doesn't define what "targeted PCR" is.

15             All right.  I'm not hearing -- maybe you should

16     quickly confer because I'm not hearing any objections,

17     which make me inclined to just adopt the construction

18     proposed by defendant.

19             **MS. FOX:**  Okay.  One second, Your Honor.

20             Your Honor, may I turn this over to my

21     colleague to maybe give you a better explanation of the

22     construction that we are looking for?

23             **THE COURT:**  Okay.  Thank you.

24             **MS. HABERNY:**  Thank you, Your Honor.

25             So this term is used, for example, in dependent

 1   Claim 5.  And that depends from Claim 1.

 2              Can you pull up Claim 1, please, of the '724.

 3              It depends from a claim that recites simply

 4   amplifying plurality of target loci.  In the independent

 5   claim, it does not recite that you use targeted

 6   amplification or targeted PCR for that plurality of loci.

 7   You're just amplifying a plurality of target loci.

 8              Claim 5, the dependant claim, recites wherein

 9   that "amplifying" comprises "targeted PCR."  So that's an

10   open-ended comprising claim.

11              That means that if one of those loci are

12   amplified by targeted PCR, you are practicing the claim,

13   but that doesn't mean that all of the plurality of target

14   loci in Claim 1 must be amplified by targeted PCR.

15              So this would limit -- this would limit the

16   claims --

17              **THE COURT:**  What is the "this"?

18              **MS. HABERNY:**  The construction where "targeted

19   PCR" is construed to be amplifying a set of target loci.

20   That would exclude an embodiment of this claim where you

21   are amplifying a plurality of target loci, for example, by

22   universal PCR and then practicing independent Claim 5,

23   wherein that comprises targeted PCR of one.

24              **THE COURT:**  Could you please do me -- I can't

25   think as fast as you speak.

1           **MS. HABERNY:** Apologies.

2           **THE COURT:** And the court reporter is having a

3    hard time. So could you slow down, please? Thank you.

4           **MS. HABERNY:** Yes.

5           **THE COURT:** Go ahead.

6           **MS. HABERNY:** Okay. So you have could have a

7    situation --

8           Can we see Claim 1, please.

9           -- where you're amplifying a plurality of

10   target loci, and that's more than one locus. It doesn't

11   say that you must use "targeted PCR" for that

12   amplification. You could be amplifying using universal

13   PCR and targeted PCR, or just universal PCR. It does not

14   require -- Claim 1 does not require "targeted PCR."

15          **THE COURT:** Is this in your brief?

16          **MS. HABERNY:** I'm not sure.

17          **THE COURT:** I don't see it. I mean, this got

18   like scant attention in the brief.

19          **MS. HABERNY:** But it is the fact of how the

20   claims can be interpreted. So if Claim 1 can encompass

21   universal PCR -- it just says "amplifying" -- and then

22   Claim 5 is a dependent claim, which it -- wherein the

23   amplifying comprises targeted PCR, that can mean that one

24   locus of the plurality of loci is amplified by targeted

25   PCR, but it doesn't mean that all of them must be, because

1    it's a comprising claim.

2              So you can be performing universal PCR on, you

3    know, nine out of the ten target loci and targeted PCR on

4    one out of the ten loci, and you would be practicing

5    Claim 5, and that would not meet the construction that

6    CareDX is proposing, which would require a set, a multiple

7    set of target loci and multiple primers.

8              **THE COURT:**  I understand there "set" just means

9    there has to be at least two; is that right?

10              **MS. HABERNY:**  It...

11              **MR. WALTER:**  I'm sorry, Your Honor?

12              **THE COURT:**  You've got to have at least two

13    loci.

14              **MR. WALTER:**  Yes.

15              **THE COURT:**  But that -- all right.

16              **MS. HABERNY:**  But in this --

17              **THE COURT:**  Now, can you have less than one

18    loci?

19              **MS. HABERNY:**  You have to have at least one

20    locus, but this would not -- practicing Claim 5 would not

21    require amplifying more than one locus by targeted PCR.

22    You can amplify one out of the plurality using target PCR,

23    and the rest using universal PCR and still be practicing

24    Claim 5 because it's a comprising claim.

25              **THE COURT:**  So here's where I am on this.

1    There's no way we can just say "plain and ordinary

2    meaning" to this term to a jury.  And you didn't offer

3    anything in your brief.  You just said "plain and ordinary

4    meaning."

5            And I just quickly reread your brief, because

6    it's so short on this term, and it's basically saying, oh,

7    this is clearly plain and ordinary meaning.  And you

8    didn't say what it really is.

9            They've offered a definition.  I kind of think

10   you're saying it's not right, but I'm not really...

11           **MS. HABERNY:**  Your Honor --

12           **THE COURT:**  You're saying it's not right

13   because there can only be -- there can be one targeted

14   locus?

15           **MS. HABERNY:**  That's correct, Your Honor.  It

16   would exclude that embodiment.  And we would be willing to

17   compromise.

18           **THE COURT:**  And where in your brief did you say

19   what that embodiment was?

20           **MS. HABERNY:**  It's not -- I don't know if it's

21   in the brief off the top of my head.  But this is the

22   reading that I've just explained to Your Honor.

23           **THE COURT:**  Right.  See, Judge Norieka is

24   always talking about this.  Like, that's why she's moved

25   claim construction back, because y'all play games.  You

1    say plain and ordinary meaning, and then you put some kind

2    of definition down the road, and then I have to do claim

3    construction again.  I read the briefs and I came prepared

4    today to rule.

5              And now I'm going to -- it looks like what you

6    want is, I have to reengage in claim construction again.

7    Kind of -- you had your opportunity.

8              **MS. HABERNY:**  Your Honor, Natera would be --

9    would accept a construction that referred to one or more

10   loci of interest, just not a set that would preclude

11   targeting just one locus.

12             **THE COURT:**  So would you say "It's PCR using

13   one other more primers directed to one or more loci of

14   interest"?

15             **MS. HABERNY:**  Natera would agree to that.

16             **THE COURT:**  All right.

17             **MR. WALTER:**  No.  This claim talks about a

18   plurality of loci, not one.

19             **THE COURT:**  Well, but -- hold on.  The claim,

20   you're going to win that because that -- it does talk

21   about it.  You agree, Claim 1 talks about it.  So you're

22   going to get that.

23             I don't understand why the definition

24   contradicts that.

25             **MR. WALTER:**  Well, I think the other issue is,

1    there's this notion of just one primer.  Again, I don't

2    know how you can do "targeted PCR" on a plurality of

3    target loci using just one primer.

4         And I think they're going somewhere to try to

5    read this claim beyond what's supported in the

6    specification.  This new embodiment where you --

7         **THE COURT:**  But then they're going to have

8    validity issues.  The question is -- we're just trying,

9    right now, to define "targeted PCR."

10        And you are correct, I think it's -- it can't

11   be disputed that the second clause of Claim 1 reads,

12   quote, "A plurality of target loci," unquote.  So it

13   clearly is talking about more than one.

14        So why do you have to put it in the definition

15   of "targeted PCR," which is not in Claim 1?  That

16   terminology is not in Claim 1.  And yet, Claim 5, in which

17   the term "targeted PCR" is recited, is dependent from

18   Claim 1.

19        **MR. WALTER:**  I think we put it in there because

20   we wanted to avoid the kind of games that we're getting

21   today, where we're getting new examples of new embodiments

22   that aren't disclosed in the specification.  The claim

23   talks about a plurality of targeted loci.

24        The amplifying that's in Claim 5 --

25        **THE COURT:**  Yes.

1      **MR. WALTER:**  -- is this amplifying that's in

2  Claim 1, which is --

3      **THE COURT:**  Correct.  And it's going to

4  involve, by definition, a plurality of target loci.  It's

5  going to have to.

6      **MR. WALTER:**  So we should construe inconsistent

7  with our construction which refers to multiple.

8          The claim language calls for it, and that's

9  what a person of skill in the art would understand it.

10         Why did they lie and wait on this new

11  embodiment?  It doesn't make any sense.  They don't seem

12  to oppose our construction.  They seem to agree with it.

13  Then they come up with this new embodiment for the first

14  time that's not in their brief.

15     **THE COURT:**  Right.  Hold on.  Could be.  Right?

16  I'm not going to -- I don't want to figure out what their

17  motives are.

18         But all I'm trying to figure out is, I don't

19  see how you're harmed in any way if we just use their

20  now-definition.  It's a PCR using one or more primers

21  directed to one or more loci of interest.

22         You're covered in terms of their being a

23  plurality of target loci.  You're protected by the express

24  language of the claim.  It's in Claim 1.  I just -- I'm

25  trying to figure out why you couldn't just accept their

1      definition.

2              **MR. WALTER:**  Okay.  With that understanding, I

3      think we can.  I think I can -- I'll tell you why I can't

4      accept their definition.  Because when I get them on the

5      phone, I don't get an explanation.  When I come to the

6      *Markman*, you're going to get a new embodiment.

7              With the understanding that the plurality is

8      there, and that's going to be carried over to Claim 5,

9      then I think we're good.  Before today, I didn't get that

10     understanding.

11             **THE COURT:**  Hold on.

12             Don't you agree, Claim 1 requires amplifying a

13     plurality of target loci, correct?

14             **MS. HABERNY:**  It does, but not by targeted PCR.

15     That can be by using universal PCR, which is a different

16     kind of PCR.  So there's more than one type of PCR.

17             **THE COURT:**  And "targeted PCR" is something

18     different form universal PCR?

19             **MS. HABERNY:**  Correct, Your Honor.

20             **THE COURT:**  Okay.  Then we need to construe it.

21             **MS. HABERNY:**  We do.

22             **THE COURT:**  Right.  Okay.  How do you construe

23     it?

24             **MS. HABERNY:**  In the way that Your Honor read

25     to --

1              **THE COURT:**  No, no, no.  You're going to have

2      to read it into record.  How -- what's your proffered

3      construction?

4              **MS. HABERNY:**  Okay.

5              **THE COURT:**  And here's what we're going to do.

6      We're going to have another claim construction hearing,

7      and you're going to pay for their attorney fees to prepare

8      for the claim construction hearing on this term, because

9      you cannot lie in wait and offer at this late stage a

10     claim construction when you should have done it in your

11     briefs coming into this.

12             So what is it you want to propose?  And then

13     we'll set up and have a mechanism, and we'll do that.

14             **MS. HABERNY:**  Your Honor --

15             **THE COURT:**  This must be very important for

16     you, that you can't go with their terms.

17             **MS. HABERNY:**  Your Honor, we did propose this

18     term to them.

19             **THE COURT:**  You did not do it in your briefs.

20     And I came into this hearing without this proposal in

21     front of me.

22             **MS. HABERNY:**  We had --

23             **THE COURT:**  We can't engage in multiple claim

24     constructions.  And your parties are engaged in constant

25     litigation.  Our court -- you view it as cost of doing

1    business, and this is what the cost of doing business is.

2    You should tee up and prepare adequately for claim

3    construction.

4            So put on the record what your proposed

5    definition is, and then we'll set a briefing schedule and

6    we'll work it out.  And it's going to come down the road,

7    because I don't have the time to just put another briefing

8    *Markman*.  But that's what we are going to do.

9            So go ahead.

10           **MS. HABERNY:**  Our proposed construction would

11   be "PCR amplification using one or more primers targeting

12   one or more parts of a nucleic acid sequence."

13           And, Your Honor --

14           **THE COURT:**  Is that the end of your

15   construction?

16           **MS. HABERNY:**  Yes, Your Honor.

17           **THE COURT:**  Okay.  Thank you.  Now, go ahead.

18           **MS. HABERNY:**  As far as proposing this

19   construction, as part -- that's what we understood the

20   meet and confer process to be for, trying to narrow down

21   and trying to come to agreement.  And we weren't -- we

22   didn't understand their motivation for proposing this

23   until they told us on the meet and confer that they wanted

24   to use this for their invalidity arguments so that they

25   could get an instruction to the jury that supports that.

1          **THE COURT:**  Hold up.  See, I don't engage in

2     that.  And I think it's -- I think there's case law that

3     says I can't engage in that.

4          I'm not supposed to look at claim construction

5     with an eye to infringement or an eye to invalidity.  I'm

6     supposed to look at the claim construction principles, all

7     right, which is what I did.

8          **MS. HABERNY:**  We agree, Your Honor.

9          **THE COURT:**  You served up, in briefing, a plain

10     and ordinary meaning, and you did not offer any

11     alternative construction.  And, certainly, there's cursory

12     briefing to dispute their proffered construction.  You had

13     another lawyer argue it.  Then you had to come up with

14     different arguments after consultation with the client,

15     which I witnessed, and we can't do that.  All right.

16     You've got to have more effective meet and confers, I

17     guess, then.

18          But the bottom line is, I think it's fair to,

19     now we have to reengage in claim construction briefing.

20     And only on that limited term, I think it's fair for you

21     to pay for their attorney fees to come back here in front

22     of me and argue over this meaning.

23          Now, maybe you can leave here, and you guys can

24     work out some agreement on a stipulated construction, but

25     you haven't been able to do that here.  So that's what

```
1    we're going to do.  End of topic.

2              MS. HABERNY:  Thank you, Your Honor.

3              THE COURT:  Next term.

4         So I'm withholding claim construction of that

5    "targeted PCR" term.  You will leave here -- you'll have

6    to set up a briefing schedule on that term.  And the

7    attorney fees imposed -- or that CareDX has to incur to

8    litigate, solely that one term, will be assessed against

9    Natera.  Okay.

10             MS. HABERNY:  So the next term, as Your Honor

11   may recall, we discussed, early in the proceeding,

12   switching the order of terms.  So the next term we have is

13   "targeted PCR amplification of the cell-free DNA at more

14   than 100 SNP loci in a single reaction volume using more

15   than 100 PCR primer pairs, wherein the amplified SNP loci

16   comprise SNP loci on at least chromosome 1, 2 or 3."

17             THE COURT:  Okay.

18             MS. HABERNY:  So Natera proposes the plain and

19   ordinary meaning.  And CareDX seems to agree, that the

20   plain and ordinary meaning applies.  However, CareDX wants

21   to introduce an embodiment, one of the many embodiments

22   this could cover, and read that into the claim so that it

23   recites "primer pairs need not be selected to avoid primer

24   side products."

25        The ordinary meaning already covers that, but
```

1    it covers other things as well.  And it appears that

2    CareDX is improperly seeking to highlight particular

3    embodiments for its litigation goals, while excluding

4    others.

5           THE COURT:  All right.  Now, before you go on,

6    CareDX, I think -- I read this as, this is another really

7    -- you're saying there's inherent ambiguities here, and is

8    this better addressed at a different stage than claim

9    construction?

10          MR. WALTER:  I'm not so sure about that.  For

11   me, the question is simple.

12          THE COURT:  Well, then you -- fine.  We'll

13   just -- let's have argument then.

14          MR. WALTER:  Sure.  Thank you.

15          THE COURT:  But that's what it struck me as.

16          Go ahead.

17          MS. HABERNY:  Your Honor, it would not be

18   confusing -- it would not be clarifying to a jury.  It

19   would be confusing to a jury to instruct them that this

20   means -- you know, it covers one embodiment, but not

21   others.

22          So we don't think that that clarifies anything,

23   rather, it just confuses the jury.  It improperly

24   highlights certain embodiments so that, you know, they can

25   create a roadmap for the jury to adopt their invalidity

 1     arguments, or whatever arguments they want to make.  But

 2     it's not clarifying, and it doesn't serve the purpose to

 3     introduce terminology that's more confusing than helpful.

 4             THE COURT:  Okay.

 5             MR. WALTER:  The issue here is actually not

 6     that complicated.  We have this "targeted PCR" term, and

 7     we said loci should be construed as we agreed.  And then

 8     there should be --

 9             THE COURT:  So I -- that line threw me for a

10     loop.  Since it's already construed, why do we have to say

11     that?

12             MR. WALTER:  Well, loci is already construed --

13             THE COURT:  Right.

14             MR. WALTER:  -- because that's agreed upon.  We

15     want to be clear, you know, what aspects of this we are

16     construing.  And other than the plain and ordinary --

17     other than loci --

18             THE COURT:  But, I mean, I'm just confused

19     about -- keep in mind, right, the jury is supposed to be

20     given this, right.  And so it says "targeted PCR

21     amplification," blah, blah, blah, et cetera, et cetera

22     right.

23             And then you want to say, "First of all, loci

24     construed as agreed."  Well, they're already going to have

25     a table which says what "loci" means, right?

```
 1                    Correct?

 2              MR. WALTER:  Yes.

 3              THE COURT:  So why are we doing that?  Why are

 4   we doing "loci construed as agreed"?

 5              MR. WALTER:  Just for clarity for the purposes

 6   of these proceedings.  That's all.

 7              THE COURT:  Oh, it's just for the purposes of

 8   these proceedings?

 9              MR. WALTER:  Right.

10              THE COURT:  So it's really not part of the

11   claim construction?

12              MR. WALTER:  Yeah.  It's just -- that's not

13   really the disputed part.  It's just to have clarity that

14   we've already agreed upon loci, and that's how that's

15   going to be understood --

16              THE COURT:  All right.

17              MR. WALTER:  -- so there's no confusion.

18              THE COURT:  Okay.  All right.  So that's not

19   part of the proposal.

20              All right.  So then, you say "otherwise, plain

21   and ordinary meaning, primer pairs need not be selected to

22   avoid primer side products."

23              MR. WALTER:  Yes.

24              THE COURT:  I don't understand how that's a

25   construction of "targeted PCR amplification," et cetera,
```

1    et cetera.

2             **MR. WALTER:**  Yes.  And that's -- that is the

3    dispute.  Let me try to clarify that.  This claim term

4    refers to "100 PCR primer pairs."  All right.  If you look

5    at this patent --

6             **THE COURT:**  Wait, wait.  Back up.

7             So where -- okay.  So you want to insert -- how

8    do you want me to put in place, in front of the jury, of

9    the quoted claim term, a definition, a construction?

10            **MR. WALTER:**  I think this is what we might need

11   if they're going to make a certain argument.  And, you

12   know, I hope we don't need to do anything, other than just

13   plain and ordinary meaning.

14            But here's how this is played out.  There is

15   this reference to primer pairs, to pairs of primers for

16   the loci.  If you look at this specification, this

17   specification in these patents is all about selecting the

18   primers --

19            **THE COURT:**  Right.

20            **MR. WALTER:**  -- with characteristics so you can

21   avoid these harmful and unhelpful side products that can

22   destroy the effectiveness of the target PCR.  That's what

23   the patent is all about.

24            **THE COURT:**  Right.

25            **MR. WALTER:**  It's about selecting these primer

 1    pairs.  And so, given all this disclosure in the

 2    specification, we want to be clear that in these claims,

 3    you're not requiring primer pairs.  And the reason that

 4    matters is because there's an enablement problem unless

 5    you --

 6              THE COURT:  Right.  And that's what I'm getting

 7    at.  That's why I think this is -- I still don't see this

 8    as a claim construction issue.

 9              MR. WALTER:  Okay.

10              THE COURT:  I mean, this seems to me stuff that

11    the experts are going to have to explain in front of the

12    jury.

13              MR. WALTER:  Okay.  But if I can continue.  You

14    know, the reason this has popped up is because these

15    patents in related families, they've been construed

16    before before Judge Stark.

17              And Natera's steadfastly resisted that these

18    constructions -- that these patents be construed to

19    require that you select the primers to avoid these primer

20    side products.  And Judge Stark agreed with them.  They

21    oppose that.

22              And so here we are in this case.  And the

23    question is:  Are you going to back away from that?  Are

24    you going to now stand up and say that your patent claims

25    require that you select the primers?  Are you going to try

1      to make that argument to try to save your patents when it

2      comes to enablement and written description?

3            And they seem to be saying in their brief,

4      they're not going to make that argument.  They say it

5      already encompasses both selecting and not selecting.  So

6      we say, okay, good, you're not going to make the

7      arguments.

8            And so in meet and confer, we asked them, we

9      stipulate to that?  We stipulate that you're not going to

10     argue that the patents require that you select the primers

11     to avoid primer side products?  And they refused.  Okay.

12           And so if they're going to argue -- they're

13     going to come in after the fact and say, no, no, no.

14     Look, we have this specification that talks about how you

15     select the primers to avoid primers, and a person of

16     ordinary skill in the art would know that you perform this

17     invention by selecting your primers.

18           If they're going to make that argument, we need

19     to know because you've previously convinced Judge Stark

20     that the patents in this family are not limited to that.

21           And I just need to know, are they going to make

22     that argument?  If they're not going to make that

23     argument, then fine, we just go with plain and ordinary

24     meaning, and we have it on the record, they're not going

25     to make the argument.  Okay.

1              If they are going to make the arguments, then

2     we might have to do another round of briefing that they

3     need to pay for, because they've been refusing to tell us

4     whether they're going to make the argument.  They say it

5     in their brief, but when we ask them to stipulate, they

6     refuse and we're here fighting about it.

7              I just need to know, are they going to make

8     that argument that these claims are limited to techniques

9     where you select the primers.  If the answer is no and we

10    have it on the record, good, we're done.  If the answer is

11    something else, then we have a problem.

12             That's why we teed it up this way, because we

13    wanted to know if they were going to --

14             **THE COURT:**  I'm going to try again.

15             So can you put up the claim construction,

16    please, the claim term.

17             All right.  Is the claim proposal that you're

18    really asking for the following, quote:  "Targeted PCR

19    amplification of the cell-free DNA at more than 100 PCR

20    loci in a single reaction volume using more than 100

21    primer pairs that need not be selected to avoid primer

22    side effects" --

23             **MR. WALTER:**  Exactly.

24             **THE COURT:**  -- "wherein the amplified SNP loci

25    comprise SNP loci on at least chromosome 1, 2 or 3," end

1    quote.

2                **MR. WALTER:**  That's perfect.  That's what we

3    would need.  If they're going to make the argument, that's

4    what we need.  That's perfect.

5                **THE COURT:**  So going forward, if that's what

6    you want as a construction, you need to do it that way.

7                **MR. WALTER:**  Okay.

8                **THE COURT:**  So now, having said that, do you

9    agree to that construction?

10               **MS. HABERNY:**  No, Your Honor.

11               **THE COURT:**  Okay.  Do you believe the

12   construction should require that the primer pairs be

13   selected to avoid primer side products?

14               **MS. HABERNY:**  We don't believe the construction

15   should to be limited in that way.

16               **THE COURT:**  Okay.  So you believe that the

17   primer pairs need not be selected to avoid, or can be

18   selected to avoid primer side products.  It can be both,

19   correct?

20               **MS. HABERNY:**  And can be selected --

21               **THE COURT:**  Actually, can I just get a -- is

22   that right?

23               **MS. HABERNY:**  No, Your Honor.

24               **THE COURT:**  So if you can't agree that the

25   primer pairs need not be selected to avoid primer side

1    products -- too many double negatives -- there's too

2    many -- let me start again.

3              Do the primer pairs need to be selected to

4    avoid primer side products?

5              **MS. HABERNY:**  They should not be limited to

6    that.

7              **THE COURT:**  So the answer is no, they don't

8    have to be.

9              The primer pairs do not have to be selected to

10   avoid primer side products; is that correct?

