

March 9, 2023

**VIA E-FILING**
The Honorable Christopher J. Burke
J. Caleb Boggs Federal Building
844 N. King Street
Unit 28, Room 2325
Wilmington, DE 19801

      RE:    *Natera, Inc. v. CareDx, Inc.*
                  C.A. No. 20-cv-38-CFC-CJB

Dear Judge Burke:

Following the February 27 hearing, the parties continue to dispute the number of invalidity arguments CareDx may raise and have unfortunately been unable to agree upon a stipulation.

**CareDx's Position**

After much back and forth, Natera unfortunately insists upon placing prejudicial and impractical limits on the number of § 112 arguments CareDx may raise.[1] Having already made numerous significant compromises throughout this weeks-long process, CareDx simply cannot agree to Natera's latest demands, which it never raised at the hearing. The Court's assistance is thus regrettably required again. The limitations Natera insist upon imposing are serious and would create significant due process concerns; CareDx thus requests a hearing to the extent the Court contemplates adopting Natera's request.

By way of background, as the Court may recall from the hearing, there was a question over whether there should be a per-claim limit on the number of prior art grounds CareDx can raise. Counsel for CareDx explained that a limit of three grounds per claim would be too drastic because CareDx would require *at least* four grounds per claim:

> MR. WALTER: Let me make sure I understood correctly. What I'm saying is that *for each of the claims at issue*, I expect that there will be enablement, written description, Section 101 and at least one form of invalidity attack.
>
> ***So if I'm limited to three arguments per claim, that would be too drastic of a narrowing because I'd have to knock out a very important invalidity defense that I wouldn't be able to present.***

Tr. at 17:19-19:7.

---

[1] The correspondence between the parties on this issue is reflected in the attached correspondence. *See* Ex A (email correspondence between D. Walter and J. Nardinelli); Ex. B (attachment to 3/2/23 email from D. Walter); Ex. C (attachment to 3/3/23 7:02 AM email from J. Nardinelli); Ex. D (attachment to 3/3/23 9:06 AM email from D. Walter); Ex. E (attachment to 3/3/23/ 12:25 email from J. Nardinelli).

In response to the foregoing concern, the Court asked if Natera could live ***without*** a per claim limit. Natera stated that it could, never suggesting that it needed some special rule for counting defenses under § 112. *See id.* at 19:8-20:15. Just the opposite, Natera stated with regard to a per claim limit that "this likely isn't the type of thing that we would have gone running to the Court over…." *Id.* at 20:20-21. Based on this, the Court issued its ruling, which Natera assented to. *Id.* at 21:18-22:23. Yet, on the day the parties were supposed to submit a stipulation memorializing the Court's ruling, Natera insisted upon including language in the stipulation that would, as a practical matter, impose extreme per claim limits and prejudice CareDx.

Specifically, Natera first insisted that the stipulation include language stating that "if the same argument is applied to multiple claims, that will count as multiple Invalidity Arguments." *See* Ex. C at 1. Thus, under Natera's proposal, which calls for 36 invalidity grounds to be applied to 12 claims with loss of a ground every time it is applied to a claim, CareDx could ***only*** have ***three*** grounds per claim if it spread its invalidity grounds equally over the claims. As such, under Natera's proposal, CareDx could ***never*** have four invalidity grounds for each of the claims. This, however, was the exact problem CareDx identified at the hearing and that caused the Court to remove the per claim limit. In other words, Natera's position was that the upshot of the Court's ruling was to ***prevent*** CareDx from having four invalidity grounds for each of the claims when, in fact, the intent was to ensure that CareDx ***could*** have at least four invalidity grounds per claim.