11             **MS. HABERNY:**  That's one embodiment, but there

12   are others that the claim covers.

13             **THE COURT:**  We can go through all of these

14   things, but I'm just -- I'm going to try it one more time.

15             Do the primer pairs have to be selected to

16   avoid primer side products?

17             **MS. HABERNY:**  They do not.

18             **THE COURT:**  Can the primer pairs be selected to

19   avoid primer side products?

20             **MS. HABERNY:**  Yes, Your Honor.

21             **THE COURT:**  Okay.  All right.  I think you have

22   your answer.

23             **MR. WALTER:**  Yeah, I think we do.

24             **THE COURT:**  And I think we can go with plain

25   and ordinary meaning.

1          **MR. WALTER:**  I think we do, yes.  Thank you.

2          **THE COURT:**  Okay.  So that's what I'm going to

3     do.  I'm going to go with plain and ordinary meaning.

4          **MS. HABERNY:**  Thank you.

5          **THE COURT:**  And that's by stipulation.  All

6     right.

7          Anything else?  Well, we have one more term,

8     right?

9          **MS. HABERNY:**  Yes, Your Honor.

10         The final term, actually, we've combined two

11    terms and addressed them together.  So these terms appear

12    in the '544 patent.  They are "amplifying of plurality of

13    target loci" and "amplifying a plurality of SNP loci."

14    And it's a similar situation with this term, as the term

15    we just discussed.

16         Natera proposes the plain and ordinary meaning.

17    And CareDX proposes a plain and ordinary meaning, but

18    again, wants to highlight a particular embodiment to

19    further its invalidity theories that says encompasses

20    targeted PCR amplification in a single reaction volume.

21    And --

22         **THE COURT:**  And what they basically want to

23    know is, does or does not, the amplification encompass

24    targeted PCR amplification, right?  That's what they want

25    to know.

1          **MS. HABERNY:**  I believe so, but I think it goes

2    one step further than that.  They want to instruct the

3    jury in that way to highlight their invalidity theory.

4          **THE COURT:**  Well, see, here's the thing.  Where

5    I'm sympathetic to them -- and it goes back to what we

6    just did -- it's, they don't necessarily want it.  I think

7    they're good with -- you're good with plain and ordinary

8    meaning if you get clarification.

9          **MR. WALTER:**  Yeah.

10         **THE COURT:**  Right?  So why don't you just give

11   them clarification?

12         **MS. HABERNY:**  Well, Your Honor, part of this is

13   as follows:  They -- on the meet and confer -- and, again,

14   here today, they say that, we won't agree that we won't

15   make an argument.

16         The problem is that, it's their burden to prove

17   invalidity.  They have to make the argument before we can

18   respond to it.  We don't know what their argument is.

19         They served invalidity contentions that were

20   literally blank charts.  They had nothing.  We don't know

21   what their argument is.

22         **THE COURT:**  Okay.  Well, I can't speak to that.

23   I don't know that I want to get into it.

24         But, you know, if -- to put things in like

25   simple terms, is the way I think, is if you say

1    something's got plain and ordinary meaning, and the other

2    side says, well -- and let's assume it's just an object --

3    don't know if we can agree with you because we're not sure

4    if you're saying that the plain and ordinary meaning

5    encompasses blue objects and red objects.

6         And maybe they think -- and they think that

7    plain and ordinary meaning definitely can include either

8    blue or red objects.  And they want to know from you, can

9    you clarify?  Do you agree the plain and ordinary meaning

10   can include blue or red objects?  And you won't tell them.

11        It seems to me, you know, it is a fair game to

12   ask you to just clarify, you know.  Can it include blue

13   and red objects, or is it one or the other?  And only one

14   or the other.

15        And I kind of think that's what we have here.

16   They just want clarification.  And I don't understand why

17   you can't give it to them.  And it bothers me, frankly.

18        **MS. HABERNY:**  Well, we can give it to them.  We

19   just don't think it's appropriate to do it in claim

20   construction in an instruction that goes to the jury that

21   highlights that --

22        **THE COURT:**  But they're not asking.  The thing

23   is, if you clarify for it, then they're just going to go

24   with plain and ordinary meaning.

25        **MS. HABERNY:**  Well, when they asked us to

1    clarify, they didn't just ask us to clarify.  They asked

2    us to agree we would not make arguments in response to

3    their argument.  And we haven't seen it.

4              THE COURT:  Well, I'm not going to get into it.

5    See, I 'm not going to --

6              MS. HABERNY:  So that's what we didn't agree

7    to.

8              THE COURT:  I'm not going to ask for a full --

9    let's just see if we can't resolve this now.

10             So do you think the amplification requires

11   targeted PCR amplification in a single reaction volume?

12             MS. HABERNY:  It doesn't, on its face, require

13   that.

14             THE COURT:  It doesn't.  Okay.

15             Can it include targeting PCR amplification --

16   targeted PCR amplification in a single reaction volume?

17             MS. HABERNY:  It can include that.

18             THE COURT:  Okay.  Do you have everything you

19   need?

20             MR. WALTER:  I have what we need.  Thank you.

21             THE COURT:  All right.  Then there's a

22   stipulation tp plain and ordinary meaning.

23             MS. HABERNY:  Thank you, Your Honor.

24             THE COURT:  Okay.  Anything else?

25             MR. WALTER:  No, Your Honor.  Thank you.

 1                MR. REINES:  Thank you.

 2                MS. HABERNY:  No, Your Honor.  Thank you.

 3                THE COURT:  Okay.  So you should meet and

 4      confer about the remaining term.  Maybe you can reach some

 5      stipulation, that would certainly be welcomed from my

 6      vantage.

 7                If you can't, then you need to work out a

 8      briefing schedule, submit it, I'll presumably just sign

 9      off on that stipulation, and then you can engage in the

10      briefing on that limited term.

11                And I don't know when we'll get to a

12      construction -- or a claim construction hearing on it.

13      The case should just proceed.

14                And if we don't get to a plain construction, I

15      guess you have to brief it in the alternative, which can

16      raise issues for the plaintiff.  Because if we get to that

17      stage where they have to have experts address in the

18      alternative, and I ultimately ruled in their favor, that

19      would really be a problem for the plaintiff.

20                So I really suggest you work it out quickly.

21      Okay.

22                MS. HABERNY:  Yes, Your Honor.

23                THE COURT:  Makes sense?

24                MR. REINES:  Yes, Your Honor.

25                THE COURT:  Okay.  Thanks all.

1          Have a good day.

2               (The proceedings concluded at 11:40 a.m.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                    CERTIFICATE OF COURT REPORTER

3

4        I hereby certify that the foregoing is a true and

5   accurate transcript from my stenographic notes in the

6   proceeding.

7
                                /s/ Bonnie R. Archer
8                               Bonnie R. Archer
                                Official Court Reporter
9                                U.S. District Court

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

MR. FAHNESTOCK: [2]  3/9
3/11
MR. FARNAN: [1]  3/23
MR. REINES: [19]  14/9
14/11 15/19 15/21 15/24 16/4
16/8 16/18 16/20 17/18 17/23
18/10 18/13 18/15 19/16
19/18 22/22 117/1 117/24
MR. WALTER: [109]  35/17
35/19 42/10 42/20 43/5 44/13
44/22 45/7 45/10 45/21 45/24
48/24 49/13 50/15 50/22
50/24 52/10 52/14 53/4 53/7
53/11 53/18 53/22 55/18
56/17 56/22 56/25 57/3 57/12
57/18 57/20 58/10 58/18
58/23 59/5 59/18 60/7 61/9
61/19 61/25 62/2 62/5 62/11
62/19 63/10 63/22 64/12
64/15 64/17 64/24 72/3 72/15
74/2 74/9 74/19 75/5 75/10
75/15 75/18 75/24 76/6 76/13
76/22 77/2 79/20 80/9 81/3
81/7 82/8 82/14 83/25 84/9
84/13 85/15 85/23 86/3 94/11
94/14 96/17 96/25 97/19 98/1
98/6 99/2 104/10 104/14
105/5 105/12 105/14 106/2
106/5 106/9 106/12 106/17
106/23 107/2 107/10 107/20
107/25 108/9 108/13 110/23
111/2 111/7 112/23 113/1
114/9 116/20 116/25
MS. CLARK: [4]  67/14 70/24
71/4 71/9
MS. FOX: [23]  78/4 83/1 83/5
83/9 83/14 83/18 83/22 85/6
85/8 86/7 86/15 86/19 87/3
87/6 88/3 88/24 89/7 90/13
90/19 90/22 90/25 91/3 91/19
MS. HABERNY: [65]  4/3 4/8
4/10 11/5 11/12 12/6 12/11
14/7 27/7 35/16 67/6 72/14
82/13 82/18 91/24 92/18 93/1
93/4 93/6 93/16 93/19 94/10
94/16 94/19 95/11 95/15
95/20 96/8 96/15 99/14 99/19
99/21 99/24 100/4 100/14
100/17 100/22 101/10 101/16
101/18 102/8 103/2 103/10
103/18 104/17 111/10 111/14
111/20 111/23 112/5 112/11
112/17 112/20 113/4 113/9
114/1 114/12 115/18 115/25
116/6 116/12 116/17 116/23
117/2 117/22
THE COURT: [215]

'

'180 [2]  10/14 67/19
'454 [1]  20/8
'544 [14]  9/12 9/14 9/15 9/17
9/20 10/14 12/14 12/16 27/10
46/17 78/8 78/12 78/23
113/12
'724 [11]  9/13 9/17 9/19 9/20
10/15 12/14 27/9 27/11 78/17
78/23 92/2

'm [1]  116/5
standard [1]  3/25
'to [1]  91/4

-

-and [2]  1/21 2/5

/

/s [1]  119/7

1

10 percent [2]  9/4 70/11
100 [9]  7/11 7/12 11/24 34/25
103/14 103/15 107/4 110/19
110/20
100 percent [1]  31/17
11:40 [1]  118/2
13 [1]  16/10
1359 [1]  24/23
1365 [1]  24/24
18 [1]  16/10
1990 [1]  39/8
1990s [1]  39/8

2

2 percent [1]  8/25
20-cv-38-CFC [1]  1/4
2005 [9]  12/25 13/18 19/21
20/25 65/19 65/21 65/21
65/22 66/7
2006 [1]  20/24
2022 [1]  1/10
21 [5]  15/15 15/15 15/22
16/13 16/15
25 [1]  59/11

3

30 [1]  59/11
30 percent [1]  9/6
358 [1]  25/2
38 [1]  12/16

5

50 [1]  45/5

7

743 [1]  24/23

8

844 [1]  1/13
870 [1]  25/22
878 [1]  25/23
88 [1]  91/2

9

99.999 percent [1]  6/15
9:00 [2]  1/10 3/4

A

a.k.a [1]  15/25
a.m [3]  1/10 3/4 118/2
ABIGAIL [3]  1/23 3/15 67/15
ABIGAIL CLARK [2]  1/23 3/15
ability [3]  17/10 76/23 77/20
able [7]  14/15 44/1 45/4 45/7
45/11 71/20 102/25
about [93]  6/12 6/12 6/15 12/8
14/19 14/20 15/1 15/1 15/11
15/13 17/16 20/11 21/8 25/2
27/17 31/23 32/15 32/19 33/1

34/15 35/19 35/23 35/25
36/18 37/23 37/19 38/3 38/7
38/20 39/3 39/4 39/5 39/14
39/15 40/8 40/13 40/13 40/17
40/18 41/17 41/20 41/25 42/2
42/3 42/7 42/22 44/15 46/19
46/19 46/25 47/2 47/2 47/11
47/18 51/22 52/10 52/17
53/14 55/11 56/8 56/11 60/8
62/16 65/2 66/1 67/20 70/23
71/22 72/13 72/20 81/7 81/11
81/12 82/9 87/5 87/21 88/14
88/16 90/22 95/24 96/17
96/21 96/21 97/13 97/23
104/10 105/19 107/17 107/23
107/25 109/14 110/6 117/4
absence [1]  25/3
absolutely [3]  18/10 53/4 83/5
abundance [1]  47/23
accept [3]  96/9 98/25 99/4
accepted [1]  28/14
access [1]  21/1
according [1]  22/25
accordingly [2]  51/2 65/9
account [1]  37/15
accuracy [3]  87/13 87/25 90/1
accurate [6]  37/14 42/22
43/21 43/22 44/5 119/5
accurately [2]  43/12 45/4
achieved [3]  58/8 59/13 59/16
acid [5]  83/12 83/23 84/6 87/8
101/12
acknowledged [1]  64/19
acknowledges [2]  26/8 71/14
acknowledgment [1]  53/20
acquiring [1]  68/20
acronym [1]  17/2
acted [1]  23/7
acting [1]  23/7
actual [2]  37/19 45/15
actually [21]  3/17 11/10 14/4
15/18 16/4 28/3 35/21 40/6
42/22 43/9 43/14 43/18 44/5
49/7 58/19 73/16 83/9 89/7
105/5 111/21 113/10
add [4]  68/17 75/7 89/5 89/7
adding [3]  30/13 31/4 86/20
addition [2]  13/23 13/25
additional [1]  57/21
address [3]  15/6 47/8 117/17
addressed [2]  104/8 113/11
addressing [1]  27/2
Adenine [1]  5/10
adequately [1]  101/2
adjudicate [1]  88/23
admitted [1]  87/14
admitting [1]  89/11
adopt [8]  66/25 77/19 77/24
79/17 90/2 90/11 91/17
104/25
affect [1]  16/9
after [18]  11/18 14/3 19/24
20/22 20/23 25/18 25/25
38/23 51/16 60/6 65/11 70/7
75/7 83/14 83/18 91/7 102/14
109/13
afterwards [1]  51/10
again [18]  8/25 20/6 25/20
27/15 31/6 32/1 34/6 36/24
70/9 72/24 96/3 96/6

97/1 109/14 112/2 113/18
114/3
against [1]  25/22 103/8
ago [2]  36/20 78/18
agree [22]  46/23 52/7 62/1
64/9 64/17 74/22 89/22 96/5
96/21 98/12 99/12 102/8
103/19 111/9 111/24 114/14
115/3 115/9 116/2 116/6
agreed [7]  83/19 105/7
105/14 105/24 106/4 106/14
108/20
agreement [2]  101/21 102/24
ahead [6]  74/22 76/3 93/5
101/9 101/17 104/16
air [1]  32/8
all [60]  6/5 6/8 8/10 9/10
10/12 22/23 23/7 27/5 27/17
28/11 28/19 28/23 29/2 30/9
31/15 31/21 33/13 33/18
33/19 33/23 34/7 37/24 42/17
50/1 52/12 61/4 64/4 67/20
72/2 72/3 72/16 77/2 79/2
79/19 81/16 82/5 91/15 92/13
93/25 94/15 96/16 98/18
102/6 102/15 104/5 105/23
106/6 106/16 106/18 106/20
107/4 107/17 107/23 108/1
110/17 112/13 112/21 113/5
116/21 117/25
allele [28]  7/3 7/4 7/5 7/5 7/12
7/12 8/17 8/23 8/25 9/3 9/4
9/6 9/8 10/10 10/11 31/12
31/16 32/1 32/3 43/23 54/23
54/25 55/1 55/2 69/25 70/3
71/21 77/13
alleles [14]  7/10 7/17 7/20 9/2
9/5 10/24 31/17 54/17 54/19
69/15 69/21 70/4 77/12 77/15
allow [2]  75/9 77/20
allowed [1]  65/15
allows [1]  70/10
along [2]  6/5 77/3
alongside [1]  39/10
already [10]  79/15 86/20
86/23 88/10 103/25 105/10
105/12 105/24 106/14 109/5
also [22]  3/19 5/5 5/10 5/22
6/1 6/12 6/22 8/23 14/22
15/25 16/1 23/16 26/19 32/17
33/2 34/10 34/17 60/9 64/17
71/9 79/7 85/23
alternative [4]  66/22 102/11
117/15 117/18
alternatives [4]  21/5 26/9
26/11 26/14
always [6]  5/15 5/15 8/8 61/12
76/25 95/24
am [4]  56/25 88/2 89/21 94/25
ambiguities [1]  104/7
ambiguous [1]  76/5
amount [20]  10/18 10/23
10/24 36/3 37/12 40/22 43/8
45/2 46/5 46/6 59/23 67/21
69/15 69/16 69/20 70/10
70/18 71/22 72/7 77/7
amounts [2]  33/16 37/13
amplification [47]  10/22 11/23
27/13 29/19 30/22 30/23
30/25 40/10 46/25 55/21

**A**

amplification... [37]  56/16
57/22 58/9 58/12 58/17 59/3
59/13 59/14 59/20 59/21
59/22 59/25 60/5 60/9 60/12
60/14 60/24 61/1 83/11 83/22
84/6 85/10 87/7 92/6 93/12
101/11 103/13 105/21 106/25
110/19 113/20 113/23 113/24
116/10 116/11 116/15 116/16
amplified [11]  10/4 10/4 12/18
12/18 72/18 72/24 92/12
92/14 93/24 103/15 110/24
amplify [7]  29/15 29/16 29/24
30/21 80/23 91/4 94/22
amplifying [28]  10/2 12/2 12/2
27/11 29/25 31/1 46/19 47/1
57/16 60/3 80/5 80/16 90/23
92/4 92/7 92/9 92/19 92/21
93/9 93/12 93/21 93/23 94/21
97/24 98/1 99/12 113/12
113/13
analogous [1]  35/8
analysis [4]  23/17 50/20 51/1
65/9
analyze [2]  36/22 38/19
analyzed [3]  28/3 31/19 31/25
analyzing [3]  4/25 12/17 31/14
aneuploidy [1]  73/14
another [27]  6/17 7/8 17/2
22/19 27/18 28/6 29/8 30/4
30/17 31/3 36/17 38/23 40/3
45/13 47/13 49/5 54/13 57/21
59/24 71/3 88/15 91/6 100/6
101/7 102/13 104/6 110/2
another's [2]  28/1 33/11
answer [10]  22/20 39/19
39/20 45/16 52/13 73/23
110/9 110/10 112/7 112/22
any [20]  7/21 22/20 24/8
27/21 27/22 28/7 34/15 40/23
47/8 49/8 63/6 66/4 71/11
78/24 88/15 89/7 91/16 98/11
98/19 102/10
anybody's [1]  39/23
anyone [1]  18/23
anything [9]  24/3 27/17 52/16
76/20 95/3 104/22 107/12
113/7 116/24
anywhere [3]  28/7 48/20 49/8
Apologies [2]  82/13 93/1
apoptosis [1]  5/25
apparently [1]  90/16
appear [2]  89/22 113/11
APPEARANCES [2]  1/18 2/2
appears [8]  6/20 11/20 12/13
12/16 27/9 67/19 78/8 104/1
appendix [1]  71/16
application [2]  65/18 65/20
applications [1]  8/14
applies [1]  103/20
applying [1]  90/3
appreciate [1]  22/15
approach [3]  4/8 14/9 67/3
approaches [1]  54/22
appropriate [3]  15/4 55/8
115/19
Archer [2]  119/7 119/8
are [114]  3/10 5/13 6/5 6/7

6/15 6/19 6/24 7/15 9/1 9/3
9/13 9/13 9/16 9/18 10/5 10/5
10/16 10/16 11/22 12/1 12/25
13/8 13/9 14/20 16/4 19/9
19/14 19/21 19/24 20/10
20/16 22/14 23/6 24/14 25/19
25/24 26/1 26/20 28/17 28/18
28/18 28/19 28/19 29/20
30/12 31/9 32/5 32/12 33/22
33/25 36/18 37/24 39/9 40/2
45/11 46/23 47/11 48/18 51/2
51/19 52/7 52/20 52/22 53/14
54/22 55/2 55/11 64/4 64/24
65/10 66/17 69/10 71/11
71/16 72/22 77/11 78/7 78/13
79/15 80/11 82/10 82/24 83/8
83/20 84/23 86/11 87/20 88/5
88/10 88/19 89/9 91/22 92/11
92/22 92/21 97/10 98/17
100/24 101/8 105/15 106/3
106/3 108/11 108/22 108/23
108/23 108/25 109/20 109/21
110/1 110/7 110/8 112/12
113/12
aren't [3]  16/9 31/4 97/22
arguable [1]  18/24
argue [9]  16/17 19/13 24/3
63/20 76/23 102/13 102/22
109/10 109/12
argued [3]  24/13 25/15 82/23
argues [3]  23/12 26/7 26/21
arguing [5]  67/16 78/6 82/20
82/23 84/22
argument [30]  11/7 11/15
12/7 17/16 23/14 25/8 26/3
27/3 32/5 53/9 75/13 75/14
76/3 84/24 104/13 107/11
109/1 109/4 109/18 109/22
109/23 109/25 110/4 110/8
111/3 114/15 114/17 114/18
114/21 116/3
arguments [11]  3/18 17/4 77/4
77/9 101/24 102/14 105/1
105/1 109/7 110/1 116/2
arise [1]  36/17
arises [1]  44/3
arising [2]  25/19 25/25
Arka [1]  3/20
around [1]  28/20
arrive [1]  43/20
ARSHT [1]  1/19
art [17]  12/24 13/18 13/21
15/1 26/2 28/15 29/14 30/5
33/21 49/2 66/10 71/15 83/2
84/15 85/4 98/9 109/16
art's [1]  78/14
article [1]  21/13
artisan [5]  23/2 24/4 24/7
48/21 76/8
as [83]  5/7 5/10 5/11 5/11
5/12 5/17 5/21 5/23 6/6 6/22
6/25 7/14 9/9 9/19 12/17
12/25 13/14 13/25 15/13 16/1
16/17 20/7 21/21 22/5 23/5
23/5 23/7 23/8 23/12 23/13
23/25 24/8 25/9 25/17 26/4
26/17 26/25 28/3 28/12 34/8
34/8 36/12 39/21 41/13 41/14
46/22 49/15 49/24 54/5 56/16
67/1 67/3 68/10 68/14 69/4

69/23 70/17 73/23 74/1 76/8
76/8 79/12 86/10 88/5 89/9
91/11 92/25 92/25 100/25
101/18 101/18 101/19 103/10
104/1 104/6 104/15 105/7
105/24 106/4 108/8 111/6
113/14 114/13
ascribe [2]  63/25 64/6
ask [8]  21/23 70/22 76/23
84/5 110/5 115/12 116/1
116/8
asked [9]  16/16 53/16 59/15
82/23 85/25 88/23 109/8
115/25 116/1
asking [6]  51/4 56/23 56/25
81/5 110/18 115/22
asks [1]  79/17
aspects [1]  105/15
assert [1]  78/16
assess [1]  54/2
assessed [1]  103/8
assigning [2]  70/7 70/19
associated [1]  69/8
assume [1]  115/2
attempt [1]  18/22
attention [2]  74/24 93/18
attorney [4]  82/23 100/7
102/21 103/7
available [2]  25/16 37/3
average [1]  25/1
avoid [18]  51/17 65/13 97/20
103/23 106/22 107/21 108/19
109/11 109/15 110/21 111/13
111/17 111/18 111/25 112/4
112/10 112/16 112/19
away [1]  108/23
awkward [2]  21/21 22/19