Natera eventually backed away from this unreasonable position,[2] and, after further delay, ultimately proposed what, at first blush, seemed like a reasonable compromise solution. *See* Ex. A (March 6 email from J. Nardinelli at 4:30 pm). This proposal is set forth below:

| Number of Asserted Claims | Anticipation Defenses | Obviousness Defenses | 112 Defenses | Total Defenses Per Claim |
|---|---|---|---|---|
| 18 (to be identified by Natera on March 17) | 3 | 6 | 6 | 15 |
| 12 (to be identified by Natera on August 4) | 2 | 4 | 4 | 10 |

CareDx would have agreed to this (even though the hearing made clear that there would be no per-claim limits). *See* Ex. A (March 6 email from D. Walter at 7:27 pm). But, unfortunately, Natera

---

[2] Indeed, Natera's position on pre-trial narrowing would have created major due process concerns and was way out of line with what the trial judge in this case would order at the ***trial*** phase. *See, e.g.*, *10x Genomics, Inc. v. Celsee, Inc.*, 19-cv-00862-CFC-SRF (D. Del. July 1, 2021), ORAL ORDER (for six asserted claims, ruling that for trial "Defendants invalidity theories shall consist of (1) no more than a total of nine combinations of obviousness references and no more than two such combinations for any one asserted claim; (2) no more than one anticipation defense for any asserted claim; and (3) no more than nine § 112 defenses in total and no more than two such defenses for any one claim."); *Boston Scientific Corp. et al v. Nevro Corp.*, C.A. 16-cv-01163-CFC-CJB (D. Del. Sept. 20, 2021) ORAL ORDER (ordering for trial that "Defendant shall identify for Plaintiffs no later than 10/1/21 no more than two obviousness combinations per claim and no more than two other defenses per claim").

insisted upon yet another catch that would prejudice CareDx and impose extreme per-claim limits. Specifically, Natera insisted that in counting § 112 defenses, "a single 112 defense can't be 'claim 1 is not enabled.'  It is 'claim 1 is not enabled because of limitation x.'  *If CareDx also argues that claim 1 is not enabled because of limitation y, that counts as an additional 112 argument*." *See* Ex. A (March 6 email from J. Nardinelli at 4:30 pm).

This unreasonable proposal—which Natera never raised at the hearing—would prejudice CareDx in the unique facts at issue here. Indeed, here it is undeniable that Natera's claims have major written description and enablement problems.  While Natera contends it made the alleged inventions in two of its patents in the 2005-06 time frame, it never even began drafting the claims-in-suit until roughly *15 years later*.  For Natera's third patent, there was nearly a *10-year delay* between when Natera allegedly made its inventions and began drafting its claims.  As such, there is a huge disconnect between what Natera alleges it invented years earlier in its specifications and what it later claimed when it decided to sue CareDx.

For instance, as Counsel for Natera acknowledged in the parties' correspondence, CareDx has identified at least *seven* claim elements that are not described or enabled in claim 1 of Natera's '180 patent alone.  *See* Ex. A (March 6 email from J. Nardinelli at 7:52 pm).  A virtually identical situation exists with regard to Natera's other two patents, which describe nothing but a narrow technique from Natera's earliest days based on isolating nucleic acid from distinct sources, but that include claims loaded with features having nothing to do with this technique.  Likewise, Natera's late-drafted claims include multiple unsupported negative limitations that it drafted in a misguided attempt to evade the prior art.  While Natera understandably wishes to prevent CareDx from being able to inform the jury of the full extent to which its claims deviate from what it described, CareDx's enablement and written description defenses are critical defenses that CareDx should be able to present *in full*.  Natera's attempt to slice and dice these defenses up into little bits and then only allow CareDx to present scraps of them should be rejected.  In addition to being prejudicial, Natera's approach is impractical because, as is the case here, the reasons a patent claim are invalid under § 112 depend on interrelated aspects of the elements of a claim. There is no good, clear way to consistently set up boundaries between what constitutes distinct enablement and/or written description arguments.  They overlap.  Natera's proposal, if adopted, would lead to intractable disputes down the road about what is a distinct invalidity ground under § 112.