**B**

baby [2]  71/1 71/3
back [13]  3/8 11/9 15/20
42/12 42/13 47/21 51/10 82/3
95/25 102/21 107/6 108/23
114/5
background [2]  15/1 35/23
bad [2]  36/7 36/14
base [5]  5/14 5/14 5/16 6/25
based [26]  10/10 10/11 13/3
15/4 17/11 20/15 23/14 31/11
42/14 42/24 45/16 46/15
51/14 54/22 55/2 57/24 57/24
57/25 60/16 62/12 62/22 64/7
65/15 65/21 77/11 77/16
bases [3]  5/10 6/10 6/14
basically [4]  14/25 66/21 95/6
113/22
be [153]
beads [2]  29/4 29/5
became [1]  20/20
because [65]  5/3 6/9 6/13
8/10 13/13 16/8 17/14 18/18
18/23 20/18 21/12 25/15
29/15 31/18 31/24 31/24 32/5
35/23 37/13 38/2 42/20 42/20
42/24 43/25 45/2 46/6 49/10
53/12 54/17 55/9 58/3 60/18
66/5 66/17 67/7 70/14 74/2
74/12 74/19 77/9 79/15 81/10
81/15 82/15 83/17 86/19
87/20 109/5 111/18

95/25 96/20 97/19 99/4 100/8
109/19 110/3 110/12 115/3
117/16
become [1]  69/6
been [17]  21/2 21/5 21/14
21/15 40/9 55/20 56/12 60/6
75/7 88/23 89/3 89/5 90/5
90/5 102/25 108/15 110/3
before [10]  1/15 4/12 20/2
41/3 71/17 99/9 104/5 108/16
108/16 114/17
before before [1]  108/16
begin [1]  8/13
beginning [2]  3/3 53/9
behalf [3]  3/24 4/4 78/5
behavior [1]  53/14
behind [1]  30/8
being [11]  15/15 15/17 19/3
22/5 58/8 59/13 59/16 61/23
71/19 74/8 98/22
believe [15]  12/7 16/18 17/8
21/23 21/24 32/4 34/18 52/16
58/11 76/10 90/25 111/11
111/14 111/16 114/1
belong [1]  9/5
benefit [3]  65/19 66/6 66/11
better [5]  19/9 48/11 66/16
91/21 104/8
between [8]  6/25 9/17 17/14
28/4 37/16 48/5 68/10 70/4
beyond [2]  41/6 97/5
BIANCA [3]  1/24 3/15 78/5
Bianca Fox [2]  3/15 78/5
big [2]  35/3 81/23
binds [2]  5/15 5/15
bioinformatically [4]  31/23
32/16 32/20 32/22
bioinformatics [1]  32/24
biologic [2]  41/12 55/11
biological [12]  7/16 9/22 10/9
11/18 27/13 35/6 35/8 41/15
41/19 50/14 57/11 72/8
bit [4]  36/8 36/11 44/4 51/15
blah [3]  105/21 105/21 105/21
blank [1]  114/20
blood [49]  4/15 4/17 4/20 4/21
4/21 6/6 6/6 6/7 8/1 8/6 8/9
8/16 8/18 8/24 9/9 9/10 28/17
28/24 29/16 29/21 33/4 33/6
33/9 33/10 33/17 33/19 33/24
34/1 34/2 34/7 34/8 36/19
36/21 39/10 39/11 39/16
39/18 39/25 40/1 40/5 40/13
50/20 50/21 50/22 55/23
55/25 56/9 56/14 67/20
bloodstream [3]  46/8 46/11
47/19
blue [4]  115/5 115/8 115/10
115/12
BLUMENFELD [3]  1/20 3/7
3/19
bodies [1]  5/4
bodily [5]  5/22 6/4
body [4]  5/9 5/21 8/11 14/12
Bonnie [2]  119/7 119/8
boom [1]  55/25
both [12]  7/22 7/25 8/2 20/15
39/12 61/7 67/3 69/6 72/22
87/20 109/5 111/18

**B**

bother [2] 17/18 27/2
bothers [1] 115/17
bottom [6] 7/24 29/6 61/4 86/25 89/20 102/18
bought [1] 22/8
BRIAN [2] 2/4 3/24
Brian Farnan [1] 3/24
brief [17] 4/11 48/25 49/1 71/17 79/21 90/20 91/11 93/15 93/18 95/3 95/5 95/18 95/21 98/14 109/3 110/5 117/15
briefed [1] 11/14
briefing [17] 19/19 25/14 28/2 33/5 48/20 78/18 83/16 83/17 101/5 101/7 102/9 102/12 102/19 103/6 110/2 117/8 117/10
briefly [2] 11/3 14/2
briefs [3] 96/3 100/11 100/19
bring [4] 27/24 74/24 75/12 78/19
broad [2] 77/15 77/16
broaden [1] 51/17
broader [2] 13/14 65/12
broadly [1] 25/24
buffers [2] 79/13 86/22
burden [5] 18/12 18/13 18/19 61/22 114/16
burst [1] 6/2
Burton [1] 3/20
business [2] 101/1 101/1
buy [1] 17/16
bypass [2] 57/5 57/5

**C**

C.A [1] 1/4
calculate [2] 70/10 70/18
calculation [2] 70/9 70/13
calculations [1] 42/17
California [5] 34/23 41/3 50/7 63/19 65/8
call [4] 54/15 81/8 81/9 81/12
called [8] 5/20 5/25 6/19 6/21 10/6 22/7 43/17 81/15
calling [1] 81/14
calls [5] 43/23 54/23 54/25 55/1 98/8
calm [1] 53/20
came [6] 6/12 37/18 38/19 50/10 50/11 96/3 100/20
can [125]
can't [26] 16/11 16/12 18/3 27/23 44/4 51/24 52/1 60/14 66/4 76/10 77/6 87/16 87/17 89/19 92/24 97/10 99/3 100/16 100/23 102/3 102/15 111/24 114/22 115/17 116/9 117/7
candidly [1] 64/19
cannot [2] 29/16 100/9
capture [3] 25/18 25/25 29/2 52/6 66/8
care [6] 49/19 50/2 51/4 52/5 52/6 66/8
CAREDX [38] 1/6 3/24 11/6 13/1 13/5 23/12 24/2 24/6 24/13 25/14 26/7 26/10 26/21 26/23 27/23 28/9 28/12 31/20

32/6 33/2 33/12 33/15 34/10 34/17 35/10 36/3 68/19 78/12 78/16 79/3 83/10 94/6 103/7 103/19 103/20 104/2 104/6 113/17
CareDX's [19] 13/6 26/3 27/19 30/11 31/8 32/4 32/17 33/5 33/13 68/12 68/17 68/25 70/12 71/11 71/24 78/13 79/4 83/24 86/18
carefully [1] 88/13
carried [1] 99/8
carries [1] 69/24
case [19] 15/3 15/6 15/9 18/18 34/17 34/20 34/22 35/11 46/2 62/24 63/17 65/11 66/21 76/22 78/19 87/2 102/2 108/22 117/13
cases [2] 17/24 37/3
cell [60] 5/20 5/23 5/25 6/1 6/3 6/8 8/2 8/5 8/6 8/8 8/11 8/15 8/18 8/21 9/3 9/9 9/25 10/1 10/20 11/17 11/23 26/17 27/8 27/12 29/3 29/5 30/8 32/12 34/1 34/2 34/14 34/14 34/15 34/16 35/5 35/7 39/5 39/6 40/8 41/11 41/14 46/20 48/22 49/14 50/13 50/19 55/13 56/5 56/13 57/10 60/4 61/6 61/7 61/15 61/15 61/17 61/23 72/20 103/11 110/19
cell-free [54] 5/20 5/23 6/3 6/8 8/2 8/5 8/8 8/11 8/15 8/18 8/21 9/3 9/9 9/25 10/1 10/20 11/17 11/23 27/8 27/12 29/3 29/5 30/8 32/12 34/1 34/2 34/14 34/16 35/5 35/7 39/5 39/6 40/8 41/11 41/14 46/20 48/22 49/14 50/13 50/19 55/13 56/5 56/13 57/10 60/4 61/6 61/7 61/15 61/15 61/17 61/23 72/20 103/13 110/19
cells [17] 5/8 5/21 5/22 5/24 6/2 6/6 7/21 7/23 7/24 8/4 8/10 8/13 28/18 28/25 36/18 36/20 36/22
certain [6] 5/20 9/9 45/3 78/11 104/24 107/11
certainly [4] 79/2 91/10 102/11 117/5
CERTIFICATE [1] 119/2
certify [1] 119/4
cetera [4] 105/21 105/21 106/25 107/1
CFC [1] 1/4
cfDNA [4] 48/22 68/15 69/2 69/24
challenge [1] 36/1
challenging [2] 89/4 89/25
change [3] 12/4 31/9 82/12
changed [1] 41/1
changes [2] 29/20 29/21
characteristics [1] 107/20
characterized [1] 26/4
charts [1] 114/20
Chatterjee [1] 3/20
chew [2] 5/25 6/1
choice [1] 13/16
chooses [1] 34/10
chose [1] 13/14 34/4

chromosome [15] 15/16 16/13 16/15 30/21 31/2 54/6 54/7 54/14 72/9 73/15 73/16 103/16 110/25
chromosomes [5] 5/8 16/9 16/12 54/5 54/7 54/15
Circuit [1] 24/24
circular [1] 16/21
circulates [1] 6/4
cite [2] 19/20 74/7
cited [3] 15/10 21/14 24/15
cites [2] 26/10 33/16
claim [155]
Claim 1 [17] 9/15 27/10 86/16 92/1 92/2 92/14 93/8 93/14 93/20 96/21 97/11 97/15 97/16 97/18 98/2 98/24 99/12
Claim 38 [1] 12/16
Claim 5 [11] 86/15 92/1 92/8 92/22 93/22 94/5 94/20 94/24 97/16 97/24 99/8
claim's [1] 31/9
claimed [2] 20/2 24/10
claiming [2] 19/21 66/6
claims [67] 4/12 4/16 4/24 5/19 6/20 8/14 9/11 9/20 10/8 11/1 12/14 23/5 24/1 24/3 24/7 24/17 24/20 25/18 27/9 27/20 28/7 30/14 30/24 30/25 31/10 31/21 31/22 34/14 34/15 34/16 41/1 41/2 41/2 41/5 42/8 51/17 52/17 52/25 53/25 55/2 55/4 55/11 59/13 59/19 61/10 64/1 64/1 64/4 64/7 64/7 64/22 64/23 64/24 65/12 68/22 70/19 78/12 86/10 86/11 86/14 86/15 88/6 88/22 92/16 93/20 108/2 108/24 110/8
clarification [5] 62/18 69/13 114/8 114/11 115/16
clarifies [1] 104/22
clarify [6] 107/3 115/9 115/12 115/23 116/1 116/1
clarifying [2] 104/18 105/2
clarity [2] 106/5 106/13
CLARK [4] 1/23 3/15 3/17 67/15
clause [4] 23/20 23/20 45/18 97/11
clean [19] 37/5 37/10 37/22 38/22 38/25 40/19 41/22 41/23 42/16 47/24 48/7 48/19 51/11 51/13 51/22 55/13 60/21 63/5 63/16
cleaning [9] 32/19 38/8 40/18 40/24 42/13 46/14 46/15 47/12 48/2
clear [31] 23/11 23/18 26/24 32/18 48/13 48/15 50/3 50/9 50/25 51/1 51/20 53/13 57/23 58/21 60/2 61/5 62/6 62/7 62/8 62/15 62/23 63/13 65/6 65/8 68/4 72/18 73/9 74/21 80/11 105/15 108/2
clearer [1] 78/24
clearest [1] 47/6
clearly [8] 16/24 23/24 34/14 44/18 62/2 62/3 95/7 97/13
clicker [1] 72/14

client [1] 102/14
clinches [1] 95/7
closed [1] 16/21
CNC [1] 16/25
coagulation [1] 29/22
collapses [1] 59/3
collapsing [1] 58/16
colleague [1] 91/21
colloquial [1] 15/25
COLM [1] 1/15
Column [1] 59/11
Column 2 [1] 59/11
combined [3] 12/1 65/24 113/10
combining [1] 48/8
come [13] 19/8 51/10 51/16 57/3 60/21 82/17 98/13 99/5 101/6 101/21 102/13 102/21 109/13
comes [11] 4/16 8/10 8/12 8/16 29/5 44/6 49/25 51/25 52/1 58/4 109/2
coming [6] 14/14 38/23 46/8 54/17 76/14 100/11
comma [1] 17/22 23/18
commas [5] 16/25 17/3 18/2 18/3 23/21
commenced [1] 3/3
comment [1] 22/13
comments [1] 87/15
commercial [1] 20/8
commercially [1] 25/16
common [3] 24/9 71/25 87/16
commonly [1] 15/8
company [1] 36/4
compare [1] 71/18
compilation [1] 44/16
complementary [2] 5/14 12/24
complete [7] 44/9 44/10 44/16 70/14 73/9 73/10 85/10
completed [6] 68/20 73/21 74/1 74/8 75/8 76/12
completely [9] 27/19 30/1 30/13 31/9 35/11 35/13 47/8 55/7
completing [1] 68/13 71/12
complicated [1] 105/6
components [1] 6/5
comprise [2] 103/16 110/25
comprises [3] 92/9 92/23 93/23
comprising [4] 60/3 92/10 94/1 94/24
compromise [1] 95/17
concede [1] 18/7
concept [6] 5/16 27/24 32/11 43/18 71/19 85/20
concepts [2] 10/16 27/20
concluded [1] 118/2
conclusion [6] 14/16 32/9 50/11 50/12 50/17 51/14
conclusions [1] 77/16
conduct [1] 69/19
confer [11] 83/15 83/19 88/4 90/16 91/7 91/16 101/20 101/23 109/8 114/13 117/4
confers [1] 102/16
confident [1] 21/2
confused [3] 82/7 84/20 105/18

**C**

confuses [2] 32/11 104/23
confusing [5] 22/6 82/15 104/18 104/19 105/3
confusion [1] 106/17
connection [1] 86/10
CONNOLLY [1] 1/15
consequence [1] 17/15
consider [2] 17/8 50/4
considered [1] 50/7
consistent [3] 26/12 31/21 52/17
constant [1] 66/17 100/24
construction [72] 13/6 27/4 34/19 35/4 35/11 41/12 42/7 64/12 68/13 70/13 71/11 71/25 75/14 75/20 76/3 76/21 77/19 78/11 78/24 79/4 79/7 80/8 80/13 80/20 84/18 87/13 87/23 88/21 89/16 90/4 90/13 91/7 91/11 91/17 91/22 92/18 94/5 95/25 96/3 96/6 96/9 98/7 98/12 100/3 100/6 100/8 100/10 101/3 101/10 101/15 101/19 102/4 102/6 102/11 102/12 102/19 102/24 103/4 104/9 106/11 106/25 107/9 108/8 110/15 111/6 111/9 111/12 111/14 115/20 117/12 117/12 117/14
constructions [2] 100/24 108/18
construe [13] 17/11 22/25 56/24 56/25 57/10 57/14 66/20 75/25 76/2 80/2 98/6 99/20 99/22
construed [15] 10/21 11/5 34/20 34/24 50/13 79/2 89/23 92/19 105/7 105/10 105/12 105/24 106/4 108/15 108/18
construing [7] 6/21 11/8 27/25 67/5 78/22 88/6 105/16
consultation [1] 102/14
contain [2] 7/17 17/6
contained [1] 48/6
containing [1] 12/15
contains [10] 4/17 4/20 4/22 5/4 7/3 7/4 28/24 34/8 38/18 67/22
contaminated [3] 32/19 32/19 32/20
contamination [2] 32/22 32/25
contentions [1] 114/19
context [14] 7/14 7/19 8/7 15/2 21/3 23/3 27/11 39/6 64/2 64/2 67/23 68/22 80/21 87/2
continuation [1] 9/14
continue [1] 108/13
CONTINUED [1] 2/2
contradicts [1] 96/24
contrary [1] 61/3
controlled [1] 29/24
controls [1] 25/20
convey [2] 19/7 85/21
convinced [1] 109/19
copies [3] 72/9 73/15 73/15
copy [1] 4/6
Corp [1] 25/22

correct [13] 14/7 37/20 57/11 57/17 64/16 95/18 96/18 98/3 99/13 99/19 106/1 111/19 112/10
correctly [2] 54/6 54/15
corresponding [1] 73/1
corresponds [7] 68/14 73/11 73/12 73/16 73/17 77/6 77/13
cost [2] 100/25 101/1
could [33] 7/16 13/12 20/18 22/6 25/2 26/8 32/22 40/5 44/14 52/12 53/5 53/6 53/20 54/3 54/12 54/15 60/9 67/8 70/13 76/7 86/12 86/12 87/6 88/5 88/8 89/3 92/24 93/3 93/6 93/12 98/15 101/15 103/22
couldn't [3] 21/2 71/3 98/25
counsel [6] 1/25 2/7 3/14 11/6 47/7 88/4
count [1] 91/11
counting [1] 24/14
couple [1] 20/1
course [1] 21/11
court [21] 1/1 1/15 4/11 14/13 14/15 15/11 17/11 19/1 20/19 20/20 21/8 21/24 22/25 53/19 62/18 90/17 93/2 100/25 119/2 119/8 119/9
Court's [1] 74/24 75/25 77/19
courtroom [1] 3/3
cover [1] 103/22
covered [3] 19/13 69/1 98/22
covers [4] 103/25 104/1 104/20 112/12
create [2] 68/18 104/25
critical [3] 19/21 20/23 64/3
crossovers [1] 26/20
crux [1] 68/9
cursory [1] 102/11
cv [1] 1/4
cytosine [1] 5/11

**D**

data [80] 6/11 9/21 10/7 10/9 13/1 26/16 28/3 31/11 31/15 31/15 32/6 32/12 32/14 32/15 32/15 32/16 32/24 34/25 36/8 36/15 37/3 37/5 37/6 37/9 37/9 37/11 37/14 37/20 37/22 37/25 38/1 38/8 38/9 38/14 38/15 38/21 38/23 40/18 40/19 41/18 42/1 42/4 42/14 42/16 42/25 43/11 44/4 44/10 44/11 44/16 44/23 45/22 46/15 46/16 47/12 47/13 47/14 47/16 47/25 48/3 48/3 48/5 48/6 49/24 51/9 51/25 52/1 52/2 52/9 52/18 54/13 58/4 60/21 62/17 63/3 63/4 63/4 63/14 63/15 65/23
date [6] 19/22 19/25 20/2 20/17 20/24 65/21
day [2] 66/23 118/1
dealing [1] 56/15
debate [2] 14/23 17/14
December [1] 1/10
decision [3] 24/23 25/3 89/21
defects [1] 36/14
defendant [1] 1/7 2/7 91/18

defendant's [1] 66/25
defense [1] 78/1
define [4] 25/8 26/24 91/14 97/9
defined [3] 25/17 46/21 46/22
defining [1] 23/13
definitely [1] 41/4 64/20 76/25 115/7
definition [30] 14/24 15/23 17/5 17/7 17/10 26/5 26/10 26/12 79/22 79/22 80/1 80/1 80/3 83/21 84/5 84/12 87/19 89/23 90/11 90/12 95/9 96/2 96/23 97/14 98/4 98/20 99/1 99/4 101/5 107/9
definitional [11] 15/8 15/13 15/17 16/24 17/1 17/3 17/22 18/8 18/20 24/13 26/22
Definitionally [1] 26/9
DELAWARE [2] 1/2 1/13
demonstrated [2] 40/9 55/21
demonstrates [1] 13/20
demonstrative [1] 53/14
deny [4] 51/16 51/18 63/22 65/11
dependant [1] 92/8
dependent [3] 91/25 93/22 97/17
depending [1] 25/19
depends [1] 52/14 92/1 92/3
depth [3] 43/17 43/24 44/15
DEREK [1] 1/20 2/7 3/13 3/25
Derek Walter [1] 3/25
derived [4] 8/18 8/23 65/23 65/25
described [1] 42/14
describing [1] 34/13
description [16] 13/4 23/3 23/15 24/11 26/13 26/15 33/3 33/23 58/22 59/3 59/12 71/10 71/14 72/1 91/12 109/2
desired [1] 24/25
destroy [2] 36/10 107/22
details [1] 79/14
determination [4] 63/9 71/21 71/22 73/13
determinations [1] 36/23
determinative [1] 17/9
determine [8] 10/9 32/14 42/19 45/22 46/14 54/6 72/24 77/7
determining [16] 9/21 10/22 10/25 12/22 31/10 31/23 32/5 41/18 42/1 42/3 44/23 52/8 52/18 69/5 72/13 72/17
diameter [1] 25/1
dictionary [1] 26/5
did [20] 23/24 25/8 29/21 33/21 54/9 73/25 78/16 78/19 78/20 90/13 90/15 90/16 90/19 95/18 98/10 100/17 100/19 102/7 102/10 114/6
didn't [19] 17/16 19/13 20/4 21/1 27/4 43/4 47/8 51/16 63/6 63/18 63/20 83/17 88/12 95/2 95/8 99/9 101/22 116/1 116/6
die [1] 5/24 7/25 8/4
differ [3] 6/16 6/19 6/25
difference [1] 70/4

differences [2] 9/16 9/17
different [33] 6/17 7/6 7/1 7/12 7/15 9/24 10/14 10/16 29/3 30/13 30/17 34/20 35/11 35/12 35/13 35/13 48/19 50/15 50/16 51/15 57/4 70/3 70/3 71/6 72/19 74/21 75/13 84/22 86/21 99/15 99/18 102/14 104/8
differentiates [1] 70/6
differently [2] 64/6 64/11
directed [9] 31/22 34/16 80/10 80/12 80/18 82/1 85/16 96/13 98/21
Directv [1] 25/22
disagree [2] 45/11 89/3
disavowal [6] 23/11 62/6 62/8 62/15 62/24 90/6
disavows [1] 23/8
disclaim [1] 90/6
disclaimer [1] 61/6
disclose [3] 19/15 24/3 58/6
disclosed [8] 48/2 48/4 48/8 52/8 57/25 65/21 65/22 97/22
discloses [2] 66/7 91/13
disclosure [12] 19/10 22/10 27/22 33/8 34/9 52/20 62/13 62/22 63/1 65/2 65/15 108/1
disclosures [1] 33/3
discovered [1] 39/7
discuss [2] 11/3 21/25
discusses [1] 25/11
discussing [3] 5/17 7/8 9/19
discussion [2] 15/12 35/20 59/12 63/7
disjunctive [18] 18/1 18/4 18/21 18/23
dispute [18] 19/14 28/9 48/20 49/19 49/19 51/6 68/9 72/10 74/20 74/24 80/14 80/15 87/4 87/23 89/12 90/11 102/12 107/3
disputed [2] 97/11 106/13
distinct [18] 26/9 26/11 67/18 68/1 68/8 68/16 69/16 70/2 70/5 70/11 70/15 70/18 71/5 71/23 72/6 72/12 73/5 74/5
distinguish [6] 45/19 45/21 58/8 59/5 59/14 59/19
distinguishes [1] 59/24
distinguishing [1] 81/15
distribution [1] 54/17
distributions [4] 77/12 77/14 77/15 77/16
DISTRICT [8] 1/1 1/2 1/15 34/23 50/6 63/19 65/7 119/9
divide [1] 8/5
dividing [1] 3/16
DNA [234]
do [123]
does [33] 13/11 13/13 24/2 26/10 32/11 32/13 33/2 36/14 39/3 40/6 44/6 56/6 58/6 58/7 60/1 71/10 77/9 78/24 79/1 79/21 84/11 84/12 85/25 86/3 89/17 91/10 92/5 93/13 93/14 96/20 99/14 113/23 113/23
doesn't [19] 14/20 18/20