Maybe, at some point, after expert reports and summary judgment, when the Court and parties have more information and can better scrutinize the § 112 defenses, there can be a discussion about further limiting 112 defenses.  But that is not ripe now.  At this stage, to avoid further dispute, the limit on § 112 defenses should just be removed.

Indeed, in a recent case before Judge Fallon, the Court *rejected* limitations on section 112 defenses at this stage of the case. *See Fraunhofer v. Sirius*, No. 17-184-JFB-SRF, D.I. 427, Slip-Op. ¶ 14 (D. Del. April 22, 2021).  Even *after* expert discovery, the Court in *Fraunhofer* declined to limit the number § 112 defenses.  *See Fraunhofer*, D.I. 634, February 14, 2023 Oral Order ("The procedural posture of this case does not lend itself to the narrowing of § 112 arguments at this time because there is a reasonable likelihood that SXM's § 112 arguments will be reduced on their own as the case progresses.").  What's more, the Court adopted a far broader interpretation of what should count as a defense under § 112 than what Natera insists upon now, allowing unlimited application of an argument to multiple claims. As the Court stated in *Fraunhofer*, a "*§ 112*

3

*argument shall mean an argument by Defendant that one or more claims fail to satisfy the one or more requirements of § 112*. By way of example, if Defendant argues that one or more claims are invalid under one or more of the requirements of § 112 based on a particular claim limitation, that shall count as a single argument. If other claims have the same limitation that comprises the basis for the given invalidity argument under § 112, that shall ***not count*** as an additional § 112 argument." *See Fraunhofer*, D.I. 634, February 14, 2023 Oral Order. If a limit is nonetheless included now, it should not be based on granular counting that Natera insists upon. Enablement, for instance, should be deemed one ground, ***not*** multiple grounds depending on how one might arbitrarily slices up the reasons that show lack of enablement before fact discovery is even done.

CareDx is aware of no instance where a Court has imposed such fine-grained limitations upon a defendant with regard to its § 112 defenses. In fact, at this stage, Judge Connolly commonly does not limit a defendant to ***any*** number of invalidity theories at all, let alone a specific number of arguments under § 112. Rather, Judge Connolly simply limits the number of prior art references or combinations that a defendant may rely upon. *See, e.g.*, *VLSI Technology LLC v. Intel Corporation*, C.A. 18-966-CFC (D. Del. Apr. 22, 2019) (in a 5 patent case, after claim construction, plaintiff was limited to 18 claims, and 14 days later, defendant order to narrow to no more than 30 combinations of prior art references); *Cephalon v. Slayback*, No. 17-1154-CFC, Oral Hearing Tr. at 45:14-19 (Ex. F) (D. Del. Mar. 12, 2019) ("All right. What I'm going to do is, by March 19th, plaintiff has to identify 25 claims, and within 15 days, defendants have to identify no more than 40 prior art references on which they can rely to prove their invalidity claims.").

Natera's 11th hour attempt nickel-and-dime CareDx on its § 112 defenses to inflict prejudice upon CareDx should be rejected.

**Natera's Position**

Although the parties believed they had reached agreement, it is now apparent there was not a meeting of the minds. Latent ambiguities arose when the parties worked to draft a case-narrowing stipulation consistent with the February 27, 2023 hearing.

At the hearing, when asked if Natera would agree to eliminate the per-claim limit (to accept "36 total, but [CareDx] could use them however [CareDx] wanted with regard to the claims," Tr. at 19:20-20:15), Natera understood the options as follows:

- With a per-claim limit, CareDx is limited to 36 invalidity arguments, and may assert no more than three arguments against any claim.

- Without a per-claim limit, CareDx is limited to 36 invalidity arguments, but may spread those arguments as it wishes. For instance, CareDx may assert four arguments against a particular claim, but must allot for that by asserting only two arguments against another claim.