**D**
doesn't... [31] 19/15 27/17 28/9 30/17 31/1 31/5 33/10 33/20 35/6 35/9 36/14 39/25 40/4 41/6 49/25 61/2 61/15 75/8 75/9 76/9 79/25 84/11 89/4 91/14 92/13 93/10 93/25 98/11 105/2 116/12 116/14
doing [13] 3/11 3/11 29/19 32/4 32/16 49/22 80/18 84/2 84/3 100/25 101/1 106/3 106/4
don't [102] 14/4 15/10 17/7 18/23 20/11 20/20 21/12 22/16 26/23 38/19 39/21 39/23 42/22 44/1 47/21 48/20 49/13 49/19 49/24 50/2 51/4 52/5 52/6 52/16 53/16 54/23 55/18 59/5 59/24 61/9 61/11 62/5 62/6 62/7 62/23 63/10 63/17 64/1 65/11 66/8 66/9 66/19 71/7 72/25 73/10 73/23 74/9 74/10 74/13 74/17 74/23 75/19 76/10 76/21 77/12 80/7 80/14 80/15 80/20 84/24 84/25 85/4 87/4 87/5 87/12 87/22 87/24 89/7 89/10 89/15 89/17 89/25 90/10 90/11 90/16 93/17 95/20 96/23 97/1 98/11 98/16 98/18 99/5 99/12 101/7 102/1 104/22 106/24 107/12 108/7 111/14 112/7 114/6 114/10 114/18 114/20 114/23 115/3 115/16 115/19 117/11 117/14
donated [2] 7/22 68/2
done [13] 8/17 24/21 29/3 29/15 32/1 42/17 60/6 74/3 78/18 83/14 85/18 100/10 110/10
donor [9] 4/23 7/25 8/9 8/16 8/18 8/23 9/4 9/6 9/6
donor's [2] 8/11 9/3
donor-derived [2] 8/18 8/23
double [2] 5/9 112/1
double-stranded [1] 5/9
down [11] 15/15 15/23 21/15 29/10 53/20 63/12 88/6 93/3 96/2 101/6 101/20
Downs [4] 15/16 16/9 16/12 16/13
draft [1] 41/5
dramatic [1] 29/20
draw [2] 32/9 39/11
dunk [1] 48/17
during [2] 23/10 30/18 75/4 75/22

**E**
each [5] 5/5 6/13 7/12 7/13 7/17
earlier [2] 69/3 69/12
early [3] 19/22 53/13 103/11
easy [2] 21/8 21/10
Ed [1] 3/24
Ed Reines [1] 3/24
EDWARD [1] 2/6
Edwards' [1] 16/10
effect [1] 13/15

effective [1] 102/16
effectively [2] 49/6 59/4
effectiveness [1] 107/22
effects [1] 110/22
efficiency [1] 12/1
eight [1] 90/25
Eighty [1] 90/25
Eighty-eight [1] 90/25
either [10] 17/6 23/9 23/10 24/12 34/9 68/15 71/20 79/6 89/17 115/7
else [6] 74/10 74/14 82/19 110/11 113/7 116/24
elsewhere [2] 79/23 80/2
EMANUEL [2] 1/22 3/15
embodiment [24] 13/2 32/18 33/15 33/18 34/10 34/12 34/13 34/15 53/3 53/23 54/20 55/5 60/16 92/20 95/16 95/19 97/6 98/11 98/13 99/6 103/21 104/20 112/11 113/18
embodiments [14] 13/8 32/18 33/12 33/22 33/25 52/8 52/21 54/21 54/22 71/12 97/21 103/21 104/3 104/24
embryo [8] 36/8 36/9 36/13 36/13 65/25 66/1 66/2 66/5
embryonic [1] 48/12
embryos [4] 36/6 36/7 36/7 48/10
enablement [1] 81/23 108/4 109/2
enables [1] 48/2
encompass [3] 24/18 93/20 113/23
encompasses [3] 109/5 113/19 115/5
end [9] 20/24 66/23 72/4 76/15 76/15 77/21 101/14 103/1 110/25
ended [1] 92/10
engage [4] 100/23 102/1 102/3 117/9
engaged [1] 100/24
English [1] 75/2
enlightens [1] 15/12
enough [3] 25/24 44/5 53/2
entire [3] 8/11 68/19 86/22
entitled [1] 65/20
enzymes [3] 5/25 30/1 79/12
equating [2] 21/23 21/24
equipment [1] 79/13
equivalence [1] 15/9
equivalent [1] 15/13
erroneous [1] 33/13
error [4] 25/1 43/1 43/3 43/7
errors [2] 43/10 44/2
especially [1] 22/17
ESQ [8] 1/20 1/20 1/23 1/23 1/24 2/4 2/6 2/7
essentially [4] 6/2 17/5 18/22 23/22
established [1] 26/23
estimate [1] 48/11
et [4] 105/21 105/21 106/25 107/1
even [10] 21/21 25/18 27/23 32/2 33/13 33/21 34/12 46/16 89/4 91/9
event [1] 23/10

ever [3] 68/13 68/20 77/12
every [16] 7/14 39/19 40/17 56/7 56/7 56/10 56/10 56/11 60/16 60/16
everything [3] 6/1 49/3 116/18
everything's [1] 19/4
evidence [14] 14/12 20/15 23/23 39/2 39/19 41/7 41/9 47/6 59/16 62/25 63/9 63/11 64/18 65/5
exact [2] 66/9 70/19
exacted [2] 35/6 52/6
exactly [5] 12/21 16/2 16/16 50/7 110/23
example [25] 7/19 7/23 8/8 8/20 9/1 9/19 10/2 10/3 10/18 12/15 15/16 16/23 17/2 21/21 27/10 29/19 30/19 33/15 50/19 60/17 69/13 69/19 70/9 91/25 92/21
examples [5] 15/14 16/20 26/20 78/7 97/21
exceptions [1] 23/6
exclude [3] 13/7 92/20 95/16
excluding [1] 104/3
exclusively [1] 14/20
exemplary [1] 21/18
exhibiting [1] 53/14
experiment [5] 49/22 52/25 54/1 54/9 67/1
experiments [1] 43/10
expert [5] 67/9 88/24 89/3 90/9 90/10
expert's [1] 89/11
experts [6] 66/22 67/2 67/11 87/20 108/11 117/17
explain [14] 14/2 14/14 14/25 15/2 31/5 82/25 87/2 87/6 88/21 88/25 89/12 90/9 90/10 108/11
explained [3] 80/21 90/8 95/22
explaining [2] 86/7 87/8
explanation [2] 91/21 99/5
express [2] 23/24 98/23
extent [1] 84/18
extract [7] 31/5 49/9 49/12 49/15 49/18 50/2 55/12
extracted [19] 10/1 11/17 27/8 27/12 27/16 27/25 28/9 28/10 30/9 31/1 34/5 35/7 41/11 47/3 48/18 50/14 51/5 57/10 60/4
extracting [10] 9/25 10/19 28/22 30/7 40/1 48/21 48/22 57/15 69/2 72/20
extraction [31] 29/9 29/14 30/3 30/18 33/20 33/21 33/22 34/3 39/21 56/16 56/19 57/4 58/9 58/12 58/17 58/25 59/3 59/6 59/14 59/17 59/20 59/22 59/25 60/1 60/6 60/8 60/11 60/13 61/1 62/17 66/8
extrapolation [1] 33/7
extremely [1] 69/18
extrinsic [1] 63/9
eye [2] 102/5 102/5

**F**
F.3d [2] 24/23 25/22

face [2] 55/9 63/23 116/12
fact [20] 14/17 17/3 22/2 27/23 28/9 31/8 31/22 38/23 43/7 44/3 47/24 51/16 54/21 60/15 71/14 79/5 79/8 89/4 93/19 109/13
FAHNESTOCK [2] 1/20 3/13
fair [4] 26/3 102/18 102/20 115/11
fairly [2] 14/13 19/22
familiar [1] 22/3
families [1] 108/15
family [4] 9/13 10/16 88/8 109/20
fantastic [1] 40/22
far [1] 101/18
FARNAN [4] 2/4 2/4 3/22 3/24
fast [3] 19/5 19/6 92/25
faster [1] 8/4
father [1] 37/22
favor [4] 53/6 89/17 89/18 117/18
favors [1] 89/16
Federal [1] 24/24
feel [1] 35/23
feels [1] 15/11
fees [3] 100/7 102/21 103/7
female [3] 52/23 53/1 54/4
females [1] 54/10
fertilization [1] 36/5
fetal [40] 34/1 34/2 34/8 36/20 37/17 39/16 39/17 39/25 40/5 40/7 40/9 40/10 47/19 49/16 49/17 49/20 49/23 50/18 50/19 51/2 51/2 51/7 51/9 51/13 51/22 55/12 55/13 55/20 55/22 56/1 56/11 56/12 56/12 56/13 59/12 65/9 65/9 66/2 66/4 66/13
fetal-specific [2] 40/10 55/22
fetus [38] 30/22 36/23 37/9 37/16 37/17 37/20 37/23 38/2 38/21 39/9 39/12 40/14 40/19 41/21 41/22 42/16 46/8 47/4 47/24 47/25 51/9 51/25 52/2 52/3 57/8 58/1 60/19 63/4 63/14 72/8 72/23 73/2 73/11 73/14 73/15 73/17 77/6 77/14
fetus' [1] 4/21
fewer [1] 30/13
field [2] 20/4 38/12
fighting [2] 87/5 110/6
figure [9] 7/24 27/23 54/12 67/3 77/13 89/19 98/16 98/18 98/25
file [1] 21/15
filed [1] 21/15
filing [1] 20/14
final [3] 10/8 12/8 113/10
finally [5] 10/23 11/21 11/25 66/20 70/21
find [4] 27/4 36/6 43/12 54/3
fine [3] 77/1 104/12 109/23
finer [1] 59/10
firm [1] 3/19
first [44] 3/17 4/2 9/21 9/25 10/10 11/9 11/16 24/1 27/24 28/23 31/11 32/6 32/15 35/25 38/10 38/25 41/14 41/18 41/20 42/2 42/2 42/4 42/5

**F**

first... [21]  42/6 44/12 44/19
44/20 45/19 45/24 46/4 50/4
52/12 52/18 55/9 59/18 59/19
61/16 61/23 62/17 67/24 69/1
70/19 98/13 105/23
five [3]  14/19 45/12 71/2
five years [1]  71/2
floating [1]  28/20
floats [1]  29/7
flow [1]  68/24
flowing [1]  55/17
fluids [2]  5/23 6/4
focus [3]  19/24 35/3 69/4
focused [1]  82/11
follow [1]  17/12
following [3]  11/8 11/20
110/18
follows [3]  12/17 73/19 114/13
foregoing [1]  119/4
form [2]  25/16 99/18
former [3]  38/6 63/5 63/16
forms [2]  19/10 19/15
formulation [1]  21/17
forward [2]  74/23 111/5
found [8]  5/22 6/5 6/7 24/23
25/10 25/22 51/18 78/21
foundation [1]  71/25
four [1]  5/9
FOX [4]  1/24 3/15 3/17 78/5
fraction [5]  9/8 9/10 46/7 46/9
46/10
fragment [1]  6/2
fragments [3]  39/9 56/12
81/16
frame [1]  39/8
frankly [1]  115/17
free [56]  5/20 5/23 6/3 6/8 8/2
8/5 8/8 8/11 8/15 8/18 8/21
9/3 9/9 9/25 10/1 10/20 11/7
11/23 27/8 27/12 29/3 29/5
30/8 32/12 34/1 34/2 34/14
34/16 35/5 35/7 39/5 39/6
40/8 41/11 41/14 46/20 48/22
49/14 50/13 50/19 55/13
55/17 56/5 56/13 57/10 60/4
61/6 61/7 61/15 61/15 61/17
61/23 72/20 78/1 103/13
110/19
free-flowing [1]  55/17
frequencies [9]  9/1 10/10
10/11 31/12 31/17 32/2 32/3
55/2 71/22
frequency [5]  8/18 8/23 9/5
9/7 9/8
frequently [1]  19/20
front [5]  88/18 100/21 102/21
107/8 108/11
full [2]  23/9 116/8
fully [1]  43/4
further [4]  25/7 34/13 113/19
114/2
future [1]  88/5

**G**

gaining [1]  4/25
game [1]  115/11
games [2]  95/25 97/20
Garner [1]  15/10

general [2]  23/6 59/22 68/24
generally [2]  23/7 70/3
generate [3]  10/4 27/13 30/16
genetic [70]  9/21 10/6 10/9
31/11 31/15 31/15 32/6 32/14
34/25 36/3 36/8 36/11 36/14
36/15 36/22 37/2 37/3 37/6
37/8 37/12 37/13 37/14 37/20
38/2 38/8 38/9 38/14 38/15
40/18 40/19 41/18 42/1 42/1
42/4 42/25 44/10 44/11 44/16
44/23 45/2 45/22 46/15 47/15
47/16 48/3 48/3 48/5 48/6
49/24 50/18 51/25 52/1 52/2
52/3 52/3 52/8 52/18 54/12
56/12 58/4 62/16 63/3 65/23
65/24 66/2 66/3 66/4 66/13
67/24 70/6
genetically [18]  38/9 38/15
47/17 67/17 68/1 68/8 68/16
69/16 70/2 70/10 70/15 70/18
71/5 71/23 72/6 72/11 73/5
74/5
geno [1]  18/24
genome [6]  6/18 43/13 43/14
43/19 45/3 48/7
genotype [11]  7/9 7/9 7/12
68/14 69/8 70/3 72/25 73/11
73/12 74/5 77/5
genotypes [13]  7/12 10/22
67/17 68/8 69/6 70/15 71/20
72/6 72/11 72/13 72/18 72/24
73/4
genotyping [5]  10/25 14/22
22/5 22/11 23/17
get [48]  4/13 30/15 30/22 36/8
36/9 36/11 36/20 37/14 40/5
42/14 42/16 43/1 44/5 44/5
45/4 46/4 46/10 47/22 47/23
51/7 51/9 51/10 55/23 55/24
57/7 57/7 60/18 60/21 60/24
63/14 65/12 67/10 73/25
74/11 77/14 96/22 99/4 99/5
99/6 99/9 101/25 111/21
114/8 114/23 116/4 117/11
117/14 117/16
gets [1]  5/24
getting [8]  37/11 38/23 42/5
47/12 77/4 97/20 97/21 108/6
give [10]  22/23 27/1 73/23
82/2 82/12 83/21 91/21
114/10 115/17 115/20 108/1
given [3]  13/15 105/20 108/1
gleaned [1]  4/14
go [32]  9/11 10/20 11/9 12/11
15/20 32/24 33/1 38/10 39/2
40/16 41/6 41/9 42/12 42/13
46/13 47/21 55/18 55/25
74/22 74/22 76/3 93/5 100/16
101/9 101/17 104/5 104/16
109/23 112/13 112/24 113/3
115/23
goals [1]  104/3
gobbledygook [1]  29/17
goes [5]  67/2 89/15 114/1
114/5 115/20
going [108]  3/16 11/21 19/14
22/23 25/5 26/16 27/1 27/2
35/22 36/6 36/10 36/13 36/16
37/11 39/2 39/12 39/13 39/18

41/7 41/23 44/1 44/19 45/11
46/24 47/2 51/15 59/18 54/1
54/16 55/1 57/21 60/17 63/14
63/22 66/2 66/15 66/17 66/20
66/21 67/1 67/5 72/22 75/25
77/19 77/24 77/24 79/24
81/22 82/24 83/6 84/21 84/23
85/1 86/9 86/25 87/18 87/20
88/17 89/12 90/9 90/10 96/5
96/20 96/22 97/4 97/7 98/3
98/5 98/16 99/6 99/8 100/1
100/5 100/6 100/7 101/6
101/8 103/1 105/24 106/15
107/11 108/11 108/23 108/24
108/25 109/4 109/6 109/9
109/12 109/13 109/18 109/21
109/22 109/24 110/1 110/4
110/7 110/13 110/14 111/3
111/5 112/14 113/2 113/3
115/23 116/4 116/5 116/8
good [20]  3/6 3/9 3/10 3/22
3/23 4/3 15/12 35/17 35/18
36/6 36/13 55/9 67/14 78/4
99/9 109/6 110/10 114/7
114/7 118/1
got [36]  18/11 18/13 20/21
36/15 39/24 41/21 42/24 44/2
44/4 44/25 45/12 45/25 46/1
46/5 46/6 47/25 48/16 48/19
52/2 52/24 53/2 55/4 55/10
56/9 58/1 61/5 62/3 66/23
75/13 82/7 82/12 85/25 93/17
94/12 102/16 115/1
gotcha [1]  83/3
GOTSHAL [2]  2/6 3/25
gotten [2]  20/18 37/23
graphic [1]  69/18
great [2]  4/1 42/11
greater [1]  69/24
green [1]  7/3
guanine [1]  5/11
guess [6]  71/3 80/7 87/12
88/18 102/17 117/15
guys [2]  66/17 102/23

**H**

HABERNY [3]  1/23 3/14 4/4
had [17]  22/6 24/19 24/25
35/8 42/20 44/8 53/10 67/11
71/1 71/1 71/3 82/6 96/7
100/22 102/12 102/13 114/20
hadn't [1]  22/8
hand [1]  70/1
happen [3]  4/19 4/21 30/18
happening [1]  58/14
happens [1]  64/4
happy [1]  22/20
hard [6]  17/8 19/4 19/5 19/5
19/6 93/3
harmed [1]  98/19
harmful [1]  107/21
has [24]  6/13 7/2 7/3 8/12
15/11 24/13 26/23 28/10 30/1
39/4 40/9 52/24 55/20 70/2
72/9 73/15 75/1 75/22 78/9
78/10 94/9 103/7 108/14
have [166]
haven't [4]  89/24 90/9 102/25
116/3
having [3]  71/17 93/2 111/8

he [4]  3/7
he's [1]  3/7
head [3]  53/15 53/20 95/21
headed [2]  75/16 87/23
healthy [1]  7/23
hear [7]  14/5 14/8 77/8 77/17
87/12 87/24 89/25
heard [3]  25/14 40/3 81/24
hearing [7]  1/11 91/15 91/16
100/6 100/8 100/20 117/12
heavily [1]  8/19
held [1]  5/13
help [1]  87/1
helpful [1]  105/3
helps [1]  55/7
her [6]  50/8 50/10 50/11
50/12 50/17 53/19
here [67]  3/19 8/19 8/22 9/2
9/15 11/13 11/19 11/21 11/22
12/1 12/14 13/18 18/19 25/6
25/24 26/16 27/15 32/18
34/21 35/5 35/22 41/11 54/24
55/18 56/3 56/15 57/23 58/15
61/4 62/25 64/3 64/18 65/5
66/1 66/18 67/15 68/5 68/12
68/17 68/23 69/1 70/17 72/3
72/10 72/12 72/16 72/17 73/9
74/15 74/20 76/16 78/5 78/7
84/21 85/16 86/11 89/13
102/21 102/23 102/25 103/5
104/7 105/5 108/22 110/6
114/14 115/15
here's [19]  5/24 16/23 17/2
27/10 30/6 33/5 33/15 41/12
41/17 42/12 50/17 59/7 66/15
79/20 86/24 94/25 100/5
107/14 114/4
hereby [1]  119/4
hey [1]  57/4
high [4]  10/23 14/3 18/11
18/15
higher [1]  8/4
highlight [3]  104/2 113/18
114/3
highlighted [3]  7/1 68/6 69/22
highlights [2]  104/24 115/21
hindsight [1]  21/9
history [5]  21/15 23/4 25/7
36/4 65/18
hit [1]  65/17
hold [6]  57/9 67/5 96/19 98/15
99/11 102/1
hone [1]  69/12
honestly [1]  21/23
Honor [66]  3/9 3/23 4/3 4/5
4/10 5/7 11/2 11/8 14/7 14/9
14/11 14/12 18/19 22/1 27/7
35/16 59/18 67/6 67/14 68/3
68/6 68/19 69/14 70/12 70/21
71/4 71/9 71/24 78/4 78/16
79/7 82/13 82/18 85/6 88/3
88/5 88/25 90/14 91/19 91/20
91/24 94/11 95/11 95/15
95/22 96/8 99/19 99/24
100/14 100/17 101/13 101/16
102/8 103/2 103/10 104/17
104/17 111/23 112/20 113/9
114/12 116/23 116/25 117/2
117/22 117/24
Honor's [1]  19/24

**H**

HONORABLE [1]  1/15
hope [2]  3/11 107/12
how [47]  3/10 5/24 8/15 13/16
13/25 14/2 15/7 15/10 18/15
25/19 26/5 29/12 31/5 35/20
37/4 40/20 55/15 56/5 58/6
66/18 67/2 69/13 69/19 69/19
71/18 73/25 74/3 74/10 74/13
80/17 80/20 80/21 80/25 84/3
85/1 89/19 90/10 93/19 97/2
98/19 99/22 100/2 106/14
106/24 107/7 107/14 109/14
however [4]  23/23 25/4 25/18
103/20
human's [1]  6/14
hypothetically [1]  70/23