The options are similar, but the latter gives CareDx more flexibility. Although Natera preferred the first option, it did not view the difference as enormous, and so agreed to the latter to reach compromise. Tr. at 20:20-21 ("[T]his likely isn't the type of thing that we would have gone running to the Court over…."). Under that compromise, CareDx would be able to assert, against

4

every claim, at least one argument under enablement, written description, Section 101, and obviousness or anticipation—just as CareDx proposed at the hearing and repeats here.

CareDx later presented a dramatically different view of the second option:

- Without a per-claim limit, CareDx is limited to 36 invalidity arguments, but may assert *as many of those 36 as it wishes* against *every* claim.

Moreover, CareDx contends that multiple different theories (e.g., multiple theories that a particular claim lacks written description) count as only one "invalidity argument." CareDx's proposal is not "narrowing" in any reasonable sense of the word. Had Natera understood that to be the procedure on offer, it would not have assented to it.

As has become clear in subsequent meet-and-confers, the primary dispute between the parties is how to define an "argument" with respect to enablement and written description. CareDx contends that it may assert multiple distinct arguments that a particular claim lacks written description (or enablement), yet count those as only a single argument. CareDx currently asserts forty-one unique written description arguments and sixty-one unique enablement arguments, including for instance seven different theories why claim 1 of the '180 Patent lacks written description. Ex. G at 45-47 (annotations added). CareDx wants to assert each of these theories and have them count, combined, as only one argument against their cap. But to meaningfully narrow the issues as the case progresses to trial, CareDx must select which theories to advance. Otherwise, CareDx can effectively assert an unlimited number of enablement and written description theories against *every* claim.

CareDx claims there is "no good, clear way to consistently set up boundaries between what constitutes distinct enablement and/or written description arguments." But CareDx's invalidity contentions have already done that. Ex. G. CareDx refuses to narrow its § 112 defenses because it believes it is entitled to pepper the jury with more theories than can be reasonably tried, based on conspiratorial theories about the priority date of the patent[3].

Furthermore, to limit CareDx to a discrete number of specific § 112 defenses would be consistent with *Fraunhofer*, where the Court directed that "if Defendant argues that one or more claims are invalid under one or more of the requirements of § 112 *based on a particular claim limitation*, that shall count as a single argument." *Fraunhofer v. Sirius*, No. 17-184-JFB-SRF, D.I. 634, February 14, 2023 Oral Order (emphasis added).

CareDx is frank about its utter refusal to narrow, stating that any limitations on its § 112 defenses "should just be removed." CareDx argues that "fairness" and "due process" require CareDx to be able to present as many § 112 arguments as it wants to. This is an attack on case narrowing itself. That CareDx purports to believe in its own arguments does not mean that fairness precludes

---

[3] These are post-GATT patents that expire 20 years from priority application. It is hardly unusual for continuation applications to be filed some years after a priority date after other claims are prosecuted. Usually those applications will have newly drafted claims. CareDx's strategy appears to be to sway the jury by arguing that continuation practice is some sort of malfeasance, rather than arguing substance.

CareDx having to narrow them; Natera believes that CareDx infringes dozens of claims, but will not be able to try them all, and thus has never objected to dropping certain claims. Moreover, CareDx acknowledges that further narrowing will be required for trial by Chief Judge Connolly. So CareDx's reluctance to narrow is truly about delaying its own decision and keeping Natera in the dark.

Finally, CareDx's claim that it ***must*** assert a litany of enablement and written description arguments against every claim is likely false, given the overlap in those two defenses and the clear disclosures in the written specifications. *See, e.g.*, '544 Patent claim 2 ("The method of claim 1, wherein the biological sample is a blood sample"); *id.* at 57:2-5 (teaching that the biological sample may be "a female blood sample" or "a male blood sample"). Indeed, CareDx asserts no § 112 defenses against that claim (or against several others). Ex. F at 59, 74.

Respectfully submitted,

/s/ Michael J. Farnan

Michael J. Farnan

cc: Counsel of Record (Via E-Filing)