**I**

I'd [8]  69/4 71/9 75/10 77/3
80/25 81/20 84/2 84/25
I'll [5]  9/11 11/9 14/14 99/3
117/8
I'm [68]  3/7 8/6 14/13 17/25
20/12 22/20 22/23 25/5 26/16
26/25 27/2 35/22 39/2 41/7
51/15 51/18 53/18 57/20
59/19 62/11 62/12 63/22
64/16 65/14 66/15 66/17
66/20 66/21 67/1 67/5 76/1
76/7 76/19 77/17 77/23 77/24
78/5 81/5 83/4 84/19 88/16
89/15 89/20 91/1 91/15 91/16
93/16 94/11 95/10 96/5 98/16
98/18 98/24 102/4 102/5
103/4 104/10 105/18 108/6
110/14 112/14 112/14 113/2
113/3 114/5 116/4 116/8
I've [13]  7/5 18/13 48/16
53/16 59/15 64/19 66/23
81/24 82/12 82/23 85/25
85/25 95/22
idea [3]  30/13 79/25 89/14
identified [1]  36/2
identities [1]  70/20
identity [2]  7/9 70/7
Illston [6]  34/23 41/3 50/6
51/18 63/18 65/7
Illston's [1]  35/3
Illumina [9]  20/20 21/11 22/6
22/8 34/17 34/20 34/22 43/16
43/23
illustrate [2]  8/25 68/24
illustrating [1]  8/22
imperfectly [2]  38/14 47/15
implied [1]  87/14
implies [1]  14/24
imply [1]  17/7
importance [1]  71/15
important [10]  5/16 18/3 22/15
29/13 29/15 62/25 64/18
64/22 65/5 100/15
importantly [1]  13/7
imposed [1]  103/7
impossibility [1]  68/25
impossible [6]  29/9 29/10
67/10 68/18 70/17 77/4
improperly [2]  104/2 104/23
improvement [1]  71/15

inaccurate [1]  55/7
inapposite [1]  34/16
INC [2]  1/3 1/6
Incidentally [1]  85/12
inclined [4]  76/1 76/19 90/2
91/17
include [11]  20/4 25/1 26/10
79/5 79/12 85/24 115/7
115/10 115/12 116/15 116/17
included [5]  25/2 60/9 60/12
79/16 86/23
includes [6]  23/5 85/9 86/8
86/21 87/25 88/1
including [4]  18/25 19/2 19/2
86/21
inclusive [1]  19/1
incomplete [1]  48/2
inconsistencies [1]  79/9
inconsistent [7]  30/11 34/9
42/8 78/13 79/5 79/7 98/6
incorporated [1]  13/19
increasing [1]  59/23
incur [1]  103/7
indefiniteness [5]  75/16 76/16
76/24 77/20 78/1
independent [2]  92/4 92/22
indication [2]  24/6 49/8
individual [66]  5/5 6/16 9/22
9/23 10/10 31/11 31/16 31/18
31/24 31/25 32/6 32/15 35/2
35/3 35/7 38/20 41/14 41/16
41/19 41/19 41/20 41/24 42/2
42/3 42/4 42/5 42/6 42/15
44/12 44/17 44/20 45/19
45/25 46/2 46/2 46/4 46/23
46/24 47/1 47/3 52/18 52/19
61/16 61/17 61/24 62/17
62/22 67/18 68/1 68/8 68/16
69/9 69/17 70/2 70/5 70/11
70/16 70/18 71/5 71/6 71/20
71/23 72/6 72/12 73/1 74/5
individual's [5]  7/10 31/6
45/20 55/16 68/15
individuals [13]  6/18 6/25 8/2
28/4 38/8 38/9 38/16 39/13
47/17 48/5 61/8 67/24 73/5
individuals' [2]  9/9 9/24
inferences [1]  9/9
information [23]  4/14 5/1 5/3
5/4 5/5 6/9 6/11 30/16 31/23
32/13 37/15 37/19 37/21
42/22 44/24 45/1 47/23 48/6
65/23 65/25 74/12 89/6 89/8
infringe [1]  73/7
infringement [1]  102/5
inherency [1]  77/25
inherent [1]  104/7
inherently [1]  37/2 76/4
insert [1]  107/7
inserts [1]  27/20
instance [15]  16/5 16/6 26/15
36/4 37/10 39/15 41/21 42/15
43/22 46/3 55/12 67/9 67/23
72/8 73/13
instances [2]  17/21 86/11
instead [1]  22/18
instruct [2]  104/19 114/2
instructed [1]  80/5
instruction [2]  101/25 115/20
instructions [1]  5/4

intend [1]  25/8
intended [2]  24/19 84/19
intent [1]  23/24
intention [1]  26/24
intentionally [1]  24/16
interactions [1]  29/23
interest [13]  35/1 46/22 46/24
69/23 80/10 80/19 80/24 82/1
85/17 90/23 96/10 96/14
98/21
interest.' [1]  91/5
interesting [2]  18/18 67/11
interpret [2]  74/4 74/10 74/14
interpretation [2]  63/24 76/17
interpreted [6]  41/5 41/13
41/14 61/11 64/5 93/20
interpreting [2]  64/10 88/14
intrinsic [3]  13/9 23/23 63/11
introduce [3]  26/13 103/21
105/3
introduces [1]  15/8
introductory [1]  45/18
invalidity [7]  101/24 102/5
104/25 113/19 114/3 114/17
114/19
invention [8]  13/16 24/10
38/11 40/23 41/6 47/14 57/25
109/17
inventive [1]  71/19
inventors [2]  20/3 24/25
involve [3]  52/8 84/16 98/4
is [432]
isn't [1]  19/5
isolate [16]  31/13 32/14 33/9
34/7 36/22 39/20 39/25 43/4
47/19 49/9 49/12 49/18 50/2
55/16 56/5 67/10
isolated [18]  28/6 32/7 33/5
33/17 34/1 34/2 34/5 39/17
39/17 41/15 42/18 48/18
50/19 51/5 52/5 56/12 56/13
56/13
isolating [6]  33/4 33/14 33/18
33/23 34/6 56/11
isolation [11]  33/20 33/21
40/7 40/9 55/20 58/7 58/8
59/7 59/12 59/16 66/8
issue [14]  9/12 35/5 52/6
75/16 76/16 78/17 78/20
78/21 83/25 84/10 91/8 96/25
105/5 108/8
issues [2]  97/8 117/16
it [307]
it'll [1]  29/22
it's [156]
its [15]  14/14 14/15 16/25
22/24 23/12 28/2 34/4 55/9
63/23 78/11 78/11 79/1 104/3
113/19 116/12
itself [2]  13/11 85/11

**J**

JACK [2]  1/20 3/19
Jarvie [4]  19/24 20/16 25/10
25/11
Jarvies [1]  19/15
Jill [1]  63/18
judge [14]  1/15 34/23 35/3
41/3 50/4 50/6 51/18 65/7
88/14 88/15 95/23 108/16

108/20 109/19
Judge Illston [3]  34/23 41/3
50/6 51/18 65/7
Judge Illston's [1]  35/3
Judge Norieka [1]  95/23
Judge Stark [3]  108/16
108/20 109/19
jump [1]  76/9
jury [21]  79/24 82/25 83/3
83/7 87/7 87/17 87/18 88/18
88/22 88/25 95/2 101/25
104/18 104/19 104/23 104/25
105/19 107/8 108/12 114/3
115/20
jury's [1]  86/25
just [117]  8/25 10/11 12/6
14/25 16/15 19/9 20/1 22/19
23/18 24/19 25/12 25/14
28/11 29/16 29/22 29/25
29/25 30/1 30/5 30/12 31/4
31/7 32/22 32/25 32/25 34/15
35/5 35/10 43/7 45/25 52/12
53/8 53/20 55/6 55/8 59/9
59/22 60/2 61/1 61/17 62/10
62/21 64/7 66/17 67/2 70/22
72/19 73/19 75/2 75/2 76/21
81/5 81/9 82/21 82/22 84/5
85/25 86/1 86/7 87/16 87/17
87/18 87/22 88/11 88/11
88/16 88/20 89/5 89/8 90/2
90/7 90/11 90/17 91/10 91/17
92/7 93/13 93/21 94/8 95/1
95/3 95/5 95/22 96/10 96/11
97/1 97/3 97/8 98/19 98/24
98/25 101/7 104/13 104/23
105/18 106/5 106/7 106/12
106/13 107/12 109/21 109/23
110/7 111/21 112/14 113/15
114/6 114/10 115/2 115/12
115/16 115/19 115/23 116/1
116/9 117/8 117/13

**K**

keep [2]  49/14 105/19
key [1]  85/15
kind [16]  5/20 19/13 20/2
22/12 22/13 39/1 39/14 39/16
51/17 90/4 95/9 96/1 96/7
97/20 99/16 115/15
kinds [1]  28/19
King [1]  1/13
knew [1]  21/4
know [96]  15/3 15/6 15/10
15/25 17/7 18/15 19/1 19/2
19/4 19/5 19/9 20/6 20/12
20/20 20/21 20/23 21/5 21/7
21/14 21/18 21/19 23/7 28/5
31/2 32/9 34/18 35/10 38/19
40/3 40/16 43/24 47/21 49/24
51/11 51/11 51/14 51/25 53/5
53/9 53/16 56/3 58/4 61/17
62/5 66/19 69/8 69/9 69/11
71/20 72/25 73/11 74/10
74/13 75/10 75/12 75/13 77/3
77/5 80/17 80/25 81/20 84/3
85/1 86/25 87/5 87/22 89/10
89/10 89/15 90/3 90/25 90/16
94/3 95/20 97/2 104/20
104/24 105/15 107/12 108/14
109/16 109/19 109/21 110/7

## K

know... [12]   110/13 113/23
113/25 114/18 114/20 114/23
114/24 115/3 115/8 115/11
115/12 117/11
know, [1]  38/24
know, relates [1]  38/24
knowing [2]  73/16 77/5
knowledge [21]  11/20 48/10
67/17 68/7 68/9 68/14 68/21
70/17 71/5 71/7 71/13 71/17
72/5 72/11 73/4 73/7 73/24
74/4 75/11 75/23 76/10
known [8]  13/22 13/25 16/1
28/14 36/19 38/15 47/16 69/6
knows [3]  5/7 21/8 29/11

## L

lab [1]  79/13
label [1]  11/18
labeled [2]  11/22 12/1
lacks [1]  71/25
language [31]  13/7 13/10
13/11 15/7 25/3 25/20 27/21
30/6 30/7 32/10 41/17 44/18
46/17 47/4 48/19 50/16 51/15
55/6 57/6 62/16 63/23 68/4
70/19 73/20 74/13 74/15 75/8
88/14 88/18 98/8 98/24
largely [1]  14/23
last [4]  11/21 70/23 82/11
91/3
Lastly [1]  79/11
late [2]  39/8 100/9
later [4]  28/2 60/21 71/2 77/21
latter [4]  38/5 51/12 63/5
63/16
law [3]  41/6 62/7 102/2
lawyer [1]  102/13
lay [1]  79/24
layman [1]  76/8
leading [2]  22/18 22/18
leads [1]  62/21
least [14]  17/21 20/3 26/1
34/25 43/24 43/25 57/16
67/22 84/4 94/9 94/12 94/19
103/16 110/25
leave [3]  87/18 102/23 103/5
leaves [1]  83/25
leaving [1]  30/8
led [1]  34/18
left [2]  7/24 70/8
legal [1]  15/7
length [1]  69/2
less [3]  12/8 20/13 94/17
let [6]  18/17 59/9 66/21 76/23
107/3 112/2
let's [16]  14/8 15/20 35/25
40/16 41/9 47/5 52/10 58/21
65/22 70/25 77/23 84/4 84/5
104/13 115/2 116/9
level [1]  14/3
lexicographer [1]  23/8 23/13
lexicography [3]  17/7 23/10
90/5
lie [2]  98/10 100/9
life [2]  8/20 8/23
light [3]  19/6 19/25 62/14
like [37]  3/7 4/6 4/10 6/8 16/9

16/10 18/25 19/13 20/1 20/2
20/18 22/12 22/19 35/23
42/24 43/24 45/2 45/4 63/25
68/21 69/4 70/22 71/9 75/10
80/8 80/16 80/25 81/20 84/3
84/25 89/4 89/6 89/14 93/18
95/24 96/5 114/24
likely [17]  10/9 31/10 31/15
32/5 32/14 42/3 42/9 42/10
42/11 42/19 44/10 44/11
44/23 44/24 45/16 46/15
60/17
limit [3]  15/4 92/15 92/15
limitations [3]  27/21 31/10
78/13
limited [15]  36/24 37/3 37/5
37/8 38/2 44/24 46/2 46/5
46/6 102/20 109/20 110/8
111/15 112/5 117/10
line [6]  61/4 86/25 88/6 89/20
102/18 105/9
Lines [1]  59/11
Lines 25 [1]  59/11
linguistic [1]  21/16
listen [1]  88/13
literally [3]  13/5 30/12 114/20
litigate [1]  103/8
litigating [1]  88/17
litigation [3]  78/22 100/25
104/3
litigators [1]  66/18
little [15]  15/1 22/6 35/20 36/8
36/11 36/15 36/20 42/21
42/25 42/25 44/4 51/15 77/8
77/17 84/19
LLP [3]  1/22 2/4 2/6
locations [1]  30/21
loci [85]  6/24 10/2 10/3 10/7
10/13 10/22 11/24 12/2 12/3
27/12 31/2 34/25 46/20 46/23
47/1 60/4 69/15 69/21 69/22
69/23 69/25 72/18 72/25 79/6
80/6 80/10 80/12 80/16 80/19
80/22 80/23 80/24 81/1 81/4
81/11 82/1 84/2 84/16 85/17
85/19 85/20 86/9 88/8 90/23
91/5 92/4 92/6 92/7 92/11
92/14 92/19 92/21 93/10
93/24 94/3 94/4 94/7 94/13
94/18 96/10 96/13 96/18 97/3
97/12 97/23 98/4 98/21 98/23
99/13 103/14 103/15 103/16
105/7 105/12 105/17 105/23
105/25 106/4 106/14 107/16
110/20 110/24 110/25 113/13
113/13
locus [12]  7/1 7/7 46/21 79/9
81/2 81/8 93/10 93/24 94/20
94/21 95/14 96/11
logical [1]  21/6
long [3]  11/24 14/19 34/8
look [26]  8/17 15/24 20/3
21/10 39/22 39/23 42/13
45/18 47/10 50/10 54/21
55/19 57/9 59/9 63/12 63/22
65/22 77/15 82/21 86/24
88/18 102/4 102/6 107/4
107/16 109/14
looked [3]  10/11 50/9 72/19
looking [7]  7/11 8/20 24/1

24/11 47/5 91/1 91/22
loop [2]  82/5 105/10
looks [2]  33/6 96/5
lot [4]  22/4 39/18 39/19 66/19
lots [1]  28/17
Loughrin [1]  18/18
low [2]  42/24 43/1
Luke [1]  3/20
Luke Burton [1]  3/20

## M

made [6]  5/9 6/9 18/5 38/14
47/16 73/13
magnet [1]  29/6
magnetic [2]  29/4 29/5
main [3]  19/7 39/18 39/20
majority [1]  69/24
make [45]  5/4 14/15 36/22
37/19 38/3 39/18 40/17 43/22
44/6 44/9 44/14 49/15 54/23
54/25 55/1 57/23 63/9 71/21
71/22 74/21 76/2 77/16 78/24
80/11 84/23 87/19 90/1 91/17
98/11 105/1 107/11 109/1
109/4 109/6 109/18 109/21
109/22 109/25 110/1 110/4
110/7 111/3 114/15 114/17
116/2
makes [9]  5/5 6/16 44/7 44/8
48/4 50/25 51/1 65/8 117/23
making [2]  3/17 20/12 73/9
89/20
male [5]  30/22 52/23 54/5
54/13 54/13
males [1]  54/11
MANGES [1]  2/6
many [8]  6/6 9/16 12/25 36/19
66/18 103/21 112/1 112/2
margin [1]  25/1
marking [1]  76/4
Markman [4]  1/11 3/18 99/6
101/8
material [27]  9/18 36/3 36/9
36/10 36/11 36/15 36/22
36/24 37/3 37/12 37/13 38/3
42/25 45/3 47/7 50/18 52/3
52/4 55/14 56/13 66/3 66/3
66/4 66/13 66/13 67/24 70/6
maternal [16]  33/6 33/6 39/10
49/16 49/17 49/20 49/23
50/19 51/2 51/8 51/10 51/12
51/22 56/1 65/10 66/3
math [5]  40/21 40/22 40/23
42/12 42/13
matter [2]  17/11 66/9
matters [1]  108/4
may [14]  4/8 6/19 6/25 7/8
14/9 44/8 60/11 62/14 65/24
79/12 82/18 88/4 91/20
103/11
maybe [10]  8/24 11/2 21/21
45/11 75/12 91/15 91/21
102/23 115/6 117/4
McCarthan [1]  15/6
me [43]  3/14 3/24 17/12 18/17
35/19 44/8 49/8 49/10 49/11
49/12 53/5 53/17 59/9 59/15
67/8 74/7 75/2 76/9 76/11
76/20 77/8 82/2 82/3 82/5
82/12 83/21 84/22 87/12 90/1

90/15 91/17 92/24 100/21
107/3 107/8 108/10 112/2
115/11 115/17
mean [45]  14/5 17/20 19/6
20/19 32/18 33/10 33/20
33/22 40/1 42/9 48/15 48/16
48/18 48/20 48/22 49/7 50/9
52/14 53/9 57/9 61/10 61/13
67/10 75/9 76/3 76/17 76/19
85/13 86/1 86/3 86/21 87/11
87/22 88/15 88/16 88/22
89/14 91/9 91/10 92/13 93/17
93/23 93/25 105/18 108/10
meaning [46]  12/20 13/2 14/6
22/24 23/1 27/1 27/16 28/8
28/10 28/13 28/14 62/12
63/21 64/6 64/10 64/13 68/11
74/18 77/25 78/10 79/1 79/18
83/10 95/2 95/4 95/7 96/1
102/10 102/22 103/19 103/20
103/25 106/21 107/13 109/24
112/25 113/3 113/16 113/17
114/8 115/1 115/4 115/7
115/9 115/24 116/22
means [58]  5/14 24/5 27/16
28/1 28/4 28/11 28/16 28/22
74/7 78/15 83/8 85/22 87/1
87/21 92/11 94/8 104/20
105/25
meant [1]  30/4
measure [11]  8/15 36/12
36/12 47/20 49/4 49/21 49/23
51/8 69/9 69/16 71/21
measured [7]  37/2 38/14
38/22 47/15 49/16 51/3 65/10
measurement [5]  38/3 42/23
48/9 48/9 69/20
measurements [7]  33/16
36/25 45/10 45/12 45/13
45/16 65/24
measuring [9]  10/18 10/23
37/25 38/4 67/21 69/7 69/10
72/7 77/12
mechanism [1]  100/13
mediated [2]  13/23 13/24
medical [1]  38/12
Medicines [3]  15/3 17/17 27/3
meet [11]  83/15 83/18 90/16
91/7 94/5 101/20 101/23
102/16 109/8 114/13 117/3
mention [2]  24/12 63/6
mentioned [1]  5/21
mess [1]  29/22
met [1]  18/19
method [24]  11/19 24/9 38/7
41/18 48/8 54/2 60/3 67/16
68/7 68/13 68/18 68/19 68/24
70/14 71/12 72/5 72/7 73/3
73/10 73/10 73/20 74/3 74/3
75/21
methods [5]  24/18 25/12
37/24 71/16 77/11
might [13]  11/2 19/8 36/17
64/6 75/15 76/15 76/15 82/21
88/1 89/5 89/18 107/10 110/2
millions [1]  8/21
mind [3]  89/21 90/3 105/19
mindset [1]  82/12
minute [1]  82/12

**M**

mix [1]  7/18
mixed [21]  9/23 31/24 32/2
49/23 52/9 52/10 52/14 52/20
52/22 52/23 52/3 52/25
54/10 54/11 55/3 55/10 55/17
61/18 61/19 61/20 72/20
molecular [1]  29/23
molecule [3]  5/3 5/9 12/22
molecules [8]  28/5 28/5 30/16
32/7 32/7 32/12 32/16 32/23
monitor [1]  7/20
month [1]  66/18
months [1]  20/1
more [56]  4/17 7/15 8/5 8/8
10/24 11/7 11/23 11/24 12/7
15/1 15/8 20/13 21/5 22/16
24/18 31/25 38/14 39/2 40/16
40/17 41/7 47/16 48/10 69/15
69/20 83/11 83/23 84/6 85/9
85/13 85/22 86/1 86/3 87/7
87/9 89/5 89/8 93/10 94/21
96/9 96/13 96/13 97/13 98/20
98/21 99/16 101/11 101/12
102/16 103/13 103/14 105/3
110/19 110/20 112/14 113/7
morning [11]  3/6 3/9 3/10 3/22
3/23 4/3 35/17 35/18 67/14
78/4 90/17
MORRIS [2]  1/19 3/13
most [26]  5/8 10/9 16/10
16/12 20/4 31/10 31/15 32/5
32/14 42/3 42/9 42/10 42/10
42/19 44/10 44/11 44/23
44/24 45/16 46/15 62/25 64/3
64/18 64/21 64/22 65/5
mother [27]  37/11 37/12
37/17 37/17 37/18 39/10
39/13 46/3 47/21 47/22 47/24
52/1 52/4 55/12 55/14 57/8
58/2 60/20 60/22 63/4 63/15
71/1 72/23 73/12 73/17 77/6
77/14
mother's [17]  4/20 33/17
33/24 34/1 34/2 34/6 34/7
36/18 36/21 39/17 39/25 40/1
40/5 46/5 46/8 46/11 56/14
motivation [1]  101/22
motives [1]  98/17
move [2]  18/17 81/23
moved [1]  95/24
moving [1]  11/18
Mr. [2]  3/7 3/22
Mr. Blumenfeld [1]  3/7
Mr. Farnan [1]  3/22
Ms. [2]  3/17 3/17
Ms. Clark [1]  3/17
Ms. Fox [1]  3/17
much [11]  8/12 8/12 8/15 8/24
11/7 12/8 20/21 21/5 29/17
36/9 66/16
multiple [35]  43/15 43/19
43/20 54/10 54/11 54/18 56/9
79/6 80/9 80/12 80/18 80/22
81/25 84/1 84/2 84/10 84/14
84/17 84/24 84/25 85/2 85/13
85/15 85/16 85/22 85/23 86/1
86/3 86/9 86/9 88/7 94/6 94/7
98/7 100/23

**N**

name [1]  78/4
name's [1]  67/15
namely [1]  48/8
narrow [3]  13/1 14/13 101/20
narrowly [1]  39/22
NATERA [28]  1/3 3/14 3/20
4/4 12/20 19/9 20/18 23/12
23/24 24/16 25/17 26/7 26/13
26/24 27/15 34/11 34/11
34/22 67/15 68/11 78/5 78/9
79/17 96/8 96/15 103/9
103/18 113/16
Natera's [4]  25/8 27/2 68/3
108/17
natural [1]  18/21
naturally [1]  7/24
nature [1]  37/2
necessarily [4]  9/18 61/10
84/16 114/6
need [40]  29/24 32/23 35/24
36/8 58/4 61/9 61/12 62/5
62/6 62/7 62/23 63/8 63/10
63/17 63/18 79/1 79/9 79/14
85/9 86/8 87/19 99/20 103/23
106/21 107/10 107/12 109/18
109/21 110/3 110/7 110/21
111/3 111/4 111/6 111/17
111/25 112/3 116/19 116/20
117/7
needs [2]  89/23 90/7
negatives [1]  112/1
never [3]  54/12 80/21 81/24
new [7]  78/21 97/6 97/21
97/21 98/10 98/13 99/6
next [9]  27/6 27/8 67/13 67/16
78/3 78/6 103/3 103/10
103/12
NICHOLS [2]  1/19 3/13
night [1]  70/23
nine [1]  94/3
no [46]  1/4 19/14 19/16 19/18
21/12 24/6 26/20 28/2 32/23
35/14 40/4 41/1 43/5 43/5
53/4 53/4 53/23 56/4 57/9
61/2 61/14 62/11 63/10 64/21
67/9 71/12 81/12 82/19 83/18
88/3 89/14 95/1 96/17 100/1
100/1 100/1 106/17 109/13
109/13 109/13 110/9 111/10
111/23 112/7 116/25 117/2
Nobody [1]  29/11
nodding [1]  53/9
noise [3]  42/23 44/3 48/7
noisy [23]  36/16 36/25 37/2
37/6 37/9 37/14 37/22 38/1
38/2 38/5 38/8 38/21 38/24
46/12 46/12 46/16 47/20
47/25 48/2 51/9 58/5 60/19

**65/24**

hun [1]  37/14
non-noisy [1]  37/14
none [4]  19/6 28/7 28/25
30/23
nonsensical [1]  68/21
Norieka [1]  95/23
normal [1]  76/20
normally [1]  85/18
Northern [1]  34/23 50/6 63/19
65/7
not [184]
notable [1]  35/19
notably [2]  72/19 78/16
note [1]  9/16
notes [1]  119/5
nothing [11]  19/5 30/6 42/7
52/24 55/4 55/10 60/8 60/12
60/14 74/12 114/20
noting [1]  46/19
notion [3]  31/20 60/25 97/1
now [33]  19/4 21/10 25/14
30/15 39/1 49/6 53/15 57/13
60/1 65/14 65/17 66/21 69/1
69/7 69/11 73/23 75/12 77/24
78/22 80/5 90/3 91/1 94/17
96/5 97/9 98/20 101/17
102/19 102/23 104/5 108/24
111/8 116/9
now-definition [1]  98/20
nuance [1]  19/11
nucleic [5]  83/11 83/23 84/6
87/8 101/12
nucleotide [1]  6/21
nucleotides [2]  13/23 13/25
nucleus [1]  5/8
nullifies [1]  17/5
nullifying [1]  17/10
number [6]  11/19 11/22 12/1
26/19 54/18 71/1
Number 1 [1]  71/1
Number 4 [1]  11/22
Number 5 [1]  11/19
Number 6 [1]  12/1
numerous [1]  85/13
nutrients [1]  6/6

**O**

object [3]  85/7 86/17 115/2
objected [1]  90/18
objecting [3]  86/19 87/12
87/24
objection [3]  85/5
objections [1]  91/16
objects [5]  115/5 115/5 115/8
115/10 115/13
obtain [1]  48/11
obtained [1]  58/7
obtaining [1]  71/13
obtains [1]  10/6
obvious [1]  75/2
obviously [3]  14/15 15/3 78/1
occurs [2]  14/1 69/5
off [6]  23/21 34/13 59/18 67/5
95/21 117/9
offer [4]  90/13 95/2 100/9
102/10
offered [8]  87/1 89/3 89/5
89/23 90/1 90/17 91/11 95/9
Official [1]  119/8

**65/24**

Often [1]  22/13
oh [5]  22/19 90/4 50/13 95/6
106/7
okay [114]  3/8 3/21 4/2 11/11
12/10 16/7 16/19 17/18 19/17
22/21 35/15 36/16 39/5 39/22
40/21 40/24 41/9 41/21 41/23
41/24 42/5 42/10 42/20 44/25
45/8 45/11 46/17 47/1 50/24
51/13 51/19 52/15 52/23
52/25 53/8 53/11 53/18 53/22
53/25 54/8 55/24 57/1 57/13
57/19 59/10 59/22 61/22 63/2
64/3 64/9 65/4 65/21 66/5
66/14 67/4 67/12 71/8 72/9
72/12 72/21 73/18 74/11
74/14 74/24 75/5 75/10 75/11
75/18 75/24 76/13 76/22
77/23 78/2 79/23 80/13 81/5
82/11 82/16 82/17 83/13
83/20 84/4 84/10 86/5 91/19
91/23 93/6 99/2 99/20 99/22
100/4 101/17 103/9 103/17
105/4 106/18 107/7 108/9
108/13 109/6 109/11 109/25
111/7 111/11 111/16 112/21
113/2 114/22 116/14 116/18
116/24 117/3 117/21 117/25
old [2]  71/16 75/2
omits [1]  84/9
omitted [1]  20/5
one [117]  4/17 6/16 6/24 7/15
8/14 9/2 10/3 10/20 10/24
11/20 12/15 13/2 13/3 13/4
14/17 14/23 17/4 19/12 19/19
20/1 20/5 20/7 20/15 20/17
26/1 26/2 26/4 26/8 27/10
27/18 28/1 28/6 29/4 29/10
30/4 30/7 30/17 31/2 31/6
31/23 31/25 33/10 33/15
34/10 36/14 38/10 38/21
40/14 40/17 40/21 45/13
47/12 48/10 49/5 54/6 54/7
54/13 54/16 55/16 56/5 59/21
62/21 63/2 69/15 69/20 69/23
81/12 82/8 83/11 83/22 84/6
85/9 85/14 85/19 85/22 86/1
86/4 86/12 87/7 87/9 88/8
88/9 90/19 90/22 91/19 92/1
92/23 93/10 93/23 94/4 94/17
94/19 94/21 94/22 95/13 96/9
96/11 96/13 96/13 96/18 97/1
97/3 97/13 98/20 98/21 99/16
101/11 101/12 103/8 103/21
104/20 112/11 112/14 113/7
114/2 115/13 115/13
ones [3]  17/25 52/22 88/19
only [35]  6/22 8/11 13/2 13/4
13/5 16/13 16/15 20/7 21/25
23/6 24/11 25/15 26/11 29/10
29/25 30/21 30/22 31/6 31/14
31/18 37/5 43/3 44/7 45/7
63/2 66/7 70/7 78/19 81/11
88/16 88/17 91/13 95/13
102/20 115/13
open [1]  92/10
open-ended [1]  92/10
opine [1]  66/22
opinion [2]  50/12 73/8
opportunity [1]  96/7

## O

oppose [2] 98/12 108/21
opposed [3] 24/8 54/5 56/16
opposing [1] 47/7
orally [1] 19/9
order [10] 8/24 11/9 11/13
12/5 29/15 45/4 48/11 50/10
82/6 103/12
ordered [1] 6/10
ordering [1] 11/3
ordinary [56] 12/20 14/6 22/24
23/1 23/2 24/4 24/8 27/1
27/16 28/8 28/10 28/13 28/14
48/21 49/2 62/12 62/14 63/21
64/10 64/13 68/11 74/18 76/8
77/25 78/9 78/14 79/1 79/18
83/1 83/4 83/10 85/3 95/1
95/3 95/7 96/1 102/10 103/19
103/20 103/25 106/16 106/21
107/13 109/16 109/23 112/25
113/3 113/16 113/17 114/7
115/1 115/4 115/7 115/9
115/24 116/22
organ [12] 4/22 4/23 7/20
7/21 7/22 8/3 8/4 8/5 8/7 8/12
67/25 68/2
origin [3] 52/23 52/23 72/21
originally [2] 21/16 41/2
originating [1] 4/17
other [49] 5/22 6/4 6/5 6/6
10/3 16/9 16/20 17/11 17/21
19/10 19/15 19/20 19/23
20/10 21/3 22/1 22/2 22/4
22/10 22/11 22/19 24/9 28/13
28/23 29/11 30/8 30/15 32/7
40/15 44/10 44/20 66/4 69/20
70/1 77/2 79/13 88/1 88/6
88/7 88/14 96/13 96/25 104/1
105/16 105/17 107/12 115/1
115/13 115/14
others [6] 11/7 12/7 88/19
104/4 104/21 112/12
otherwise [1] 106/20
our [19] 5/4 19/18 35/5 41/12
42/7 48/25 50/3 64/12 71/17
72/14 73/8 73/8 80/20 86/11
90/19 98/7 98/12 100/25
101/10
our's [1] 85/2
ourselves [1] 25/4
out [36] 9/2 9/5 10/12 20/8
27/23 30/13 32/8 32/17 32/23
33/1 36/6 43/12 49/12 53/10
53/24 54/3 54/12 55/6 67/3
71/10 76/9 77/13 83/25 89/2
89/19 94/3 94/4 94/22 98/16
98/18 98/25 101/6 102/24
107/14 117/7 117/20
outcome [1] 17/9
outset [1] 53/13
outside [1] 5/22
over [25] 47/7 47/11 47/11
47/11 48/1 48/1 48/13 48/13
51/21 51/21 51/21 51/23
51/23 51/23 56/7 56/7 56/7
57/6 57/6 57/7 71/15 78/18
91/20 99/8 102/22
overcome [1] 36/1
overlap [1] 10/17

oversimplified [2] 8/20 69/18
overstated [1] 27/3
overview [2] 4/12 11/1
overwhelming [3] 62/13 63/1
65/6
overwhelmingly [3] 61/3 63/13
77/10
own [2] 14/15 23/12

## P

page [4] 24/24 25/23 90/24
91/2
Page 1365 [1] 24/24
Page 878 [1] 25/23
Page 88 [1] 91/2
pair [3] 6/25 85/19 85/19
pairing [1] 5/14
pairs [16] 103/15 103/23
106/21 107/4 107/15 107/15
108/1 108/3 110/21 111/12
111/17 111/25 112/3 112/9
112/15 112/18
paper [1] 21/14
papers [1] 19/8
paragraph [1] 14/17
parent [3] 37/21 40/19 42/15
parental [1] 51/12
parents [1] 65/24
parents' [1] 48/9
part [15] 9/14 13/9 37/18
58/12 58/25 59/21 59/25 60/3
64/25 67/7 101/19 106/10
106/13 106/19 114/12
participle [1] 57/15
particle [1] 25/1
particular [22] 4/16 6/19 24/24
25/10 25/23 43/13 43/19
46/22 46/23 54/9 60/5 61/16
77/13 80/10 80/19 80/24 82/1
85/16 90/23 91/5 104/2
113/18
Particularly [1] 79/4
parties [7] 17/15 20/15 24/22
25/21 46/23 68/10 100/24
partly [1] 16/16
parts [7] 6/15 83/11 83/23
84/6 87/8 87/10 101/12
passage [1] 60/1
past [4] 57/15 73/21 74/1
74/15
patent [78] 9/12 9/13 9/14
9/15 9/17 9/20 10/14 12/16
13/1 13/20 15/14 16/21 16/22
17/21 22/13 27/11 31/5 34/24
35/12 35/12 35/13 36/1 37/1
37/4 37/7 37/25 38/11 39/3
39/14 39/24 40/4 40/6 40/6
40/12 46/21 47/4 49/3 49/3
49/25 50/8 52/20 52/25 54/2
54/22 55/20 56/1 56/7 57/2
57/24 57/25 58/6 59/6 60/18
60/23 66/11 67/19 71/2 71/3
71/19 71/25 72/19 77/9 77/9
77/11 78/8 78/12 78/17 78/18
78/19 78/23 79/21 79/25 82/7
88/22 107/5 107/23 108/24
113/12
patentee [5] 13/14 23/7 23/8
34/4 34/5
patentee's [1] 13/15

patents [26] 5/19 9/12 10/15
12/4 15/7 32/7 32/20
34/12 35/21 40/17 40/22
40/23 47/11 49/2 55/2 56/4
63/13 66/12 88/6 88/7 107/17
108/15 108/18 109/1 109/10
109/20
pay [3] 100/7 102/21 110/3
PC [1] 84/5
PCR [117] 10/21 11/21 11/23
29/20 30/19 30/20 40/9 55/21
55/24 58/13 60/24 69/2 78/6
78/7 78/10 78/15 78/17 78/25
79/5 79/8 79/12 79/13 79/14
79/16 79/18 79/20 79/22
79/24 80/9 80/14 80/18 81/6
81/8 81/9 81/10 81/16 81/18
82/6 82/11 82/25 83/2 83/7
83/10 83/22 84/1 84/14 84/16
85/8 85/8 85/11 86/7 86/13
86/21 86/22 86/23 87/1 87/7
87/7 87/9 87/18 87/25 88/7
88/8 89/1 89/8 89/11 89/22
91/14 91/14 92/6 92/9 92/12
92/14 92/19 92/22 92/23
93/11 93/13 93/13 93/13
93/14 93/21 93/23 93/25 94/2
94/3 94/21 94/22 94/23 96/12
97/2 97/9 97/15 97/17 98/20
99/14 99/15 99/16 99/16
99/17 99/18 101/11 103/5
103/13 103/15 105/6 105/20
106/25 107/4 107/22 110/18
110/19 113/20 113/24 116/11
116/15 116/16
PCR' [1] 91/4
people [5] 20/10 20/18 22/3
36/21 67/22
percent [6] 6/15 8/25 9/4 9/6
31/17 70/11
perfect [2] 111/2 111/4
perform [3] 70/8 81/25 109/16
performance [2] 75/4 75/22
performed [18] 11/19 67/16
68/7 70/14 72/5 73/4 73/21
73/21 73/25 74/2 74/3 74/6
74/7 74/8 75/7 75/21 75/22
76/11
performing [3] 10/21 69/2
94/2
person [24] 4/18 6/12 6/13 7/2
7/3 7/11 7/17 13/20 30/17
49/1 62/13 66/10 67/20 67/25
68/1 78/14 82/22 82/22 83/1
83/4 84/15 85/3 98/9 109/15
person's [13] 7/15 10/12
27/18 27/18 28/1 29/11 29/11
30/4 30/7 30/8 31/13 33/11
56/5
persons [2] 12/23 28/15
perspective [1] 21/19
persuasive [1] 27/4
pertains [1] 72/10
PH.D [1] 1/23
Pharmaceuticals [1] 24/23
phone [1] 99/5
phrase [1] 57/14
physically [6] 29/8 29/10
31/13 32/25 55/15 67/9
picture [1] 7/1 43/21

piece [2] 20/15 43/18
pieces [1] 6/8
pivots [1] 28/2
place [1] 107/8
places [1] 6/18
plain [49] 12/20 14/5 17/1
22/24 23/1 27/1 27/15 28/8
28/10 28/13 28/13 30/9 62/10
62/11 63/21 64/10 64/12
68/11 73/20 74/17 75/2 77/24
78/9 79/1 79/18 83/10 95/1
95/3 95/7 96/1 102/9 103/18
103/20 105/16 106/20 107/13
109/23 112/24 113/3 113/16
113/17 114/7 115/1 115/4
115/7 115/9 115/24 116/22
117/14
plainly [2] 17/3 24/25
plaintiff [4] 1/4 1/25 117/16
117/19
plaintiffs [1] 117/9
plasma [4] 28/24 28/24 29/2
29/7
play [1] 95/25
played [1] 107/14
please [12] 3/6 4/7 4/11 11/12
14/10 82/13 82/17 92/2 92/24
93/3 93/8 110/16
plurality [35] 10/2 10/7 10/13
12/2 12/3 27/12 34/25 46/20
60/4 80/6 80/16 80/23 81/4
81/11 81/21 84/2 84/16 92/4
92/6 92/7 92/13 92/21 93/9
93/24 94/22 96/18 97/2 97/12
97/23 98/4 98/23 99/7 99/13
113/12 113/13
point [36] 8/22 14/5 18/2 18/4
18/8 19/19 29/9 33/2 37/24
40/12 40/17 41/8 41/10 41/25
47/6 48/24 49/1 49/15 50/3
50/3 51/7 51/24 53/10 55/3
59/10 59/15 59/19 60/10 65/1
69/5 71/10 72/24 74/11 75/3
75/21 88/20
pointed [1] 52/21
pointing [3] 55/6 76/20 89/2
points [6] 13/5 33/12 34/17
56/4 63/2 76/13
polymerase [2] 13/23 13/24
polymorphic [2] 7/6 27/12
polymorphism [2] 6/20 6/22
polymorphisms [2] 6/19 7/10
popped [1] 108/14
population [1] 30/16
portion [1] 68/6
POSA [4] 56/5 78/25 79/11
79/15
posit [1] 67/2
position [3] 66/25 68/3 90/2
possible [3] 7/6 26/8 30/15
31/7 55/15
potential [1] 17/5
practice [2] 24/9 71/3
practiced [2] 71/2 75/3
practicing [5] 92/12 92/22
94/4 94/20 94/23
precedes [1] 65/3
precious [1] 22/16
precise [2] 38/14 47/16
preclude [2] 84/11 84/12

P

preclude... [1] 96/10
prediction [1] 38/13
pregnant [10] 4/20 30/20
36/19 39/6 39/7 39/11 40/8
46/7 47/19 47/20
preliminary [1] 29/25
premise [1] 45/17
preparation [1] 12/17
prepare [2] 100/7 101/2
prepared [4] 4/5 4/11 68/23
96/3
preparing [1] 4/24
presence [1] 35/2
present [12] 4/15 7/16 7/22
8/5 9/24 37/8 44/21 48/23
67/21 68/15 69/24 71/16
presentation [2] 69/3 69/12
preserve [3] 76/23 77/1 77/20
presumably [4] 24/20 87/2
87/20 117/8
presuming [1] 89/15
pretty [2] 50/9 53/15
previous [2] 60/8 60/11
previously [2] 50/7 109/19
primarily [2] 26/5 73/19
primed [1] 13/24
primer [32] 81/17 86/12 88/9
97/1 97/3 103/15 103/23
103/23 106/21 106/22 107/4
107/15 107/25 108/3 108/19
109/11 110/21 110/21 111/12
111/13 111/17 111/18 111/25
111/25 112/3 112/4 112/9
112/10 112/15 112/16 112/18
112/19
primers [44] 40/10 55/21
58/13 79/12 80/9 80/12 80/15
80/18 80/24 81/17 81/18
81/21 81/25 84/1 84/2 84/10
84/14 84/17 84/24 84/25 85/3
85/9 85/9 85/16 85/19 85/19
85/23 86/8 86/9 86/22 88/7
94/7 96/13 98/20 101/11
107/15 107/18 108/19 108/25
109/10 109/15 109/15 109/17
110/9
principles [1] 102/6
prior [15] 11/20 15/1 26/2
50/20 67/17 68/7 68/9 71/5
71/7 71/15 72/5 73/4 74/4
75/22 76/10
priority [4] 19/25 20/2 34/12
65/20
probabilistic [1] 42/17
probably [5] 5/7 12/8 34/18
53/12 82/9
probative [1] 25/10
problem [9] 18/6 21/8 35/25
37/4 81/23 108/4 110/11
114/16 117/19
proceed [1] 117/13
proceeding [2] 103/11 119/6
proceedings [4] 3/3 106/6
106/8 118/2
process [22] 5/25 28/21 28/22
29/14 30/23 42/14 46/14
46/15 47/12 48/11 49/4 58/12
58/13 59/7 59/23 60/9 62/17

69/19 69/20 74/11 86/23
107/20
processed [1] 31/18
processes [1] 5/19
processing [1] 33/1
producing [1] 34/24
products [17] 10/4 10/5 16/21
27/14 30/22 103/24 106/22
107/21 108/20 109/11 111/13
111/18 112/1 112/4 112/10
112/16 112/19
proffered [3] 87/13 100/2
102/12
proffering [1] 80/8
prone [3] 43/2 43/3 43/7
pronoun [1] 58/21
pronounced [1] 6/22
proportion [1] 10/12
proposal [10] 27/19 31/8
32/17 68/12 68/25 83/14
86/18 100/20 106/19 110/17
propose [3] 11/8 100/12
100/17
proposed [15] 11/14 70/12
71/11 71/24 78/9 78/11 78/13
79/4 83/9 84/5 89/16 91/6
91/18 101/4 101/10
proposes [10] 12/20 27/15
27/25 31/20 68/11 68/19 79/3
103/18 113/16 113/17
proposing [4] 83/21 94/6
101/18 101/22
prosecution [4] 23/3 23/10
25/7 65/18
prosecutors [1] 22/14
protected [1] 98/23
proteins [3] 6/6 28/19 29/18
protocol [1] 56/4
prove [1] 61/5 114/16
provide [4] 71/10 79/21 80/1
80/3
provides [1] 6/11
providing [1] 6/9
provisional [1] 65/17
provisionals [1] 34/11
publication [1] 13/19
publications [2] 11/22 19/23
pull [3] 11/12 29/10 92/2
pulled [1] 32/8
pure [3] 18/4 30/2 47/22
purely [1] 17/22
purpose [7] 30/12 31/9 31/21
88/21 91/4 91/13 105/2
purposes [3] 8/21 106/5 106/7
pursue [2] 66/21 77/20
put [14] 19/12 29/8 42/21
49/12 59/9 82/3 96/1 97/14
97/19 101/4 101/7 107/8
110/15 114/24
putting [1] 7/14
pyrosequencing [28] 13/3
13/8 13/12 13/13 14/18 14/20
14/21 20/9 21/17 21/20 21/22
22/1 22/18 23/14 23/16 23/19
23/25 24/2 24/5 24/8 24/12
24/19 24/20 25/9 25/13 25/15
25/18 26/25

Q

QCNC [1] 16/25

question [13] ...16/16 18/16
11/4 42/7 43/18 53/6 72/16
73/6 75/5 76/18 97/8 104/11
108/23
questions [1] 22/20
quickly [4] 9/11 91/16 95/5
117/20
QUINN [1] 1/22 3/15
Quinn Emanuel [1] 3/15
quite [1] 19/1
quote [10] 23/15 24/25 26/16
26/16 26/19 33/5 68/20 97/12
110/18 111/1
quoted [1] 107/9

R

raise [2] 78/2 117/16
rate [3] 7/25 8/4 8/4
rather [4] 25/11 77/25 87/17
104/23
ray [1] 22/7
reach [1] 117/4
reaction [7] 84/8 84/9 103/14
110/20 113/20 116/11 116/16
reactions [1] 14/14
read [25] 6/11 22/19 23/2
43/10 53/3 53/3 53/24 55/5
61/13 61/14 62/14 64/1 64/1
76/8 79/9 79/14 86/10 86/16
91/10 96/3 97/5 99/24 100/2
103/22 104/6
reading [12] 30/9 33/13 35/10
49/2 60/15 64/7 66/10 66/11
66/16 70/25 88/9 95/22
reads [5] 23/15 27/11 32/17
60/3 97/11
reagent [1] 79/12
reagents [2] 30/1 86/21
real [2] 8/20 8/23
really [21] 18/11 19/25 35/23
43/12 45/4 46/12 48/17 49/11
76/4 80/8 82/11 87/24 88/12
95/8 95/10 104/6 106/10
106/13 110/18 117/19 117/20
realtime [1] 20/3
reason [17] 5/2 18/18 22/2
26/25 53/21 58/3 61/2 65/6
80/2 80/3 81/10 81/12 81/14
88/12 89/17 108/3 108/14
recall [1] 103/11
received [1] 67/25
recently [1] 19/2
recipient [6] 4/22 4/23 7/22
8/1 8/8 8/16
recipient's [2] 8/9 8/10
recite [2] 34/14 92/5
recited [3] 30/24 30/25 97/17
recites [3] 92/3 92/8 103/23
record [8] 13/9 20/14 53/8
82/21 100/2 101/4 109/24
110/10
red [6] 7/2 70/1 115/5 115/8
115/10 115/13
redefine [3] 23/24 28/12 49/11
reengage [2] 96/6 102/19
refer [7] 24/1 24/19 24/22
25/21 33/3 60/1 62/20
reference [5] 13/19 25/11
26/2 84/10 107/15
referenced [2] 21/13 26/1

26/3
references [4] 19/21 24/14
24/15 25/11
referred [5] 5/10 5/11 5/11
5/12 5/23 61/7 96/9
referring [13] 42/5 43/17
44/19 44/22 49/4 53/13 58/20
58/21 58/24 61/15 65/1 65/2
81/19
refers [8] 7/6 7/9 9/8 26/15
72/17 73/3 98/7 107/4
refuse [1] 110/6
refused [1] 109/11
refusing [1] 110/3
regard [2] 24/22 25/21
regarding [3] 35/20 36/23
37/16
region [5] 43/13 43/14 43/19
43/25 46/22
regions [1] 45/3 46/24
regular [1] 90/4
REINES [2] 2/6 3/2
rejected [1] 8/3
rejection [1] 7/20
relate [2] 4/24 9/20
related [10] 9/13 10/15 37/17
38/9 38/15 47/17 47/24 48/5
50/8 108/15
relates [3] 38/12 38/24 47/14
relation [1] 35/14
relationship [1] 37/16
relative [3] 8/16 44/20 59/23
relatively [1] 22/10
release [3] 6/3 6/3 20/11
released [2] 8/1 20/22
relevant [2] 7/8 10/17
relied [1] 26/6
relies [1] 19/9
rely [3] 13/23 55/8 65/18
relying [2] 20/16 26/4
remaining [1] 11/22 117/4
remembers [1] 20/21
remove [4] 28/22 29/7 32/22
32/24
removed [3] 27/16 28/6 32/9
removing [2] 28/11 28/25
reordering [1] 11/14
repeatedly [1] 50/18
reporter [5] 53/19 62/18 93/2
119/2 119/8
represents [3] 7/2 69/22 70/4
require [13] 24/7 75/9 84/24
84/25 93/14 93/14 94/6 94/21
108/19 108/25 109/10 111/12
116/12
required [3] 26/18 71/17
84/19
requires [4] 68/13 69/14 99/12
116/10
requiring [2] 68/14 108/3
reread [1] 95/5
reset [1] 35/24
resides [2] 5/8 5/21
resisted [1] 108/17
resolve [2] 91/8 116/9
resort [2] 63/8 63/11
respectfully [1] 79/17
respond [2] 82/18 114/18
response [2] 83/24 116/2
rest [5] 17/6 23/22 29/6 55/16

**R**

rest... [1] 94/23
rewrite [4] 25/4 25/6 30/11 68/17
rewrites [1] 27/19
right [89] 18/6 18/7 18/12 18/20 19/24 20/23 22/23 27/5 41/1 43/6 43/6 44/13 45/6 45/9 45/23 47/21 50/21 50/23 54/24 55/20 56/6 56/16 56/24 57/13 58/23 60/7 61/4 61/16 61/21 62/1 64/14 64/16 66/20 68/12 70/2 70/8 71/1 72/2 72/3 72/16 75/15 77/2 77/24 79/19 85/2 85/12 85/13 85/15 86/2 86/24 87/4 89/13 90/8 91/1 91/15 94/9 94/15 95/10 95/12 95/23 96/16 97/9 98/15 98/15 99/22 102/7 102/15 104/5 105/13 105/19 105/20 105/22 105/25 106/9 106/16 106/18 106/20 107/4 107/19 107/24 108/6 110/17 111/22 112/21 113/6 113/8 113/24 114/10 116/21
road [3] 21/15 96/2 101/6
roadmap [1] 104/25
round [1] 110/2
rule [2] 23/7 96/4
ruled [1] 117/18
rules [1] 90/4

**S**

said [18] 7/14 13/12 19/2 24/24 34/5 40/4 65/7 82/8 82/14 86/14 87/25 90/7 90/8 90/9 91/12 95/3 105/7 111/8
same [14] 6/15 9/13 16/2 16/5 16/6 17/24 39/20 43/25 50/11 50/12 51/17 74/1 88/8 88/12
sample [65] 7/16 7/18 8/2 9/3 9/22 9/23 10/13 10/19 11/18 27/13 28/11 28/17 28/18 28/20 30/20 31/24 32/2 32/8 32/20 32/23 33/1 35/6 35/8 38/18 39/14 39/14 39/16 40/13 41/12 41/15 41/19 44/21 45/20 46/1 46/5 48/22 48/23 50/14 52/9 52/11 52/15 52/21 52/22 54/3 54/5 54/8 55/3 55/10 55/11 55/13 55/17 55/23 55/25 57/11 61/18 61/19 61/20 67/20 67/21 67/22 68/15 70/6 71/6 72/8 72/23
samples [5] 4/16 4/21 4/25 54/18 56/9
SANDRA [2] 1/23 3/14
Sandy [1] 4/4
Sandy Haberny [1] 4/4
save [1] 109/1
saw [1] 3/7
say [54] 9/4 9/6 12/8 13/12 21/10 22/10 27/17 30/19 31/1 32/13 32/14 33/23 33/25 35/6 35/9 37/9 39/18 39/24 45/13 45/13 48/15 52/16 52/18 56/20 57/1 57/4 61/15 64/23 65/4 65/20 66/11 67/9 67/12

70/25 74/17 77/3 81/23 81/24 93/11 95/19 95/18 96/1 96/12 105/10 105/23 106/20 108/24 109/4 109/6 109/13 110/4 114/14 114/25
saying [22] 15/22 18/23 27/25 44/11 44/15 45/25 46/1 57/21 59/2 62/10 62/11 62/12 64/16 74/16 74/20 86/6 95/6 95/10 95/12 104/7 109/3 115/4
says [32] 12/21 13/10 13/11 15/9 20/6 28/2 30/7 30/8 33/16 33/17 33/18 35/5 38/13 39/16 40/7 40/9 44/23 48/1 56/3 56/3 57/6 60/8 60/13 61/17 73/20 75/20 93/21 102/3 105/20 105/25 113/19 115/2
Scalia [1] 15/10
scant [1] 93/18
scenarios [1] 7/15
schedule [3] 101/5 103/6 117/8
scientific [1] 87/13
scope [3] 23/9 36/24 41/6
seat [1] 82/16
seated [1] 3/6
second [9] 9/22 11/17 41/15 41/19 41/24 42/15 45/20 46/1 46/2 52/19 61/16 68/1 82/2 82/16 88/4 91/19 97/11
secondary [2] 48/3 48/6
section [3] 17/10 79/22 80/1
section's [1] 17/5
see [32] 7/1 13/18 37/1 37/7 38/7 40/12 51/21 54/12 54/15 54/24 62/15 66/18 67/2 67/7 67/12 69/14 69/23 75/17 75/19 76/21 80/20 83/17 91/7 93/8 93/17 95/23 98/19 102/1 108/7 114/4 116/5 116/9
seeking [3] 13/1 34/19 104/2
seem [5] 87/22 90/10 98/11 98/12 109/3
seems [9] 44/18 66/19 75/2 78/21 84/13 90/7 103/19 108/10 115/11
seen [2] 69/11 116/3
segments [1] 35/1
select [5] 108/19 108/25 109/10 109/15 110/9
selected [12] 103/23 106/21 110/21 111/13 111/17 111/18 111/20 111/25 112/3 112/9 112/15 112/18
selecting [7] 31/1 31/2 107/17 107/25 109/5 109/5 109/17
sense [10] 44/6 44/7 44/8 44/9 44/14 71/25 87/16 87/19 98/11 117/23
sentence [12] 13/3 13/4 14/21 23/15 23/19 23/22 24/13 26/6 26/21 90/22 91/3 91/9
sentences [1] 14/9
separate [24] 18/16 30/4 30/23 33/6 38/3 38/4 49/17 49/17 49/20 51/8 51/11 56/1 57/7 60/19 60/20 60/24 63/3 63/3 63/4 63/14 63/15 66/3 66/12 66/13

separated [3] 52/3 57/8 58/1
separately [12] 28/3 28/5 28/6 38/1 38/5 38/22 49/5 49/16 49/21 51/3 57/17 65/10
separates [1] 23/19
separating [4] 27/17 28/1 33/10 40/14
separation [1] 28/24
sequence [22] 6/10 6/10 6/14 12/11 12/22 43/13 43/14 43/24 43/25 44/24 45/5 45/7 45/12 46/11 73/1 83/12 83/23 84/7 86/13 87/8 87/10 101/12
sequenced [1] 10/5
sequencer [5] 42/21 43/16 43/23 44/25 45/1
sequencers [2] 43/2 43/9
sequences [2] 40/11 55/22
sequencing [50] 5/17 10/5 10/6 10/23 11/9 11/16 12/13 12/18 12/19 13/7 13/10 13/14 13/17 13/22 14/18 14/21 19/10 20/17 21/11 21/17 21/20 21/22 22/3 22/7 22/11 23/13 23/16 23/20 23/21 23/25 24/2 24/4 24/9 24/12 24/14 24/17 24/18 25/9 25/12 25/16 25/17 26/24 43/10 43/11 43/17 43/18 43/20 44/5 44/16 69/5
serve [1] 105/2
served [2] 102/9 114/19
set [17] 23/21 80/10 80/11 80/19 80/24 81/18 81/18 82/1 85/16 92/19 94/6 94/7 94/8 96/10 100/13 101/5 103/6
setoff [2] 16/25 17/3
several [3] 25/12 27/9 32/9
shaking [1] 53/15
sharp [1] 20/7
she [6] 50/7 50/9 50/10 50/11 50/13 71/2
she's [1] 95/24
shedding [1] 19/25
sheds [1] 19/6
short [7] 16/24 16/25 22/2 26/23 43/10 71/24 95/6
short-read [1] 43/10
should [18] 22/25 41/13 61/10 81/22 82/8 82/14 88/15 91/15 98/6 100/10 101/2 105/7 105/8 111/12 111/15 112/5 117/3 117/13
shouldn't [2] 22/9 65/14
show [13] 9/15 41/7 49/8 61/22 62/3 62/5 62/7 62/8 62/9 62/24 68/17 68/21 76/11
showing [2] 9/19 68/23
shown [6] 8/19 8/22 9/1 12/15 68/12 70/17
shows [3] 20/14 23/23 68/6
side [14] 103/24 106/22 107/21 108/20 109/11 110/22 111/13 111/18 111/25 112/4 112/10 112/16 112/19 115/2
sides [1] 67/3
sign [1] 117/8
signal [2] 42/24 43/1
similar [5] 26/20 46/18 69/11 88/14 113/14

similarities [1] 48/4
similarly [19] 6/6 7/22
simple [5] 70/9 70/13 86/20 104/11 114/25
simplest [1] 10/25
simplicity [1] 9/16
simplified [1] 70/9
simply [7] 28/16 30/11 31/1 33/7 33/16 70/17 92/3
since [2] 89/22 105/10
single [22] 6/21 13/24 23/14 26/17 26/17 34/14 34/15 56/8 56/10 56/10 56/11 79/6 79/8 81/1 81/8 81/17 81/18 103/14 110/20 113/20 116/11 116/16
sit [1] 63/12
situation [10] 17/25 36/17 41/4 54/16 62/21 64/20 66/7 81/15 93/7 113/14
situations [3] 4/19 18/24 39/3
six [1] 14/19
skill [17] 12/24 23/2 24/4 24/8 28/15 48/21 49/2 62/14 66/10 76/8 78/14 83/1 83/4 84/15 85/3 98/9 109/16
skilled [1] 13/21
skipped [1] 47/7
slam [1] 48/16
slide [2] 11/12 68/23
slides [3] 4/5 4/12 50/11
slightly [2] 64/5 64/10
slow [1] 93/3
slowly [1] 28/25
small [6] 26/19 36/2 39/9 43/8 46/9 46/10
smaller [3] 8/12 8/24 33/16
SNP [23] 6/23 7/2 7/2 7/3 7/13 7/19 10/22 11/24 12/3 23/17 69/15 69/21 69/22 72/18 72/24 73/16 73/17 103/14 103/15 103/16 110/24 110/25 113/13
SNPs [6] 6/24 7/11 7/17 10/2 34/13 48/12
so [241]
solely [1] 103/8
Solexa [3] 20/19 20/20 22/8
solution [1] 37/8
solve [1] 37/4
some [36] 4/5 4/11 5/16 7/25 8/14 10/16 11/6 12/6 19/8 19/11 28/25 29/10 32/24 33/25 44/20 45/10 53/20 54/2 72/23 74/11 75/1 75/3 75/21 77/3 78/7 80/3 84/23 87/19 88/1 88/14 88/19 89/5 89/17 96/1 102/24 117/4
somebody [1] 82/19
someone [5] 20/18 39/21 59/8 60/15 60/25
something [22] 12/23 17/8 21/11 28/12 43/16 46/18 53/24 55/5 59/7 69/11 74/7 74/21 76/11 78/1 79/24 82/9 82/14 87/1 87/17 89/24 99/17 110/11
something's [1] 115/1
sometimes [4] 6/22 18/8 18/8 36/20
somewhat [1] 41/2

**S**

somewhere [1] 97/4
sorry [8] 8/6 53/7 53/7 53/18
53/22 62/19 62/19 94/11
sort [4] 15/25 17/10 80/3
84/23
sound [1] 89/4
sounds [1] 89/6
source [12] 38/4 38/21 38/24
38/25 40/14 47/12 47/13 49/5
49/5 49/25 58/4 58/5
sources [5] 38/1 38/18 39/4
49/21 56/8
speak [2] 92/25 114/22
speaks [1] 26/11
special [1] 79/21
species [1] 18/24
specific [8] 7/17 10/5 29/14
29/23 31/2 40/10 55/22 80/1
specifically [3] 38/13 47/15
58/7
specification [50] 15/5 17/6
17/12 20/5 23/4 23/9 35/21
38/10 47/5 47/6 47/9 47/10
50/8 50/9 50/10 50/17 50/25
51/1 51/20 51/21 57/6 57/24
58/10 58/11 60/13 60/16 61/3
61/11 62/13 62/14 62/23 63/1
63/2 64/2 64/5 64/19 64/22
64/25 65/2 65/3 65/8 65/16
74/10 74/13 97/6 97/22
107/16 107/17 108/2 109/14
specify [1] 26/9
spiked [1] 54/18
spurring [1] 22/14
stage [3] 100/9 104/8 117/17
stand [2] 84/21 108/24
standard [1] 91/13
standing [1] 58/15
Stark [3] 108/16 108/20
109/19
start [10] 28/16 28/17 42/25
47/5 61/19 61/20 64/23 71/17
84/4 112/2
started [2] 43/8 88/13
starting [2] 11/16 65/1
starts [1] 15/6
state [2] 36/23 79/21
states [4] 1/1 1/15 26/19
50/18
status [2] 7/21 73/14
staying [1] 19/18
steadfastly [1] 108/17
stem [1] 27/21
stenographic [1] 119/5
step [22] 10/8 28/21 28/22
29/13 31/22 57/22 59/9 60/8
60/11 60/13 61/1 69/4 69/5
69/7 69/7 69/8 69/13 69/14
72/12 73/3 73/9 114/2
step-wise [2] 28/21 28/22
steps [2] 31/4 32/9
still [4] 73/7 73/10 94/23
108/7
stipulate [3] 109/9 109/9
110/5
stipulated [1] 102/24
stipulation [1] 113/5 116/22
117/5 117/9

stood [1] 82/22
stop [1] 35/6
stores [1] 5/3
strand [3] 12/24 13/24 26/17
stranded [1] 5/9
strands [1] 5/13
stream [1] 39/10
Street [1] 1/13
string [1] 6/9
strip [1] 40/25
struck [1] 104/15
structures [1] 26/21
stuff [4] 29/1 29/6 29/17
108/10
subclause [1] 60/6
subject [4] 67/25 68/16 69/23
70/5
submit [1] 117/8
subsequent [1] 21/14
substantive [2] 11/7 12/7
substantively [1] 55/7
substeps [1] 69/1
such [4] 5/17 6/6 36/15 79/12
suck [1] 32/25
suggest [4] 24/7 84/13 84/19
117/20
suggests [1] 24/16
SULLIVAN [1] 1/22
Superguide [1] 25/22
Superguide Corp [1] 25/22
support [5] 13/5 33/13 41/7
49/25 71/11
supported [3] 13/6 33/7 97/5
supports [2] 25/7 101/25
supposed [3] 102/4 102/6
105/19
Supreme [1] 19/1
sure [12] 4/9 11/4 14/10 14/13
15/21 59/19 61/18 84/25
93/16 104/10 104/14 115/3
surprised [2] 66/24 77/17
surprising [1] 77/8
survive [2] 16/11 16/12
susceptible [1] 63/24
suspicions [1] 67/8
suspicious [1] 89/18
switched [1] 82/5
switching [1] 103/12
sympathetic [1] 114/5
syndrome [3] 15/15 15/23
16/10
synonym [1] 15/8
synonymous [3] 16/17 49/9
76/12
syntax [6] 14/23 15/7 16/21
21/19 22/17 26/4
synthesis [36] 5/18 10/6 11/9
11/16 12/12 12/13 12/19 13/8
13/11 13/14 13/17 13/22
13/25 14/1 14/18 14/22 19/11
21/17 21/20 21/22 23/13
23/16 23/20 23/21 23/25 24/2
24/5 24/9 24/15 24/17 24/18
25/9 25/12 25/16 25/17 26/25
synthesizing [1] 12/22
system [9] 20/11 29/24 38/7
38/13 38/17 38/20 47/14 48/1
48/4
systems [1] 21/2

**T**

table [2] 3/14 105/25
tactic [1] 78/22
tag [1] 81/16
tailored [1] 17/12
take [8] 14/19 22/16 25/4 25/5
37/15 39/11 49/12 55/19
Takeda [1] 24/23
taken [1] 41/22
taking [1] 67/20
talk [6] 15/12 35/25 39/3 42/3
52/10 96/20
talking [27] 20/11 35/22 36/18
38/17 38/20 39/4 40/8 40/13
41/20 41/25 42/2 44/15 46/25
47/2 47/2 47/18 52/17 55/11
62/16 66/1 81/7 81/11 81/12
88/13 88/16 95/24 97/13
talks [16] 37/1 39/5 39/14
39/15 40/13 41/17 46/19
51/22 56/8 56/10 72/13 72/20
96/17 96/21 97/23 109/14
target [31] 10/2 10/3 10/7
10/13 12/2 38/8 46/20 48/7
51/1 60/4 65/9 78/7 79/8 80/6
87/25 92/4 92/7 92/13 92/19
92/21 93/10 94/3 94/7 94/22
97/3 97/12 98/4 98/23 99/13
107/22 113/13
targeted [76] 10/21 11/21
11/22 69/2 78/6 78/10 78/15
78/17 78/25 79/5 79/8 79/11
79/16 79/18 79/20 79/22
79/23 80/18 81/6 81/8 81/10
81/13 81/14 82/6 82/11 82/25
83/2 83/7 84/1 84/14 84/15
86/12 86/25 87/9 87/18 88/7
88/8 89/1 89/8 89/11 89/22
91/4 91/13 91/14 92/5 92/6
92/9 92/12 92/14 92/18 92/23
93/11 93/13 93/14 93/23
93/24 94/3 94/21 95/13 97/2
97/9 97/15 97/17 97/23 99/14
99/17 103/5 103/13 105/6
105/20 106/25 110/18 113/20
113/24 116/11 116/16
targeting [8] 79/6 83/11 83/22
87/7 87/9 96/11 101/11
116/15
teach [4] 56/4 63/13 71/12
77/9
teaches [4] 57/25 58/10 77/10
77/11
teaching [1] 58/11
technical [2] 79/23 80/4
techniques [3] 54/25 54/25
110/8
technologies [4] 4/14 22/5
25/19 25/25
technology [4] 4/12 22/7 22/8
25/25
tee [1] 101/2
teed [1] 110/12
tell [13] 40/4 40/6 44/1 48/16
56/6 66/23 67/8 83/7 84/21
87/17 99/3 110/3 115/10
telling [1] 65/14
tells [7] 38/11 39/24 40/6
47/10 56/2 60/23 74/7

temperature [2] 29/20 29/21
tern [7] 8/25 9/2 9/5 43/24
43/25 94/3 94/4
tense [3] 73/22 74/1 74/15
term [87] 4/2 7/5 7/8 10/20
11/17 11/24 12/15 12/17
12/21 12/21 13/2 13/18 14/13
15/4 16/23 22/24 24/17 27/5
27/8 27/9 27/24 28/10 29/14
30/5 30/13 31/6 33/21 34/3
34/4 34/24 35/2 35/5 35/13
35/22 41/11 46/21 50/15 67/5
67/13 67/16 68/4 68/10 72/4
72/4 72/17 78/3 78/6 78/10
78/11 78/17 78/20 78/23
78/24 78/25 79/10 79/15
79/16 79/18 79/23 80/4 82/11
86/20 90/7 91/11 91/25 95/2
95/6 97/17 100/8 100/18
102/20 103/3 103/5 103/6
103/8 103/10 103/12 105/6
107/3 107/9 110/16 113/7
113/10 113/14 113/14 117/4
117/10
terminology [2] 97/16 105/3
terms [26] 3/16 4/13 5/17 9/18
10/21 11/3 11/6 11/22 11/25
12/9 12/13 17/11 22/25 23/1
25/24 30/10 67/19 75/20 81/6
88/22 98/22 100/16 103/12
113/11 113/11 114/25
test [2] 36/6 36/7
testify [2] 87/21 87/21
than [35] 4/17 7/15 11/7 11/23
11/24 12/7 20/13 22/2 22/11
24/18 28/13 30/17 31/25
34/21 64/6 66/4 85/13 85/22
86/1 86/3 93/10 94/17 94/21
97/13 99/16 103/14 103/15
104/8 105/3 105/16 105/17
107/12 110/19 110/20 114/2
Thank [26] 3/21 4/1 14/11
14/12 22/21 22/22 27/7 35/16
66/14 67/6 72/2 79/19 82/3
91/23 91/24 93/3 101/17
103/2 104/14 113/1 113/4
116/20 116/23 116/25 117/1
117/2
Thanks [1] 117/25
that [556]
that's [153]
their [50] 6/14 13/16 17/16
20/17 22/5 25/3 28/4 32/7
34/19 39/18 39/20 51/17 59/2
63/6 65/19 68/12 70/25 77/19
78/21 78/23 79/20 84/5 84/12
84/18 87/13 89/16 90/2 90/11
90/12 98/14 98/16 98/19
98/22 98/25 99/4 100/7
100/16 101/22 101/24 102/12
102/21 104/25 109/3 110/5
114/3 114/16 114/18 114/21
116/3 117/18
them [31] 10/15 11/8 11/13
11/14 14/5 14/8 14/20 15/14
16/11 21/6 55/7 58/24 77/4
81/24 88/13 89/16 89/18 91/6
93/25 99/4 100/18 104/19
108/20 109/8 110/5 113/11
114/5 114/11 115/10 115/17

**T**

them... [1] 115/18
themselves [1] 24/7
then [80] 6/2 9/3 9/6 10/1 10/4
10/8 10/22 11/17 11/18 11/20
11/21 11/25 14/20 14/25
17/18 18/2 20/10 21/25 24/25
28/2 29/2 29/7 32/24 37/15
38/4 38/22 42/18 46/11 47/12
47/23 51/10 51/11 54/10
55/13 61/22 62/10 63/20 71/2
71/21 74/17 74/22 75/10 77/2
77/21 77/23 78/20 81/17
81/21 81/22 83/21 85/10 86/6
86/17 89/2 90/17 91/6 92/22
93/21 96/1 96/2 97/7 98/13
99/9 99/20 100/12 101/5
102/13 102/17 104/12 104/13
105/7 105/23 106/20 109/23
110/1 110/11 115/23 116/21
117/7 117/9
theories [1] 113/19
theory [1] 114/3
there [170] 3/8 5/24 6/15 6/24
7/14 7/21 8/1 8/8 9/11 9/16
10/3 10/16 12/8 12/25 15/14
17/13 18/2 18/4 18/7 18/8
19/11 20/8 22/9 23/6 24/14
28/17 28/18 28/18 28/19
28/19 29/1 29/17 29/18 29/20
30/21 31/5 31/9 32/23 33/22
33/25 34/22 35/13 35/20
45/10 52/7 52/20 54/16 55/20
55/25 56/6 63/23 67/23 70/3
71/11 86/11 88/5 88/5 88/10
88/19 89/12 90/19 94/8 94/9
95/13 95/13 97/19 99/8 105/8
107/14 112/11
there's [69] 9/4 9/6 14/17
14/21 14/25 16/8 16/8 16/11
16/20 17/20 17/21 17/24 18/4
18/4 18/7 19/4 19/11 20/7
20/10 20/17 22/10 23/18 24/6
28/23 29/17 29/23 32/18 36/1
39/9 39/12 39/13 39/19 40/4
40/21 40/22 42/13 43/10
43/16 45/3 46/18 49/8 52/16
54/7 57/21 59/11 59/16 60/6
60/7 60/12 61/2 61/5 61/14
63/23 65/6 72/17 74/12 81/12
90/5 90/5 95/1 97/1 99/16
102/2 102/11 104/7 106/17
108/4 112/1 116/21
therefore [2] 26/12 70/3
thermocyclers [1] 86/22
these [52] 4/14 4/15 4/24 4/25
5/19 10/8 12/6 21/1 21/4 22/3
26/20 30/10 30/24 30/25
35/21 37/24 37/25 40/17
40/22 40/23 43/2 43/9 43/10
47/11 49/2 52/21 52/22 52/22
54/21 54/22 55/1 55/2 55/10
56/8 63/12 66/12 77/14 77/15
79/9 106/6 106/8 107/17
107/21 107/25 108/2 108/14
108/17 108/18 108/19 110/8
112/13 113/11
they [132]
they're [49] 9/13 16/5 16/6

16/23 17/24 18/3 19/21 20/19
20/19 37/4 41/9 54/2 55/6
56/18 56/19 57/1 57/3 57/5
57/5 58/16 58/18 58/19 66/6
74/20 78/22 80/16 81/14
81/15 81/22 84/3 84/21 84/22
86/19 90/8 97/4 97/7 105/24
107/11 109/4 109/12 109/12
109/18 109/22 109/24 110/4
111/3 114/7 115/22 115/23
they've [14] 40/25 52/21
56/18 84/5 87/1 87/25 88/23
89/23 90/1 90/7 90/18 95/9
108/15 110/3
thin [1] 32/8
thing [26] 16/3 16/5 16/6
18/17 19/7 19/19 21/25 22/1
39/1 39/21 40/3 45/13 45/14
51/18 55/3 63/2 64/22 66/4
66/6 66/7 74/1 77/3 81/12
85/15 114/4 115/22
things [14] 6/7 16/10 19/8
28/18 28/20 28/23 30/15
38/11 48/19 67/10 88/1 104/1
112/14 114/24
think [118] 14/5 15/11 16/4
17/20 18/6 18/18 18/22 18/23
18/25 19/3 20/24 21/7 21/12
22/17 26/1 26/3 26/23 27/3
39/21 39/23 43/24 44/14
46/18 48/16 48/24 49/13
49/13 52/22 55/6 58/13 58/15
58/16 58/18 58/19 58/25 59/5
59/6 59/7 59/8 59/21 59/24
60/25 61/2 61/9 61/10 62/6
62/7 62/23 63/8 63/10 63/12
63/17 64/19 66/15 73/19
74/15 74/19 74/20 74/23
74/23 76/3 76/6 76/14 77/18
77/21 79/25 80/7 80/14 80/15
80/17 80/22 81/7 81/20 81/21
81/22 81/24 84/1 84/23 85/2
87/6 87/14 87/16 88/1 88/15
88/24 88/25 89/16 89/17 90/8
92/25 95/9 96/25 97/4 97/10
97/19 99/3 99/3 99/9 102/2
102/2 102/18 102/20 104/6
104/22 107/10 108/7 112/21
112/23 112/24 113/1 114/1
114/6 114/25 115/6 115/6
115/15 115/19 116/10
thinking [5] 17/25 21/7 21/12
22/4 70/23
this [268]
those [14] 7/23 9/17 10/4 16/4
17/24 23/5 25/25 28/23 36/22
45/16 49/21 67/10 77/8 92/11
though [1] 46/16
thought [8] 11/2 20/3 21/4
21/19 58/23 76/14 76/17
82/19
three [8] 9/5 9/12 16/11 19/12
45/8 45/12 72/9 73/15
threw [2] 82/5 105/9
through [15] 9/11 10/20 19/8
27/24 39/2 40/16 41/9 46/14
58/8 59/11 59/13 59/16 62/10
71/1 112/13
thrown [1] 22/13
thus [1] 79/9

thymine [1] 5/10
tied [4] 43/16 16/13 16/14
16/15
time [19] 13/17 13/21 20/14
20/16 21/4 22/17 25/17 39/8
40/12 56/7 56/8 56/10 56/10
56/11 64/4 93/3 98/14 101/7
112/14
timeline [1] 68/23
times [8] 43/15 43/19 43/20
45/5 45/8 45/8 45/12 66/18
title [1] 38/7
titles [1] 24/15
today [15] 3/18 5/17 6/21 7/9
8/15 9/10 10/17 10/21 76/14
77/18 77/22 96/4 97/21 99/9
114/14
together [3] 5/13 49/23
113/11
togotta [1] 48/16
told [1] 101/23
too [6] 21/24 22/12 29/17 36/9
112/1 112/1
tools [1] 76/20
top [4] 14/21 29/7 70/1 95/21
topic [2] 14/17 103/1
total [1] 67/21
totally [1] 75/19
towards [1] 75/16
tp [1] 116/22
traditional [1] 18/1
transcript [1] 119/5
translated [1] 6/11
transplant [7] 4/22 7/19 7/20
7/21 7/23 8/7 67/23
transplanted [1] 8/3
treated [1] 15/7
treatise [1] 15/11
trial [3] 67/3 82/24 83/7
tried [8] 36/21 40/25 56/17
56/18 56/18 56/20 65/12
65/12
tries [1] 36/1
Trisomy [3] 15/15 15/22 16/8
Trisomy 21 [2] 15/15 15/22
true [3] 17/23 62/25 119/4
try [15] 36/12 37/10 37/22
38/22 51/16 51/17 55/13 67/1
84/23 97/4 107/3 108/25
109/1 110/14 112/14
trying [27] 28/12 37/4 38/12
41/5 45/18 45/21 45/22 51/19
54/2 54/12 54/14 54/15 56/19
57/2 57/3 57/5 57/5 57/14
58/18 58/19 65/3 85/20 97/8
98/18 98/25 101/20 101/21
tube [2] 28/16 85/7
TUNNELL [1] 1/19
turn [2] 33/4 91/20
twice [1] 57/16
two [34] 9/23 11/25 17/21
19/20 19/23 19/23 23/6 26/8
28/4 37/25 38/18 39/4 39/13
45/8 45/13 48/18 49/21 54/4
54/7 54/15 59/6 67/11 67/22
67/24 69/1 71/18 72/9 73/15
76/13 85/20 89/9 94/9 94/12
113/10
type [5] 6/20 10/5 20/17 40/13
99/16

types [3] 10/3 22/4 22/11
typically [2] 87/3 3/20

**U**

U.S [1] 119/9
ultimately [3] 26/4 66/24
117/18
unambiguous [1] 68/4
uncle [1] 37/22
undefined [1] 87/18
under [2] 70/12 70/25
understand [24] 16/14 41/13
48/21 49/3 60/17 62/16 62/20
64/24 64/25 66/12 75/20
79/11 79/24 83/2 84/15 85/4
85/4 86/1 94/8 96/23 98/9
101/22 106/24 115/16
understanding [5] 13/20 78/14
99/2 99/7 99/10
understood [10] 12/23 78/25
79/7 79/15 85/8 85/10 86/8
86/10 101/19 106/15
undisputedly [1] 26/1
unhelpful [1] 107/21
unique [2] 5/6 6/13
UNITED [2] 1/1 1/15
universal [10] 81/16 81/17
92/22 93/12 93/13 93/21 94/2
94/23 99/15 99/18
unless [5] 51/24 52/2 76/11
80/18 108/4
unlimited [1] 37/12 37/13
unmistakable [6] 23/11 61/5
62/6 62/8 62/15 62/24
unmistakably [1] 62/4
unnecessary [2] 86/20 88/9
unquote [4] 23/17 26/18 26/20
97/12
unrelated [1] 54/3
unsatisfying [1] 87/11
until [2] 20/22 101/23
up [32] 3/16 5/9 6/1 6/1 6/9
11/12 36/5 54/10 54/11 54/18
57/9 58/15 76/15 76/15 77/21
78/19 82/3 82/17 84/21 92/2
98/13 100/13 101/2 102/1
102/9 102/13 103/6 107/6
108/14 108/24 110/12 110/15
upon [8] 25/4 25/5 26/6 55/8
65/17 65/18 105/14 106/14
URQUHART [1] 1/22
us [11] 21/10 56/23 74/22
76/23 77/2 82/8 101/23
110/3 115/25 116/1 116/2
use [34] 4/14 16/24 17/1 21/6
21/20 24/8 29/5 34/4 36/12
37/18 37/21 38/5 40/18 42/16
47/23 48/4 49/18 51/12 52/5
56/18 56/21 57/2 60/14 61/1
63/5 66/8 80/15 85/2 86/12
88/8 92/5 93/11 98/19 101/24
used [17] 7/5 7/20 14/22
15/17 19/3 21/3 21/16 23/17
24/17 26/6 26/7 26/13 26/21
51/5 79/8 79/13 91/25
useful [2] 5/2 6/8
uses [1] 57/2
using [42] 10/24 12/18 15/14
16/23 18/3 29/4 29/20 31/6
31/23 34/3 38/8 38/15 40/9

## U

using... [29] 40/10 41/23
47/13 47/16 48/3 51/22 55/14
55/21 55/21 57/14 58/13
60/21 69/14 69/20 71/21 80/9
80/11 80/24 85/22 93/12
94/22 94/23 96/12 97/3 98/20
99/15 101/11 103/14 110/20

## V

vacuum [4] 63/24 63/25 64/1
64/8
validity [1] 97/8
vantage [1] 117/6
variants [1] 7/6
vast [3] 22/9 22/9 22/10
verb [1] 57/14
versus [3] 54/7 54/16 58/9
very [32] 8/19 10/14 11/24
22/3 22/19 25/10 29/13 29/14
29/20 29/24 32/18 34/14
34/20 35/3 37/14 48/13 48/15
48/19 48/19 50/3 53/13 66/24
66/24 67/8 67/11 75/2 82/7
82/7 82/21 87/11 88/13
100/15
view [17] 50/8 61/11 64/5 73/8
74/9 74/12 100/25
vigorously [1] 53/15
virtue [1] 43/7
viruses [1] 28/19
vitro [1] 36/5
volume [5] 103/14 110/20
113/20 116/11 116/16

## W

wait [5] 83/20 98/10 100/9
107/6 107/6
WALTER [2] 2/7 3/25
want [49] 12/4 15/2 16/17
19/19 22/16 36/7 40/16 41/22
43/12 43/22 49/10 49/11
49/12 49/19 44/19 49/15
49/18 57/10 57/23 65/17 74/6
74/21 75/6 75/6 75/7 76/2
76/11 80/10 86/1 89/5 89/7
89/8 96/6 98/16 100/12 105/1
105/15 105/23 107/7 107/8
108/2 111/6 113/22 113/24
114/2 114/6 114/23 115/8
115/16
wanted [7] 19/7 36/5 69/12
74/23 97/20 101/23 110/13
wants [3] 27/24 103/20
113/18
was [49] 13/18 13/22 17/14
20/4 20/24 21/11 21/18 25/15
27/3 31/18 34/20 34/22 34/24
35/3 35/12 35/19 35/20 35/20
36/19 36/24 39/7 40/3 44/15
50/9 50/15 50/16 51/14 53/12
53/13 54/1 54/1 54/10 54/16
54/17 63/21 65/1 65/2 65/3
70/22 78/18 78/19 82/6 82/11
82/20 83/14 83/17 83/18 86/7
95/19
wasn't [5] 19/13 20/22 21/12
35/12 82/22
wastes [1] 28/19

way [31] 8/17 15/15 15/24
17/12 19/3 20/8 20/12 22/15
25/5 25/6 26/12 29/4 40/4
40/21 43/2 43/8 43/9 44/8
53/3 60/23 79/2 83/7 85/18
95/1 98/19 99/24 110/12
111/6 111/15 114/3 114/25
ways [3] 12/25 26/8 29/3
we [136]
we'd [3] 8/20 9/6 68/21
we'll [5] 5/17 67/3 77/21
100/13 100/13 101/5 101/6
104/12 117/11
we're [34] 3/16 6/20 7/11 9/18
9/19 14/14 19/18 35/21 47/1
52/13 54/12 52/17 55/9 58/20
66/1 75/24 77/4 77/18 86/19
87/5 87/18 87/23 88/16 88/17
97/9 97/20 97/21 99/9 100/5
100/6 103/1 110/6 110/10
115/3
we've [11] 4/5 4/11 9/1 11/5
11/5 11/25 12/15 25/14 69/11
106/14 113/10
Wednesday [1] 1/10
WEIL [2] 2/6 3/25
weird [1] 82/22
welcomed [1] 117/5
well [61] 3/11 3/12 12/6 15/18
16/14 16/17 16/18 17/24
18/17 20/22 20/23 20/23
21/10 21/12 23/5 28/14 28/14
39/20 39/21 40/5 44/7 49/13
52/12 53/2 55/18 56/20 59/9
60/2 60/11 64/21 67/8 71/4
74/19 75/1 75/12 76/1 76/22
79/7 82/19 83/1 85/8 86/17
89/15 90/13 90/15 90/22
90/24 96/19 96/25 104/1
104/12 105/12 105/24 113/7
114/4 114/12 114/22 115/2
115/18 115/25 116/4
well-understood [1] 79/7
went [1] 71/1
were [19] 10/24 11/14 21/4
21/7 21/11 22/4 36/6 41/2
54/11 54/14 54/14 58/21
58/24 65/12 66/24 81/7 86/6
110/13 114/19
weren't [2] 22/3 101/21
what [129]
what's [14] 5/23 17/15 22/6
35/20 42/9 57/24 58/13 64/2
83/24 84/8 89/3 89/4 97/5
100/2
whatever [2] 74/8 105/1
whatsoever [5] 27/22 52/24
55/4 60/14 61/2
when [50] 5/24 23/22 23/7 23/8
29/19 29/24 36/2 36/19 37/5
37/8 39/24 42/21 43/9 44/22
46/6 47/2 52/17 54/3 56/20
57/1 58/20 61/2 62/16 65/1
66/1 72/10 73/3 73/6 73/10
73/23 75/3 75/8 75/10 75/11
76/7 76/9 76/9 78/18 82/5
87/21 88/7 88/13 90/16 99/4
99/5 100/10 109/1 110/5
115/25 117/11
where [62] 3/7 4/16 4/19 6/4

6/18 8/3 14/14 16/23 17/21
17/22 24/24 34/23 36/7 37/3
38/12 38/17 38/20 39/3 39/15
41/4 42/14 44/6 45/3 45/25
49/7 49/8 49/22 51/21 54/1
54/4 54/5 54/16 54/22 55/11
56/8 59/15 64/4 69/5 73/20
75/24 76/6 76/15 77/18 77/21
78/7 80/22 81/16 86/11 89/14
90/21 91/2 92/18 92/20 93/9
94/25 95/18 97/6 97/21 107/7
110/9 114/4 117/17
wherein [10] 11/19 67/16 68/7
72/4 75/21 92/8 92/23 93/22
103/15 110/24
whether [16] 14/24 36/13
42/19 44/1 44/19 54/2 54/6
72/8 73/1 73/14 77/13 86/8
87/14 89/15 90/5 110/4
which [73] 5/10 5/14 6/24
7/15 8/12 11/22 11/25 12/1
12/16 12/21 12/23 13/2 13/19
17/12 19/21 19/22 20/8 20/16
20/20 23/4 23/4 23/15 25/11
27/10 27/23 32/12 32/12
34/11 34/17 36/12 38/4 38/13
38/19 38/19 47/14 47/15
47/22 49/4 49/11 49/24 49/25
51/10 51/11 58/4 58/4 63/3
67/19 68/14 68/15 69/8 69/9
71/16 72/25 72/25 73/1 73/11
73/11 73/16 73/17 77/5 90/1
91/17 93/22 94/6 97/15 97/16
98/2 98/7 99/15 102/7 102/15
105/25 117/15
while [2] 78/22 104/3
whip [1] 20/7
who [2] 82/22 82/23
who's [2] 39/7 82/23
whole [5] 8/11 48/24 49/1
49/24 88/21
wholly [1] 34/15
whose [1] 69/9
why [32] 12/4 14/4 16/16
21/16 22/2 42/18 49/11 53/6
63/20 64/3 68/21 72/15 72/15
74/17 76/2 86/17 87/5 89/2
90/11 95/24 96/23 97/14
98/10 98/25 99/3 105/10
106/3 106/3 108/7 110/12
114/10 115/16
wide [1] 54/17
will [26] 3/17 5/16 7/17 7/21
7/24 8/1 8/1 8/5 8/8 9/16
10/20 12/8 14/2 14/13 14/15
14/25 25/4 31/16 31/17 61/6
67/15 67/24 78/5 85/9 103/5
103/8
willing [1] 95/16
Wilmington [1] 1/13
win [1] 96/20
wise [2] 28/21 28/22
withholding [1] 103/4
within [2] 5/25 17/11
without [22] 11/19 32/2 67/17
68/7 68/13 68/20 70/14 70/19
71/4 71/12 72/5 73/4 74/6
74/4 75/22 77/5 80/23 81/21
81/25 84/2 84/14 100/20
witnessed [1] 102/15

woman [9] 4/20 36/19 39/6
39/7 39/12 46/8 46/7 47/19
47/20
woman's [1] 30/20
won't [8] 17/18 29/16 31/14
31/16 32/13 114/14 114/14
115/10
word [13] 13/14 13/15 15/8
25/2 26/6 26/11 44/9 55/19
56/18 56/21 56/21 57/4 85/11
words [7] 27/1 44/10 66/9
68/17 86/20 88/9 89/9
work [8] 5/5 29/16 43/2 43/9
101/6 102/24 117/7 117/20
working [1] 20/10
works [3] 14/2 69/13 69/19
worth [2] 46/18 46/19
would [82] 4/5 4/10 4/11 7/11
8/24 9/4 9/23 13/7 17/9 21/3
21/5 21/13 21/13 21/15 21/18
21/20 23/1 24/3 24/20 26/17
31/8 32/23 35/8 36/25 39/21
44/9 48/21 49/2 53/3 53/24
55/5 56/4 60/17 60/25 62/15
62/20 63/25 66/12 66/24 67/9
67/11 70/17 71/18 76/22
79/11 80/16 83/2 84/15 84/16
84/22 85/4 85/18 87/1 87/22
88/20 90/1 91/8 92/15 92/15
92/20 94/4 94/5 94/6 94/20
94/20 95/16 95/16 96/8 96/9
96/10 96/12 96/15 98/9
101/10 104/17 104/18 104/19
109/16 111/3 116/2 117/5
117/19
wouldn't [3] 32/2 50/4 81/8
wound [1] 36/5
writing [1] 30/12
written [18] 13/4 23/3 23/15
24/11 25/19 25/24 26/13
26/15 33/3 33/22 58/22 59/2
59/12 71/10 71/14 72/1 91/12
109/2
wrong [6] 53/4 80/20 80/21
82/6 88/2 88/3

## Y

y'all [1] 95/25
yeah [21] 15/19 18/14 43/6
58/25 61/13 61/25 64/17
64/17 70/24 74/2 75/17 76/6
82/8 82/9 83/3 83/5 83/9 91/9
106/12 112/23 114/9
year [1] 78/18
years [4] 36/19 36/21 36/21
71/2
yelling [3] 53/6 53/16 53/17
yellow [2] 7/1 69/22
yes [33] 4/7 16/18 17/24
32/13 40/2 50/22 50/24 52/22
57/3 57/12 57/18 57/20 58/23
58/24 58/25 62/23 64/15 83/22
86/4 87/3 90/19 93/4 94/14
97/25 101/16 106/2 106/23
107/2 112/20 113/1 113/9
117/22 117/24
yet [3] 20/12 22/8 97/16
you [537]
you you [1] 40/7
you'd [7] 45/4 81/8

Y

you'll [2]  29/21 103/5
you're [80]  3/11 15/22 20/7
28/25 29/19 29/25 31/14
32/15 32/19 33/10 33/18
33/23 36/10 36/18 37/11
37/25 38/4 38/12 39/3 40/1
41/1 41/23 42/5 43/18 44/1
44/15 45/7 45/11 46/1 48/14
49/22 50/4 53/15 53/17 54/4
56/15 56/23 57/14 59/2 60/17
62/10 63/14 66/2 76/4 76/19
80/7 80/8 80/18 81/11 81/11
82/10 85/1 85/12 87/9 87/24
88/3 89/2 89/4 89/11 89/18
90/8 92/7 93/9 95/10 95/12
96/20 96/21 98/19 98/22
98/23 99/6 100/1 100/7 104/7
108/3 109/6 109/9 110/17
114/7 115/4
you've [26]  18/11 20/21 36/15
37/23 39/24 41/21 41/22
42/24 44/2 44/4 44/25 45/12
46/5 46/6 48/19 52/2 56/9
58/1 61/5 62/3 73/13 75/13
87/14 94/12 102/16 109/19
your [105]  3/9 3/23 4/3 4/5
4/10 5/7 11/2 11/8 14/7 14/9
14/11 14/12 17/20 18/2 18/19
19/2 19/24 22/1 22/16 27/7
33/1 35/16 42/24 48/20 53/3
53/15 59/18 59/18 66/22 67/2
67/6 67/14 68/3 68/6 68/19
69/14 70/12 70/21 71/4 71/9
71/24 72/23 78/4 78/16 79/17
81/16 82/10 82/13 82/18
83/21 84/8 85/6 86/14 87/15
88/3 88/5 88/25 89/3 89/11
90/4 90/9 90/14 91/19 91/20
91/24 93/15 94/11 95/3 95/5
95/11 95/15 95/18 95/22 96/7
96/8 99/19 99/24 100/2
100/10 100/14 100/17 100/19
100/24 101/4 101/13 101/14
101/16 102/8 103/2 103/10
104/17 108/24 109/1 109/17
111/10 111/23 112/20 112/22
113/9 114/12 116/23 116/25
117/2 117/22 117/24
Your Honor [25]  3/9 4/5 11/2
11/8 14/9 14/11 22/1 68/3
68/6 69/14 70/12 71/9 79/17
82/13 82/18 88/5 90/14 91/20
95/22 96/8 99/19 99/24 102/8
103/10 116/25
Your Honor's [1]  19/24