# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NATERA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 20-038 (CFC) (CJB) |
| | ) | (CONSOLIDATED) |
| CAREDX, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**EXHIBIT 1: JOINT STATEMENT OF UNCONTESTED FACTS**

Pursuant to Delaware Local Rule 16.3(c)(3), Plaintiff Natera, Inc. ("Natera") and Defendant CareDx, Inc. ("CareDx") hereby submit the following joint statement of facts which are admitted or not disputed and/or have been stipulated to by the Parties, and thus require no proof at trial. Either party may read any or all of these uncontested facts into the record at trial and will be charged for the time used to do so.

## I.    THE PARTIES

1.    Plaintiff Natera, Inc. is a Delaware corporation with its principal place of business at 13011 McCallen Pass, Building A Suite 100, Austin, Texas 78753.

2.    Defendant CareDx, Inc. is a Delaware corporation with its principal place of business at 8000 Marina Boulevard, Brisbane, California 94005.

## II.    THE PATENTS-IN-SUIT

3.    U.S. Patent No. 10,655,180 (the "'180 Patent") issued on May 19, 2020 and is titled "Methods for Simultaneous Amplification of Target Loci."

4.    U.S. Patent No. 11,111,544 (the "'544 Patent") issued on September 7, 2021 and is titled "System and Method for Cleaning Noisy Genetic Data and Determining Chromosome Copy Number."

5.    U.S. Patent Application No. 16/823,127, which issued as '544 Patent, was filed on March 18, 2020.

## III.    INFRINGEMENT

6.    The accused AlloSure and AlloSeq tests are organ transplant products that measure cell-free DNA comprising nucleic acid fragments from both an organ donor and a recipient.

**A.    AlloSure Versions**

7.    CareDx launched its AlloSure test in 2017.

8.    For purposes of infringement, ████████████████████████

████████████████████████████████████████████████████

**B.    Domestic Application**

9.    CareDx has used, offered for sale, and sold the accused AlloSure test in the United States.  CareDx has performed all steps of the accused AlloSure test in the United States.

10.    CareDx has used the accused AlloSeq test in the United States.  CareDx has performed all steps of the accused AlloSeq test in the United States.

**C.    The '180 Patent**

11.    The CareDx Accused Products practice the preamble of independent claim 14 of the '180 Patent.

12.    The CareDx Accused Products practice claim element 14[a] of the '180 Patent.

13.    With respect to claim 14[b] of the '180 Patent, CareDx performs high-throughput sequencing using the Illumina sequencing platform.

14.     The CareDx Accused Products practice claim element 14[c] of the '180 Patent.

15.     The CareDx Accused Products practice claim element 14[d] of the '180 Patent.

16.     Claim 15 of the '180 Patent depends on claim 14.  With respect to dependent claim 15 of the '180 Patent, CareDx argues that this claim is not infringed only because the CareDx Accused Products do not practice claim 14.

**D.     The '544 Patent**

17.     With respect to independent claim 21 of the '544 Patent, CareDx contends that this claim is not infringed only because the CareDx Accused Products do not practice claim elements 21[a], 21[b], or 21[c].

18.     Claim 26 of the '544 Patent depends on claim 21.  With respect to dependent claim 26 of the '544 Patent, CareDx argues that this claim is not infringed only because the CareDx Accused Products do not practice independent claim 21.

19.     Claim 27 of the '544 Patent depends on claim 21.  With respect to dependent claim 27 of the '544 Patent, CareDx argues that this claim is not infringed only because the CareDx Accused Products do not practice independent claim 21.

## IV.   INVALIDITY

**A.     Prior Art**

20.    U.S. Patent No. 8,703,652 (the "'652 Patent" or "Quake"), issued on April 22, 2014, and is entitled "Non-Invasive Diagnosis of Graft Rejection in Organ Transplant Patients."

21.    Stanford University owns the '652 Patent. ████████████████

████████████████████████████████

22.    The '652 Patent claims priority to U.S. Provisional Patent Application No. 61/280,674, filed on November 6, 2009.

23.    U.S. Patent Publication No. 2004/0137470 ("Dhallan") published on July 15, 2004.

24.    U.S. Patent Publication No. 2006/0228721 ("Leamon") is the publication of U.S. Patent Application No. 11/104,781, filed April 12, 2005, published on October 12, 2006.

25.    Dhallan 2007 is an article titled "A non-invasive test for prenatal diagnosis based on fetal DNA present in maternal blood: a preliminary study," published on February 10, 2007.

**B.    Priority**

1.    <u>The '544 Patent</u>

26.    U.S. Provisional Patent Application No. 60/846,610 (the "'610 provisional") is entitled "System and Method for Cleaning Noisy Genetic Data From Target DNA Using Genetic Data From Genetically Related Individuals."

### C.    OBVIOUSNESS

1.    '544 Patent

27.    Quake discloses "extracting cell-free DNA from the biological sample" as recited in claim element 21[a] of the '544 Patent.

28.    Claim 21[b] of the '544 Patent requires the following features: (1) preparing a preparation of amplified DNA (2) by amplifying a plurality of target loci on (3) the cell-free DNA extracted from the biological sample to generate amplified DNA.

29.    Quake discloses element 21[b] of the '544 Patent.

30.    Claim 26 of the '544 Patent requires the following requirements: the amplifying comprises (1) targeted PCR and (2) universal PCR.

31.    Dhallan discloses targeted PCR.

32.    Leamon discloses targeted PCR.

33.    Claim 27 of the '544 Patent requires that the sequencing-by-synthesis comprises clonal amplification of the amplified DNA and measurement of sequences of the clonally amplified DNA.

34.    Leamon    discloses    sequencing-by-synthesis    comprising    clonal amplification of DNA.

35.    Quake    discloses    sequencing-by-synthesis    comprising    clonal amplification of DNA.

2.    '180 Patent

36.    Claim element 14(a) of the '180 Patent requires the following features: (1) performing a targeted PCR amplification for more than 100 SNP loci on one or more chromosomes expected to be disomic in a single reaction mixture using more than 100 PCR primer pairs, (2) wherein the reaction mixture comprises cell-free DNA extracted from a biological sample of a subject comprising DNA of mixed origin, (3) wherein the DNA of mixed origin comprises DNA from the subject and DNA from a genetically distinct individual, (4) wherein neither the subject nor the genetically distinct individual is a fetus, (5) wherein the DNA of mixed origin comprises DNA from a transplant, (6) and wherein the amplified SNP loci comprise SNP loci on at least chromosome 1, 2, or 3.

37.    The United States Patent and Trademark Office considered the Quake reference as prior art during prosecution of the '180 Patent and issued the '180 Patent as non-obvious over the Quake reference.

38.    Quake discloses claim element 14(a) features (2)-(6) of the '180 Patent.

39.     Dhallan 2007 does not disclose element 14(a) features (1), (4), (5), and (6) of the '180 Patent.

40.     Dhallan 2007 discloses element 14(a) features (2) and (3) of the '180 Patent.

41.     Claim element 14(b) of the '180 Patent requires measuring a quantity of each allele at a plurality of amplified SNP loci that comprise an allele present in the genetically distinct individual but not the subject, wherein the quantity of each allele at a plurality of amplified SNP loci are measured by high-throughput sequencing.

42.     Quake discloses claim element 14(b) of the '180 Patent.

43.     Dhallan 2007 does not disclose claim element 14(b) of the '180 Patent.

44.     During prosecution of the '180 Patent, Natera amended the claims to add the "without prior knowledge" limitation in response to the patent Examiner's rejection finding the claims obvious over Quake.  Following that amendment, the Examiner withdrew the rejection and did not base any further rejections on Quake.

D.     **WRITTEN DESCRIPTION**

1.     '544 Patent

45.     Methods 1a and 1b in the '544 Patent involves "Measuring Aneuploidy or Sex by Quantitative Techniques that do not Make Allele Calls…"

46.    The '544 Patent includes a section titled "The Concept of Matched Filtering" that states "[t]his approach can be applied to a wide range of quantitative and qualitative genotyping platforms." PTX0003 at 54:56-58.

47.    Methods 1(a) and 1(b) are in the section of the '544 Patent titled "The Concept of Matched Filtering."

48.    The '544 Patent specification states: "Pyrosequencing, or sequencing by synthesis, can also be used for genotyping and SNP analysis. The main advantages to pyrosequencing include an extremely fast turnaround and unambiguous SNP calls, however, the assay is not currently conducive to high-throughput parallel analysis."

### 2.    '180 Patent

49.    The claims of the '180 Patent do not include any requirement for selection of primers to avoid primer side products.

50.    The '180 Patent specification states: "At high multiplexing it is not possible to eliminate all spurious interactions, but it is essential to remove the primers or pairs of primers with the highest interaction scores in silico as they can dominate an entire reaction, greatly limiting amplification from intended targets." PTX0005 at 54:41-45.

51.    The '180 Patent specification states:

The present invention is based in part on the surprising discovery that often only a relatively small number of primers

8

in a library of primers are responsible for a substantial amount of the amplified primer dimers that form during multiplex PCR reactions. Methods have been developed to select the most undesirable primers for removal from a library of candidate primers. By reducing the amount of primer dimers to a negligible amount (˜0.1% of the PCR products), these methods allow the resulting primer libraries to simultaneously amplify a large number of target loci in a single multiplex PCR reaction. Because the primers hybridize to the target loci and amplify them rather than hybridizing to other primers and forming amplified primer dimers, the number of different target loci that can be amplified is increased.

PTX0005 at 46:28-42.

52.    The '180 Patent specification states: "The step of removing problematic primers, that is, those primers that are particularly likely to firm [sic] dimers has unexpectedly enabled extremely high PCR multiplexing levels for subsequent analysis by sequencing."  PTX0005 at 48:5-8.

53.    The '180 Patent states: "There are a number of ways to choose primers for a library where the amount of non-mapping primer dimer or other primer mischief products are minimized." PTX0005 at 48:21-23.

54.    The '180 Patent written description states: "Highly multiplexed PCR can often result in the production of a very high proportion of product DNA that results from unproductive side reactions . . . ."  PTX0005 at 47:65-67.

55.    The '180 Patent written description states: "The amplification step will amplify any allelic bias, thus amplification bias introduced due to possible uneven amplification."  PTX0005 at 169:30-32.

56.    The '180 Patent written description states: "A number of methods are described herein that may be used to preferentially enrich a sample of DNA at a plurality of loci in a way that minimizes allelic bias." PTX0005 at 197:65-198:15.

57.    The '180 Patent written description discloses that "[i]n various embodiments, (i) the annealing temperature is … greater than the melting temperature" and that "(i) the length of the annealing step (per PCR cycle) is greater than 1, 3, 5, 8, 10, 15, 20, 30, 45, 60, 75, 90, 120, 150, or 180 minutes." PTX0005 at 4:67-5:2, 5:1-67.

58.    The '180 Patent specification includes 850 instances of the words "fetus" or "fetal."

59.    The '180 Patent states: "In some embodiments, the target DNA may originate from single cells, from samples of DNA consisting of less than one copy of the target genome, from low amounts of DNA, from DNA from mixed origin ( e.g. pregnancy plasma: placental and maternal DNA; cancer patient plasma and tumors: mix between healthy and cancer DNA, transplantation etc), from other body fluids, from cell cultures, from culture supernatants, from forensic samples of DNA, from ancient samples of DNA (e.g. insects trapped in amber), from other samples of DNA, and combinations thereof." PTX0005 at 91:42-51.

60.    The '180 Patent states: "In an embodiment, these methods may be used in the case where cells of different genetic constitution may be present in a single

individual, such as with cancer or transplants. In an embodiment, some of the DNA is from the recipient of a transplant (such as recipient cell-free or cellular DNA) and some of the DNA is from the donor of the transplant (such as cell-free or cellular DNA from the transplant). In an embodiment, the method is used to amplify one or more loci that differ between the recipient and the donor (such as loci for which a different combination of alleles are present in the recipient compared to the donor)." PTX0005 at 95:30-40.

61.    The '180 Patent written description states: "In some embodiments, the target loci are on two or more different chromosomes, such as two or more chromosomes 13, 18, 21, X and Y." PTX0005 at 20:34-36.

62.    The '180 Patent written description states: "Commercially significant aneuploidies that may be detected include aneuploidy of the human chromosomes 13, 18, 21, X and Y." PTX0005 at 120:58-60.

**E.    CareDx's First Awareness Of The Patents-In-Suit**

63.    ████████████████████████████████████████████

████████████████████████

11

# EXHIBIT 2

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

NATERA, INC.,                          )
                                       )
              Plaintiff,               )
                                       )
      v.                               )    C.A. No. 20-038 (CFC) (CJB)
                                       )    (CONSOLIDATED)
CAREDX, INC.,                          )
                                       )
              Defendant.               )

## EXHIBIT 2: NATERA'S STATEMENT OF ISSUES OF FACT TO BE LITIGATED AT TRIAL

Pursuant to Delaware Local Rule 16.3(c)(4), Plaintiff Natera, Inc. ("Natera") hereby submits the following statement of issues of fact that remain to be litigated and decided by the jury or the Court.

This statement is based on the current status of the case and the Court's rulings to date. Natera reserves the right to revise, amend, supplement, or modify the following statement based on any pretrial rulings by the Court and/or to address any additional issues, arguments, evidence, or other developments in the case, including edits to the draft pretrial order, any meet and confers or other negotiations between the parties, pending motions, and similar developments. The following statement of issues of fact is not exhaustive, and Natera reserves the right to prove any matters identified in the pleadings, interrogatory responses, and/or expert reports. Natera intends to offer evidence as to the issues of fact and issues of law identified in this Pretrial Order. Natera further intends to offer evidence to rebut evidence offered by CareDx, Inc. ("CareDx"). To the extent that Natera's Statement of Issues of Law to be Litigated set forth in Exhibit 4 contains issues of fact, those issues are incorporated herein by reference. Should the Court determine that any issue identified below is more appropriately considered an issue of law, Natera incorporates such issue by reference in Exhibit 4. Natera also incorporates by reference its expert reports to identify the issues to be resolved at trial.

1

## I.    CAREDX DIRECTLY INFRINGED THE ASSERTED PATENTS

1.    Whether Natera has proven by a preponderance of the evidence that CareDx directly infringed one or more of Claims 21, 26, and 27 of U.S. Patent No. 11,111,544 ("the '544 Patent") and Claims 14 and 15 of U.S. Patent No. 10,655,180 ("the '180 Patent) (together, the "Asserted Claims of the Asserted Patents") by having made, used, or sold AlloSure and AlloSeq (the "Accused Products") in violation of 35 U.S.C. § 271(a).

## II.    CAREDX WILLFULLY INFRINGED THE ASSERTED PATENTS

2.    Whether Natera has proven by a preponderance of the evidence that CareDx willfully infringed one or more Asserted Claims of the Asserted Patents in violation of 35 U.S.C. § 284.

## III.    NATERA IS ENTITLED TO INJUNCTIVE RELIEF

3.    Whether Natera is entitled to an order permanently enjoining CareDx and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting on behalf of or in active concert or participation therewith, from further infringement of the '180 Patent and '544 Patent.

## IV.    NATERA IS ENTITLED TO DAMAGES AND INTEREST FOR CAREDX'S INFRINGEMENT

4.    The amount of damages, in the form of lost profits and/or reasonable royalty, that Natera is entitled to for CareDx's alleged infringement.

5.     Whether Natera is entitled to lost profits for CareDx's infringement by its AlloSure product from April 2020 through the end of the damages period.

6.     Whether Natera is entitled to reasonable royalty damages of for CareDx's infringement of its AlloSure product based on sales from April 2020 through the end of the damages period.

7.     Whether Natera is entitled to reasonable royalty damages for CareDx's infringement of its AlloSeq product based on sales from April 2020 through the end of the damages period.

8.     Whether Natera is entitled to an award of prejudgment and post-judgment interest.

## V.     NATERA IS ENTITLED TO ENHANCED DAMAGES, ATTORNEYS' FEES AND COSTS FOR CAREDX'S INFRINGEMENT

9.     Whether Natera is entitled to enhanced damages pursuant to 35 U.S.C. § 284.

10.     Whether this case is exceptional pursuant to 35 U.S.C. § 285, and, if so, whether Natera is entitled to its attorneys' fees and costs.

## VI.     NATERA'S ASSERTED PATENTS ARE VALID

11.     Whether CareDx has overcome, by clear and convincing evidence, the presumption that each of the Asserted Claims of the Asserted Patents is valid.

12.     Whether CareDx has proven by clear and convincing evidence that the Asserted Claims of the '180 Patent are invalid pursuant to 35 U.S.C. § 101 as claiming patent ineligible subject matter.

13.     Whether CareDx has proven that the techniques disclosed in the '180 Patent were and routine and conventional as of its priority date.

14.     Whether CareDx has proven by clear and convincing evidence that the Asserted Claims of the Asserted Patents are invalid in view of the prior art pursuant to 35 U.S.C. § 103, including by establishing:

     a. the priority date of each asserted claim of each Asserted Patent.

     b. the scope and content of the prior art asserted against the Asserted Patents.

     c. the level of ordinary skill in the art at the time of the inventions of the Asserted Patents.

       the differences between the claimed inventions of the Asserted Patents and the asserted prior art.

15.     Whether Natera has established that a person of ordinary skill in the art ("POSA"), at or prior to 2005 and through to the present, would have at least a bachelor's degree (with several additional years of laboratory experience) in a life or physical sciences discipline with applications in genomics.

16.    Whether CareDx can prove by clear and convincing evidence each alleged fact forming the foundation upon which CareDx asserts that any of the Asserted Claims of the Asserted Patents are obvious.

17.    Whether CareDx can prove that U.S. Patent Publication No. 2004/0137470 ("Dhallan") discloses claim element 21[b] of the '544 Patent.

18.    Whether CareDx can prove that U.S. Patent No. 8,703,652 ("Quake") or Dhallan discloses claim element 21[c] of the '544 Patent.

19.    Whether CareDx can prove that either Dhallan or U.S. Patent Publication No. 2006/0228721 ("Leamon") discloses universal PCR as required by claim 26 of the '544 Patent.

20.    Whether CareDx can prove that Leamon discloses targeted PCR as required by claim 26 of the '544 Patent.

21.    Whether CareDx can prove that Dhallan discloses claim 27 of the '544 Patent.

22.    Whether CareDx can prove that Quake or Leamon discloses measurement of sequences of clonally amplified DNA as required by claim 27 of the '544 Patent.

23.    Whether CareDx can prove that Dhallan 2007 discloses claim element 14(a) features (1), (4), (5), and (6) of the '180 Patent.

24.     Whether CareDx can prove that Quake discloses element 14(a) feature (1) of the '180 Patent.

25.     Whether CareDx can prove that Quake discloses element 14(a) feature (1) of the '180 Patent.

26.     Whether CareDx can prove that Dhallan 2007 discloses claim element 14(b) of the '180 Patent.

27.     Whether CareDx can prove that Quake claim element 14(c) of the '180 Patent.

28.     Whether CareDx can prove by clear and convincing evidence that a person of ordinary skill in the art at the time of the invention of each Asserted Patent, without the benefit of hindsight, would have had any reason or motivation to combine the alleged prior art in a manner that would render any of the claims of the Asserted Patents obvious.

29.     Whether CareDx can prove by clear and convincing evidence that a person of ordinary skill in the art at the time of invention of each of the Asserted Patents, without the benefit of hindsight, would have reasonably expected to succeed in combining the teachings of the prior art to achieve the claimed inventions of each of the Asserted Claims of each of the Asserted Patents.

30.     If CareDx has made a *prima facie* showing that the Asserted Claims of the Asserted Patents are invalid as obvious pursuant to 35 U.S.C. § 103, whether

6

secondary indicia of non-obviousness demonstrate that the claimed inventions of the Asserted Claims would not have been obvious, and whether there is a nexus between such secondary considerations and the claimed inventions of the Asserted Claims.

31.    Whether CareDx has proven by clear and convincing evidence that the Asserted Claims of the Asserted Patents are invalid pursuant to 35 U.S.C. § 112 as lacking written description support.

32.    Whether CareDx has proven by clear and convincing evidence that a person of skill in the art reading the original patent application of each of the Asserted Patents would not have recognized that the inventors invented what is claimed.

33.    Whether CareDx has proven by clear and convincing evidence that the specification of each of the Asserted Patents fails to reasonably convey to a person of skill in the art that the inventors had possession of the claimed subject matter as of the filing date.

34.    Whether CareDx has proven by clear and convincing evidence that the Asserted Patents lack written description when considering the existing knowledge in the particular field, the extent and content of the prior art, and the predictability of the aspect at issue.

35.    Whether CareDx has proven by clear and convincing evidence that the Asserted Patents lack written description, regardless of whether they contain

examples describing every embodiment of the invention, or whether the invention was not actually reduced to practice.

36.    Whether CareDx has proven by clear and convincing evidence that a POSA would not understand the written description of the '544 Patent to teach methods for the analysis of cell-free DNA in samples of mixed genetic information, including for organ transplant.

37.    Whether the "The Concept of Matched Filtering" analysis that Dr. Rabinowitz performed, using samples from organ transplant patients, demonstrated that a person of ordinary skill in the art would have understood that the claimed subject matter is described in the '544 Patent.

38.    Whether CareDx has proven by clean and convincing evidence that a POSA would not understand that the '544 Patent's written description does not disclose that calling alleles means determining which alleles are present, *i.e.*, the genotypes at each SNP locus.

39.    Whether CareDx has proven that Jarvie, T., "Next generation sequencing technologies", Drug Discovery Today: Technologies, vol. 2, No. 3, 2005, 255-260 ("Jarvie") is cited in the "References Cited" section on the face of the '544 patent and therefore incorporated by reference.

40.    Whether Jarvie describes pyrosequencing and other sequencing-by-synthesis methods.

41.    Whether CareDx has proven by clear and convincing evidence that the Asserted Patents lack written description, regardless of whether they describe every conceivable and possible future embodiment of the claimed invention.

42.    Whether CareDx has proven by clear and convincing evidence that the '180 Patent written description does not disclose analysis of chromosomes 1, 2, or 3, as required by claim element 14[d] of the '180 Patent.

43.    Whether CareDx has proven by clear and convincing evidence that the Asserted Claims of the '544 Patent are not entitled to their claimed priority date.

44.    Whether CareDx has proven that the '544 Patent is not entitled to Natera's asserted priority date of September 22, 2006, as established by U.S. Provisional Patent Application No. 60/846,610 ("the '610 provisional").

EXHIBIT 3

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

NATERA, INC.,                          )
                                       )
                  Plaintiff,           )     C.A. No. 20-038 (CFC) (CJB)
                                       )
         v.                            )     (CONSOLIDATED)
                                       )
CAREDX, INC.,                          )
                                       )
                  Defendant.           )
_____)

## EXHIBIT 3

## DEFENDANT'S STATEMENT OF
## ISSUES OF FACT THAT REMAIN TO BE LITIGATED

Exhibit 3

Defendant's Statement of Issues of Fact that Remain to be Litigated
Pursuant to Delaware Local Rule 16.3(c)(4), Defendant CareDx, Inc.
("CareDx" or "Defendant") hereby submits the following statement of issues of fact
that remain to be litigated.

As stated in CareDx's portion of the joint letter to the Court (D.I. 423), despite
CareDx's efforts to reach agreement on uncontested facts that will streamline issues
for trial, Natera continues to insist that basic and incontrovertible facts relating to
CareDx's defenses are disputed, including for example, facts related to the filing
date of the application which became U.S. Patent No. 10,655,180 ("the '180
Patent"). In Section I, CareDx documents the specifics of these facts that it believes
warrant discussion.

Section II pertains to an additional implication of the Court's summary
judgment ruling that the U.S. Patent No. 11,111, 544 ("the '544 patent") claims
ineligible subject matter, that CareDx's believes warrant discussion.

And Section III addresses legitimate issues of fact that remain for which
CareDx bears the burden of proof or production.

This statement is based on the current status of the case and the Court's rulings
to date. Defendant reserves the right to revise, amend, supplement, or modify the
following statement based on any pretrial rulings by the Court and/or to address any
additional issues, arguments, evidence, or other developments in the case, including
edits to the draft pretrial order, any meet and confers or other negotiations between

Exhibit 3

Defendant's Statement of Issues of Fact that Remain to be Litigated

the parties, pending motions, and similar developments. The following statement of

issues of fact is not exhaustive, and Defendant reserves the right to prove any matters

identified in the pleadings, interrogatory responses, and/or expert reports. Defendant

intends to offer evidence as to the issues of fact and issues of law identified in this

Pretrial Order. Defendant further intends to offer evidence to rebut evidence offered

by Plaintiff, Natera, Inc. ("Natera"). To the extent that Defendant's Statement of

Issues of Law that Remain to be Litigated set forth in Exhibit 5 contains issues of

fact, those issues are incorporated herein by reference. Should the Court determine

that any issue identified below is more appropriately considered an issue of law,

Defendant incorporates such issue by reference in Exhibit 5. Defendant does not

assume the burden of proof with regard to any of the below-listed issues of fact.

Defendant also incorporates by reference its expert reports to identify the issues to

be resolved at trial.

## I.    OUTSTANDING    ISSUES    REGARDING    STATEMENT    OF UNCONTESTED FACTS

### 1.    <u>Routine and Conventional Lab Techniques</u>

1.    In view of the Court's ruling regarding the '724 Patent, CareDx

proposed that the parties agree that a number of laboratory techniques, claimed in

the '724 Patent and deemed routine and conventional by the Court, were in fact,

routine and conventional as of November 26, 2005. Indeed, in view of the summary

judgment ruling, Natera should now be prevented from arguing otherwise. These

Exhibit 3

Defendant's Statement of Issues of Fact that Remain to be Litigated
proposed facts regarding these laboratory techniques are critical because they are the

same techniques recited in the claims of the '544 patent.

    2.    The techniques include:

- "extracting a cell-free DNA from a biological sample";

- "amplifying a plurality of target loci on cell-free DNA extracted from a biological sample to generate amplified DNA";

- "sequencing amplified DNA using sequencing-by-synthesis to obtain genetic data of a plurality of target loci";

- "determining the most likely genetic data for DNA from the first individual based on allele frequencies in the genetic data at the plurality of target loci";

- "sequencing-by-synthesis comprising clonal amplification of the amplified products and measurement of sequences of the clonally amplified DNA."

    3.    As the Court concluded that the '724 Patent was directed to ineligible

subject matter, the techniques in the '724 Patent must be routine and conventional

as of November 26, 2005 (the same priority date claimed by the '544 Patent). *See*

D.I. 402 at 6-7 ("There being no genuine issue of fact about whether the claims of

the #724 patent teach a method of observation of DNA that employs only

conventional techniques, I will grant CareDx' s motion insofar as it seeks summary

judgment of invalidity of the #724 patent under § 101."). Since the same techniques

Exhibit 3
Defendant's Statement of Issues of Fact that Remain to be Litigated

in '724 Patent are also recited in claims of the '544 Patent, CareDx proposed that

they are likewise routine and conventional as of 2005.

4.     Similarly, with regard to the '180 patent, CareDx proposed an

uncontested fact that "determining a bias of the PCR amplification, and using the

bias to statistically correct the determined quantity of each allele at a plurality of

SNP loci on the one or more chromosomes expected to be disomic" is not

unconventional. This too follows directly from the Court's findings in its summary

judgment. As the Court stated, "'determining the bias' is simply math—i.e., counting

and calculating. It is not an unconventional technique…." D.I. 402 at 9-10. Natera,

however, refuses to stipulate to this proposed fact.

5.     Notably, the techniques that Natera now contends are not routine and

conventional are the same techniques that Natera previously successfully argued

were, in fact, routine and conventional in challenging CareDx's patents.

6.     For instance, Natera and its expert have previously admitted that

"targeted PCR" and "universal PCR" techniques were also routine and conventional

before the priority date. *See, e.g.*, DTX1181, IPR2019-01201, Quackenbush Decl. ¶

83 (discussing universal and targeted PCR, Dr. Quackenbush noted that "[b]y *2000*,

PCR had been universally adopted as a standard tool in applications of molecular

biology…PCR was a well-established, ***conventional and indispensable tool for***

***genetic testing*** that was routinely used to ***target and amplify specific, pre-selected***

Exhibit 3

Defendant's Statement of Issues of Fact that Remain to be Litigated

*genes* for further study."); DTX1181, IPR2019-01201, Quackenbush Decl. ¶103 (regarding sequencing-by-synthesis, Dr. Quackenbush noted that "…a method called ***pyrosequencing***, which performs ***sequencing-by-synthesis***, was developed and first published in ***1993***…Based on the machines made available by Pyrosequencing, ***by the year 2000***, pyrosequencing had established itself as a ***standard and conventional*** means for multiplex or high-throughput sequencing.")

7.    Natera has no legitimate basis to reject these facts regarding whether certain laboratory techniques were routine and conventional

### 2.    Lack of Disclosures in the '544 Patent Specification

8.    With regards to the disclosures in the '544 Patent specification, CareDx proposed the following uncontested facts

- The '544 Patent specification does not mention organ transplant even once.

- The '544 Patent includes no working examples involving organ transplant.

- The '544 Patent includes no working examples that utilize sequencing-by-synthesis.

- The '544 Patent includes no working examples that utilize cell-free DNA.

9.    These facts are directly relevant to the written description issue and, if agreed to, would serve to streamline trial proceedings. They are easily confirmed by quickly searching the '544 patent.

6

Exhibit 3
Defendant's Statement of Issues of Fact that Remain to be Litigated

10.     Indeed, Natera's expert admitted that the '544 Patent does not refer to

organ transplant:



Quackenbush Tr. at 254:17-255:4.

11.     Likewise, Natera's expert also admitted that the '544 Patent does not

include any working examples involving cell-free DNA.



Quackenbush Tr. at 255:5-19.

### 3.     <u>Inventor Employment Date</u>

Exhibit 3

Defendant's Statement of Issues of Fact that Remain to be Litigated

12.    Regarding the dates of employment of David Johnson, a named inventor on the '544 Patent, CareDx proposed that "David Johnson was first employed by Natera in 2006." At his deposition, Mr. Johnson specifically testified to this effect:



D.I. 242-7 at 32:21-33:2.

13.    The work history of a Natera employee, and named inventor on Natera's patent should not reasonably be disputed. This fact is relevant to when Natera truly made its inventions, but Natera continues to unreasonably contend that this is a disputed fact.

### 4.    Lack of Disclosure in the '882 Provisional Application

14.    CareDx proposed the following with regards to the disclosures of the '882 provisional application, which Natera relies upon to allege that the '544 patent is entitled to a 2005 priority date.

- The '882 provisional specification does not refer to organ transplant.

8

Exhibit 3

Defendant's Statement of Issues of Fact that Remain to be Litigated

- The '882 provisional specification does not include any examples related to organ transplant.

- The '882 provisional does not include any disclosure of sequencing-by-synthesis.

- The '882 provisional does not include any examples that utilize sequencing-by-synthesis.

- The '882 provisional does not refer to cell-free DNA.

- The '882 provisional does not include any examples that utilize cell-free DNA

15.     As noted above, a simple search of this short provisional document easily confirms that the 882 application does not refer to "organ transplant," cell-free DNA," or "sequencing-by-synthesis." Similarly, there are no working examples involving these concepts anywhere in the application.

16.     Natera's named inventor, Dr. Rabinowitz confirmed that ███

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████

9

Exhibit 3
Defendant's Statement of Issues of Fact that Remain to be Litigated



Rabinowitz Depo. Tr. at 151:10-152:2.

### 5.    Lack of Disclosure in the '610 Provisional Application

17.    CareDx proposed the following with regards to the disclosures of the '610 provisional application, which Natera relies upon to allege that the '544 patent is entitled to a 2006 priority date.

- The '610 provisional specification does not refer to organ transplant.

- The '610 provisional specification does not include any examples related to organ transplant.

- The '610 provisional does not include any examples that utilize sequencing-by-synthesis.

- The '610 provisional does not include any examples that utilize cell-free DNA

18.    A simple search of this short provisional document easily confirms that it does not refer to "organ transplant," nor does it include any working examples involving any of organ transplant, cell-free DNA, or sequencing-by-synthesis.

10

Exhibit 3
Defendant's Statement of Issues of Fact that Remain to be Litigated

## 6.  **Disclosures In The Dhallan Reference Regarding Cell-Free DNA**

19.     With regards to the Dhallan prior art reference, CareDx proposed the following facts:

- Dhallan discloses "extracting cell-free DNA from the biological sample" as recited in claim element 21[a] of the '544 Patent.

- Dhallan discloses element 21[b] of the '544 Patent.

20.     Claim 21[a] and 21[b] of the '544 Patent requires extracting cell-free DNA from a biological sample and amplifying a plurality of loci on the extracted cell-free DNA. A cursory review of Dhallan reveals this limitation. *See* DTX-0660, Dhallan at [0194] ("In a preferred embodiment, *the nucleic acid is extracted*, purified or isolated from non-nucleic acid materials that are in the original sample using methods known in the art prior to amplification"); *id.* at [0176] ("The plasma contains *cell-free fetal DNA and maternal DNA*. *Any standard DNA isolation technique can be used* to isolate the fetal DNA and the maternal DNA including but not limited to *QIAamp DNA Blood Midi Kit supplied by QIAGEN* (Catalog number 51183)."); *id.* at 0075 ("In this aspect, the portion of the sample that is to be analyzed is *the free nucleic acid, not the cellular portion*.")

21.     Natera's expert also admitted this that Dhallan "recommends" the use of cell-free DNA:

Exhibit 3
Defendant's Statement of Issues of Fact that Remain to be Litigated

> 207.  In view of these teachings, a person of ordinary skill in the art would understand that Dhallan's "multiplex" primers are designed to amplify DNA which is at least 284 bases in length. Dhallan specifically recommends the use of this method to amplify cell-free DNA (including in the Examples Illumina relies on).
>
> *See, e.g., id.* ¶¶[2170]–[2181], [2323]–[2335], [2369]–[2381].

DTX-0649, IPR2019-01201, Quackenbush Decl. at ¶ 207.

## II.    IMPLICATION OF COURT'S SUMMARY JUDGMENT RULING

22.    As noted above, there are several uncontested facts that should stem from the Court's summary judgment order finding that the '724 Patent is directed to ineligible subject matter. Yet, there is also an additional implication

23.    In its summary judgement ruling, the Court found that "the #544 patent is a 'method of preparation' patent that falls under *Illumina*" D.I. 402 at 13. And, "under *Illumina*, [such patents] are not *per se* directed to ineligible patentable subject matter. *Id.* (*citing Illumina, Inc. v. Ariosa Diagnostics*, 967 F.3d 1319, 1326 (Fed. Cir. 2020)).

24.    The Court also found that purely analytical steps are simply math and, hence, unpatentable. *See, e.g., id.* at 7 ("…the mental process of 'subsequent analysis' to what are admittedly conventional techniques cannot save the #724 patent from §101's bar") (*citing Genetic Technologies Ltd. v. Merial L.L.C,* 818 F.3d 1369, 1380); *id.* 9-10 ("Thus, "determining the bias" is simply math-i.e., counting and calculating. It is not an unconventional technique or other requirement that

12

Exhibit 3

Defendant's Statement of Issues of Fact that Remain to be Litigated meaningfully differentiates claim 15 from claim 14 for § 101 purposes. Indeed, claiming math in the abstract is quintessential ineligible subject matter.") (*citing Parker v. Flook,* 437 U.S. 584, 595 (1978), *In re Stanford Univ.*, 991 F.3d 1245, 1251, 1251 (Fed. Cir. 2021).

25.    Having secured a favorable summary judgment decision only on the basis that the '544 Patent is directed to a "method of preparation," and hence that the "method of preparation" is allegedly the inventive aspect of the claim, Natera should be precluded from arguing that the claim elements in the '544 Patent involving purely analytical steps are inventive. *See, e.g.*, Claim 21[c] ("analyzing the preparation of amplified DNA…").

## III.    THE NATERA ASSERTED PATENTS ARE INVALID

### A.    Eligibility Under § 101

1.    Whether Defendant has proven by clear and convincing evidence that the '180 Patent is invalid for claiming ineligible subject matter under 35 U.S.C. § 101.  In particular, CareDx intends to show that all steps of the asserted claims of the '180 Patent recite nothing but routine and conventional subject matter, including with regarding the amplification of 100 or more targets in a single reaction volume, which appears to be the only outstanding issue with regard to subject matter eligibility.

Exhibit 3

Defendant's Statement of Issues of Fact that Remain to be Litigated

2.      This Court found in the CareDx patents filed in 2009 that the claim requirement of selective amplification of "at least *1,000* single nucleotide polymorphisms" was conventional. *See* Case No. 19-567, D.I. 183. While Dr. Quackenbush asserts that this was not known, he previously testified that he and others in his lab were using selective amplification years before the '180 patent. D.I. 251-5 at 85:19-88:25; *see also* Case No. 19-567, D.I. 102-1 ¶ 82 ("PCR, including selective amplification, was a well-understood, routine and conventional method for genotyping by 2009."). Natera's own expert in prior proceedings testified that selective amplification of more than 100 loci in a single reaction volume was known by 2008. *See* D.I. 251-6 ¶ 98 ███████████████████████

████████████████████████████████████████ Natera's inventor, Dr. Zimmerman acknowledged that ██████████████████

████████████████████████████ D.I. 251-7 at 24:24-25:13. He also acknowledged that ████████████████████████

███████████████████ *Id.* at 49:5-13

████████████████████████████

**B.      Invalidity Under 35 U.S.C. § 112**

1.      Whether Defendant has proven by clear and convincing evidence that the Asserted Patents are invalid for failure to satisfy the written description requirement under 35 U.S.C. § 112.

14

Exhibit 3

Defendant's Statement of Issues of Fact that Remain to be Litigated

2.    With respect to the '544 patent, Defendants will show that the specification describes not the claimed method, but only a "parental support" approach, at most describes pyrosequencing, does not support transplant testing, does not support of determining genetic data based on allele frequencies, and does not support claims as integrated whole.

3.    With respect to the '180 Patent, Defendant will show that the specification does not support methods that do not require primer selection to avoid primer dimers, the use of cell-free DNA that is not from a fetus, the use of SNP loci on at least chromosomes 1, 2, or 3, and does not support the claims as an integrated whole.

**C.    Priority Date For The '544 Patent**

4.    What is the priority date of the Asserted Claims of the '544 Patent.

5.    Defendant will show that the '544 patent is not entitled to either a 2005 or 2006 priority date. As detailed extensively in Defendants' summary judgment brief, the provisional applications upon which Natera relies are grossly deficient in terms of providing support for the asserted claims. *See generally* D.I. 241.

**D.    Invalidity Under § 103**

6.    Whether Defendant has proven by clear and convincing evidence that the Asserted Patents are invalid as obvious in view of the prior art and state of the art pursuant to 35 U.S.C. § 103.

15

Exhibit 3

Defendant's Statement of Issues of Fact that Remain to be Litigated

7.      Specifically, Defendants will show that the following combinations of

art render the asserted claims invalid:

'544 Patent Claims 21, 26, 27:

- Dhallan + Leamon
- Quake

'180 Patent Claims 14, 15:

- Quake + Dhallan 2007

8.      Whether any alleged "secondary considerations" support the non-

obviousness of the Asserted Patents, including any alleged nexus to the Asserted

Claims of the Asserted Patents.

## IV.   DEFENDANT'S REMEDIES

9.      Whether Defendant can prove that this is an exceptional case justifying

an award of attorneys' fees under 35 U.S.C. § 285, including interest.

10.     Whether Defendant is entitled to attorneys' fees, costs, and litigation

expenses.

11.     Whether Defendant is entitled to any other relief that the Court deems

just and proper.

EXHIBIT 4

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

NATERA, INC.,                          )
                                       )
            Plaintiff,                 )
                                       )
    v.                                 )  C.A. No. 20-038 (CFC) (CJB)
                                       )  (CONSOLIDATED)
CAREDX, INC.,                          )
                                       )
            Defendant.                 )

## EXHIBIT 4: NATERA'S STATEMENT OF ISSUES OF LAW TO BE LITIGATED AT TRIAL

Pursuant to Delaware Local Rule 16.3(c)(5), Plaintiff Natera, Inc. ("Natera") hereby submits the following statement of issues of law that remain to be litigated and decided by the jury or the Court, with citations to authorities relied upon.

This statement is based on the current status of the case and the Court's rulings to date. Natera reserves the right to revise, amend, supplement, or modify the following statement based on any pretrial rulings by the Court and/or to address any additional issues, arguments, evidence, or other developments in the case, including edits to the draft pretrial order, any meet and confers or other negotiations between the parties, pending motions, and similar developments. The following statement of issues of law is not exhaustive, and Natera reserves the right to prove any matters identified in the pleadings, interrogatory responses, and/or expert reports. Natera intends to offer evidence as to the issues of fact and issues of law identified in this Pretrial Order. Natera further intends to offer evidence to rebut evidence offered by CareDx, Inc. ("CareDx"). To the extent that Natera's Statement of Issues of Fact to be Litigated at Trial set forth in Exhibit 2 contains issues of law, those issues are incorporated herein by reference. Should the Court determine that any issue identified below is more appropriately considered an issue of fact, Natera incorporates such issue by reference in Exhibit 2.

# I.    CAREDX DIRECTLY INFRINGED THE ASSERTED PATENTS

## A.    <u>Issues of Law</u>

1.    Whether Defendant CareDx directly infringed under 35 U.S.C. § 271(a) one or more of Claims 14 and 15 of U.S. Patent No. 10,655,180 ("the '180 Patent") (collectively, "the asserted claims of the '180 Patent"), by using, offering to sell, or selling AlloSure and AlloSeq (the "Accused Products") within the United States.

2.    Whether Defendant CareDx directly infringed under 35 U.S.C. § 271(a) one or more of Claims 21, 26, and 27 of U.S. Patent No. 11,111,544 ("the '544 Patent") (collectively, "the asserted claims of the '544 Patent"), by using, offering to sell, or selling the Accused Products within the United States.

## B.    <u>Legal Authority</u>

3.    Direct infringement occurs when "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor…" 35 U.S.C. § 271(a).

4.    "An infringement analysis entails two steps." *Duncan Parking Techs., Inc. v. IPS Grp., Inc.*, 914 F.3d 1347, 1360 (Fed. Cir. 2019) (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc)). "The first step is determining the meaning and scope of the patent claims asserted to be infringed." *Id.* "The second step is comparing the properly construed claims to the device accused of infringing." *Id.*

5.    In the case of a method claim, "[d]irect infringement under § 271(a)
occurs where all steps of a claimed method are performed by or attributable to a
single entity." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022
(Fed. Cir. 2015).  Liability may attach for "offer[ing] to perform" method in United
States.  *CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 667 F. Supp. 2d 29, 36-38 (D.D.C.
2009); *see also WesternGeco LLC v. ION Geophysical Corp.*, 138 S. Ct. 2129, 2137
(2018) (liability can attach if, *inter alia*, "the conduct relevant to the statute's focus
occurred in the United States … even if other conduct occurred abroad"); *Quanta
Computer, Inc. v. LG Electronics, Inc.*, 553 U.S. 617, 628-29 (2008) (method can be
sold for purposes of "patent exhaustion").

6.    The "determination of infringement, both literal and under the doctrine
of equivalents, is a question of fact, reviewed for substantial evidence when tried to
a jury." *Fleet Engineers, Inc. v. Mudguard Techs., LLC*, No. 2022-2001, 2023 WL
5219773, at *6 (Fed. Cir. Aug. 15, 2023) (quoting *TI Grp. Auto. Sys. (N. Am.), Inc.
v. VDO N. Am., LLC*, 375 F.3d 1126, 1133 (Fed. Cir. 2004)).  A patentee may prove
direct infringement "by either direct or circumstantial evidence." *Masimo Corp. v.
Philips Elec. N. Am. Corp.*, 62 F. Supp. 3d 368, 385 (D. Del. 2014) (quoting *Liquid
Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1219 (Fed. Cir. 2006)).

7.    "A patentee is only required to prove direct infringement by a
preponderance of the evidence—that it is more likely than not that the direct

3

infringement occurred." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 449 F. App'x 923, 928 (Fed. Cir. 2011) (citing *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1317-18 (Fed. Cir. 2009)); *Cross Med. Prod., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310 (Fed. Cir. 2005) ("To prove direct infringement, the plaintiff must establish by a preponderance of the evidence that one or more claims of the patent read on the accused device literally or under the doctrine of equivalents.").

8.      "To establish literal infringement, every limitation set forth in a claim must be found in an accused product, exactly." *Duncan Parking*, 914 F.3d at 1360 (quoting *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995)).   Under the doctrine of equivalents, "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is equivalence between the elements of the accused product or process and the claimed elements of the patented invention." *Warner-Jenkins Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997) (internal citation omitted). Equivalence is determined by either (1) the "function-way-result" test or (2) the "insubstantial differences" test. *Id*. at 39. Under the former, an accused product infringes if, on a limitation-by-limitation basis, it "performs substantially the same function in substantially the same way with substantially the same result." *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co*., 599 F.3d 1308, 1312 (Fed. Cir.

4

2009). The second test mandates that "[a]n element in the accused device is equivalent to a claim limitation if the only differences between the two are insubstantial." *Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1139 (Fed. Cir. 2004).

## II. CAREDX WILLFULLY INFRINGED THE ASSERTED PATENTS

### A. Issues of Law

9. Whether Defendant CareDx's alleged infringement of one or more of the asserted claims of the '180 Patent was willful.

10. Whether Defendant CareDx's alleged infringement of one or more of the asserted claims of the '544 Patent was willful.

### B. Legal Authority

11. Willful infringement is shown where the patentee "actually knew or should have known that its actions constituted an unjustifiably high risk of infringement of a valid and enforceable patent." *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1371 (Fed. Cir. 2017) (internal emphasis omitted) (*citing In re Seagate Technology, LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007), *abrogated by Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93 (2016)); *see also id.* ("*Halo* did not disturb the substantive standard for the second prong of *Seagate*, subjective willfulness."). Willful infringement must be shown by a preponderance of the evidence. *Halo Elecs.*, 579 U.S. at 94.

5

12.    Willfulness is an issue of fact for the jury. *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016). "[W]hether "an act is 'willful' is by definition a question of the actor's intent, the answer to which must be inferred from all the circumstances," including knowledge of the patent at issue. *WCM Indus., Inc. v. IPS Corp.*, 721 F. App'x 959, 970 (Fed. Cir. 2018) (quoting *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508 (Fed. Cir. 1990)); *see also id.* (willfulness inquiry "looks to the 'totality of the circumstances presented in the case'") (quoting *Shiley, Inc. v. Bentley Labs., Inc.*, 794 F.2d 1561, 1568 (Fed. Cir. 1986)).

## III.    NATERA IS ENTITLED TO INJUNCTIVE RELIEF

### A.    <u>Issues of Law</u>

13.    Whether Natera is entitled to an order permanently enjoining CareDx and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting on behalf of or in active concert or participation therewith, from further infringement of the '180 Patent.

14.    Whether Natera is entitled to an order permanently enjoining CareDx and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting on behalf of or in active concert or participation therewith, from further infringement of the '544 Patent.

6

B.    **Legal Authority**

15.    A court may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable.  35 U.S.C. § 283.

16.    A plaintiff seeking a permanent injunction must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.  *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court.  *Id.*

17.    "Courts awarding permanent injunctions typically do so under circumstances where [the] plaintiff practices its invention and is a direct market competitor."  *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, No. CIV.A. 04-1371-JJF, 2008 WL 5210843, at *1 (D. Del. Dec. 12, 2008) (quoting *Advanced Cardiovascular Sys., Inc. v. Medtronic Vascular, Inc.*, 579 F. Supp. 2d 554, 558 (D. Del. 2008)); *Douglas Dynamics, LLC v. Buyers Prod. Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013) ("Where two companies are in competition against one another, the patentee suffers the harm—often irreparable—of being forced to

compete against products that incorporate and infringe its own patented inventions.").

18.    Regarding the irreparable injury prong of the permanent injunction inquiry, a showing of irreparable harm "requires proof that a causal nexus relates the alleged harm to the alleged infringement." *Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 639 (Fed. Cir. 2015) (internal quotation marks omitted). "[A] finding that the competitor's infringing features drive consumer demand for its products satisfies the causal nexus inquiry." *Id.* at 641 ("In that case, the entirety of the patentee's alleged harm weighs in favor of injunctive relief."). A patentee is not required to prove that infringing features are the "exclusive or predominant reason" consumers purchase the infringing product. *Id.* The patentee must only show "some connection" between the patented features and demand, *i.e.*, "that the patented features impact consumers' decisions to purchase" infringing technology. *Id.*

19.    Regarding the balance of hardships prong of the permanent injunction inquiry, "the balance considered is only between a plaintiff and a defendant." *Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1330 (Fed. Cir. 2008) (noting "effect on customers and patients" "is irrelevant under this prong of the injunction test"); *see also id.* ("One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected.") (internal citation omitted).

8

20.    Regarding the public interest prong of the permanent injunction inquiry, "the public interest nearly always weighs in favor of protecting property rights in the absence of countervailing factors, especially when the patentee practices his inventions." *Apple*, 809 F.3d at 647.  It is "generally true" that this factor favors injunction "in every case." *Id.*

## IV.    NATERA IS ENTITLED TO DAMAGES AND INTEREST FOR CAREDX'S INFRINGEMENT

### A.    <u>Issues of Law</u>

21.    The amount of damages, in the form of lost profits and/or reasonable royalty, that Natera is entitled to for CareDx's alleged infringement.

22.    Whether Natera is entitled to an award of prejudgment and post-judgment interest.

### B.    <u>Legal Authority</u>

23.    Under 35 U.S.C. § 284, upon a finding of infringement, "the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284. "The court may receive expert testimony as an aid to the determination of damages or of what royalty would be reasonable under the circumstances." *Id.*

24.    Under Section 284, "'damages adequate to compensate' means 'full compensation for any damages the patent owner suffered as a result of the

infringement." *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1283 (Fed. Cir. 2017) (internal quotation marks and alterations omitted) (quoting *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 654–55 (1983)). Thus, the "statutory measure of damages is "the difference between the patent owner's pecuniary condition after the infringement, and what his condition would have been if the infringement had not occurred." *Id.* (internal quotation marks and alterations omitted) (quoting *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507 (1964) (plurality opinion)); *see also Rite- Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc), *cert. denied*, 516 U.S. 867 (1995) ("[T]he Supreme Court has interpreted [Section 284] to mean that 'adequate' damages should approximate those damages that will *fully compensate* the patentee for infringement.") (emphasis in original).

25.    "[T]he amount of a prevailing party's damages is a finding of fact on which the plaintiff bears the burden of proof by a preponderance of the evidence." *Promega Corp. v. Life Techs. Corp.*, 875 F.3d 651, 660 (Fed. Cir. 2017) (quoting *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1164 (Fed. Cir. 1991)). The "amount is normally provable by the facts in evidence or as a factual inference from the evidence." *Id.*

### 1.     Reasonable Royalty

26.     The district court must award damages in an amount no less than a reasonable royalty.  *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381-82 (Fed. Cir. 2003) (citing 35 U.S.C. § 284).   Litigants routinely adopt several approaches for calculating a reasonable royalty. The first, the analytical method, focuses on the infringer's projections of profit for the infringing product.  *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009). "The second, more common approach, called the hypothetical negotiation or the 'willing licensor-willing licensee' approach, attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began." *Id.* (citing *Georgia–Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *mod. and aff'd*, 446 F.2d 295 (2d Cir. 1971)). To determine a reasonable royalty under this second approach, courts may apply the fifteen factors established in *Georgia-Pacific Corp.*:

a.  Any royalties received by the licensor for the licensing of the Asserted Patents, proving or tending to prove an established royalty.

b.  The rates paid by Natera to license other patents comparable to the Asserted Patents.

11

c.  The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.

d.  The licensor's established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity.

e.  The commercial relationship between the licensor and the licensee, such as whether or not they are competitors in the same territory in the same line of business.

f.  The effect of selling the patented product in promoting other sales of the licensee; the existing value of the invention to the licensor as a generator of sales of its nonpatented items; and the extent of such collateral sales.

g.  The duration of the Asserted Patents and the term of the license.

h.  The established profitability of the product made under the Asserted Patents; its commercial success; and its popularity.

i.  The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for achieving similar results.

j.  The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by or for the licensor; and the benefits to those who have used the invention.

k.  The extent to which CareDx has made use of the invention; and any evidence that shows the value of that use.

l.  The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

m.  The portion of the profit that arises from the patented invention itself as opposed to profit arising from unpatented features, such as the manufacturing process, business risks, or significant features or improvements added by the accused infringer.

n.  The opinion testimony of qualified experts. The amount that a licensor and a licensee if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee— who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.

13

o. Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.

318 F. Supp. at 1121.

### 2.    Lost Profits

27.    When a plaintiff proves it would have been in a certain position but for a defendant's harmful act, it is entitled to damages to put it in the same position it would have occupied had the harmful act never occurred. *Mentor Graphics*, 851 F.3d at 1284. Thus, "the fact finder's job is to determine what would the patent holder have made (what would his profits have been) if the infringer had not infringed." *Id.* at 1285.

28.    There is no particular required method to prove "but for" causation. *Mentor Graphics*, 851 F.3d at 1284. One "useful, but non-exclusive" method to establish entitlement to lost profits is the *Panduit* test. *Id.* (citing *Rite-Hite*, 56 F.3d at 1545 (citing *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152 (6th Cir. 1978))). Under the *Panduit* test, a patentee is entitled to lost profit damages if it can establish four things:

(1) demand for the patented product;

(2) absence of acceptable non-infringing alternatives;

(3) manufacturing and marketing capability to exploit the demand; and

(4) the amount of profit it would have made.

*Id.* The first factor—demand for the patented product—considers demand for the product as a whole. *Id.* The second factor—the absence of non-infringing alternatives—considers demand for particular limitations or features of the claimed invention.

29.    Where there are multiple sellers in the market for a patented product, the patentee's lost profits may be determined by assessing the patentee's share of the but-for market in the absence of the infringing product. *Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1377 (Fed. Cir. 2003) (citing *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1356 (Fed. Cir. 2001) & *State Indus., Inc. v. Mor–Flo Indus., Inc.*, 883 F.2d 1573, 1577-80 (Fed. Cir. 1989)). "To show 'but for' causation, the patentee must reconstruct the market to determine what profits the patentee would have made had the market developed absent the infringing product." *Id.* (reconstructing the market may involve "segmenting the market and determining [the patentee's] lost profits based on its market share"). "[T]o determine a patentee's market share, the record must accurately identify the market," which "requires an analysis which excludes alternatives to the patented product with disparately different prices or significantly different characteristics." *Crystal Semiconductor*, 246 F.3d at 1356. "[A] product on the market which lacks the advantages of the patented product can hardly be termed an acceptable substitute."

15

*Stryker Corp. v. Intermedics Orthopedics, Inc.*, 96 F.3d 1409, 1418 (Fed. Cir. 1996) (internal alterations omitted) (quoting *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 953 F.2d 1360, 1373 (Fed. Cir. 1991)).

### 3. Pre-judgment Interest

30.    The patent statute authorizes awards of prejudgment interest. 35 U.S.C. § 284. "[P]rejudgment interest should be awarded under § 284 absent some justification for withholding such an award." *Gen. Motors,* 461 U.S. at 657. "Prejudgment interest runs from the earliest date of infringement for any patent issued at the time of the hypothetical negotiation." *Comcast IP Holdings I LLC v. Sprint Commc'ns Co., LP*, 850 F.3d 1302, 1315 (Fed. Cir. 2017); *Nickson Indus. v. Rol Mfg. Co.*, 847 F.2d 795, 800 (Fed. Cir. 1988) ("[P]rejudgment interest should be awarded from the date of infringement to the date of judgment.") (citing *Gen. Motors*, 461 U.S. at 656).

31.    "The rate of prejudgment interest and whether it should be compounded or uncompounded are matters left largely to the discretion of the district court." *Bio-Rad Labs., Inc. v. Nicolet Instrument Corp.*, 807 F.2d 964, 969 (Fed. Cir. 1986); *Gyromat Corp. v. Champion Spark Plug Co.*, 735 F.2d 549, 556 (Fed. Cir. 1984) (noting "district court has substantial discretion to determine the interest rate in patent infringement cases"). "In exercising that discretion, however, the district court must be guided by the purpose of prejudgment interest, which is 'to ensure that

16

the patent owner is placed in as good a position as he would have been had the infringer entered into a reasonable royalty agreement.'" *Bio-Rad*, 807 F.2d at 969 (quoting *Gen. Motors*, 461 U.S. at 655).

### 4. Post-judgment Interest

32.    The availability of post-judgment interest is governed by regional circuit law. *Transmatic, Inc. v. Gulton Indus., Inc.*, 180 F.3d 1343, 1348 (Fed. Cir. 1999).  Third Circuit courts routinely award post-judgment interest under 28 U.S.C. § 1961 in patent infringement cases.  *E.g.*, *Amgen Inc. v. Hospira, Inc.*, 336 F. Supp. 3d 333, 364 (D. Del. 2018) (post-judgment interest should accrue at statutory rate specified in 28 U.S.C. § 1961(a)), *aff'd*, 944 F.3d 1327 (Fed. Cir. 2019).   Under Section 1961(a), *inter alia,* "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court" and "shall be calculated from the date of the entry of the judgment."

## V. NATERA IS ENTITLED TO ENHANCED DAMAGES, ATTORNEYS' FEES AND COSTS FOR CAREDX'S INFRINGEMENT

### A. <u>Issues Of Law</u>

33.    Whether Natera is entitled to enhanced damages pursuant to 35 U.S.C. § 284.

34.    Whether this is an exceptional case pursuant to 35 U.S.C. § 285.

35.    Whether attorney fees, expenses, and/or costs are due to Natera.

B.    **Legal Authority**

36.    Under 35 U.S.C. § 284, the "court may increase the damages up to three times the amount found or assessed." "That language contains no explicit limit or condition, and we have emphasized that the word 'may' clearly connotes discretion." *Halo Elecs.*, 579 U.S. at 103.  "As with any exercise of discretion, courts should continue to take into account the particular circumstances of each case in deciding whether to award damages, and in what amount."  *Id.* at 106.

37.    Enhanced damages "should generally be reserved for egregious cases typified by willful misconduct."  *Halo Elecs.*, 579 U.S. at 106; *see also id.* at 103-103 (enhanced damages are designed as a punitive or vindictive sanction for "egregious infringement behavior," and "[t]he sort of conduct warranting enhanced damages has been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate.").  The "subjective willfulness of a patent infringer, intentional or knowing, may warrant" enhanced damages.  *Id.* at 105; *see also id.* at 106 ("Section 284 allows district courts to punish the full range of culpable behavior. Yet none of this is to say that enhanced damages must follow a finding of egregious misconduct. As with any exercise of discretion, courts should continue to take into account the particular circumstances of each case in deciding whether to award damages, and in what amount.").

18

38.    The Federal Circuit has set forth several "*Read* factors" that the Court may consider in determining whether to award enhanced damages.  *Read Corp. v. Portec*, Inc., 970 F.2d 816, 827 (Fed. Cir. 1992); *Sunoco Partners Mktg. & Terminals L.P. v. U.S. Venture, Inc.*, 32 F.4th 1161, 1178 (Fed. Cir. 2022) (noting *Read* factors "are nonexclusive, and district courts are not required to discuss them."); *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, No. CV 08-309-LPS, 2019 WL 3290369, at *7 (D. Del. July 22, 2019) ("In determining whether damages should be enhanced, the Court will principally apply the '*Read* factors.'"). These factors are:

- whether the infringer deliberately copied the ideas or design of another;

- whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good faith belief that it was invalid or that it was not infringed;

- the infringer's behavior as a party to the litigation;

- defendant's size and financial condition;

- closeness of the case;

- duration of defendant's misconduct;

- remedial action by the defendant;

- defendant's motivation for harm; and

- whether defendant attempted to conceal its misconduct.

19

*Read Corp.*, 970 F.2d at 827; *Power Integrations*, 2019 WL 3290369, at *7 ("'*Read*

itself implicitly endorses the practice of considering evidence that was not available

to the jury by including several factors that a jury is not in the best position to assess,"

including "litigation conduct and tactics of counsel, closeness of the case, the

defendant's size and financial condition, and other factors related to a fair allocation

of the burdens of litigation as between winner and loser.") (internal quotation marks

and alterations omitted) (quoting *Advanced Cardiovascular Sys., Inc. v. Medtronic*,

*Inc.*, 265 F.3d 1294, 1311 (Fed. Cir. 2001)). A party need only prove entitlement to

enhanced damages by a preponderance of the evidence.  *Halo Elecs.*, 579 U.S. at

107.

39.    Under 35 U.S.C. § 285, the Court may award reasonable attorney's fees

to the prevailing party in an "exceptional" case that "stands out from others with

respect to the substantive strength of a party's litigating position (considering both

the governing law and the facts of the case) or the unreasonable manner in which the

case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.,* 572 U.S.

545, 554 (2014).  A court may determine whether a case is "exceptional" in a case-

by-case exercise of discretion, "considering the totality of the circumstances." *Id.*

& n.6 (identifying "a nonexclusive list of factors, including frivolousness,

motivation, objective unreasonableness (both in the factual and legal components of

the case) and the need in particular circumstances to advance considerations of

compensation and deterrence") (internal quotation marks omitted)).  A party moving

for attorneys' fees "must demonstrate, by a preponderance of the evidence, that a

case is 'exceptional.'"  *Power Integrations, Inc. v. Fairchild Semiconductor Int'l,*

*Inc.*, No. CV 08-309-LPS, 2019 WL 3290369, at *3 (D. Del. July 22, 2019) (quoting

*Octane*, 134 S. Ct. at 1758).

## VI.    NATERA'S ASSERTED PATENTS ARE VALID

### A.    <u>Issues of Law</u>

40.    Whether CareDx has proven by clear and convincing evidence that the

Asserted Claims of the '180 Patent are invalid pursuant to 35 U.S.C. § 101 as

claiming patent ineligible subject matter.

41.    Whether CareDx has proven by clear and convincing evidence that the

Asserted Claims of the Asserted Patents are invalid in view of the prior art pursuant

to 35 U.S.C. § 103, including by establishing:

   a.  the priority date of each asserted claim of the Asserted Patents.

   b.  the scope and content of the prior art asserted against the Asserted
       Patents.

   c.  the level of ordinary skill in the art at the time of the inventions of the
       Asserted Patents.

   d.  the differences between the claimed inventions of the Asserted Patents
       and the asserted prior art.

42.     Whether CareDx can prove by clear and convincing evidence each alleged fact forming the foundation upon which CareDx asserts that any of the Asserted Claims of the Asserted Patents are obvious.

43.     Whether CareDx can prove by clear and convincing evidence that a person of ordinary skill in the art at the time of the invention of each Asserted Patent, without the benefit of hindsight, would have had any reason or motivation to combine the alleged prior art.

44.     Whether CareDx can prove by clear and convincing evidence that a person of ordinary skill in the art at the time of invention of each of the Asserted Patents, without the benefit of hindsight, would have reasonably expected to succeed in combining the teachings of the prior art to achieve the claimed inventions of each of the Asserted Claims of each of the Asserted Patents.

45.     If CareDx has made a *prima facie* showing that the Asserted Claims of the Asserted Patents are invalid as obvious pursuant to 35 U.S.C. § 103, whether Natera has shown that secondary indicia of non-obviousness demonstrate that the claimed inventions of the Asserted Claims would not have been obvious, and whether Natera has shown there is a nexus between such secondary considerations and the claimed inventions of the Asserted Claims.

46.    Whether CareDx has proven by clear and convincing evidence that the Asserted Claims of the Asserted Patents are invalid pursuant to 35 U.S.C. § 112 as lacking written description support.

47.    Whether CareDx has proven by clear and convincing evidence that the specification of each of the Asserted Patents fails to reasonably convey to a person of skill in the art that the inventors had possession of the claimed subject matter as of the filing date.

48.    Whether CareDx has proven by clear and convincing evidence that the Asserted Patents lack written description when considering the existing knowledge in the particular field, the extent and content of the prior art, and the predictability of the aspect at issue.

49.    Whether CareDx has proven by clear and convincing evidence that the Asserted Patents lack written description, regardless of whether they contain examples describing every embodiment of the invention, or whether the invention was not actually reduced to practice.

50.    Whether CareDx has proven by clear and convincing evidence that the Asserted Patents lack written description, regardless of whether they describe every conceivable and possible future embodiment of the claimed invention.

51.    Whether CareDx has proven by clear and convincing evidence that the Asserted Claims of the '544 Patent are not entitled to their claimed priority date.

### B.    <u>Legal Authority</u>

### 1.    The Natera Patents Are Entitled to the Asserted Priority Dates

52.    An application may claim the benefit of the filing date of an earlier application if the earlier application complies with the written description requirement of 35 U.S.C. § 112. *See* 35 U.S.C. § 120.   "[T]he test for sufficiency of support in a parent application is whether the disclosure of the application relied upon reasonably conveys to the artisan that the inventor had possession at that time of the later claimed subject matter." *Ralston Purina Co. v. Far-Mar-Co, Inc.*, 772 F.2d 1570, 1575 (Fed. Cir. 1985) (internal quotation marks omitted) ("Precisely how close the original description must come to comply with the description requirement of 35 U.S.C. § 112 must be determined on a case-by-case basis.").   For a nonprovisional application to be afforded the priority date of a provisional application, "the specification of the provisional must contain a written description of the invention and the manner and process of making and using it, in such full, clear, concise, and exact terms" as "to enable an ordinarily skilled artisan to practice the invention claimed in the non-provisional application." *New Railhead Mfg.,*

24

*L.L.C. v. Vermeer Mfg. Co.*, 298 F.3d 1290, 1294 (Fed. Cir. 2002) (internal citation omitted and emphasis altered).

53.    The "exact terms appearing in the claim 'need not be used in haec verba'" in the priority application. *Blue Calypso, LLC v. Groupon, Inc.*, 815 F.3d 1331, 1345 (Fed. Cir. 2016); *see also Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1369 (Fed. Cir. 2009). The "level of detail required to satisfy the written description requirement varies depending on the nature and scope of the claims and on the complexity and predictability of the relevant technology." *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc). Generally, "disclosure of a species provides sufficient written description for a later-filed claim directed to the genus." *Bilstad v. Wakalopulos*, 386 F.3d 1116, 1125 (Fed. Cir. 2004). The written description need only "convey clearly to those skilled in the art ... in any way, the information that [applicant] has invented that specific [later-claimed subject matter]." *In re Wertheim*, 541 F.2d 257, 262 (C.C.P.A. 1976); *see also LizardTech, Inc. v. Earth Resource Mapping, Inc*., 424 F.3d 1336, 1345 (Fed. Cir. 2005) ("specification is not required to contain examples explicitly covering the full scope of the claim language [as] only enough must be included to convince a person of skill in the art that the inventor possessed the invention").

54.    If the party challenging validity comes forward with clear and convincing evidence of invalidating prior art that puts at issue the priority date of

any claim of a patent, the burden shifts to the patentee "to come forward with evidence to prove entitlement to claim priority to a filing date that predates the filing date of the patent." *Fairchild Semiconductor Corp. v. Power Integrations*, 100 F. Supp. 3d 357, 368 (D. Del. 2015) (citing *PowerOasis, Inc. v. T-Mobile USA, Inc.,* 522 F.3d 1299, 1305-06 (Fed. Cir. 2008)). To meet this burden, the patentee must come forward with evidence that "the disclosure of the earlier application provides support for the claims of the later application, as required by 35 U.S.C. § 112." *PowerOasis*, 522 F.3d at 1306 (citing *In re Chu*, 66 F.3d 292, 297 (Fed. Cir. 1995)). However, the burden of proving invalidity by clear and convincing evidence remains on the party challenging validity. *Id.* at 1303; *see also Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1328 (Fed. Cir. 2008) ("Assuming then that [patentee's] evidence and argument in support of the earlier filing date is now before the court, the burden of going forward again shifts to the proponent of the invalidity defense … to convince the court that [patentee] is not entitled to the benefit of the earlier filing date.").

55.    For a nonprovisional application to be afforded the priority date of a provisional application, "the two applications must share at least one common inventor." *New Railhead Mfg.*, 298 F.3d at 1294; *see also* MPEP § 201.03 (8th ed., Rev. 6, 2007); *E.I. du Pont de Nemours & Co. v. MacDermid Printing*, 525 F.3d 1353, 1360 (Fed. Cir. 2008) ("correction of inventorship of a provisional application

is normally not necessary unless the correction is needed to establish an overlap of inventorship").

### 2. The Natera Patents Are Valid

56.    All issued patents are presumed valid. 35 U.S.C. § 282. Under Section 282, a party challenging the validity of a patent must prove its invalidity by clear and convincing evidence. 35 U.S.C. § 282(a); *see also Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 95 (2011). The challenger's ultimate burden of persuasion on invalidity never shifts to the other party. *Tech. Licensing*, 545 F.3d at 1327.

### 3. The Natera Patents Are Patent-Eligible

57.    Granted patents are presumptively valid and "[t]his presumption reflects the fact that the Patent and Trademark Office has already examined whether the patent satisfies 'the prerequisites for issuance of a patent,' including § 101." *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1319 (Fed. Cir. 2019) (quoting *Microsoft*, 564 U.S. at 95-96).

58.    A court applies "a two-part test for distinguishing patents that claim one of the patent-ineligible exceptions from those that claim patent-eligible applications of those concepts. *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1047 (Fed. Cir. 2016) ("*CellzDirect*") (citing *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208 (2014)). Step one asks whether the claim is "directed to one of [the] patent-ineligible concepts." *Id.* If the answer is no, the inquiry is over: the claim falls

within the ambit of § 101. *Id.* If the answer is yes, the inquiry moves to step two, which asks whether, considered both individually and as an ordered combination, "the additional elements transform the nature of the claim into a patent-eligible application." *Id.* (internal quotation marks omitted).

59.    "Whether a claim recites patent eligible subject matter is a question of law which may contain disputes over underlying facts." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018). "Whether a claim is directed to statutory subject matter is a question of law." *Arrhythmia Research Tech., Inc. v. Corazonix Corp.*, 958 F.2d 1053, 1055–56 (Fed. Cir. 1992)); *see also id.* (recognizing "determination of this question may require findings of underlying facts specific to the particular subject matter and its mode of claiming"). "The question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact." *Berkheimer*, 881 F.3d at 1368.

60.    At step one, the "directed to" inquiry "cannot simply ask whether the claims involve a patent-ineligible concept, because essentially every routinely patent-eligible claim involving physical products and actions involves a law of nature and/or natural phenomenon—after all, they take place in the physical world." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016) (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S.Ct. 1289, 1293 (2012) ("For all inventions at some level embody, use, reflect, rest upon, or apply laws of nature,

28

natural phenomena, or abstract ideas."). Rather, the "directed to" inquiry "applies a stage-one filter to claims, considered in light of the specification, based on whether their character as a whole is directed to excluded subject matter." *Id.* (internal quotation marks omitted). Thus, claims covering a "constructive process, carried out by an artisan to achieve a new and useful end, is precisely the type of claim that is eligible for patenting." *Rapid Litig. Mgmt.*, 827 F.3d at 1048 (internal quotation marks omitted). Step one involves consideration of "the patent's written description, as it informs our understanding of the claims." *CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1368 (Fed. Cir. 2020); *see also Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1346 (Fed. Cir. 2019) ("specification [is] helpful in illuminating what a claim is 'directed to'"); *NexStep, Inc. v. Comcast Cable Communs., LLC*, No. 19-1031-RGA, 2021 WL 4943627, *2 (D. Del. Sept. 17, 2021) (similar).

61.    Step two involves "considering the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Alice*, 573 U.S. at 217 (citing Mayo, 566 U.S. at 66)); *see also McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1312 (Fed. Cir. 2016) (courts must "look to both the claim as a whole and the individual claim elements"); *Bascom Global Internet Services, Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) ("The

29

inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art."); *accord* CareDx, Inc. v. Natera, Inc., 40 F.4th 1371 (Fed. Cir. 2022); *Ariosa Diagnostics, Inc. v. Sequenom, Inc*., 788 F.3d. 1371, 1377 (Fed. Cir. 2015); *Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC*, 915 F.3d. 743, 753-54 (Fed. Cir. 2019); *Roche Molecular Sys., Inc. v. CEPHEID*, 905 F.3d. 1363, 1372 (Fed. Cir. 2018).

62.    Claims reciting method-of-preparation claims have been found patent eligible, and there is a distinction between claims "directed to a natural phenomenon" and claims directed to a patent-eligible method that exploits a phenomenon. *Illumina, Inc. v. Ariosa, Inc.*, 967 F.3d 1319, 1326 (Fed. Cir. 2020); *see also Rapid Litigation*, 827 F.3d at 1048. Claims that recite or involve math or equations may be patent eligible. *Diamond v. Diehr*, 450 U.S. 175 (1981).

### 4.    The Natera Patents Are Non-Obvious

63.    A patent is invalid as obvious "if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains." 35 U.S.C. § 103. In an obviousness inquiry, the "scope and content of the prior art are determined; differences between the prior art and the claims at issue are ascertained; and the level of ordinary skill in the pertinent art resolved. Such secondary

considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 399 (2007) (internal alterations omitted) (quoting *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17-18 (1966)). The obviousness inquiry generally requires a showing "by clear and convincing evidence" that a "skilled artisan would have had reason to combine the teaching of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success from doing so." *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Pat. Litig.*, 676 F.3d 1063, 1069 (Fed. Cir. 2012).

64.    The hypothetical person of ordinary skill in the art is presumed to know the teachings of "all the prior art in the field of his endeavor" at the time the invention was made. *Netflix, Inc. v. DivX, LLC*, 80 F.4th 1352, 1358 (Fed. Cir. 2023). Factors that may be considered in determining the ordinary level of skill in the art include: 1) the types of problems encountered in the art; 2) the prior art solutions to those problems; 3) the rapidity with which innovations are made; 4) the sophistication of the technology; and 5) the educational level of active workers in the field. *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 666–67 (Fed. Cir. 2000) (obviousness analysis inadequate without finding of level of ordinary skill).

65.    The patent challenger must prove that a reference qualifies as prior art. *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1576 (Fed. Cir. 1996) (challenger bore "burden of persuasion by clear and convincing evidence on all issues relating to the status" of prior art).  "[N]ew evidence supporting an invalidity defense may 'carry more weight' in an infringement action than evidence previously considered by the" Patent Office, given "the basic proposition that a government agency such as the [PTO] was presumed to do its job." *Microsoft*, 564 U.S. at 97, 110. Thus, "whether a reference was before the PTO goes to the weight of the evidence," and "the presumption of validity and accompanying burden of proof, clear and convincing evidence, are not altered." *Sciele Pharma Inc. v. Lupin Ltd*., 684 F.3d 1253, 1260–61 (Fed. Cir. 2012).

66.    To invalidate an asserted patent based on a combination of prior art references and alleged obviousness, the patent challenger must establish "by clear and convincing evidence that a skilled artisan would have been motivated to combine the teachings of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success in doing so." *Pfizer, Inc. v. Apotex, Inc*., 480 F.3d 1348, 1361 (Fed. Cir. 2007).  If a patent challenger makes a prima facie showing of obviousness, the owner may rebut based on "unexpected results" by demonstrating "that the claimed invention exhibits some superior property or advantage that a person of ordinary skill in the relevant

art would have found surprising or unexpected." *Procter & Gamble Co. v. Teva Pharms. USA, Inc.*, 566 F.3d 989, 994 (Fed. Cir. 2009); *see also Eli Lilly & Co. v. Teva Pharms. Int'l GmbH*, 8 F.4th 1331, 1345 (Fed. Cir. 2021) (holding obviousness requires "proof that a person of ordinary skill in the art would have had a reasonable expectation that performing the recited method would bring about the recited result."). Both independent inquiries are questions of fact. *Id*.

### (a) Secondary Considerations of Non-Obviousness Support the Natera Patents' Validity

67. Obviousness "cannot be based on the hindsight combination of components selectively culled from the prior art to fit the parameters of the patented invention." *Cheese Sys., Inc. v. Tetra Pak Cheese & Powder Sys., Inc.*, 725 F.3d 1341, 1352 (Fed. Cir. 2013); *KSR*, 550 U.S. at 421 (factfinder "should be aware, of course, of the distortion caused by hindsight bias and must be cautious of arguments reliant upon *ex post* reasoning"). In this regard, "[t]he objective considerations, when considered with the balance of the obviousness evidence in the record, guard as a check against hindsight bias." *In re Cyclobenzaprine*, 676 F.3d at 1079. Accordingly, objective indicia of non-obviousness must be considered before making an obviousness determination. *Id.* at 1075-76, 1079 (citing *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538-39 (Fed. Cir. 1983) (litigation fact finder "may not defer examination of the objective considerations until after obviousness finding")).

68.    "Objective indicia of nonobviousness must be considered in every case where present." *Apple Inc. v. Samsung Elecs. Co*., 839 F.3d 1034, 1048 (Fed. Cir. 2016) (en banc).  These factors include "commercial success enjoyed by devices practicing the patented invention, industry praise for the patented invention, copying by others, and the existence of a long-felt but unsatisfied need for the invention." *Id.* at 1052.  "[T]here is a presumption of nexus for objective considerations when the patentee shows that the asserted objective evidence is tied to a specific product and that product 'is the invention disclosed and claimed in the patent.'" *WBIP*, 829 F.3d at 1329.

69.    <u>Industry praise</u>.  "Evidence that the industry praised a claimed invention or a product that embodies the patent claims weighs against an assertion that the same claimed invention would have been obvious."  *Apple*, 839 F.3d at 1053 ("Industry participants, especially competitors, are not likely to praise an obvious advance over the known art.").  "Thus, if there is evidence of industry praise in the record, it weighs in favor of the nonobviousness of the claimed invention." *WBIP*, 829 F.3d at 1334.

70.    <u>Commercial success</u>.  "When a product attains a high degree of commercial success, there is a basis for inferring that attempts to a solution have been made and have failed." *WBIP*, 829 F.3d at 1337 (internal quotation marks and alterations omitted) (quoting *Merck & Co. v. Teva Pharm. USA, Inc.*, 395 F.3d 1364,

34

1376 (Fed. Cir. 2005)). "Demonstrating that an invention has commercial value, that it is commercially successful, weighs in favor of its non-obviousness." *Id.*

71. <u>Copying</u>. "Copying may indeed be another form of flattering praise for inventive features," "and thus evidence of copying tends to show nonobviousness." *WBIP*, 829 F.3d at 1336 (internal citation omitted). "The fact that a competitor copied technology suggests it would not have been obvious." *Id.*

72. <u>Long felt need</u>. "Evidence of a long-felt but unresolved need can weigh in favor of the non-obviousness of an invention because it is reasonable to infer the need would not have persisted had the solution been obvious." *Apple*, 839 F.3d at 1056. Evidence of long-felt need is "particularly probative of obviousness when it demonstrates both that a demand existed for the patented invention, and that others tried but failed to satisfy that demand." *Millennium Pharms., Inc. v. Sandoz Inc.*, 862 F.3d 1356, 1369 (Fed. Cir. 2017).

73. <u>Unexpected results</u>. "Unexpected results are useful to show the improved properties provided by the claimed compositions are much greater than would have been predicted." *Millennium Pharms.*, 862 F.3d at 1368. "Nonobviousness may be established when an invention yielded more than predictable results." *Id.* (internal quotation marks and alterations omitted) (quoting *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1309 (Fed. Cir. 2010)).

### 5.    The Natera Patents Are Valid Under Section 112

35

74.    Patents are presumed valid under 35 U.S.C. § 112.  *Nat'l Recovery Techs., Inc. v. Magnetic Separation Sys., Inc.*, 166 F.3d 1190, 1195 (Fed. Cir. 1999) ("The presumption of validity includes a presumption that the patent complies with § 112."); *Vasudevan Software, Inc. v. MicroStrategy, Inc.*, 782 F.3d 671, 683 (Fed. Cir. 2015).

75.    To satisfy Section 112's written description requirement, the description "must clearly allow persons of ordinary skill in the art to recognize that the inventor invented what is claimed."  *Ariad Pharms., Inc. v. Eli Lilly & Co*., 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc) (internal quotation marks and alterations omitted) (quoting *Vas–Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1562-63 (Fed. Cir. 1991)). "[T]he test for sufficiency is whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date."  *Id.*; *see also id*. at 1354 (patent presumed valid in adequate written description inquiry).

76.    The "level of detail required to satisfy the written description requirement varies depending on the nature and scope of the claims and on the complexity and predictability of the relevant technology."  Ariad, 598 F.3d at 1351. Although "a description that merely renders the invention obvious does not satisfy" the written description requirement, "the description requirement does not demand any particular form of disclosure" or "that the specification recite the claimed

invention *in haec verba*." *Id.* at 1352. Moreover, "the written description requirement does not demand either examples or an actual reduction to practice." *Id.; accord ArcherDX, Inc. v. QIAGEN Sciences, LLC*, No. 18-1019 (MN), 2020 WL 3316055, *3 (D. Del. June 18, 2020) ("[R]eferences cited in the patent … are incorporated by reference."). The written description requirement may be satisfied where the written description "at least mentions" the claimed embodiment. *Centrak, Inc. v. Sonitor Techs., Inc.*, 915 F.3d 1360, 1367 (Fed. Cir. 2019); *see also Lochner Techs., LLC v. Vizio, Inc.*, 567 Fed. App'x 931, 939 (Fed. Cir. 2014) (Section 112 does not require an applicant "to describe in the specification every conceivable and possible future embodiment of his invention") (internal quotations omitted); *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 980–83 (Fed. Cir. 2021); *Edwards Lifesciences AG v. CoreValve, Inc.*, 699 F.3d 1305, 1309-10 (Fed. Cir. 2012).

EXHIBIT 5

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NATERA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 20-038 (CFC) (CJB) |
| | ) | |
| v. | ) | (CONSOLIDATED) |
| | ) | |
| CAREDX, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## EXHIBIT 5

## DEFENDANT'S STATEMENT OF
## ISSUES OF LAW THAT REMAIN TO BE LITIGATED

Exhibit 5

Defendant's Statement of Issues of Law that Remain to be Litigated

Pursuant to Delaware Local Rule 16.3(c)(5), Defendant CareDx, Inc.

("CareDx" or "Defendant") hereby submits the following statement of issues of law

that remain to be litigated.

This statement is based on the current status of the case and the Court's rulings

to date. Defendant reserves the right to revise, amend, supplement, or modify the

following statement based on any pretrial rulings by the Court and/or to address any

additional issues, arguments, evidence, or other developments in the case, including

edits to the draft pretrial order, any meet and confers or other negotiations between

the parties, pending motions, and similar developments. The following statement of

issues of fact is not exhaustive, and Defendant reserves the right to prove any matters

identified in the pleadings, interrogatory responses, and/or expert reports. Defendant

intends to offer evidence as to the issues of fact and issues of law identified in this

Pretrial Order. Defendant further intends to offer evidence to rebut evidence offered

by Plaintiff, Natera, Inc. ("Natera"). To the extent that Defendant's Statement of

Facts that Remain to be Litigated set forth in Exhibit 3 contains issues of law, those

issues are incorporated herein by reference. Should the Court determine that any

issue identified below is more appropriately considered an issue of fact, Defendant

incorporates such issue by reference in Exhibit 3. Defendant does not assume the

burden of proof with regard to any of the below-listed issues of law. Defendant also

Exhibit 5

Defendant's Statement of Issues of Law that Remain to be Litigated incorporates by reference its expert reports to identify the issues to be resolved at trial.

## I.    INVALIDITY OF THE NATERA ASSERTED PATENTS

### A.    Patent Ineligibility Under 35 U.S.C. § 101

1. "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. Because patent protection does not extend to claims that monopolize the "building blocks of human ingenuity," claims directed to laws of nature, natural phenomena, and abstract ideas are not patent eligible. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014); *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980). In *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78–79 (2012)).

2. The Supreme Court set out a two-step "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 134 S. Ct. at 2355. First, courts must determine if the claims at issue are directed to a patent-ineligible concept. *See id; Cleveland Clinic Found. v. True Health Diagrzostics LLC,* 859 F.3d 1352, 1361 (Fed. Cir. 2017) (holding that method-of-detection claims were "directed to a natural law" at step one of the *Alice* inquiry where the claims "use[ d] well-known

3

Exhibit 5

Defendant's Statement of Issues of Law that Remain to be Litigated

techniques to execute the claimed method" and had "no meaningful non-routine steps").

If not, the inquiry ends, as the claims are patent-eligible. But if so, the second step

is to look for an "'inventive concept'—i.e., an element or combination of elements

that is sufficient to ensure that the patent in practice amounts to significantly more

than a patent upon the [ineligible concept] itself." *Alice*, 134 S. Ct. at 2355 (internal

quotation marks omitted).

3. This second step "consider[s] the elements of each claim both individually

and 'as an ordered combination' to determine whether the additional elements

'transform the nature of the claim' into a patent eligible application." *Alice*, 134 S.

Ct. at 2355 (quoting Mayo, 566 U.S. at 78–79). The second step of the Mayo/Alice

test is satisfied when the claim limitations "involve more than performance of 'well-

understood, routine, [and] conventional activities previously known to the

industry.'" *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l

Ass'n*, 776 F.3d 1343, 1347–48 (Fed. Cir. 2014) (quoting *Alice*, 134 S. Ct. at 2359).

"Whether something is well-understood, routine, and conventional to a skilled

artisan at the time of the patent is a factual determination." *Berkheimer v. HP Inc.*,

881 F.3d 1360, 1369 (Fed. Cir. 2018); *Accenture Global Servs. GmbH v. Guidewire

Software, Inc.*, 728 F.3d 1336, 1340-41 (Fed. Cir. 2013) ("Patent eligibility under §

101 … may contain underlying factual issues."). As a question of fact, Alice's step

two is "appropriate for jury determination." *Infernal Tech., LLC v. Sony Interactive

Exhibit 5

Defendant's Statement of Issues of Law that Remain to be Litigated

*Ent. LLC*, No. 2:19-CV-00248-JRG, 2021 WL 405813, at *3 (E.D. Tex. Feb. 3, 2021); *VS Techs., LLC v. Twitter, Inc.*, No. 2:11CV43, 2012 WL 1481508, at *4 (E.D. Va. Apr. 27, 2012) ("[W]here the issue of [Section 101] validity depends upon the resolution of a factual dispute, a jury is permitted to decide the issue.").

## B.    Written Description

4. Whether any Asserted Claim of the Natera Asserted Patents is invalid for failure to satisfy the written description requirement under 35 U.S.C. § 112. *See* 35 U.S.C. § 112. Section 112 of the Patent Act provides that "[t]he specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art . . . to make and use the same." 35 U.S.C. § 112(a). The written description must reasonably convey "to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Ariad Pharms. Inc. v. Eli Lilly and Co.*, 598 F.3d 1336, 1351 (2010). Specifically, the written description must "clearly allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed." *Id*. (*citing In re Gosteli*, 872 F.2d 1008, 1012 (Fed. Cir. 1989)); *see also LizardTech, Inc. v. Earth Resource Mapping, Inc.*, 424 F.3d 1336, 1345 (2005) ("[The written description] must describe the invention sufficiently to convey to a person of skill in the art that the

Exhibit 5

Defendant's Statement of Issues of Law that Remain to be Litigated

patentee had possession of the claimed invention at the time of the application, *i.e.*, that the patentee invented what is claimed.").

5. In determining whether a specification contains an adequate written description, "one must make an 'objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art.'" *Boston Sci. Corp. v. Johnson & Johnson*, 647 F.3d 1353, 1366 (Fed. Cir. 2011) (*citing Ariad*, 598 F.3d at 1351). "A broad claim is invalid [for lack of adequate written description] when the entirety of the specification clearly indicates that the invention is of a much narrower scope." *Carnegie Mellon Univ. v. Hoffman-La Roche Inc.*, 541 F.3d 1115, 1127 (Fed. Cir. 2008) (*quoting Cooper Cameron Corp. v. Kvaerner Oilfield Prods.*, *Inc.*, 291 F.3d 1317, 1323 (Fed. Cir. 2002)); *see also Atlantic Res. Mktg. Sys., Inc. v. Troy*, 659 F.3d 1345, 1354-55 (Fed. Cir. 2011) (invalidating claims covering gun accessory without "receiver sleeve attachment point" because specification disclosed only accessory with such an attachment point); *ICU Med., Inc. v. Alaris Med. Sys., Inc.*, 558 F.3d 1368, 1378 (Fed. Cir. 2009) ("[A] person of skill in the art would not understand the inventor . . . to have invented a spikeless medical valve."); *LizardTech*, 424 F.3d at 1345 (invalidating a claim that was "directed to creating a seamless array of DWT coefficients generically" because the specification taught only "a particular method" of creating such a seamless array).

6

Exhibit 5

Defendant's Statement of Issues of Law that Remain to be Litigated

Whether a patent claim satisfies the written description requirement is a question of fact. *Ariad*, 598 F.3d at 1351.

### C.    Failure to Claim What Applicant/Inventors Regarded as Their Invention

6.    Whether any Asserted Claims of the Natera Asserted Patents are invalid for failure to claim what the Applicant/Inventors regarded as their invention under 35 U.S.C. § 112. For "a claim to comply with section 112, paragraph 2, it must satisfy two requirements: first, it must set forth what 'the applicant regards as his invention,' and second, it must do so with sufficient particularity and distinctness, *i.e.*, the claim must be sufficiently 'definite.'" *Solomon v. Kimberly-Clark Corp.*, 216 F.3d 1372, 1377 (Fed. Cir. 2000); *see also Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1348 (Fed. Cir. 2002) (explaining that § 112 includes two requirements, one for definiteness and one that the inventors claim what they regard as their invention).

7.    A patent claim is invalid under § 112, paragraph 2 "[w]here it would be apparent to one of skill in the art, based on the specification, that the invention set forth in a claim is not what the patentee regarded as his invention." *Allen Eng'g Corp.*, 299 F.3d at 1349. Whether a claim recites the subject matter which the applicant regards as his invention is a question of law. *See Solomon*, 216 F.3d at 1377.

Exhibit 5

Defendant's Statement of Issues of Law that Remain to be Litigated

**D.    Priority Date**

8.  What is the priority date of the Asserted Claims of the Asserted Patents. "[A] claim in a later application receives the benefit of the filing date of an earlier application so long as the disclosure in the earlier application meets the requirements of 35 U.S.C. § 112, ¶ 1, including the written description requirement, with respect to that claim." *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1326 (Fed. Cir. 2008). When "a patentee seeks the benefit of the filing date of an earlier filed application, compliance with the written description requirement may turn on whether the disclosure of the earlier application provides 'adequate support' for the claims at issue." *Id.* at 1324. "[T]he prior application must 'convey with reasonable clarity to those skilled in the art that, as of the filing date sought, [the inventor] was in possession *of the invention*.'" *Id.* at 1331-32 (quoting *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563-64 (Fed. Cir. 1991)); *see also LizardTech*, 424 F.3d at 1345 ("[The written description] must describe the invention sufficiently to convey to a person of skill in the art that the patentee had possession of the claimed invention at the time of the application, i.e., that the patentee invented what is claimed."); *Ariad Pharms.*, 598 F.3d at 1351 (en banc) ("the test for sufficiency is whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date.").

Exhibit 5

Defendant's Statement of Issues of Law that Remain to be Litigated

9.  "When an alleged infringer attacks the validity of an issued patent, our well-established law places the burden of persuasion on the attacker to prove invalidity by clear and convincing evidence." *Tech. Licensing*, 545 F.3d at 1327. The party "having the ultimate burden of proving its defense of invalidity based on anticipating prior art, [] has the burden of going forward with evidence that there is such anticipating prior art," where "going forward with the evidence" means "both producing additional evidence and presenting persuasive argument based on new evidence or evidence already of record, as the case may require." *Id.* Then, the patentee "has the burden of going forward with evidence either that the prior art does not actually anticipate, or[] that it is not prior art because the asserted claim is entitled to the benefit of a filing date prior to the alleged prior art. This requires [the patentee] to show not only the existence of the earlier application, but why the written description in the earlier application supports the claim." *Id.* (internal citation omitted). Finally, "the burden of going forward again shifts to the proponent of the invalidity defense[] to convince the court that [the patentee] is not entitled to the benefit of the earlier filing date." *Id.* at 1328.

### E.    Obviousness

10. Whether any Asserted claim of the '544 and '180 Patents is obvious in view of the prior art under 35 U.S.C. § 103. *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S.

Exhibit 5

Defendant's Statement of Issues of Law that Remain to be Litigated

398, 405, 421 (2007); *Wyers v. MasterLock Co.*, 616 F.3d 1231, 1237 (Fed. Cir. 2010).

11. "[O]bviousness is a matter of law based on findings of underlying fact." *Sanofi- Synthelabo v. Apotex, Inc.*, 550 F.3d 1075, 1085 (Fed. Cir. 2008). The underlying factual considerations include: "the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented." *KSR*, 550 U.S. at 406 (*quoting Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17-18 (1966)); *see also ABT Sys., LLC v. Emerson Elec. Co.*, 797 F.3d 1350, 1357 (Fed. Cir. 2015). Obviousness can be established "by noting that there existed at the time of invention a known problem for which there was an obvious solution encompassed by the patent's claims." *KSR*, 550 U.S. at 420. Furthermore, it is not only the specific problem motivating the patentee which is relevant, but rather "any need or problem known in the field of endeavor at the time of invention and addressed by the patent can provide a reason for combining the elements in the manner claimed." *Id.* In addition, because "[a] person of ordinary skill is also a person of ordinary creativity," the person of

Exhibit 5

Defendant's Statement of Issues of Law that Remain to be Litigated

ordinary skill will be able to "fit the teachings of multiple patents together like pieces

of a puzzle," regardless of whether each piece of prior art was designed to solve the

problem at hand. *Id*. at 420-21; *see also Leapfrog Enters., Inc. v. Fisher-Price, Inc.*,

485 F.3d 1157, 1161-1162 (Fed. Cir. 2007).

12. Because obviousness is to be judged under "an expansive and flexible

approach" driven by "common sense," an award of patentability requires "more than

the predictable use of prior art elements according to their established functions."

*KSR*, 550 U.S. at 415-18. This flexible standard expands the obviousness analysis

beyond just "published articles and the explicit content of issued patents." *Id*. at 419.

As the Supreme Court has articulated, a patent that merely combines "familiar

elements according to known methods is likely to be obvious when it does no more

than yield predictable results." *Id*. at 416 (recognizing that when a patent claims a

structure already known in the prior art that is altered by the mere substitution of one

element for another known in the field, the combination must do more than yield a

predictable result). Similarly, where a person of ordinary skill in the art simply

pursues "known options" from a "finite number of identified, predictable solutions,"

obviousness under § 103 results. *Id*. at 421.

13. Secondary considerations, if present, are also relevant to the obviousness

analysis. *ABT Sys., LLC*, 797 F.3d at 1361. Simultaneous or near-simultaneous

invention by others is a particularly important secondary consideration that supports

11

Exhibit 5

Defendant's Statement of Issues of Law that Remain to be Litigated

holding the claimed invention obvious. *See Geo. M. Martin Co. v. Alliance Mach. Sys. Int'l LLC*, 618 F.3d 1294, 1305-06 (Fed. Cir. 2010) ("Independently made, simultaneous inventions, made 'within a comparatively short space of time,' are persuasive evidence that the claimed apparatus 'was the product only of ordinary ... skill.'") (*quoting Concrete Appliances Co. v. Gomery*, 269 U.S. 177, 184 (1925)). Other secondary considerations include commercial success, licensing, praise, long-felt need, failure of others, unexpected results, teaching away, and copying. *See KSR*, 550 U.S. at 406 (*quoting Graham*, 383 U.S. at 17-18 ("Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented.")). In order for these objective indicia of nonobviousness "to be accorded substantial weight, its proponent must establish a nexus between the evidence and the merits of the claimed invention." *SIBIA Neurosciences, Inc. v. Cadus Pharma., Corp.*, 225 F.3d 1349, 1359 (Fed. Cir. 2000) (*quoting In re GPAC Inc.*, 57 F.3d 1573, 1580 (Fed. Cir. 1995)). However, even if secondary considerations exist, they cannot overcome a "strong prima facie case of obviousness." *Wyers*, 616 F.3d at 1246.

14. One consideration that is not relevant to the obviousness inquiry is enablement. Even "[a] non-enabling reference may qualify as prior art for the purpose of determining obviousness," *ABT*, 797 F.3d at 1360 n.2 (*quoting Symbol*

Exhibit 5

Defendant's Statement of Issues of Law that Remain to be Litigated

*Tech., Inc. v. Opticon, Inc.*, 935 F.2d 1569, 1578 (Fed. Cir. 1991)), "and even 'an

inoperative device ... is prior art for all that it teaches.'" *Id*. (*quoting Beckman*

*Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1551 (Fed. Cir. 1989)); *see*

*also In re Antor Media*, 689 F.3d 1281, 1292 (Fed. Cir.2012).

15.Obviousness is judged from the perspective of a person of ordinary having

skill in the art at the time the alleged invention was made. *Takeda Chem. Indus. v.*

*Alphapharm Pty., Ltd.*, 492 F.3d 1350, 1354-55 (Fed. Cir. 2007) ("An invention is

not patentable, inter alia, 'if the differences between the subject matter sought to be

patented and the prior art are such that the subject matter as a whole would have

been obvious at the time the invention was made to a person having ordinary skill in

the art'") (*quoting* 35 U.S.C. § 103(a)). A person of ordinary skill is a hypothetical

person who is "presumed to be aware of all the pertinent prior art." *Standard Oil*

*Co.v. Am. Cyanamid Co.*, 774 F.2d 448, 454 (Fed. Cir. 1985).

## II.    DEFENDANT'S REMEDIES

### A.    Exceptional Case

16.Whether Defendant is entitled to its costs and attorneys' fees under 35 U.S.C.

§ 285. "The court in exceptional cases may award reasonable attorney fees to the

prevailing party." 35 U.S.C. § 285. An award of "attorney fees is not automatic, even

for the extraordinary case." *Nat'l Presto Indus., Inc. v. West Bend Co.*, 76 F.3d 1185,

1197 (Fed. Cir. 1996) (affirming denial of attorneys' fees even though willful

13

Exhibit 5

Defendant's Statement of Issues of Law that Remain to be Litigated

infringement was found). Entitlement to attorneys' fees under 35 U.S.C. § 285 is not

automatic, and must be demonstrated by a preponderance of the evidence. *Octane*

*Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 557 (2014).

17.The Supreme Court has defined an "exceptional" case as "one that stands out

from others with respect to the substantive strength of a party's litigating position

(considering both the governing law and the facts of the case) or the unreasonable

manner in which the case was litigated." *Id*. at 554. The district court "may determine

whether a case is 'exceptional' in the case-by-case exercise of their discretion,

considering the totality of the circumstances." *Id*.

18."[A] strong or even correct litigating position is not the standard by which [the

court] assess[es] exceptionality." *Stone Basket Innovations, LLC v. Cook Med. LLC*,

892 F.3d 1175, 1180 (Fed. Cir. 2018). "A party's position on issues of law ultimately

need not be correct for them to not 'stand[] out,' or be found reasonable." *Id.*

(quoting *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1348 (Fed. Cir. 2015)).

Exhibit 5

Defendant's Statement of Issues of Law that Remain to be Litigated

Dated: January 8, 2024                          Respectfully submitted,


OF COUNSEL:                                      Brian E. Farnan (Bar No. 4089)
                                                 Michael J. Farnan (Bar No. 5165)
Edward R. Reines (admitted *pro hac*             FARNAN LLP
*vice*)                                          919 N. Market St., 12th Floor
Derek C. Walter (admitted *pro hac*              Wilmington, DE 19801
*vice*)                                          (302) 777-0300
WEIL, GOTSHAL & MANGES LLP                       (302) 777-0301 (Fax)
201 Redwood Shores Parkway                       bfarnan@farnanlaw.com
Redwood Shores, CA 94065                         mfarnan@farnanlaw.com
(650) 802-3000
edward.reines@weil.com                           *Attorneys for Defendant CareDx, Inc.*
derek.walter@weil.com


W. Sutton Ansley (admitted *pro hac*
*vice*)
WEIL, GOTSHAL & MANGES LLP
2001 M Street, NW, Suite 600
Washington, DC 20036
(202) 682-7000
sutton.ansley@weil.com

# EXHIBIT 6

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

NATERA, INC.,                                )
                                             )
                    Plaintiff,               )
                                             )
        v.                                   )    C.A. No. 20-038 (CFC) (CJB)
                                             )    (CONSOLIDATED)
CAREDX, INC.,                                )
                                             )
                    Defendant.               )

**<u>EXHIBIT 6: NATERA'S BRIEF STATEMENT OF INTENDED PROOF</u>**

Pursuant to Delaware Local Rule 16.3(c)(8), Plaintiff Natera, Inc. ("Natera") hereby submits the following brief statement of what Natera intends to prove in support of its claims at trial, for adjudication by the jury or the Court. This statement is not intended to be exhaustive, and Natera reserves the right to prove any matters identified in the pleadings, fact and expert discovery, and any of the accompanying statements of facts and legal issues to be litigated at trial. With respect to proof to be presented by expert testimony, Natera incorporates by reference the reports and depositions of Natera's expert witnesses addressing the issues identified below.

To the extent Natera asserts that Defendant CareDx, Inc. ("CareDx") has failed to meet its burden of proof on any issue, such statement does not constitute an admission that Natera has any obligation to prove or disprove any element or any part of any claim or defense on which Natera bears the burden of proof or production. Natera does not assume the burden of proof or production as to any matter set forth below unless required to do so by law. Natera reserves the right to modify or supplement its pretrial order materials, including this statement of intended proof, in response to any additional disclosures by CareDx.

Natera further reserves the right to amend and/or supplement this statement to the extent necessary to respond to issues raised by CareDx, and to rebut any alleged proof(s) offered by CareDx before and during trial, in response to rulings by the Court, or for any other reason.

1

## I.    ISSUES ON WHICH NATERA BEARS THE BURDEN OF PROOF

### A.    CareDx Directly Infringed the Asserted Patents

1.    Natera will prove by a preponderance of the evidence that CareDx directly infringed one or more of Claims 21, 26, and 27 of U.S. Patent No. 11,111,544 ("the '544 Patent") and Claims 14 and 15 of U.S. Patent No. 10,655,180 ("the '180 Patent) (together, the "Asserted Claims of the Asserted Patents") by having made, used, or sold AlloSure and AlloSeq (the "Accused Products") in violation of 35 U.S.C. § 271(a).

### B.    If Infringement Is Found, CareDx Willfully Infringed the Asserted Patents

2.    If there is a finding of infringement, Natera will prove by a preponderance of the evidence that CareDx willfully infringed one or more Asserted Claims of the Asserted Patents in violation of 35 U.S.C. § 284.

### C.    Natera Is Entitled to Injunctive Relief

3.    Natera will prove that it is entitled to an order permanently enjoining CareDx and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting on behalf of or in active concert or participation therewith, from further infringement of the '180 Patent and '544 Patent.

2

**D.    If Liability Is Found, Natera Is Entitled to Damages and Interest for CareDx's Infringement**

4.    To the extent the jury finds that at least one Asserted Claim is valid and that CareDx infringed with at least one Accused Product, Natera will prove the amount of damages, in the form of lost profits and/or reasonable royalty, that Natera is entitled to for CareDx's alleged infringement.

5.    Natera will prove that it is entitled to an award of prejudgment and post-judgment interest.

**E.    Natera Is Entitled to Enhanced Damages, Attorneys' Fees and Costs for CareDx's Infringement**

6.    If there is a finding of willful infringement of at least one Asserted Claim, Natera will prove that it is entitled to enhanced damages pursuant to 35 U.S.C. § 284.

7.    If there is a finding of willful infringement of at least one Asserted Claim, Natera will prove that this case is exceptional pursuant to 35 U.S.C. § 285, and that Natera is entitled to its attorneys' fees and costs.

## II.    ISSUES ON WHICH CAREDX BEARS THE BURDEN OF PROOF

**A.    Natera's Asserted Patents Are Valid**

8.    CareDx must prove by clear and convincing evidence that the Asserted Claims of the '180 Patent are invalid pursuant to 35 U.S.C. § 101 as claiming patent

3

ineligible subject matter.  Natera will show that CareDx failed to meet its burden of proof on this issue and will present evidence to rebut CareDx's assertions.

9.      CareDx must prove by clear and convincing evidence that the Asserted Claims of the Asserted Patents are invalid in view of the prior art pursuant to 35 U.S.C. § 103. Natera will show that CareDx failed to meet its burden of proof on this issue and will present evidence to rebut CareDx's assertions.

10.     If CareDx has made a *prima facie* showing that the Asserted Claims of the Asserted Patents are invalid as obvious pursuant to 35 U.S.C. § 103, Natera will show that secondary indicia of non-obviousness demonstrate that the claimed inventions of the Asserted Claims would not have been obvious. Natera will show there is a nexus between such secondary considerations and the claimed inventions of the Asserted Claims.

11.     CareDx must prove by clear and convincing evidence that the Asserted Claims of the Asserted Patents are invalid pursuant to 35 U.S.C. § 112 as lacking written description support.  Natera will show that CareDx failed to meet its burden of proof on this issue and will present evidence to rebut CareDx's assertions.

4

# EXHIBIT 7

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NATERA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 20-038 (CFC) (CJB) |
| | ) | |
| v. | ) | (CONSOLIDATED) |
| | ) | |
| CAREDX, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## EXHIBIT 7

## DEFENDANT'S BRIEF STATEMENT OF INTENDED PROOF

Exhibit 7
Defendant's Brief Statement of Intended Proof

Pursuant to Delaware Local Rule 16.3(c)(9), Defendant CareDx, Inc. ("CareDx" or "Defendant") hereby submits the following brief statement of what Defendant intends to prove in support of its claims at trial, including the details of the damages claimed or of other relief sought. This statement is not intended to be exhaustive, and Defendant reserves the right to prove any matters identified in the pleadings, fact and expert discovery, and any of the accompanying statements of facts and legal issues to be litigated at trial. With respect to proof to be presented by expert testimony, Defendant incorporates by reference the reports and depositions of Defendant's expert witnesses addressing the issues identified below.

To the extent Defendant asserts that Plaintiff Natera, Inc. ("Natera") has failed to meet its burden of proof on any issue, such statement does not constitute an admission that Defendant has any obligation to prove or disprove any element or any part of any claim or defense on which Natera bears the burden of proof or production. Defendant does not assume the burden of proof or production as to any matter set forth below unless required to do so by law. Defendant reserves the right to modify or supplement its pretrial order materials, including this statement of intended proof, in response to any additional disclosures by Natera.

Defendant further reserves the right to amend and/or supplement this statement to the extent necessary to respond to issues raised by Natera, and to rebut

Exhibit 7
Defendant's Brief Statement of Intended Proof

any alleged proof(s) offered by Natera before and during trial, in response to rulings

by the Court, or for any other reason.

## I.    DEFENDANT HAS NOT DIRECTLY INFRINGED THE ASSERTED PATENTS

### A.    Direct Infringement

1.    Natera must prove by a preponderance of the evidence that use of
AlloSure, AlloSeq, HeartCare, and any other products Natera accuses of infringing
constitute infringement of the Asserted Claims of the '544 and '180 Patents in
violation of 35 U.S.C. § 271(a). Defendant will show that Natera has failed to meet
its burden of proof on this issue. Defendant will present evidence to rebut Natera's
assertions. For example, Defendant will show that use of the AlloSure, AlloSeq,
HeartCare, and any other products Natera accuses of infringing do not satisfy the
limitations required by the '544 and '180 Patents, either literally or under the
doctrine of equivalents.

## II.    THE NATERA ASSERTED PATENTS ARE INVALID

### A.    Patent Ineligible Subject Matter

2.    Defendant will prove by clear and convincing evidence that the
Asserted Claims of the '180 Patent are invalid for claiming ineligible subject matter
under 35 U.S.C. § 101.

3.    In particular, CareDx intends to show that all steps of the asserted
claims of the '180 Patent recite nothing but routine and conventional subject matter,

3

Exhibit 7
Defendant's Brief Statement of Intended Proof

including with regarding the amplification of 100 or more targets in a single reaction volume, which appears to be the only outstanding issue with regard to subject matter eligibility.

4.      This Court found in the CareDx patents filed in 2009 that the claim requirement of selective amplification of "at least **1,000** single nucleotide polymorphisms" was conventional. *See* Case No. 19-567, D.I. 183. While Dr. Quackenbush asserts that this was not known, he previously testified that he and others in his lab were using selective amplification years before the '180 patent. D.I. 251-5 at 85:19-88:25; *see also* Case No. 19-567, D.I. 102-1 ¶ 82 ("PCR, including selective amplification, was a well-understood, routine and conventional method for genotyping by 2009."). Natera's own expert in prior proceedings testified that selective amplification of more than 100 loci in a single reaction volume was known by 2008. D.I. 251-6 ¶ 98 ("The pre-pre-amplification step uses PCR amplification with 9,216 primer pairs, to amplify 9,216 target sequences.") Natera's inventor, Dr. Zimmerman acknowledged that at his prior company to Natera, he knew how to selectively amplify 5000 targets in one reaction volume. D.I. 251-7 at 24:24-25:13. He also acknowledged that multiplexing more than 100 targets was published in the literature as far back as 2005. *Id.* at 49:5-13 ("We were not the first to, as part of a process, employ a multiplex PCR step over 100-plex.").

Exhibit 7
Defendant's Brief Statement of Intended Proof

## B.     Written Description

5.     Defendant will prove by clear and convincing evidence that the Asserted Claims of the Asserted Patents are invalid for failure to satisfy the written description requirement of 35 U.S.C. § 112.

6.     With respect to the '544 patent, Defendants will show that the specification describes not the claimed method, but only a "parental support" approach, at most describes pyrosequencing, does not support transplant testing, does not support of determining genetic data based on allele frequencies, and does not support claims as integrated whole.

7.     With respect to the '180 Patent, Defendant will show that the specification does not support methods that do not require primer selection to avoid primer dimers, the use of cell-free DNA that is not from a fetus, the use of SNP loci on at least chromosomes 1, 2, or 3, and does not support the claims as an integrated whole.

## C.     Priority Date

8.     Defendant will rebut any evidence presented by Natera to show that the Asserted Claims of the '544 Patent are entitled to priority date prior to March 18, 2020.

9.     Defendant will show that the '544 patent is not entitled to either a 2005 or 2006 priority date. As detailed extensively in Defendants' summary judgment

Exhibit 7
Defendant's Brief Statement of Intended Proof

brief, the provisional applications upon which Natera relies are grossly deficient in terms of providing support for the asserted claims. *See generally* D.I. 241.

### D. Obviousness

10.    Defendant will prove by clear and convincing evidence that the Asserted Claims of the Asserted Patents are invalid as obvious under 35 U.S.C. § 103.

11.    Specifically, Defendants will show that the following combinations of art render the asserted claims invalid:

'544 Patent Claims 21, 26, 27:

- Dhallan + Leamon
- Quake

'180 Patent Claims 14, 15:

- Quake + Dhallan 2007

### E. Secondary Considerations

12.    Defendant will rebut any evidence presented by Natera to show secondary indicia of non-obviousness, including commercial success, industry praise, copying, skepticism and/or long-felt but unmet need, demonstrate that the claimed inventions of the Asserted Claims would not have been obvious. Defendant will also show that there is no nexus between the secondary considerations presented by Natera and the Asserted Patents.

Exhibit 7
Defendant's Brief Statement of Intended Proof

## III.    REMEDIES

### A.    Lost Profits

13.    Natera must prove that it is entitled to lost profits damages if infringement is found. Defendant will show that Natera has failed to meet its burden of proof on this issue. To the extent any damages are awarded, Defendant will present evidence to rebut Natera's asserted damages amount and royalty rate.

### B.    Reasonable Royalties

14.    Natera must prove that it is entitled to reasonable royalties if infringement is found. Defendant will show that Natera has failed to meet its burden of proof on this issue. To the extent any damages are awarded, Defendant will present evidence to rebut Natera's asserted damages amount and royalty rate.

### C.    Preliminary and Permanent Injunction

15.    Natera must prove that it is entitled to injunctive relief restraining and enjoining the use of AlloSure, AlloSeq, HeartCare, and any other products Natera accuses of infringing, until the expiration of the Asserted Patents. Defendant will show that Natera has failed to meet its burden of proof on this issue. Defendant will present evidence to rebut Natera's assertions. For example, Defendant will show that Natera will not suffer irreparable harm if an injunction is not granted. Defendant will also show that there are other remedies at law. Defendant will show that the injury

Exhibit 7
Defendant's Brief Statement of Intended Proof

to Natera would not outweigh the harm to Defendant. Finally, Defendant will show

that an injunction would be adverse to the public interest.

### D.    Exceptional Case

16.    Natera must prove that the case is exceptional under 35 U.S.C. § 285.

Defendant will show that Natera has failed to meet its burden of proof on this issue.

Defendant will present evidence to rebut Natera's assertions.

17.    In the event one or more of the Asserted Claims of the Asserted Patents

is found not infringed and/or invalid, Defendant will prove that this is an exceptional

case justifying an award of attorneys' fees under 35 U.S.C. § 285.

### E.    Attorneys' Fees, Costs, and Litigation Expenses

18.    In the event one or more of the Asserted Claims of the Asserted Patents

is found not infringed and/or invalid, Defendant will prove that Defendant is entitled

to its attorneys' fees, costs, and litigation expenses under 35 U.S.C. § 285.

Exhibit 7
Defendant's Brief Statement of Intended Proof

Dated: January 8, 2024                    Respectfully submitted,


OF COUNSEL:                               Brian E. Farnan (Bar No. 4089)
                                          Michael J. Farnan (Bar No. 5165)
Edward R. Reines (admitted *pro hac*      FARNAN LLP
*vice*)                                   919 N. Market St., 12th Floor
Derek C. Walter (admitted *pro hac*       Wilmington, DE 19801
*vice*)                                   (302) 777-0300
WEIL, GOTSHAL & MANGES LLP                (302) 777-0301 (Fax)
201 Redwood Shores Parkway                bfarnan@farnanlaw.com
Redwood Shores, CA 94065                  mfarnan@farnanlaw.com
(650) 802-3000
edward.reines@weil.com
derek.walter@weil.com                     *Attorneys for Defendant CareDx, Inc.*

W. Sutton Ansley (admitted *pro hac*
*vice*)
WEIL, GOTSHAL & MANGES LLP
2001 M Street, NW, Suite 600
Washington, DC 20036
(202) 682-7000
sutton.ansley@weil.com

EXHIBIT 8

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

NATERA, INC.,                          )
                                       )
            Plaintiff,               )
                                       )
      v.                            )    C.A. No. 20-038 (CFC) (CJB)
                                       )    (CONSOLIDATED)
CAREDX, INC.,                          )
                                       )
            Defendant.              )

## **EXHIBIT 8: NATERA'S TRIAL WITNESS LIST**

Pursuant to Local Rule 16.3, Plaintiff Natera, Inc. ("Natera") hereby respectfully submits the list of witnesses Natera may or will call to testify at trial. The inclusion of a witness on this list does not require Natera to call that witness to testify, and does not imply or establish that Natera has the power to compel the live testimony of that witness or make that witness available to the opposing party. Furthermore, the identification of a witness on this list is not an admission by Natera that the witness's testimony would be admissible, and Natera reserves the right to object to any objectionable or inadmissible testimony

Natera expressly reserves the right to call any witness identified by Defendant CareDx, Inc. ("CareDx"), whether or not listed on Natera's list below. Natera also expressly reserves the right to call any witness for purposes of rebuttal, impeachment, or authentication of a document. Natera reserves all rights to modify or amend this trial witness list, including to respond to issues raised after the preparation and submission of this list, including any changes by CareDx to its arguments, witness list, or other positions, or any rulings by the Court on motions or other disputes presented during pretrial proceedings. To the extent that a witness on this list is unavailable for trial, Natera reserves the right to call an alternative witness, including for purposes of authenticating and admitting documents.

Subject to, and without waiving the foregoing, Natera identifies the following list of trial witnesses:

| Name | May/Will Call | Live/Deposition |
|---|---|---|
| Gunderson, Lance | Will Call | Live |
| Quackenbush, John | Will Call | Live |
| Rabinowitz, Matt | Will Call | Live |
| Prewett, Adam | May Call | Live |
| Gemelos, George | May Call | Live |
| Zimmerman, Bernhard | May Call | Live |
| Natera Custodian of Records | May Call | Live |
| Dholakia, Sham | May Call | By deposition |
| Gibson, Hal | May Call | By deposition |
| Grskovic, Marica | May Call | By deposition |
| Hiller, David | May Call | By deposition |
| Johnson, Alex | May Call | By deposition |
| King, Sasha | May Call | By deposition |
| Scott, Susan | May Call | By deposition |
| Sninsky, John | May Call | By deposition |
| Woodward, Robert | May Call | By deposition |

EXHIBIT 9

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

NATERA, INC.,                    )
                                 )
                Plaintiff,       )        C.A. No. 20-038 (CFC) (CJB)
                                 )
        v.                       )        (CONSOLIDATED)
                                 )
CAREDX, INC.,                    )
                                 )
                Defendant.       )
                                 )

## EXHIBIT 9

## CAREDX INC.'S PRELIMINARY TRIAL WITNESS LIST

Exhibit 9
Defendant's Preliminary Trial Witness List

Pursuant to Delaware Local Rule 16.3, Defendant CareDx, Inc. ("CareDx") hereby submit the preliminary list of witnesses CareDx will or may call to testify at trial live or by deposition. The inclusion of a witness on this list does not require CareDx to call that witness to testify, and does not imply or establish that CareDx have the power to compel the live testimony of that witness or make that witness available to the opposing party. CareDx expressly reserves the right to call any witness identified by Plaintiff Natera, Inc. ("Natera"), whether or not listed on CareDx's list below. CareDx also expressly reserves the right to call any witness for purposes of rebuttal, impeachment, or authentication of a document.

Subject to, and without waiving the foregoing rights and objections, CareDx identifies the following preliminary list of trial witnesses it will or may call to testify before the jury:

# I.    CAREDX'S WILL CALL WITNESSES

## A.    Fact Witnesses

CareDx expects to call the following fact witnesses at trial:

- Marica Grskovic

- Alex Johnson

## B.    Expert Witnesses

CareDx expects to call the following expert witnesses at trial:

- Brian Van Ness

2

Exhibit 9
Defendant's Preliminary Trial Witness List

- Brian Napper

## II.    CAREDX'S MAY CALL WITNESSES

CareDx may call the following witnesses at trial:

- George Gemelos

- Zachary Demko

- John Quackenbush

- Robert Stoll

- Lance Gunderson

- David Johnson

- Robert Woodward

- Hal Gibson

- Sasha King

- Bernhard Zimmerman

- Adam Prewett

- Matthew Rabinowitz

- Jing Xu

- Allison Ryan

- Matthew Hill

- Dusan Kijacic

Exhibit 9
Defendant's Preliminary Trial Witness List

- Milena Banjevic

- Dmitri Petrov

- Joshua Sweetkind-Singer

- Sham Dholakia

- David Hiller

- John Sninsky

- Susan Scott

- All witnesses named on Natera's trial witness list

EXHIBIT 10

Material Objection Key

| Abbr. | Objection |
|---|---|
| 403 | Relevance Outweighed By Other Factors (undue prejudice, confusion, cumulative) |
| 408 | Improper use of Settlement Negotiations Evidence to prove liability or damages |
| 602 | Lack of Personal Knowledge or foundation (for fact testimony) |
| 701 | Improper opinion testimony by lay witness |
| 702 | Improper expert testimony |
| AF | Assumes facts not in evidence |
| CLC | Calls for a legal conclusion |
| COMP | Compound |
| CS | Calls for speculation |
| F | Lacks Foundation |
| H | Hearsay |
| IMP C | Improper Counter (Fed. R. Evid. 611(b)) |
| I | Incomplete designation |
| INQA | Improper/incomplete question or answer |
| L | Leading |
| LA | Legal argument |
| MD | Mischaracterizes the document |
| MT | Mischaracterizes testimony |
| MIL | Subject to a motion in limine |
| MOT | Subject to pending or resolved motion - e.g., Daubert motion, SJ motion |
| NAR | Improper Narrative |
| NR | Non-responsive testimony |
| NT | Not testimony |
| PRIV | Privileged |
| R | Relevance (Fed. R. Evid. 401, 402) |
| SCOPE | Beyond the scope of the FRCP 30(b)(6) designation |
| TR | Testimony requires translation from foreign language |
| UNE | Unavailability of deponent not established |
| V | Vague |

Defendant's Objection Key

| AA | Asked and answered; Fed. R. Evid. 611(a). |
|---|---|
| ARG | Argumentative, or attorney argument; Fed. R. Evid. 611(a). |
| BTS | Beyond the scope of examination or of 30(b)(6) topic; Fed R. Evid. 611, Fed. R. Civ. P. 30(b)(6). |
| BSD | Counter-Designation Beyond the Scope of the Designation(s). |
| CP | Compound question. |
| F | No foundation or assumes facts not in evidence; Fed. R. Evid. 602, 703, 901. |
| FOW | An objection to form is waived if it was not timely made during the deposition, Fed. R. Civ. P. 32(d)(3)(B). |
| H | Hearsay if offered for the truth of the matter asserted; Fed. R. Evid. 801, 803, 805. |
| I | Incomplete designation; Fed. R. Evid. 106, 403. |
| IH | Incomplete Hypothetical. |
| L | Leading; Fed. R. Evid. 611(c). |
| LC | Calls for Legal Conclusion; Fed. R. Evid. 701. |
| LW | Witness will be testifying live at trial. |
| MIS | Mischaracterization of testimony or evidence. |
| NARR | Narrative. |
| NR | Not responsive; Fed. R. Evid. 611(a). |
| O | Unqualified Opinion; Calls for improper expert opinion from lay witness; Fed. R. Evid. 701, 702. |
| OB | Attorney Objection improperly designated/Improper designation. |
| P | Privileged; Fed. R. Evid. 501, Fed. R. Civ. P. 26(b)(3),(4). |
| PK | Lack of personal knowledge; Fed. R. Evid. 602. |
| R | Not relevant; Fed. R. Evid. 401, 402. |
| SPEC | Calls for Speculation; Fed. R. Evid. 602, 701, 702. |
| 403 | Unfairly prejudicial; cumulative, waste of time, Fed. R. Evid. 403. |
| V | Vague or ambiguous; Fed. R. Evid. 611(a). |

| Natera, Inc. v. CareDx Inc. (Case No. 20-cv-038)(CFC-CJB) | | | |
|---|---|---|---|
| Witness: Robert Woodward | | | |
| Date of Deposition: 2023-02-28 | | | |
| Natera's Opening Designations | CareDx's Objections | CareDx's Counter-Designations | Natera's Objections |
| 9:25-10:3 | R, 403, I | 10:4-11 | R; 403; MIL; SCOPE |
| 12:20-13:8 | R, 403, I | 12:20-13:8, 13:14-14:6 | R; 403; IMP C; SCOPE |
| 13:14-14:12 | R, 403, AA, V, I, F, SPEC | 14:14-21; 14:23-15:2 | R; 403; 602; SCOPE |
| 15:11-15:19 | R, 403, V, I, AA | 14:14-21; 14:23-15:2, 15:9-19 | R; 403; 602; SCOPE |
| 16:2-17:8 | R, 403, V, I, F, SPEC, AA | 15:21-16:1, 17:2-8 | R; 403; 602; SCOPE |
| 17:16-17:18 | R, 403, I | 17:14-15; 17:19-23 | R; 403; NT; SCOPE |
| 19:10-20:1 | R, 403, I, AA | 18:14-19, 19:14-20:1 | R; 403; 602; SCOPE |
| 21:3-21:15 | R, 403 | | |
| 21:16-21:22 | R, 403, I | 21:23-22:2; 22:8-18; 22:19-23:4; 25:16-26:8 | R; 403; 602; SCOPE; NT; IMP C |
| 22:8-22:18 | R, 403, I | 21:23-22:2; 22:8-18; 22:19-23:4; 25:16-26:8 | R; 403; 602; SCOPE; NT; IMP C |
| 27:1-27:15 | R, 403, I | 21:23-22:2; 22:8-18; 22:19-23:4; 25:16-26:8, 27:1-11, 27:16-23 | R; 403; 602; SCOPE; NT; IMP C |
| 27:16-27:23 | R, 403, I | 21:23-22:2; 22:8-18; 22:19-23:4; 25:16-26:8, 27:1-11, 27:16-23 | R; 403; 602; SCOPE; NT; IMP C |
| 28:10-29:24 | R, 403, V | 21:23-22:2; 22:8-18; 22:19-23:4; 25:16-, 27:1-11, 27:16-23 | R; 403; 602; SCOPE; NT; IMP C |
| 30:21-31:3 | R, 403 | 31:4-6; 32:3-6; 32:9-12; 32:19-33:3; 36:15-18, 38:3-21 | R; 403; SCOPE; IMP C |
| 37:16-38:21 | R, 403, I, V | 39:1-12 | R; 403; SCOPE; IMP C |
| 41:9-41:11 | R, 403, SPEC, PK, V, F | | |
| 42:21-43:6 | R, 403, I | 43:7-18; 45:10-12; 45:14-21; 45:23-46:14; 47:3-13; 49:6-11; 49:17-50:2; 58:2-6; 58:18-59:1 | R; 403; SCOPE; IMP C; 602; CS; INQA |
| 59:12-59:15 | R, 403, SPEC, PK | | |
| 60:10-60:23 | R, 403, PK, I | 61:8-10; 62:6-11 | R; 403; SCOPE |
| 61:11-62:5 | R, 403, I | 61:8-10; 62:6-11 | R; 403; SCOPE |
| 62:12-63:3 | R, 403 | | |
| 63:13-63:23 | R, 403, PK, SPEC | | |
| 64:12-64:22 | R, 403, F, SPEC | | |
| 65:6-65:10 | R, 403, V | | |
| 65:15-65:19 | R, 403 | | |
| 65:24-66:22 | R, 403, PK | | |
| 67:4-67:6 | R, 403, F, PK, I | 67:7-10 | SCOPE; NT; INQA |
| 67:22-68:3 | R, 403 | | |
| 68:15-68:23 | R, 403, I | 68:24-69:3 | CS; V; SCOPE |
| 69:4-69:14 | R, 403, SPEC, PK, I | 69:15-18 | |
| 71:5-71:20 | R, 403, PK, F, V, I | 71:5-20, 73:14-74:4 | IMP C; R; 403; SCOPE |
| 74:5-75:2 | R, 403, I | 75:9-14; 75:22-25; 77:3-10; 77:15-22; 78:20-79:20; 80:11-18 | R; 403; IMP C; SCOPE; INQA; MIL |
| 86:21-87:9 | R, 403, I | 87:10-22; 89:14-22 | R; 403; SCOPE; IMP C; 701; 602 |
| 90:1-90:12 | R, 403 | | |
| 90:18-91:3 | R, 403, I | 91:10-13; 91:16-20 | R; 403; SCOPE; IMP C; 701; 602 |
| 92:9-92:17 | R, 403 | | |
| 92:23-93:3 | R, 403, I | 92:21-22; 93:4-9; 92:23-93:3, 94:4-13 | R; 403; IMP C; SCOPE |
| 93:10-93:13 | R, 403 | | |
| 93:21-94:3 | R, 403 | 93:21-94:3 | IMP C; R; 403; SCOPE |
| 94:14-95:15 | R, 403 | 94:4-13, 94:14-95:15 | IMP C; R; 403; SCOPE |
| 95:16-96:11 | R, V, 403 | 95:16-21 | IMP C; R; 403; SCOPE |
| 97:10-97:12 | R, 403, F | 97:2-9 | |
| 97:18-97:24 | R, 403 | 97:18-24 | IMP C; SCOPE |
| 98:4-98:14 | R, 403, I | 97:25-98:3, 98:4-10, 98:15-99:23 | R; 403; SCOPE; IMP C |
| 98:15-99:23 | R, 403 | | |
| 100:4-100:7 | R, 403 | | |
| 100:11-101:9 | R, 403, I | 100:8-10 | R; 403; NT; SCOPE |
| 101:13-102:17 | R, 403 | 101:13-102:17 | IMP C; SCOPE |
| 103:1-103:9 | R, 403 | | |
| 103:19-104:12 | R, 403, I | 103:14-18 | SCOPE |
| 104:19-105:2 | R, 403 | 104:13-18 | SCOPE |

| Natera's Opening Designations | CareDx's Objections | CareDx's Counter-Designations | Natera's Objections |
|---|---|---|---|
| 105:3-105:13 | R, 403 | | |
| 105:17-106:2 | R, V, 403 | 105:17-18, 105:20-106:2 | IMP C; SCOPE |
| 106:9-107:9 | R, 403 | 106:9-107:9 | |
| 107:20-108:6 | R, 403 | | |
| 109:2-111:13 | R, 403, LC, V, O | | |
| 112:16-114:4 | R, 403 | | |
| 114:8-115:9 | R, 403, I | 115:10-18 | R; 403; CS; SCOPE |
| 115:19-115:24 | R, 403 | 115:19-24 | IMP C; SCOPE |
| 116:22-117:12 | R, 403, I | 117:13-25 | |
| 118:9-120:7 | R, 403, LC, O, PK, SPEC | | |
| 120:8-120:23 | R, 403, LC, O, PK, SPEC | | |
| 121:3-121:18 | R, 403, I | 119:15-120:15,120:24-121:2; 121:19-25 | R; 403; 701; SCOPE; 602; CS; NT |
| 122:8-122:12 | R, 403, AA | | |
| 122:20-123:9 | R, 403 | | |
| 123:10-123:22 | R, 403, I | 123:23-124:6; 124:9-125:14; 125:24-126:11 | R; 403; MOT; SCOPE; 701; IMP C |
| 126:20-126:22 | R, 403, I | 126:23-127:11; 127:15-128:10; 128:21-129:24 | R; 403; MOT; SCOPE; 701; IMP C |
| 130:15-130:17 | R, 403, CP, MIS | | |
| 131:1-131:3 | R, 403, CP, MIS | | |
| 133:18-134:1 | R, 403, I | 132:21-133:7, 133:18-135:2 | R; 403; SCOPE; IMP C |
| 134:2-135:2 | R, 403, I | 135:4-23 | R; 403; IMP C |
| 135:24-136:14 | R, 403, LC | | |
| 137:13-137:22 | R, 403 | | |
| 138:1-138:22 | R, 403, I | 137:23-25 | |
| 139:2-139:9 | R, 403 | | |
| 139:18-140:3 | R, 403 | | |
| 140:19-141:12 | R, 403 | | |
| 141:13-142:21 | R, 403 | 141:13-143:2 | R; 403; SCOPE; IMP C; INQA |
| 142:22-143:2 | R, 403 | | |
| 143:6-143:8 | R, 403 | | |
| 143:9-144:8 | R, 403, I | 143:6-144:8, 144:19-145:3; 145:9-146:9; 146:13-147:3 | R; 403; SCOPE; IMP C; INQA; 602; CS; 701 |
| 147:4-147:17 | R, 403, I | 144:19-145:3; 145:9-146:9; 146:13-147:3 | R; 403; SCOPE; IMP C; INQA; 602; CS; 701 |
| 147:23-148:1 | R, 403, I | 148:2-7 | R; 403; SCOPE |
| 148:8-148:17 | R, 403, I | 148:2-7; 148:18-21; 148:24-149:8; 149:10-13; 149:16-22; 149:25-150:4 | R; 403; SCOPE; LA; CS; 602; 701 |
| 150:5-150:11 | R, 403, I | 148:2-7; 148:18-21; 148:24-149:8; 149:10-13; 149:16-22; 149:25-150:4 | R; 403; SCOPE; LA; CS; 602; 701 |
| 150:12-151:13 | R, 403 | | |
| 151:14-152:9 | R, 403, I | 152:10-153:12; 153:19-154:4; 154:9-157:9; 157:12-13; 157:15-22; 159:2-25 | R; 403; SCOPE; 701; IMP C |
| 162:3-162:6 | R, 403 | | |
| 163:15-163:21 | R, 403, LC, O, I | 164:2-5; 164:8-11 | R; 403; SCOPE; V; 701; CLC |
| 164:18-164:25 | R, 403 | | |
| 165:4-165:21 | R, 403 | | |
| 165:22-166:7 | R, 403 | | |
| 166:25-167:6 | R, 403 | | |
| 167:13-167:24 | R, 403 | | |
| 167:25-169:2 | R, 403 | | |
| 169:12-169:16 | R, 403 | | |
| 169:20-170:15 | R, 403 | | |
| 170:16-170:25 | R, 403, L | | |
| 171:5-171:18 | R, 403 | 171:5-18 | IMP C; SCOPE |
| 171:22-172:3 | R, 403 | 172:4-6 | SCOPE |
| 172:7-172:19 | R, 403 | | |
| 172:22-173:21 | R, 403 | 172:22-173:21 | IMP C; SCOPE |
| 173:22-174:22 | R, 403 | | |
| 174:23-175:11 | R, 403, I, L | 175:12-22 | R; 403 |
| 176:13-176:18 | R, 403 | | |

| Natera's Opening Designations | CareDx's Objections | CareDx's Counter-Designations | Natera's Objections |
|---|---|---|---|
| 176:19-177:14 | R, 403, CP, L, | | |
| 177:19-178:5 | R, 403 | 177:23-178:5 | IMP C |
| 179:9-179:12 | R, 403 | | |
| 179:16-180:6 | R, 403, I | 177:12-14; 181:12-13; 185:6-17 | IMP C; R; 403; SCOPE |
| 181:6-181:11 | R, 403, I | 177:12-14; 181:12-13; 185:6-17 | IMP C; R; 403; SCOPE |
| 192:5-192:11 | R, 403, I, | 192:12-21 | |
| 193:2-193:8 | R, 403, L, PK | | |
| 193:19-194:13 | R, 403, BTS | | |
| 197:1-197:18 | R, 403, I, | 197:20-198:6 | SCOPE |
| 198:14-198:19 | R, 403 | | |
| 199:6-200:11 | R, 403, PK | | |
| 200:17-201:14 | R, 403, F, SPEC, PK | | |
| 201:23-202:1 | R, 403 | 201:23-202:1 | IMP C; R; 403 |
| 206:12-206:18 | R, 403, PK, L | | |
| 207:2-208:7 | R, 403, PK, | | |
| 209:17-209:22 | R, 403, F, L | | |
| 232:9-232:23 | R, 403, F, PK | | |
| 235:13-236:14 | R, 403, CP, L | | |
| 237:25-238:19 | R, 403, L, F, V | | |
| 239:9-239:13 | R, 403 | 238:23-239:4 | R; 403; IMP C; SCOPE |
| 239:23-240:3 | R, 403, L | | |

Robert Woodward

| Natera, Inc. v. CareDx Inc. (Case No. 20-cv-038)(CFC-CJB) | | | |
|---|---|---|---|
| **Witness: John Sninsky** | | | |
| **Date of Deposition: 2023-04-04** | | | |
| **Natera's Opening Designations** | **CareDx's Objections** | **CareDx's Counter-Designations** | **Natera's Objections** |
| 7:3-7:5 | I | 7:2; 7:5-13 | NT |
| 13:2-13:3 | F, I, R, 403, V | 22:5-7 | |
| 13:12-13:18 | F, R, 403, V | | |
| 22:5-22:7 | F, I, R, 403, V | 13:2-3 | |
| 47:3-47:20 | CP, I, R, 403, V | 45:2-47:2; 47:3-48:15 | R; 403 |
| 47:21-48:15 | F, I, R, 403, V | 48:16-49:10 | R; 403; IMP C |
| 49:11-50:7 | F, I, R, 403, V | 45:2-47:2; 40:15-41:14; 41:18-42:9; 47:21-49:10; 51:18-52:9; 61:19-62:7; 62:10-12 | R; 403; IMP C |
| 53:7-53:24 | F, I, R, 403, V | 53:7-24; 53:25-54:7; 54:10-18; 47:21-49:10; 51:18-52:9 | R; 403; IMP C |
| 55:5-56:4 | AA, ARG, F, I, R, 403, V | 47:21-49:10; 51:18-52:9 | R; 403; IMP C |
| 56:5-56:6 | I, R, V | 22:5-7; 13:2-3; 55:5-25 | R; 403 |
| 57:7-57:21 | F, I, PK, R, 403, V | 57:2-6; 57:23-58:12 | R; 403; IMP C |
| 88:25-89:5 | AA, F, I, R, 403, V | | |
| 90:12-90:15 | AA, I, LC, O, R, V | 89:15-17; 90:16-23; 70:16-71:4; 71:19-21; 71:24-25 | R; 403; 701 |
| 103:23-104:7 | F, I, R, 403, V | 103:19-22 | |
| 105:22-106:2 | F, I, R, 403, V | 105:19-21 | |
| 106:14-107:1 | AA, I, LC, O, R, V | 107:5-11; 70:16-71:4; 71:19-21; 71:24-25 | IMP C; R; 403; 701 |
| 107:13-108:4 | F, I, PK, R, 403, V | 108:5-109:5; 45:2-47:20 | R; 403; 602; CS; V |
| 109:25-110:12 | F, I, R, 403, V | 107:13-109:5 | R; 403; 602; CS; V |
| 110:20-112:2 | F, I, MIS, R, 403, V | 53:25-54:7; 54:10-18 | R; 403; IMP C |
| 113:6-114:10 | F, I, PK, R, 403, V | 110:20-112:2; 51:18-52:9 | R; 403; IMP C |
| 120:11-120:21 | I, R, 403, V | 120:22-25; 121:2-4; 53:7-54:7; 54:10-18; 141:1-2; 141:4-6; 141:8-11; 129:19-130:8 | R; 403; IMP C; 602; 701; NAR; NR |
| 124:13-125:11 | F, I, MIS, R, 403, V | 124:7-12; 110:20-112:2; 141:1-2; 141:4-6; 141:8-11; 129:19-130:8 | R; 403; IMP C; 602; 701; NAR; NR |
| 127:19-127:22 | F, I, MIS, PK, R, 403, V | 126:13-127:18; 121:5-10 | R; 403; IMP C; NT |
| 128:5-128:7 | F, I, R, 403, V | 126:13-128:4; 121:5-10 | R; 403; IMP C; NT |
| 129:13-129:18 | AA, I, R, 403, V | 120:11-25; 121:2-4; 129:19-130:8 | R; 403; IMP C; NT |
| 131:1-132:11 | CP, F, I, R, 403, V | 131:1-131:11; 132:12-133:19; 133:21; 133:23-134:3 | R; 403; IMP C; NT; 602; CS; V |
| 133:12-133:21 | I, O, OB, PK, R, SPEC, 403, V | 132:8-133:11 | R; 403; IMP C |
| 135:9-136:6 | F, I, O, OB, PK, R, SPEC, 403, V | 136:15-18; 136:24-137:12; 116:13-117:11; 117:13-15; 139:16-25 | R; 403; 602; IMP C |
| 136:24-137:12 | F, O, R, SPEC, 403, V | 116:13-117:11; 117:13-15; 139:16-25 | R; 403; 602; IMP C |
| 138:2-139:2 | F, I, MIS, O, OB, PK, R, SPEC, 403, V | 136:24-137:12; 139:16-25 | R; 403; 602; IMP C |
| 139:3-139:6 | F, I, O, 403, V | 138:2-6; 138:9-11; 138:13-16; 138:19-20; 138:22-139:2 | R; 403; IMP C |
| 151:24-152:2 | F, I, O, R, SPEC, 403, V | 149:12-151:23; 141:1-2; 141:4-6; 141:8-11 | R; 403; IMP C; MIL |
| 156:22-158:11 | F, I, MIS, O, R, SPEC, 403, V | 26:18-27:8; 27:11-16; 27:19-28:23; 141:12-16; 143:5-144:18; 144:21-23; 146:15-23; 146:25-147:4; 158:12-159:2; 165:19-167:13; 167:15; 167:18-22; 167:24; 168:18-170:18 | R; 403; 701; CS; V; 602; IMP C |
| 188:5-189:6 | F, I, MIS, O, R, SPEC, 403, V | 187:2-7; 189:7-190:8; 190:20-191:16; 131:1-132:11; 132:12-133:19; 133:21; 133:23-134:3; 192:6-24; 197:4-21; 197:24-198:1; 198:3-5; 198:8-9 | R; 403; IMP C; V; 602; CS |
| 189:7-190:8 | F, I, MIS, O, R, SPEC, 403, V | 187:2-7; 188:5-189:6; 190:20-191:16; 131:1-132:11; 132:12-133:19; 133:21; 133:23-134:3; 192:6-24; 197:4-21; 197:24-198:1; 198:3-5; 198:8-9 | R; 403; IMP C; V; 602; CS |
| 191:17-192:2 | F, I, MIS, O, R, SPEC, 403, V | 192:3-24; 188:5-190:8; 190:20-191:16; 131:1-132:11; 132:12-133:19; 133:21; 133:23-134:3; 197:4-21; 197:24-198:1; 198:3-5; 198:8-9 | R; 403; IMP C; V; 602; CS; 701 |
| 200:4-201:1 | F, I, O, R, SPEC, 403, V | 198:11-199:15; 199:17-22; 199:24-200:2; 201:2-9; 201:12-202:5; 207:11-22 | R; 403; IMP C; V; 602; CS; 701 |

| Natera, Inc. v. CareDx Inc. (Case No. 20-cv-038)(CFC-CJB) | | | |
|---|---|---|---|
| Witness: Susan Scott | | | |
| Date of Deposition: 2023-02-20 | | | |
| Natera's Opening Designations | CareDx's Objections | CareDx's Counter-Designations | Natera's Objections |
| 12:10-12:12 | | | |
| 18:2-18:5 | SPEC, V | | |
| 18:21-19:18 | F, I, R, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 19:25-20:4 | F, I, R, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 20:5-20:14 | F, I, R, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 20:15-20:20 | F, I, R, 403, V | 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 21:1-21:8 | F, I, R, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 24:6-24:13 | F, I, R, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 25:12-25:13 | F, I, R, 403, V | 20:15-20, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 25:14-26:8 | F, I, R, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 27:18-27:21 | F, I, R, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 28:3-28:15 | F, I, R, 403, V | 20:15-20, 25:12-13, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 28:24-29:2 | F, I, R, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 29:3-29:10 | F, I, R, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 35:23-35:25 | F, I, O, PK, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 37:13-38:4 | F, I, MIS, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 38:22-39:8 | F, I, MIS, OB, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 40:7-40:20 | AA, F, I, MIS, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 40:25-41:20 | F, I, MIS, PK, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 41:22-42:5 | F, I, PK, R, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 44:2-44:10 | F, H, I, MIS, PK, R, SPEC, 403, V | 44:11-20, 45:1-11 | F; R; CS; 403; Imp C; UNE |
| 54:17-55:1 | AA, CP, F, I, MIS, PK, R, SPEC, 403, V | | F; R; CS; 403; Imp C; UNE |
| 55:19-55:25 | F, H, I, MIS, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 59:15-59:25 | CP, F, I, MIS, O, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 69:24-71:6 | F, I, MIS, O, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 74:15-74:20 | F, I, O, PK, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 72:25-73:2 | F; R; CS; 403; Imp C; UNE |
| 75:5-75:16 | F, I, O, OB, PK, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 72:25-73:2 | F; R; CS; 403; Imp C; UNE |
| 76:5-77:1 | F, I, O, PK, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 160:22-24 | F; R; CS; 403; Imp C; UNE |

| Natera's Opening Designations | CareDx's Objections | CareDx's Counter-Designations | Natera's Objections |
|---|---|---|---|
| 77:2-78:18 | AA, F, I, O, PK, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 79:16-79:22 | F, H, I, PK, R, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 80:13-81:11 | F, H, I, PK, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 83:4-18, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 83:20-84:18 | F, H, I, PK, MIS, O, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 85:6-85:18 | F, H, I, PK, MIS, O, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 85:19-86:2 | F, H, I, PK, MIS, O, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 87:10-87:19 | F, H, I, PK, MIS, O, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 87:20-88:8 | F, H, I, PK, MIS, O, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 88:9-88:17 | F, H, I, PK, MIS, O, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 88:22-89:18 | F, H, I, PK, MIS, O, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 93:5-93:14 | F, I, MIS, O, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 93:18-93:21 | F, I, O, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 95:18-95:20 | F, I, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 96:22-98:3 | AA, F, H, I, O, OB, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 96:19-98:1, 98:3, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 98:5-99:2 | AA, F, H, I, O, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 100:22-100:25 | F, H, I, MIS, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 101:5-102:10 | F, H, I, O, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 102:17-103:8 | F, I, O, OB, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 104:2-105:2 | F, I, O, OB, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 102:17-103:3, 103:5-8, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 105:3-105:22 | F, H, I, O, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 102:17-103:3, 103:5-8, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 108:13-109:1 | F, I, O, PK, R, SPEC, 403, V | | F; R; CS; 403; Imp C; UNE |
| 112:5-112:10 | F, I, MIS, O, OB, PK, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 102:17-103:3, 103:5-8, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 112:15-112:25 | F, I, MIS, O, PK, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 102:17-103:3, 103:5-8, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 113:11-114:10 | F, H, I, MIS, O, PK, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 102:17-103:3, 103:5-8, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 114:15-115:5 | F, I, MIS, O, OB, PK, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 102:17-103:3, 103:5-8, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 115:15-115:18 | F, I, MIS, O, PK, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 102:17-103:3, 103:5-8, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 115:19-117:1 | F, H, I, MIS, O, OB, PK, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 102:17-103:3, 103:5-8, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 117:2-117:16 | F, I, MIS, O, PK, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 102:17-103:3, 103:5-8, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 122:5-123:13 | F, H, I, MIS, O, PK, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 102:17-103:3, 103:5-8, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 124:15-126:2 | F, H, I, MIS, O, OB, PK, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 102:17-103:3, 103:5-8, 160:22-24 | F; R; CS; 403; Imp C; UNE |

Susan Scott

| Natera's Opening Designations | CareDx's Objections | CareDx's Counter-Designations | Natera's Objections |
|---|---|---|---|
| 133:19-134:3 | F, I, MIS, PK, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 102:17-103:3, 103:5-8, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 137:9-138:12 | F, H, I, MIS, O, OB, PK, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 102:17-103:3, 103:5-8, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 138:22-138:25 | F, H, I, MIS, O, PK, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 102:17-103:3, 103:5-8, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 140:2-141:6 | F, H, I, MIS, O, PK, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 102:17-103:3, 103:5-8, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 143:9-143:20 | F, H, I, MIS, O, PK, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 102:17-103:3, 103:5-8, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 144:2-144:20 | F, H, I, MIS, O, PK, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 102:17-103:3, 103:5-8, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 145:5-145:22 | F, H, I, MIS, O, PK, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 102:17-103:3, 103:5-8, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 146:9-147:4 | F, H, I, MIS, O, PK, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 102:17-103:3, 103:5-8, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 147:13-148:8 | F, H, I, MIS, O, OB, PK, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 102:17-103:3, 103:5-8, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 148:19-149:22 | F, H, I, MIS, O, PK, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 102:17-103:3, 103:5-8, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 149:23-150:7 | F, I, MIS, O, PK, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 102:17-103:3, 103:5-8, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 152:14-152:17 | F, I, O, PK, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 153:14-154:15 | F, H, I, MIS, O, PK, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 102:17-103:3, 103:5-8, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 158:21-160:2 | F, H, I, MIS, O, PK, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 102:17-103:3, 103:5-8, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 160:22-161:18 | F, I, MIS, O, OB, PK, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 160:22-24, 162:1-3 | F; R; CS; 403; Imp C; UNE |
| 162:8-162:15 | F, I, O, PK, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 160:22-24, 162:1-3 | F; R; CS; 403; Imp C; UNE |
| 163:14-165:18 | F, H, I, OB, MIS, PK, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 160:22-24 | F; R; CS; 403; Imp C; UNE |
| 168:17-169:13 | F, H, I, MIS, PK, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 160:22-24, 167:14-16, 167:18-22, 171:15-19, 171:21-22, 173:19-22, 173:24-174:1, 176:19-20, 176:22 | F; R; CS; 403; Imp C; UNE |
| 172:11-172:16 | F, H, I, MIS, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 160:22-24, 167:14-16, 167:18-22, 167:24, 171:15-19, 171:21-22, 173:19-22, 173:24-174:1, 176:19-20, 176:22 | F; R; CS; 403; Imp C; UNE |
| 172:22-173:17 | F, H, I, MIS, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 160:22-24, 167:14-16, 167:18-22, 167:24, 171:15-19, 171:21-22, 173:19-22, 173:24-174:1, 176:19-20, 176:22 | F; R; CS; 403; Imp C; UNE |
| 175:4-176:9 | AA, ARG, F, I, MIS, OB, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 160:22-24, 167:14-16, 167:18-22, 167:24, 171:15-19, 171:21-22, 173:19-22, 173:24-174:1, 176:19-20, 176:22 | F; R; CS; 403; Imp C; UNE |
| 176:11-177:7 | AA, ARG, F, I, MIS, OB, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 160:22-24, 167:14-16, 167:18-22, 167:24, 171:15-19, 171:21-22, 173:19-22, 173:24-174:1, 176:19-20, 176:22 | F; R; CS; 403; Imp C; UNE |
| 177:15-178:5 | AA, ARG, F, I, MIS, OB, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 160:22-24, 167:14-16, 167:18-22, 167:24, 171:15-19, 171:21-22, 173:19-22, 173:24-174:1, 176:19-20, 176:22 | F; R; CS; 403; Imp C; UNE |

Susan Scott

| Natera's Opening Designations | CareDx's Objections | CareDx's Counter-Designations | Natera's Objections |
|---|---|---|---|
| 178:7-179:5 | AA, ARG, F, I, MIS, OB, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 160:22-24, 167:14-16, 167:18-22, 167:24, 171:15-19, 171:21-22, 173:19-22, 173:24-174:1, 176:19-20, 176:22 | F; R; CS; 403; Imp C; UNE |
| 179:16-179:21 | F, I, MIS, OB, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 160:22-24, 167:14-16, 167:18-22, 167:24, 171:15-19, 171:21-22, 173:19-22, 173:24-174:1, 176:19-20, 176:22 | F; R; CS; 403; Imp C; UNE |
| 180:1-180:5 | AA, F, I, MIS, OB, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 160:22-24, 167:14-16, 167:18-22, 167:24, 171:15-19, 171:21-22, 173:19-22, 173:24-174:1, 176:19-20, 176:22 | F; R; CS; 403; Imp C; UNE |
| 181:18-182:15 | AA, ARG, F, I, MIS, OB, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 160:22-24, 167:14-16, 167:18-22, 167:24, 171:15-19, 171:21-22, 173:19-22, 173:24-174:1, 176:19-20, 176:22 | F; R; CS; 403; Imp C; UNE |
| 185:2-185:19 | AA, ARG, F, I, MIS, OB, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 160:22-24, 167:14-16, 167:18-22, 167:24, 171:15-19, 171:21-22, 173:19-22, 173:24-174:1, 176:19-20, 176:22 | F; R; CS; 403; Imp C; UNE |
| 186:6-186:22 | AA, ARG, F, I, MIS, OB, R, SPEC, 403, V | 20:15-20, 25:12-13, 28:3-6, 37:5-9, 37:11, 45:4-7, 51:10-22, 69:5-14, 160:22-24, 167:14-16, 167:18-22, 167:24, 171:15-19, 171:21-22, 173:19-22, 173:24-174:1, 176:19-20, 176:22 | F; R; CS; 403; Imp C; UNE |

Susan Scott

| Natera, Inc. v. CareDx Inc. (Case No. 20-cv-038)(CFC-CJB) | | | |
|---|---|---|---|
| **Witness: Sasha King** | | | |
| **Date of Deposition: 2023-02-17** | | | |
| **Natera's Opening Designations** | **CareDx's Objections** | **CareDx's Counter-Designations** | **Natera's Objections** |
| 7:20-7:22 | | | |
| 9:17-9:20 | F, V | 9:25-10:4 | R; 403; UNE |
| 10:7-10:20 | I, F, V | 9:25-10:4, 10:21-11:10, 30:1-6, 30:8-21 | R; 403; CS; 602; Imp C; UNE; INQA |
| 12:3-12:5 | I, V | 9:25-10:4 | R; 403; UNE |
| 14:8-15:6 | AA, F, I, MIS, PK, O, R, 403, V | 9:17-20, 9:25-10:4, 10:10-11:10, 12:3-5, 13:2-24, 30:1-6, 30:8-21, 31:18-32:4, 32:6-8 | F; R; 403; CS; 602; UNE; INQA |
| 17:8-17:24 | F, I, MIS, PK, O, R, SPEC, 403, V | 9:17-20, 9:25-10:4, 10:10-11:10, 12:3-5, 13:2-24, 16:8-10, 30:1-6, 30:8-21, 31:18-32:4, 32:6-8 | F; R; 403; CS; 602; UNE |
| 20:24-21:11 | F, H, MIS, R, 403, V | | |
| 22:8-22:13 | F, H, I, MIS, R, SPEC, 403, V | 22:3-7, 23:3-24:12 | I; R; 403; UNE; NT |
| 22:14-22:20 | F, H, I, MIS, R, SPEC, 403, V | 22:3-7, 23:3-24:12 | I; R; 403; UNE; NT |
| 22:21-23:1 | F, H, I, MIS, OB, R, SPEC, 403, V | 22:3-7, 23:3-24:12 | I; R; 403; UNE; NT |
| 25:13-25:17 | F, I, O, PK, R, SPEC, 403, V | 9:17-20, 9:25-10:4, 12:3-5 | R; 403; UNE |
| 26:10-27:1 | F, I, H, O, PK, R, 403, V | 9:17-20, 9:25-10:4, 12:3-5, 27:7-27:18 | R; 403; UNE |
| 27:7-27:18 | F, I, O, PK, R, SPEC, 403, V | 26:10-27:1 | F; R; 403; Imp C; UNE |
| 29:4-29:10 | F, I, O, PK, R, SPEC, 403, V | 10:10-11:10, 28:21-29:3, 30:1-6, 30:8-21 | R; 403; CS; 602; Imp C; UNE; INQA |
| 29:11-29:18 | F, H, I, O, PK, R, SPEC, 403, V | 10:10-11:10, 30:1-6, 30:8-21, 31:18-32:4, 32:6-8 | R; 403; CS; 602; Imp C; UNE; INQA |
| 30:22-31:3 | F, R, 403, V | 10:10-11:10, 30:1-6, 30:8-21, 31:18-32:4, 32:6-8 | R; 403; CS; 602; Imp C; UNE; INQA |
| 31:12-31:17 | F, I, O, R, 403, V | 10:10-11:10, 30:1-6, 30:8-21, 31:18-32:4, 32:6-8 | R; 403; CS; 602; Imp C; UNE |
| 32:13-32:16 | R, 403, V | | |
| 37:20-37:25 | F, OB, PK, R, SPEC, 403, V | 32:13-16, 56:16-57:16, 59:13-22, 131:13-16, 132:4-8 | F; R; 403; Imp C; UNE |
| 38:13-38:22 | F, O, PK, R, SPEC, 403, V | 32:13-16, 56:16-57:16, 59:13-22, 131:13-16, 132:4-8 | F; R; 403; Imp C; UNE |
| 43:21-44:5 | F, PK, R, SPEC, 403, V | 9:17-20, 9:25-10:4, 12:3-5 | R; 403; UNE |
| 46:23-47:1 | F, R, 403, V | 32:13-16, 47:13-23, 47:24-48:11, 54:24-55:5, 56:16-57:16, 59:13-22, 131:13-16, 132:4-8 | F; R; 403; CS; Imp C; UNE |
| 51:9-52:6 | H, I, MIS, R, 403, V | 32:13-16, 47:24-48:11, 54:24-55:5, 56:16-57:16, 59:13-22, 131:13-16, 132:4-8 | F; R; 403; CS; Imp C; UNE |
| 52:14-52:24 | H, F, I, R, SPEC, 403, V | 32:13-16, 47:24-48:11, 54:24-55:5, 56:16-57:16, 59:13-22, 131:13-16, 132:4-8 | F; R; 403; CS; Imp C; UNE |
| 53:7-54:10 | H, I, O, R, SPEC, 403, V | 32:13-16, 47:24-48:11, 54:11-19, 54:24-55:5, 55:13-21, 55:23-56:6, 56:16-57:16, 59:13-22, 83:11-16, 111:9-112:12, 130:20-21, 130:23-131:3, 131:13-16, 132:4-8 | F; R; 403; CS; MIL; Imp C; UNE |
| 57:22-58:1 | I, R, 403, V | 32:13-16, 54:11-19, 54:24-55:5, 55:13-21, 55:23-56:6, 56:16-57:16, 57:17-21, 59:13-22, 83:11-16, 111:9-112:12, 130:20-21, 130:23-131:3, 131:13-16, 132:4-8 | F; R; 403; CS; MIL; Imp C; UNE |
| 60:20-61:12 | F, I, MIS, R, 403, V | 32:13-16, 56:16-57:16, 59:13-22, 131:13-16, 132:4-8 | F; R; 403; Imp C; UNE |
| 62:10-62:13 | F, H, I, MIS, R, 403, V | | |
| 65:9-65:14 | AA, ARG, F, I, MIS, R, 403, V | 32:13-16, 56:16-57:16, 59:13-22, 62:14-64:18, 65:15-17, 65:19-20, 65:24-66:1, 66:3-15, 67:5-7, 67:9-13, 131:13-16, 132:4-8 | F; R; 403; M; Imp C; UNE |
| 70:2-70:9 | F, H, I, R, 403, V | 70:10-13 | R; 403; Imp C; UNE |
| 70:12-70:13 | F, H, I, R, 403, V | 32:13-16, 47:24-48:11, 54:11-19, 54:24-55:5, 55:13-21, 55:23-56:6, 56:16-57:16, 59:13-22, 72:1-13, 83:11-16, 111:9-112:12, 130:20-21, 130:23-131:3, 131:13-16, 132:4-8 | F; R; 403; CS; MIL; Imp C; UNE |

Sasha King

| Natera's Opening Designations | CareDx's Objections | CareDx's Counter-Designations | Natera's Objections |
|---|---|---|---|
| 70:14-71:8 | F, H, I, R, 403, V | 32:13-16, 47:24-48:11, 54:11-19, 54:24-55:5, 55:13-21, 55:23-56:6, 56:16-57:16, 59:13-22, 72:1-13, 83:11-16, 111:9-112:12, 130:20-21, 130:23-131:3, 131:13-16, 132:4-8 | F; R; 403; CS; MIL; Imp C; UNE |
| 73:25-74:6 | F, H, I, MIS, R, 403, V | 32:13-16, 47:24-48:11, 54:11-19, 54:24-55:5, 55:13-21, 55:23-56:6, 56:16-57:16, 59:13-22, 83:11-16, 111:9-112:12, 130:20-21, 130:23-131:3, 131:13-16, 132:4-8 | F; R; 403; CS; MIL; Imp C; UNE |
| 74:7-75:5 | F, H, I, R, 403, V | 32:13-16, 47:24-48:11, 54:11-19, 54:24-55:5, 55:13-21, 55:23-56:6, 56:16-57:16, 59:13-22, 83:11-16, 111:9-112:12, 130:20-21, 130:23-131:3, 131:13-16, 132:4-8 | F; R; 403; CS; MIL; Imp C; UNE |
| 75:16-75:22 | F, H, I, MIS, R, SPEC, 403, V | 32:13-16, 47:24-48:11, 54:11-19, 54:24-55:5, 55:13-21, 55:23-56:6, 56:16-57:16, 59:13-22, 83:11-16, 111:9-112:12, 130:20-21, 130:23-131:3, 131:13-16, 132:4-8 | F; R; 403; CS; MIL; Imp C; UNE |
| 76:18-76:25 | F, H, I, MIS, R, SPEC, 403, V | 32:13-16, 47:24-48:11, 54:11-19, 54:24-55:5, 55:13-21, 55:23-56:6, 56:16-57:16, 59:13-22, 83:11-16, 111:9-112:12, 130:20-21, 130:23-131:3, 131:13-16, 132:4-8 | F; R; 403; CS; MIL; Imp C; UNE |
| 78:18-79:18 | F, H, I, MIS, R, SPEC, 403, V | 32:13-16, 47:24-48:11, 54:11-19, 54:24-55:5, 55:13-21, 55:23-56:6, 56:16-57:16, 59:13-22, 83:11-16, 111:9-112:12, 130:20-21, 130:23-131:3, 131:13-16, 132:4-8 | F; R; 403; CS; MIL; Imp C; UNE |
| 80:5-80:11 | F, H, I, MIS, R, SPEC, 403, V | 32:13-16, 47:24-48:11, 54:11-19, 54:24-55:5, 55:13-21, 55:23-56:6, 56:16-57:16, 59:13-22, 83:11-16, 111:9-112:12, 130:20-21, 130:23-131:3, 131:13-16, 132:4-8 | F; R; 403; CS; MIL; Imp C; UNE |
| 80:12-80:22 | F, H, I, MIS, OB, R, SPEC, 403, V | 32:13-16, 47:24-48:11, 54:11-19, 54:24-55:5, 55:13-21, 55:23-56:6, 56:16-57:16, 59:13-22, 81:6-8, 83:11-16, 111:14-112:12, 130:20-21, 130:23-131:3, 131:13-16, 132:4-8 | F; R; 403; CS; MIL; Imp C; UNE |
| 81:19-82:6 | F, H, MIS, R, 403, V | 32:13-16, 47:24-48:11, 54:11-19, 54:24-55:5, 55:13-21, 55:23-56:6, 56:16-57:16, 59:13-22, 81:6-8, 82:7-14, 83:11-16, 111:9-112:12, 130:20-21, 130:23-131:3, 131:13-16, 132:4-8 | F; R; 403; CS; MIL; Imp C; UNE |
| 82:18-82:24 | I, R, SPEC, 403, V | 32:13-16, 47:24-48:11, 54:11-19, 54:24-55:5, 55:13-21, 55:23-56:6, 56:16-57:16, 59:13-22, 81:6-8, 82:7-14, 83:11-16, 111:9-112:12, 130:20-21, 130:23-131:3, 131:13-16, 132:4-8 | F; R; 403; CS; MIL; Imp C; UNE |
| 87:2-87:13 | I, H, MIS, R, 403, V | 32:13-16, 47:24-48:11, 54:11-19, 54:24-55:5, 55:13-21, 55:23-56:6, 56:16-57:16, 59:13-22, 81:6-8, 82:7-14, 83:11-16, 111:9-112:12, 130:5-14, 130:20-21, 130:23-131:3, 131:13-16, 132:4-8 | F; R; 403; CS; MIL; Imp C; UNE |
| 87:18-88:7 | I, H, MIS, R, 403, V | 32:13-16, 47:24-48:11, 54:11-19, 54:24-55:5, 55:13-21, 55:23-56:6, 56:16-57:16, 59:13-22, 81:6-8, 82:7-14, 83:11-16, 111:9-112:12, 130:20-21, 130:23-131:3, 131:13-16, 132:4-8 | F; R; 403; CS; MIL; Imp C; UNE |
| 91:15-91:20 | F, I, H, MIS, R, 403, V | | |
| 91:21-92:6 | F, I, H, MIS, R, 403, V | | |
| 93:24-94:2 | AA, F, I, H, MIS, R, 403, V | 92:21-93:14, 94:3-5 | R; 403; UNE |
| 95:7-95:11 | F, I, H, R, 403, V | | |
| 96:3-96:6 | F, I, H, PK, R, SPEC, 403, V | | |
| 96:18-97:19 | F, I, H, MIS, PK, R, SPEC, 403, V | 32:13-16, 47:24-48:11, 54:11-19, 54:24-55:5, 55:13-21, 55:23-56:6, 56:16-57:16, 59:13-22, 81:6-8, 82:7-17, 82:18-24, 83:11-16, 111:9-112:12, 130:20-21, 130:23-131:3, 131:13-16, 132:4-8 | F; R; 403; CS; MIL; Imp C; UNE |
| 99:13-99:21 | F, I, H, R, 403, V | 99:22-25 | R; 403; UNE |

| Natera's Opening Designations | CareDx's Objections | CareDx's Counter-Designations | Natera's Objections |
|---|---|---|---|
| 100:10-100:21 | F, I, H, MIS, R, 403, V | 32:13-16, 47:24-48:11, 54:11-19, 54:24-55:5, 55:13-21, 55:23-56:6, 56:16-57:16, 59:13-22, 81:6-8, 82:7-17, 82:18-24, 83:11-16, 111:9-112:12, 130:20-21, 130:23-131:3, 131:13-16, 132:4-8 | F; R; 403; CS; MIL; Imp C; UNE |
| 101:4-101:25 | F, I, H, R, 403, V | 32:13-16, 47:24-48:11, 54:11-19, 54:24-55:5, 55:13-21, 55:23-56:6, 56:16-57:16, 59:13-22, 81:6-8, 82:7-17, 82:18-24, 83:11-16, 111:9-112:12, 130:20-21, 130:23-131:3, 131:13-16, 132:4-8 | F; R; 403; CS; MIL; Imp C; UNE |
| 102:19-103:5 | F, H, R, 403, V | | |
| 103:17-104:19 | F, I, H, MIS, R, 403, V | 32:13-16, 47:24-48:11, 54:11-19, 54:24-55:5, 55:13-21, 55:23-56:6, 56:16-57:16, 59:13-22, 81:6-8, 82:7-17, 82:18-24, 83:11-16, 111:9-112:12, 130:5-14, 130:20-21, 130:23-131:3, 111:9-112:12, 131:13-16, 132:4-8 | F; R; 403; CS; MIL; Imp C; UNE |
| 104:24-105:17 | F, I, H, R, 403, V | 32:13-16, 47:24-48:11, 54:11-19, 54:24-55:5, 55:13-21, 55:23-56:6, 56:16-57:16, 59:13-22, 81:6-8, 82:7-17, 82:18-24, 83:11-16, 111:9-112:12, 130:20-21, 130:23-131:3, 131:13-16, 132:4-8 | F; R; 403; CS; MIL; Imp C; UNE |
| 105:18-107:16 | F, I, R, 403, V | 32:13-16, 47:24-48:11, 54:11-19, 54:24-55:5, 55:13-21, 55:23-56:6, 56:16-57:16, 59:13-22, 81:6-8, 82:7-17, 82:18-24, 83:11-16, 111:9-112:12, 130:5-14, 130:20-21, 130:23-131:3, 111:9-112:12, 131:13-16, 132:4-8 | F; R; 403; CS; MIL; Imp C; UNE |
| 107:19-108:4 | F, MIS, R, 403, V | | |
| 110:2-110:14 | F, I, H, MIS, R, 403, V | 32:13-16, 47:24-48:11, 54:11-19, 54:24-55:5, 55:13-21, 55:23-56:6, 56:16-57:16, 59:13-22, 81:6-8, 82:7-17, 82:18-24, 83:11-16, 111:-112:12, 130:20-21, 130:23-131:3, 111:9-112:12, 131:13-16, 132:4-8 | F; R; 403; CS; MIL; Imp C; UNE |
| 110:23-111:4 | F, I, H, MIS, R, 403, V | | |
| 112:13-112:17 | F, I, H, MIS, R, 403, V | 32:13-16, 47:24-48:11, 54:11-19, 54:24-55:5, 55:13-21, 55:23-56:6, 56:16-57:16, 59:13-22, 81:6-8, 82:7-17, 82:18-24, 83:11-16, 111:9-112:12, 130:20-21, 130:23-131:3, 111:9-112:12, 131:13-16, 132:4-8 | F; R; 403; CS; MIL; Imp C; UNE; NT |
| 112:18-113:3 | F, I, H, MIS, R, 403, V | 32:13-16, 47:24-48:11, 54:11-19, 54:24-55:5, 55:13-21, 55:23-56:6, 56:16-57:16, 59:13-22, 81:6-8, 82:7-17, 82:18-24, 83:11-16, 111:9-112:12, 130:20-21, 130:23-131:3, 111:9-112:12, 131:13-16, 132:4-8 | F; R; 403; CS; MIL; Imp C; UNE; NT |
| 114:19-114:22 | F, H, R, 403, V | | |
| 116:25-117:23 | F, I, H, MIS, R, 403, V | 32:13-16, 47:24-48:11, 54:11-19, 54:24-55:5, 55:13-21, 55:23-56:6, 56:16-57:16, 59:13-22, 81:6-8, 82:7-17, 82:18-24, 83:11-16, 111:9-112:12, 117:24-118:16, 130:20-21, 130:23-131:3, 131:13-16, 132:4-8 | F; R; 403; CS; MIL; Imp C; UNE; NT |
| 119:3-119:14 | F, I, MIS, R, 403, V | 32:13-16, 47:24-48:11, 54:11-19, 54:24-55:5, 55:13-21, 55:23-56:6, 56:16-57:16, 59:13-22, 81:6-8, 82:7-17, 82:18-24, 83:11-16, 111:9-112:12, 117:24-118:16, 130:20-21, 130:23-131:3, 131:13-16, 132:4-8 | F; R; 403; CS; MIL; Imp C; UNE; NT |
| 122:18-123:10 | R, SPEC, 403, V | 10:10-11:10 | R; 403; UNE |
| 127:7-127:24 | F, I, H, R, 403, V | 32:13-16, 47:24-48:11, 54:11-19, 54:24-55:5, 55:13-21, 55:23-56:6, 56:16-57:16, 59:13-22, 81:6-8, 82:7-17, 82:18-24, 83:11-16, 111:9-112:12, 117:24-118:16, 130:20-21, 130:23-131:3, 131:13-16, 132:4-8 | F; R; 403; CS; MIL; Imp C; UNE |
| 129:19-130:19 | F, I, R, 403, V | 32:13-16, 47:24-48:11, 54:11-19, 54:24-55:5, 55:13-21, 55:23-56:6, 56:16-57:16, 59:13-22, 81:6-8, 82:7-17, 82:18-24, 83:11-16, 111:9-112:12, 117:24-118:16, 130:20-21, 130:23-131:3, 131:13-16, 132:4-8 | F; R; 403; CS; MIL; Imp C; UNE; NT |
| 131:13-131:23 | F, I, R, SPEC, 403, V | 32:13-16, 47:24-48:11, 54:11-19, 54:24-55:5, 55:13-21, 55:23-56:6, 56:16-57:16, 59:13-22, 81:6-8, 82:7-17, 82:18-24, 83:11-16, 111:9-112:12, 117:24-118:16, 130:20-21, 130:23-131:3, 131:13-16, 132:4-8 | F; R; 403; CS; MIL; Imp C; UNE; NT |

Sasha King

| Natera's Opening Designations | CareDx's Objections | CareDx's Counter-Designations | Natera's Objections |
|---|---|---|---|
| 132:4-132:17 | AA, F, I, R, SPEC, 403, V | 32:13-16, 47:24-48:11, 54:11-19, 54:24-55:5, 55:13-21, 55:23-56:6, 56:16-57:16, 59:13-22, 81:6-8, 82:7-17, 82:18-24, 83:11-16, 111:14-112:12, 117:24-118:16, 130:20-21, 130:23-131:3, 131:13-16, 132:4-8 | F; R; 403; CS; MIL; Imp C; UNE; NT |
| 134:7-134:24 | AA, F, R, 403, V | | |
| 135:17-136:12 | AA, F, MIS, R, 403, V | | |
| 137:19-137:22 | AA, F, R, SPEC, 403, V | | |
| 138:7-138:13 | I, H, R, SPEC, 403, V | 32:13-16, 47:24-48:11, 54:11-19, 54:24-55:5, 55:13-21, 55:23-56:6, 56:16-57:16, 59:13-22, 81:6-8, 82:7-17, 82:18-24, 83:11-16, 111:9-112:12, 117:24-118:16, 130:5-14, 130:20-21, 130:23-131:3, 131:13-16, 132:4-8 | F; R; 403; CS; MIL; Imp C; UNE |
| 139:9-139:22 | I, H, PK, R, SPEC, 403, V | 32:13-16, 47:24-48:11, 54:11-19, 54:24-55:5, 55:13-21, 55:23-56:6, 56:16-57:16, 59:13-22, 81:6-8, 82:7-17, 82:18-24, 83:11-16, 111:9-112:12, 117:24-118:16, 130:20-21, 130:23-131:3, 131:13-16, 132:4-8 | F; R; 403; CS; MIL; Imp C; UNE |

Sasha King

| Natera, Inc. v. CareDx Inc. (Case No. 20-cv-038)(CFC-CJB) | | | |
|---|---|---|---|
| **Witness: Alex Johnson** | | | |
| **Date of Deposition: 2023-04-18** | | | |
| **Natera's Opening Designations** | **CareDx's Objections** | **CareDx's Counter-Designations** | **Natera's Objections** |
| 6:25-7:5 | | | |
| 8:9-8:12 | | | |
| 10:11-11:3 | R, F, L, 403 | | |
| 12:13-13:11 | R, F, V, 403 | | |
| 13:21-13:25 | R, F, V, 403 | | |
| 17:7-17:15 | AA, L, R, 403 | 17:7-15 | Imp C; UNE |
| 19:16-19:24 | R, 403, I, F | 19:10-15; 19:25-20:5 | R; 403; UNE; NT |
| 20:8-20:10 | R, 403, I, F | 20:6-10 | R; 403; Imp C; UNE |
| 21:7-21:12 | R, 403, I, F | 21:13-14; 21:21-22:12 | R; 403; Imp C; UNE |
| 23:11-23:19 | R, 403, F, PK, I | 23:20-24 | F; R; 403; UNE |
| 24:12-24:16 | R, 403, F, I | 24:17-23; 25:13-20; 26:4-7; 26:12-15; 27:3-7 | R; 403; Imp C; UNE |
| 26:12-26:15 | R, 403, F, I | 24:17-23; 25:13-20; 26:4-7; 26:12-15; 27:3-7 | R; 403; Imp C; UNE |
| 28:1-28:10 | R, 403 | 28:1-28:10 | R; 403; Imp C; UNE |
| 28:20-28:25 | R, 403, F, I | 29:1-9 | R; 403; UNE |
| 29:10-31:6 | R, 403, F, I | 31:7-25; 29:10-31:6 | R; 403; CS; Imp C; UNE |
| 32:1-32:10 | R, 403, I, F | 31:7-25 | I; R; 403; UNE |
| 33:11-33:21 | R, 403, I, F | 33:1-10; 33:11-33:21 | I; R; 403; Imp C; UNE |
| 34:4-34:15 | R, 403, I, F | 35:6-19; 36:12-16; 38:3-39:1; 38:12-39:1 | I; R; 403; CS; 701; UNE |
| 40:17-41:6 | R, 403, I, F | 41:7-14; 41:18-42:2; 42:16-23 | R; 403; UNE |
| 43:14-44:4 | R, 403, I, F | 44:5-10; 44:13-17 | R; 403; UNE |
| 48:22-49:10 | R, 403 | | |
| 49:13-49:23 | R, 403, I, F | 49:11-12 | |
| 50:6-50:14 | R, 403, I, F | 50:15-51:1; 51:16-19; 50:6-50:14 | R; 403; Imp C; UNE |
| 52:23-53:3 | R, 403, I, F | 53:4-54:12; 55:9-58:20; 52:23-53:3 | R; 403; Imp C; UNE |
| 58:21-59:18 | R, 403, I, F | 55:9-58:20; 58:21-59:18 | R; 403; Imp C; UNE |
| 60:19-61:3 | R, 403, I | 59:19-60:18 | R; 403; Imp C; UNE |
| 61:25-62:9 | R, 403, I, F | 61:4-17 | R; 403; Imp C; UNE |
| 63:14-63:20 | R, 403, I, F | 62:11-63:3; 66:8-25 | I; R; 403; Imp C; UNE |
| 69:2-70:2 | R, 403 | 69:2-70:2 | R; 403; Imp C; UNE |
| 95:7-96:9 | R, 403, I, F | 72:17-75:23; 77:2-79:14; 79:16-23; 79:25-81:10; 83:21-85:24; 87:16-89:18; 89:20-90:22 | R; 403; M; UNE; H; F; 701; 602 |
| 96:11-98:7 | R, 403 | | |
| 98:8-99:16 | R, 403, I, F | 99:17-21; 100:3-7; 100:10-14; 101:17-104:12; 104:14-105:18; 106:22-109:13; 98:8-99:16 | F; R; 403; CS; V; Imp C; UNE; H; NT |
| 110:10-110:19 | R, 403, V, F | 109:14-16; 109:19-23 | F; CS; R; 403; UNE |
| 110:24-111:14 | R, 403, LC, V, SPEC, I | 109:14-16; 109:19-23; 111:15-113:1 | F; CS; R; 403; Imp C; UNE |
| 114:16-115:20 | R, 403, I | 113:3-114:15; 114:16-115:20 | R; 403; Imp C; UNE |
| 115:21-116:8 | R, 403, I | 120:7-18; 115:21-116:8 | F; R; 403; UNE; 602 |
| 123:13-124:19 | R, 403, PK, O | | |
| 127:18-128:4 | R, 403 | | |
| 128:9-129:11 | R, 403, SPEC, PK | | |
| 129:15-129:23 | R, 403, PK | | |
| 130:5-130:25 | R, 403, I | 131:1-6; 130:5-130:25 | Imp C; UNE |
| 147:7-147:10 | R, 403, I | 137:13-138:8; 141:9-142:1 | R; 403; Imp C; UNE; MIL; 602; F |
| 147:19-147:22 | R, 403, SPEC, PK, I | 147:11-15 | I; R; 403; CS; 602; UNE |
| 148:11-148:21 | R, 403, I | 149:11-150:2 | R; 403; UNE |
| 150:5-150:9 | R, 403, SPEC, PK | | |
| 150:13-150:17 | R, 403 | | |
| 150:18-150:24 | R, 403, PK, O | | |
| 151:5-152:1 | R, 403 | | |
| 158:5-158:22 | R, 403 | | |
| 158:23-159:4 | R, 403, PK, I | 159:5-160:5; 160:11-18 | F; R; 403; UNE |
| 163:23-164:19 | R, 403, PK, V, F, O, L, SPEC, BTS | | |
| 164:21-165:12 | R, 403, PK, V, F, O, L, SPEC, BTS | | |

| Natera's Opening Designations | CareDx's Objections | CareDx's Counter-Designations | Natera's Objections |
|---|---|---|---|
| 165:18-166:23 | R, 403, PK, V | | |
| 184:3-184:23 | R, 403, O, V, F, SPEC, PK, BTS, I | 180:20-25; 181:3-5; 181:7-182:8; 182:10-183:25 | F; R; 403; V; CS; Imp C; UNE |
| 185:1-186:5 | R, 403, O, V, F, SPEC, PK, BTS, I | 180:20-25; 181:3-5; 181:7-182:8; 182:10-183:25 | F; R; 403; V; CS; Imp C; UNE; 701; H; NT |
| 191:8-191:18 | R, 403, F, I | 191:20-192:15 | R; 403; UNE |
| 201:16-203:1 | R, 403, F, O, V | 197:8-12; 197:23-198:11; 199:15-18 | I; R; 403; M; Imp C; UNE |
| 203:20-204:15 | R, 403, F, O, V | 197:8-12; 197:23-198:11; 199:15-18 | I; R; 403; M; Imp C; UNE |
| 204:16-204:25 | R, 403, F, O, V | 197:8-12; 197:23-198:11; 199:15-18 | I; R; 403; M; Imp C; UNE |
| 206:11-207:24 | R, 403, MIS, I | 206:5-10 | R; 403; UNE; NT |
| 209:16-210:4 | R, 403, I | 209:10-16 | R; 403; UNE |
| 210:8-210:18 | R, 403, F | | |
| 212:14-213:5 | R, 403, F, I | 212:9-13; 213:6-12; 213:15-17 | F; R; 403; CS; SCOPE; UNE |
| 214:1-214:10 | R, 403, F, SPEC, O | 213:23-25 | R; 403; UNE |
| 214:11-215:6 | R, 403, F, SPEC | | |
| 216:9-217:1 | R, 403, F, SPEC, O, I | 217:2-5 | UNE |
| 218:9-218:22 | R, 403, F, I | 218:23-219:3; 219:5-220:10; 227:8-12 | R; 403; CS; UNE |
| 225:7-226:12 | R, 403, O, SPEC, V | | |
| 228:1-230:1 | R, 403 | | |

Alex Johnson

| Natera, Inc. v. CareDx Inc. (Case No. 20-cv-038)(CFC-CJB) | | | |
|---|---|---|---|
| **Witness: David Hiller** | | | |
| **Date of Deposition: 2023-04-07** | | | |
| **Natera's Opening Designations** | **CareDx's Objections** | **CareDx's Counter-Designations** | **Natera's Objections** |
| 10:15-10:18 | I | 10:14-18 | NT |
| 11:5-11:7 | F, R, 403, V | | |
| 11:8-11:12 | R, 403, V | | |
| 11:13-12:10 | F, PK, 403, V | 13:5-10 | |
| 14:7-14:14 | CP, MIS, 403, V | | |
| 14:19-15:1 | F, MIS, R, V | | |
| 19:24-20:17 | F, I, MIS, R, SPEC, 403, V | 19:4-7; 19:16-21 | R; 403; NT |
| 21:11-21:15 | AA, I, MIS, R, 403, V | 15:13-16:1 | R; 403; 602; CS |
| 22:11-22:22 | F, I, MIS, R, 403, V | 22:23-23:11; 22:1-9 | NT; R; 403; V; INQA |
| 28:14-28:21 | F, I, O, 403, V | 28:5-11; 28:22-29:22; 29:25-30:10 | R; 403; V |
| 30:11-32:10 | F, I, O, R, SPEC, 403, V | 24:16-18 | R; 403; IMP C |
| 32:17-33:3 | F, I, O, R, SPEC, 403, V | | |
| 35:13-36:1 | F, I, O, PK, SPEC, 403, V | 24:16-18 | R; 403; IMP C |
| 37:1-37:22 | F, I, O, OB, PK, SPEC, 403, V | 35:13-18 | R; 403 |
| 37:23-38:19 | F, I, O, OB, PK, SPEC, 403, V | 28:14-29:22; 29:25-30:10 | R; 403 |
| 39:12-40:8 | F, I, O, OB, PK, SPEC, 403, V | 28:14-29:22; 29:25-30:10 | R; 403 |
| 41:1-41:7 | AA, I, O, R, SPEC, 403, V | 40:21-25 | R; 403 |
| 41:18-41:25 | AA, I, MIS, O, R, 403, V | 40:21-41:17; 42:2-21 | R; 403; IMP C |
| 43:3-44:3 | F, I, MIS, O, R, 403, V | 42:22-44:3 | IMP C; NT; R; 403 |
| 44:16-46:1 | F, I, MIS, O, R, SPEC, 403, V | 44:4-15 | IMP C; NT; R; 403 |
| 46:2-46:19 | F, I, MIS, O, R, SPEC, 403, V | 44:4-46:1 | IMP C; NT; R; 403 |
| 46:20-47:5 | F, I, MIS, O, R, SPEC, 403, V | 42:22-25; 44:4-7 | IMP C; NT; R; 403 |
| 47:15-48:13 | AA, F, I, MIS, O, PK, R, SPEC, 403, V | 48:14-24; 49:2-7 | R; 403 |
| 49:11-49:20 | F, I, MIS, O, R, SPEC, 403, V | 24:16-18 | R; 403 |
| 49:24-50:5 | F, I, MIS, O, R, SPEC, 403, V | 16:2-9; 25:2-26:20; 26:22-23 | IMP C; NT; R; 403 |
| 50:6-50:14 | I, MIS, O, R, SPEC, 403, V | 16:2-9; 25:2-26:20; 26:22-23; 22:1-9; 50:15-52:5 | R; 403; IMP C |
| 51:3-51:24 | F, I, IH, MIS, O, R, SPEC, 403, V | 50:15-51:2; 51:25-52:5; 22:1-9 | R; 403; IMP C |
| 52:9-53:5 | AA, I, MIS, O, OB, R, SPEC, 403, V | 53:7-12; 50:15-52:5; 22:1-9 | R; 403; IMP C; NT |
| 54:4-54:14 | AA, I, MIS, O, R, SPEC, 403, V | 29:1-22; 29:25-30:10; 24:16-18 | R; 403; IMP C |

David Hiller

| Natera's Opening Designations | CareDx's Objections | CareDx's Counter-Designations | Natera's Objections |
|---|---|---|---|
| 56:17-56:22 | AA, I, MIS, O, R, SPEC, 403, V | 54:21-55:13; 29:1-22; 29:25-30:10; 16:2-9; 25:2-26:20; 26:22-23; 22:1-9 | R; 403; 602; CS; IMP C; V |
| 60:18-61:16 | ARG, CP, F, I, MIS, O, R, SPEC, 403, V | 60:8-61:16; 22:1-9; 58:3-21 | IMP C; NT; R; 403; NT |
| 61:20-62:6 | I, MIS, O, R, SPEC, 403, V | 61:17-19; 22:1-9; 58:3-21 | IMP C; NT; R; 403; NT |
| 62:7-64:11 | AA, ARG, F, I, MIS, OB, R, SPEC, 403, V | 42:2-21; 37:23-38:4; 38:6-19 | IMP C; R; 403; LA; NT |
| 70:18-71:1 | AA, I, MIS, R, SPEC, 403, V | 70:17-71:1; 71:2-75:9 | NT; IMP C; R; 403 |
| 78:23-79:23 | AA, I, O, OB, R, SPEC, 403, V | 78:21-25; 79:2-23; 79:24-81:12; 22:1-9 | NT; IMP C; R; 403 |
| 82:25-83:18 | AA, I, O, OB, R, SPEC, 403, V | 22:1-9; 64:13-66:10; 66:13-69:21; 69:24-25; 70:2-5 | NT; IMP C; R; 403; 602; V |
| 85:2-85:9 | F, I, MIS, R, 403, V | 22:1-9; 85:10-25 | NT; IMP C |
| 88:11-89:17 | F, I, MIS, O, R, SPEC, 403, V | 44:8-46:19; 87:3-22; 89:18-25; 90:3-91:1; 91:3-4; 91:6-92:4; 92:7-16 | NT; IMP C; R; 403; 602; V |
| 92:20-93:8 | ARG, I, LC, MIS, O, R, SPEC, 403, V | 92:18-93:14; 89:18-25; 90:3-91:1; 91:3-4; 91:6-92:4; 92:7-16 | NT; IMP C; R; 403; 602; V |
| 93:15-94:5 | I, MIS, O, SPEC, 403, V | 92:18-93:14; 89:18-25; 90:3-91:1; 91:3-4; 91:6-92:4; 92:7-16; 94:6-10 | NT; IMP C; R; 403; 602; V |
| 94:11-94:21 | ARG, I, MIS, R, 403, V | 94:22-95:9; 50:15-52:5; 52:9-53:2; 53:4-5; 53:7-12; 89:18-25; 90:3-91:1; 91:3-4; 91:6-92:4; 92:7-16 | NT; IMP C; R; 403; 602; V; 701 |
| 96:2-97:9 | I, MIS, NARR, R, SPEC, V | 95:25-97:13; 90:3-91:1; 91:3-4; 91:6-22; 22:1-9 | NT; IMP C; R; 403; 602; CS; 701 |
| 104:15-105:14 | I, MIS, O, OB, R, SPEC, 403, V | 99:5-100:12; 100:15-102:18; 102:20-25; 103:2-15; 103:18-104:14 | NT; IMP; R; 403; 602; V; MD |
| 105:20-106:22 | ARG, F, I, IH, MIS, O, R, SPEC, 403, V | 105:16-19; 99:5-100:12; 100:15-102:18; 102:20-25; 103:2-15; 103:18-104:14 | NT; IMP; R; 403; 602; V; MD |

| Natera's Opening Designations | CareDx's Objections | CareDx's Counter-Designations | Natera's Objections |
|---|---|---|---|
| 106:23-107:15 | F, I, IH, MIS, O, R, SPEC, 403, V | 99:5-100:12; 100:15-102:18; 102:20-25; 103:2-15; 103:18-104:14 | NT; IMP; R; 403; 602; V; MD |
| 107:19-108:16 | I, IH, MIS, O, OB, R, SPEC, 403, V | 99:5-100:12; 100:15-102:18; 102:20-25; 103:2-15; 103:18-104:14 | NT; IMP; R; 403; 602; V; MD |
| 109:6-109:16 | I, IH, MIS, O, OB, R, SPEC, 403, V | 99:5-100:12; 100:15-102:18; 102:20-25; 103:2-15; 103:18-104:14 | NT; IMP; R; 403; 602; V; MD |
| 113:5-113:19 | ARG, F, I, IH, MIS, O, R, SPEC, 403, V | 113:22-24; 110:17-112:1; 99:5-100:12; 100:15-102:18; 102:20-25; 103:2-15; 103:18-104:14 | NT; IMP; R; 403; 602; V; MD; L |
| 116:21-119:17 | AA, ARG, CP, F, I, IH, O, OB, R, SPEC, 403, V | 119:18-24; 120:2-8; 126:17-128:7; 110:17-112:1; 99:5-100:12; 100:15-102:18; 102:20-25; 103:2-15; 103:18-104:14 | NT; IMP; R; 403; 602; V; MD; L |
| 124:24-125:13 | AA, I, MIS, R, SPEC, 403, V | 99:5-100:12; 100:15-102:18; 102:20-25; 103:2-15; 103:18-104:14;104:15-105:6; 105:9-14; 110:17-112:1 | NT; IMP; R; 403; 602; V; MD; L |
| 125:14-126:16 | AA, ARG, F, I, MIS, R, SPEC, 403, V | 126:17-128:7; 110:17-112:1; 99:5-100:12; 100:15-102:18; 102:20-25; 103:2-15; 103:18-104:14 | NT; IMP; R; 403; 602; V; MD; 701; LA |
| 130:5-130:12 | F, I, MIS, R, 403, V | 126:17-128:7; 128:11-14; 128:17-25; 110:17-112:1 | NT; IMP; R; 403; 602; V; MD; 701; LA |
| 130:20-131:10 | AA, F, MIS, OB, 403, V | 99:5-100:12; 100:15-102:18; 102:20-25; 103:2-15; 103:18-104:14;104:15-105:6; 105:9-14; 110:17-112:1 | NT; IMP; R; 403; 602; V; MD; L |
| 132:18-133:3 | AA, ARG, I, MIS, O, OB, 403, V | 132:13-17; 110:17-112:1; 126:17-128:7 | NT; IMP; R; 403; 602; V; MD; L |

David Hiller

| Natera's Opening Designations | CareDx's Objections | CareDx's Counter-Designations | Natera's Objections |
|---|---|---|---|
| 133:7-133:13 | AA, ARG, I, IH, MIS, O, OB, SPEC, 403, V | 110:17-112:1; 126:17-128:7; 132:13-20; 132:23-133:3 | NT; IMP; R; 403; 602; V; MD; L |

David Hiller

| Natera, Inc. v. CareDx Inc. (Case No. 20-cv-038)(CFC-CJB) | | | |
|---|---|---|---|
| **Witness: Marica Grskovic** | | | |
| **Date of Deposition: 2023-02-01** | | | |
| **Natera's Opening Designations** | **CareDx's Objections** | **CareDx's Counter-Designations** | **Natera's Objections** |
| 8:23-9:1 | LW | | |
| 12:4-12:8 | R, 403, LW | | |
| 12:19-13:24 | R, 403, I, LW | 13:25-14:9; 14:15-23; 15:3-22 | R; CS; 403; 602 |
| 14:10-14:14 | R, 403, I, LW | 13:25-14:9; 14:15-23; 15:3-22 | R; CS; 403; 602 |
| 16:20-16:23 | R, 403, I, V, F, LW | 16:8-9; 16:17-19; 16:20-23 | R; CS; 403; 602 |
| 22:24-23:15 | R, 403, I, F, LW | 23:16-24:1 | R |
| 24:9-25:18 | R, 403, LW | 24:9-19 | |
| 26:7-26:14 | R, V, 403, LW | | |
| 27:12-28:9 | R, V, F, I, 403, LW | 27:9-11; 28:10-19 | R; Imp C |
| 28:10-29:4 | R, V, F, I, 403, LW | | |
| 29:5-30:1 | R, V, F, 403, LW | 29:13-15; 29:22-30:1 | R; 403; Imp C |
| 30:2-31:4 | R, F, V, I, 403, LW | 32:4-5; 32:8-10; 32:21-33:3 | R; 403 |
| 33:4-33:22 | R, F, V, I, 403, LW | 32:4-5; 32:8-10; 32:21-33:3; 33:18-34:7 | R; 403; Imp C |
| 33:23-34:24 | R, V, I, 403, LW | 33:18-34:7; 34:18-24 | R; 403; Imp C |
| 35:6-35:21 | R, V, 403, LW | 35:6-21 | Imp C |
| 36:4-36:24 | R, V, SPEC, 403, LW | 36:4-37:7 | Imp C |
| 36:25-40:10 | R, V, L, 403, CP, PK, MIS, LW | 40:1-22 | R; 403; Imp C |
| 40:11-41:18 | R, V, L, 403, LW | 40:1-22 | R; 403; Imp C |
| 42:3-43:7 | R, V, L, 403, LW | 42:3-43:7 | Imp C |
| 44:4-44:16 | R, V, L, MIS, SPEC, PK, 403, LW | 44:4-16 | R; 403; Imp C |
| 44:21-45:5 | R, V, L, MIS, PK, 403, LW | 44:21-45:5 | R; 403; Imp C |
| 46:6-46:20 | R, V, 403, LW | | |
| 46:22-47:12 | R, V, 403, I, MIS, LW | 47:13-23 | R; 403; CS; 602 |
| 48:5-49:15 | R, V, 403, MIS, I, CP, LW | 48:5-10 | R; 403; Imp C |
| 49:16-50:7 | R, V, 403, I, CP, LW | | |
| 50:13-50:22 | R, 403, I, LW | 51:15-19 | F; R; 403; CS |
| 52:1-55:13 | R, 403, MIS, CP, LW | 52:1-14; 52:19-53:2 | R; 403; Imp C |
| 55:18-56:10 | R, 403, PK, LW | 55:18-56:10 | R; 403; CS; Imp C |
| 56:16-57:23 | R, 403, LW | 56:16-57:12; 57:15-23 | I; Imp C |
| 58:13-59:9 | R, 403, MIS, CP, LW | | |
| 59:21-60:5 | R, 403, L, I, LW | 60:6; 60:19-25; 61:11-13; 61:15-23 | R; 403 |
| 60:9-60:18 | R, 403, MIS, L, I, LW | 60:6; 60:19-25; 61:11-13; 61:15-23 | R; 403 |
| 62:24-63:24 | R, 403, LW | 62:24-63:24 | Imp C |
| 64:11-64:17 | R, 403, O, LC, L, LW | | |
| 64:25-65:19 | R, 403, LW | 64:25-65:19 | Imp C |
| 66:3-67:13 | F, V, 403, L, CP, I, LW | 67:15-22 | R; 403; CS |
| 67:23-68:16 | R, 403, O, L, LW | | |
| 68:19-69:17 | R, V, 403, I, LW | 70:8-18 | F; R; 403 |
| 71:5-71:12 | R, 403, V, I, LW | 73:7-20; 75:1-9 | F; R; 403 |
| 76:14-77:5 | R, 403, V, LW | | |
| 79:21-80:19 | R, 403, V, L, LW | 78:12-79:20; 79:21-83:15 | F; R; 403; Imp C |
| 80:20-83:15 | R, 403, NARR, I, LW | 83:16-24; 84:14-25; 85:19-86:14; 86:18-87:14; 87:24-88:5; 88:10-16 | F; R; 403; Imp C |
| 91:10-92:1 | R, 403, MIS, LW, I | 92:20-93:1 | F; R; 403; Imp C |
| 94:18-95:25 | R, 403, LW | | |
| 98:20-98:25 | R, 403, I, LW | 97:21-23; 98:17-19; 98:20-25; 99:1-100:9; 100:11-101:1; 101:13-16; 102:20-103:5 | R; 403; CS; Imp C |
| 103:6-103:18 | R, 403, I, LW | 97:21-23; 99:11-100:9; 100:11-101:1; 101:13-16; 102:20-103:5 | R; 403; CS; Imp C |
| 104:6-104:10 | R, 403, I, LW | 103:19-104:5 | R; 403 |
| 104:16-104:20 | R, 403, LW | 104:16-20 | Imp C |

Marica Grskovic

| Natera's Opening Designations | CareDx's Objections | CareDx's Counter-Designations | Natera's Objections |
|---|---|---|---|
| 104:24-105:12 | R, 403, LW | 104:24-106:7 | R; 403; Imp C |
| 105:13-106:7 | R, 403, LW | | |
| 106:11-106:24 | R, 403, LW | 106:11-24 | R; 403; Imp C |
| 107:17-109:1 | R, 403, I, LW | 106:25-107:12; 107:17-109:1 | R; 403; CS; Imp C; 602 |
| 112:3-112:11 | R, 403, LW | | |
| 113:1-113:10 | F, V, 403, L, LW | | |
| 113:12-113:25 | R, 403, LW | | |
| 114:1-114:19 | R, V, 403, PK, LW, I | 114:20-115:24; 116:16-24 | F; R; 403 |
| 116:25-117:22 | R, 403, V, LW | 116:25-119:14 | R; 403; Imp C |
| 117:23-118:14 | R, 403, V, LW | 116:25-119:14 | R; 403; Imp C |
| 118:15-119:8 | R, 403, V, LW | 116:25-119:14 | R; 403; Imp C |
| 119:9-119:14 | R, 403, V, LW | 116:25-119:14 | R; 403; Imp C |
| 119:21-119:24 | R, 403 | | |
| 120:14-120:23 | R, 403, V, I, LW | 120:14-23; 120:24-121:2; 121:4-8 | CS; Imp C |
| 121:10-121:20 | R, 403, V, I, LW | 120:24-121:2; 121:4-8 | CS; Imp C |
| 122:2-122:25 | R, 403, V, I, LW, PK, SPEC | 120:24-121:2; 121:4-8 | CS; Imp C |
| 123:1-124:6 | R, 403, V, I, LW | | |
| 125:5-125:12 | R, 403, LW, I | 125:13-126:7 | R; 403; CS |
| 126:19-127:4 | F, V, LC, LW | 125:13-126:7 | R; 403; CS |
| 128:4-128:6 | F, V, LC, LW | 125:13-126:7; 128:4-6; 128:12-14 | F; R; 403; CS |
| 128:12-128:14 | F, V, LC, LW | 125:13-126:7; 128:4-6; 128:12-14 | F; R; 403; CS |
| 129:10-129:16 | F, V, LC, I, O, LW | 128:22-129:9 | I; R; 403; Imp C |
| 129:24-130:6 | R, V, 403, LW | 129:24-130:12 | R; 403; Imp C |
| 130:7-130:12 | R, V, 403, LW | 129:24-130:12 | R; 403; Imp C |
| 131:3-131:23 | R, V, 403, I, LW | 132:8-12 | F; R; 403; Imp C |
| 133:13-133:19 | R, V, 403, LW | | |
| 134:3-134:17 | R, F, V, L, LW | | |
| 134:19-135:4 | R, F, V, L, LW | | |
| 135:5-136:18 | F, V, CP, LW | | |
| 137:9-138:1 | R, PK, V, LW | | |
| 138:8-138:22 | R, PK, V, LW | | |
| 141:19-142:7 | R, V, F, L, LW | 141:7-12 | F; R; 403; Imp C |
| 143:3-144:4 | R, 403, L, LW | | |
| 144:15-146:3 | F, V, LC, LW, O | | |
| 168:17-169:2 | R, F, 403, LW | 146:13-148:7; 148:11-151:2; 151:17-152:7; 152:11-20; 152:22-23; 153:16-156:16; 156:20-157:14; 157:22-158:7; 160:6-16; 160:24-161:10; 162:1-164:10; 165:10-25; 166:20-25; 167:9-168:7; 173:13-174:3; 179:16-18; 179:21-180:1; 180:12-13; 180:15-21; 190:6-8; 190 | R; 403; M; CS; AF; 602; Imp C |
| 169:10-169:22 | R, F, 403, LW | 146:13-148:7; 148:11-151:2; 151:17-152:7; 152:11-20; 152:22-23; 153:16-156:16; 156:20-157:14; 157:22-158:7; 160:6-16; 160:24-161:10; 162:1-164:10; 165:10-25; 166:20-25; 167:9-168:7; 173:13-174:3; 190:6-8;190:11; 190:13-14 | R; 403; M; CS; AF; 602; Imp C |
| 169:23-170:12 | R, F, 403, LW | 146:13-148:7; 148:11-151:2; 151:17-152:7; 152:11-20; 152:22-23; 153:16-156:16; 156:20-157:14; 157:22-158:7; 160:6-16; 160:24-161:10; 162:1-164:10; 165:10-25; 166:20-25; 167:9-168:7; 173:13-174:3; 190:6-8;190:11; 190:13-14. | R; 403; M; CS; AF; 602; Imp C |

Marica Grskovic

| Natera, Inc. v. CareDx Inc. (Case No. 20-cv-038)(CFC-CJB) | | | |
|---|---|---|---|
| **Witness: Hal Gibson** | | | |
| **Date of Deposition: 2023-04-14** | | | |
| **Natera's Opening Designations** | **CareDx's Objections** | **CareDx's Counter-Designations** | **Natera's Objections** |
| 7:15-7:17 | | | |
| 9:16-10:1 | F, PK, V | | |
| 18:1-18:9 | F, PK, R, SPEC, 403, V | | |
| 20:24-21:11 | F, V | | |
| 24:12-26:4 | F, H, PK, R, SPEC, 403, V | | |
| 29:6-29:25 | I, MIS, O,  OB, SPEC, V | 30:14-32:15 | R; 403; CS; UNE |
| 32:22-33:3 | AA, CP, I, MIS,  R, SPEC, 403, V | 29:6-8, 29:10-25, 30:14-32:15, 33:4-7, 37:22-38:6, 38:7-13, 50:11-16, 58:4-15, 62:11-12, 62:22-24, 63:1-9, 73:21-23, 73:25-74:2, 80:4-6, 80:8-14, 80:16-20, 80:22-25 | F; R; 403; V; 602; NT; CS; Imp C; UNE; NT |
| 34:24-35:15 | F, MIS, PK, R, SPEC,403, V | | |
| 35:16-36:4 | F, H, MIS, R, SPEC, 403, V | | |
| 36:19-37:21 | I, CP, H, I, F, R, MIS, 403, V | 29:6-8, 29:10-25, 30:14-32:15, 33:4-7, 37:22-38:6, 38:7-13, 50:11-16, 58:4-15, 62:11-12, 62:22-24, 63:1-9, 73:21-23, 73:25-74:2, 80:4-6, 80:8-14, 80:16-20, 80:22-25, 92:1-3, 92:5, 94:15-20, 94:23-95:4, 95:16-22, 96:7-21, 96:23, 96:25-100:10, 100:12-14 | F; R; 403; V; NT; CS; Imp C; UNE |
| 38:14-38:20 | I, F, H, OB, R, 403, V | 29:6-8, 29:10-25, 30:14-32:15, 33:4-7, 37:22-38:6, 38:7-13, 50:11-16, 58:4-15, 62:11-12, 62:22-24, 63:1-9, 73:21-23, 73:25-74:2, 80:4-6, 80:8-14, 80:16-20, 80:22-25, 92:1-3, 92:5, 94:15-20, 94:23-95:4, 95:16-22, 96:7-21, 96:23, 96:25-100:10, 100:12-14 | F; R; 403; V; NT; CS; Imp C; UNE |
| 38:22-38:25 | I, CP, F, H, MIS, PK, SPEC, R, 403, V | 29:6-8, 29:10-25, 30:14-32:15, 33:4-7, 37:22-38:6, 38:7-13, 50:11-16, 58:4-15, 62:11-12, 62:22-24, 63:1-9, 73:21-23, 73:25-74:2, 80:4-6, 80:8-14, 80:16-20, 80:22-25, 92:1-3, 92:5, 94:15-20, 94:23-95:4, 95:16-22, 96:7-21, 96:23, 96:25-100:10, 100:12-14 | F; R; 403; V; NT; CS; Imp C; UNE |
| 45:11-46:10 | I, F, PK, O, R, SPEC, 403, V | 46:11-47:1 | R; 403; UNE; MIL |
| 47:2-47:16 | I, F, MIS, OB, R, 403, V | 29:6-8, 29:10-25, 30:14-32:15, 33:4-7, 37:22-38:6, 38:7-13, 50:11-16, 58:4-15, 62:11-12, 62:22-24, 63:1-9, 73:21-23, 73:25-74:2, 80:4-6, 80:8-14, 80:16-20, 80:22-25, 92:1-3, 92:5, 94:15-20, 94:23-95:4, 95:16-22, 96:7-21, 96:23, 96:25-100:10, 100:12-14 | F; R; 403; V; NT; CS; Imp C; UNE |
| 48:12-49:6 | I, F, MIS, OB, PK, R, 403, V | 29:6-8, 29:10-25, 30:14-32:15, 33:4-7, 37:22-38:6, 38:7-13, 50:11-16, 58:4-15, 62:11-12, 62:22-24, 63:1-9, 73:21-23, 73:25-74:2, 80:4-6, 80:8-14, 80:16-20, 80:22-25, 92:1-3, 92:5, 94:15-20, 94:23-95:4, 95:16-22, 96:7-21, 96:23, 96:25-100:10, 100:12-14 | F; R; 403; V; NT; CS; Imp C; UNE |
| 53:20-53:21 | F, R, 403, V | | |
| 54:3-54:17 | CP, H, I, F, MIS, SPEC, R, 403, V | 29:6-8, 29:10-25, 30:14-32:15, 33:4-7, 37:22-38:6, 38:7-13, 50:11-16, 58:4-15, 62:11-12, 62:22-24, 63:1-9, 73:21-23, 73:25-74:2, 80:4-6, 80:8-14, 80:16-20, 80:22-25, 92:1-3, 92:5, 94:15-20, 94:23-95:4, 95:16-22, 96:7-21, 96:23, 96:25-100:10, 100:12-14 | F; R; 403; V; NT; CS; Imp C; UNE |
| 54:21-54:23 | H, I, F, MIS, SPEC, R, 403, V | 29:6-8, 29:10-25, 30:14-32:15, 33:4-7, 37:22-38:6, 38:7-13, 50:11-16, 58:4-15, 62:11-12, 62:22-24, 63:1-9, 73:21-23, 73:25-74:2, 80:4-6, 80:8-14, 80:16-20, 80:22-25, 92:1-3, 92:5, 94:15-20, 94:23-95:4, 95:16-22, 96:7-21, 96:23, 96:25-100:10, 100:12-14 | F; R; 403; V; NT; CS; Imp C; UNE |
| 55:5-55:17 | CP, H, I, F, MIS, OB, SPEC, R, 403, V | 29:6-8, 29:10-25, 30:14-32:15, 33:4-7, 37:22-38:6, 38:7-13, 50:11-16, 58:4-15, 62:11-12, 62:22-24, 63:1-9, 73:21-23, 73:25-74:2, 80:4-6, 80:8-14, 80:16-20, 80:22-25, 92:1-3, 92:5, 94:15-20, 94:23-95:4, 95:16-22, 96:7-21, 96:23, 96:25-100:10, 100:12-14 | F; R; 403; V; NT; CS; Imp C; UNE |

| Natera's Opening Designations | CareDx's Objections | CareDx's Counter-Designations | Natera's Objections |
|---|---|---|---|
| 56:3-56:16 | H, I, F, MIS, PK, SPEC, R, 403, V | 29:6-8, 29:10-25, 30:14-32:15, 33:4-7, 37:22-38:6, 38:7-13, 50:11-16, 55:19-25, 56:25-57:6, 58:4-15, 62:11-12, 62:22-24, 63:1-9, 73:21-23, 73:25-74:2, 80:4-6, 80:8-14, 80:16-20, 80:22-25, 92:1-3, 92:5, 94:15-20, 94:23-95:4, 95:16-22, 96:7-21, 96:23, 96:25 | F; R; 403; V; NT; CS; Imp C; UNE |
| 56:20-56:24 | H, I, F, MIS, PK, SPEC, R, 403, V | 29:6-8, 29:10-25, 30:14-32:15, 33:4-7, 37:22-38:6, 38:7-13, 50:11-16, 55:19-25, 56:25-57:6, 58:4-15, 62:11-12, 62:22-24, 63:1-9, 73:21-23, 73:25-74:2, 80:4-6, 80:8-14, 80:16-20, 80:22-25, 92:1-3, 92:5, 94:15-20, 94:23-95:4, 95:16-22, 96:7-21, 96:23, 96:25 | F; R; 403; V; NT; CS; Imp C; UNE |
| 58:20-60:1 | H, I, F, MIS, OB, SPEC, R, 403, V | 29:6-8, 29:10-25, 30:14-32:15, 33:4-7, 37:22-38:6, 38:7-13, 50:11-16, 55:19-25, 56:25-57:6, 58:4-15, 62:11-12, 62:22-24, 63:1-9, 73:21-23, 73:25-74:2, 80:4-6, 80:8-14, 80:16-20, 80:22-25, 92:1-3, 92:5, 94:15-20, 94:23-95:4, 95:16-22, 96:7-21, 96:23, 96:25 | F; R; 403; V; NT; CS; Imp C; UNE |
| 69:9-69:19 | I, O, OB, PK, R, SPEC, 403, V | 70:1-7, 70:10-12, 71:13-19, 71:24-72:9, 72:12-24 | R; 403; V; 701; CS; Imp C; UNE |
| 69:20-69:24 | I, O, OB, PK, R, SPEC, 403, V | 70:1-7, 70:10-12, 71:13-19, 71:24-72:9, 72:12-24 | R; 403; V; 701; CS; Imp C; UNE |
| 70:18-71:2 | I, O, PK, R, SPEC, 403, V | 70:1-7, 70:10-12, 71:13-19, 71:24-72:9, 72:12-24 | R; 403; V; 701; CS; Imp C; UNE |
| 71:5-71:10 | I, O, PK, R, SPEC, 403, V | 70:1-7, 70:10-12, 71:13-19, 71:24-72:9, 72:12-24 | R; 403; V; 701; CS; Imp C; UNE |
| 74:10-74:18 | H, I, F, MIS, R, SPEC, 403, V | 29:6-8, 29:10-25, 30:14-32:15, 33:4-7, 37:22-38:6, 38:7-13, 50:11-16, 58:4-15, 62:11-12, 62:22-24, 63:1-9, 73:21-23, 73:25-74:2, 80:4-6, 80:8-14, 80:16-20, 80:22-25, 92:1-3, 92:5, 94:15-20, 94:23-95:4, 95:16-22, 96:7-21, 96:23, 96:25-100:10, 100:12-14 | F; R; 403; V; NT; CS; Imp C; UNE |
| 74:19-75:19 | H, I, F, MIS, R, SPEC, 403, V | 29:6-8, 29:10-25, 30:14-32:15, 33:4-7, 37:22-38:6, 38:7-13, 50:11-16, 58:4-15, 62:11-12, 62:22-24, 63:1-9, 73:21-23, 73:25-74:2, 80:4-6, 80:8-14, 80:16-20, 80:22-25, 92:1-3, 92:5, 94:15-20, 94:23-95:4, 95:16-22, 96:7-21, 96:23, 96:25-100:10, 100:12-14 | F; R; 403; V; NT; CS; Imp C; UNE |
| 75:23-76:15 | I, F, MIS, R, SPEC, 403, V | 29:6-8, 29:10-25, 30:14-32:15, 33:4-7, 37:22-38:6, 38:7-13, 50:11-16, 58:4-15, 62:11-12, 62:22-24, 63:1-9, 73:21-23, 73:25-74:2, 80:4-6, 80:8-14, 80:16-20, 80:22-25, 92:1-3, 92:5, 94:15-20, 94:23-95:4, 95:16-22, 96:7-21, 96:23, 96:25-100:10, 100:12-14 | F; R; 403; V; NT; CS; Imp C; UNE |
| 76:16-77:4 | H, I, F, MIS, OB, R, SPEC, 403, V | 29:6-8, 29:10-25, 30:14-32:15, 33:4-7, 37:22-38:6, 38:7-13, 50:11-16, 58:4-15, 62:11-12, 62:22-24, 63:1-9, 73:21-23, 73:25-74:2, 80:4-6, 80:8-14, 80:16-20, 80:22-25, 92:1-3, 92:5, 94:15-20, 94:23-95:4, 95:16-22, 96:7-21, 96:23, 96:25-100:10, 100:12-14 | F; R; 403; V; NT; CS; Imp C; UNE |
| 77:9-78:6 | H, I, F, MIS, OB, R, SPEC, 403, V | 29:6-8, 29:10-25, 30:14-32:15, 33:4-7, 37:22-38:6, 38:7-13, 50:11-16, 58:4-15, 62:11-12, 62:22-24, 63:1-9, 73:21-23, 73:25-74:2, 80:4-6, 80:8-14, 80:16-20, 80:22-25, 92:1-3, 92:5, 94:15-20, 94:23-95:4, 95:16-22, 96:7-21, 96:23, 96:25-100:10, 100:12-14 | F; R; 403; V; NT; CS; Imp C; UNE |
| 85:18-87:8 | I, F, MIS, OB, R, SPEC, 403, V | 84:5-15, 84:17-22, 85:3-17 | F; R; 403; V; Imp C; UNE |
| 89:9-89:15 | I, MIS, OB, R, SPEC, 403, V | 89:17-18, 89:20-23 | CS; UNE |
| 91:1-91:25 | I, H, F, MIS, OB, R, 403, V | 29:6-8, 29:10-25, 30:14-32:15, 33:4-7, 37:22-38:6, 38:7-13, 50:11-16, 58:4-15, 62:11-12, 62:22-24, 63:1-9, 73:21-23, 73:25-74:2, 80:4-6, 80:8-14, 80:16-20, 80:22-25, 92:1-3, 92:5, 94:15-20, 94:23-95:4, 95:16-22, 96:7-21, 96:23, 96:25-100:10, 100:12-14 | F; R; 403; V; NT; CS; Imp C; UNE |
| 93:9-94:14 | I, H, F, MIS, PK, R, 403, V | 29:6-8, 29:10-25, 30:14-32:15, 33:4-7, 37:22-38:6, 38:7-13, 50:11-16, 58:4-15, 62:11-12, 62:22-24, 63:1-9, 73:21-23, 73:25-74:2, 80:4-6, 80:8-14, 80:16-20, 80:22-25, 92:1-3, 92:5, 94:15-20, 94:23-95:4, 95:16-22, 96:7-21, 96:23, 96:25-100:10, 100:12-14 | F; R; 403; V; NT; CS; Imp C; UNE |

| Natera's Opening Designations | CareDx's Objections | CareDx's Counter-Designations | Natera's Objections |
|---|---|---|---|
| 103:19-103:25 | I, H, F, MIS, R, 403, V | 29:6-8, 29:10-25, 30:14-32:15, 33:4-7, 37:22-38:6, 38:7-13, 50:11-16, 58:4-15, 62:11-12, 62:22-24, 63:1-9, 73:21-23, 73:25-74:2, 80:4-6, 80:8-14, 80:16-20, 80:22-25, 92:1-3, 92:5, 94:15-20, 94:23-95:4, 95:16-22, 96:7-21, 96:23, 96:25-100:10, 100:12-14, 10 | F; R; 403; V; NT; CS; Imp C; UNE |
| 104:24-105:1 | I, H, F, MIS, R, 403, V | 29:6-8, 29:10-25, 30:14-32:15, 33:4-7, 37:22-38:6, 38:7-13, 50:11-16, 58:4-15, 62:11-12, 62:22-24, 63:1-9, 73:21-23, 73:25-74:2, 80:4-6, 80:8-14, 80:16-20, 80:22-25, 92:1-3, 92:5, 94:15-20, 94:23-95:4, 95:16-22, 96:7-21, 96:23, 96:25-100:10, 100:12-14, 10 | F; R; 403; V; NT; CS; Imp C; UNE |
| 105:18-106:14 | I, H, F, R, SPEC, 403, V | 29:6-8, 29:10-25, 30:14-32:15, 33:4-7, 37:22-38:6, 38:7-13, 50:11-16, 58:4-15, 62:11-12, 62:22-24, 63:1-9, 73:21-23, 73:25-74:2, 80:4-6, 80:8-14, 80:16-20, 80:22-25, 92:1-3, 92:5, 94:15-20, 94:23-95:4, 95:16-22, 96:7-21, 96:23, 96:25-100:10, 100:12-14, 10 | F; R; 403; V; NT; CS; Imp C; UNE |
| 106:23-107:15 | I, H, F, MIS, R, 403, V | 29:6-8, 29:10-25, 30:14-32:15, 33:4-7, 37:22-38:6, 38:7-13, 50:11-16, 58:4-15, 62:11-12, 62:22-24, 63:1-9, 73:21-23, 73:25-74:2, 80:4-6, 80:8-14, 80:16-20, 80:22-25, 92:1-3, 92:5, 94:15-20, 94:23-95:4, 95:16-22, 96:7-21, 96:23, 96:25-100:10, 100:12-14, 10 | F; R; 403; V; NT; CS; Imp C; UNE |
| 108:7-109:11 | I, H, F, MIS, R, 403, V | 29:6-8, 29:10-25, 30:14-32:15, 33:4-7, 37:22-38:6, 38:7-13, 50:11-16, 58:4-15, 62:11-12, 62:22-24, 63:1-9, 73:21-23, 73:25-74:2, 80:4-6, 80:8-14, 80:16-20, 80:22-25, 92:1-3, 92:5, 94:15-20, 94:23-95:4, 95:16-22, 96:7-21, 96:23, 96:25-100:10, 100:12-14, 10 | F; R; 403; V; NT; CS; Imp C; UNE |

Hal Gibson

| Natera, Inc. v. CareDx Inc. (Case No. 20-cv-038)(CFC-CJB) | | | |
|---|---|---|---|
| Witness: Sham Dholakia | | | |
| Date of Deposition: 2023-04-11 | | | |
| Natera's Opening Designations | CareDx's Objections | CareDx's Counter-Designations | Natera's Objections |
| 6:17-6:23 | I | 6:16-23 | Imp C; UNE; NT |
| 19:12-20:7 | R, 403, V | | |
| 20:11-20:16 | I, R, V | 20:17-20 | R; 403; UNE; NT |
| 20:21-21:15 | F, R, 403, V | | |
| 22:12-22:18 | F, R, 403, V | | |
| 25:12-26:4 | F, I, R, 403, V | 25:9-11 | R; 403; Imp C; UNE |
| 26:23-27:10 | F, R, 403, V | 25:9-11; 30:9-19 | R; 403; Imp C; UNE |
| 29:12-29:22 | CP, I, R, 403, V | 29:11-22; 21:4-15 | F; R; 403; Imp C; UNE |
| 30:9-30:19 | AA, R, 403, V | 26:23-27:4 | R; 403; Imp C; UNE |
| 30:20-31:23 | CP, F, OB, R, 403, V | | |
| 33:10-34:9 | ARG, CP, I, R, 403, V | 33:9-34:9; 34:10-35:4 | R; 403; Imp C; UNE |
| 39:1-39:14 | AA, I, MIS, R, 403, V | 38:22-39:14; 31:10-13; 31:16-20 | R; 403; Imp C; UNE; NT |
| 41:24-42:11 | O, R, V | 41:24-42:11 | F; R; 403; Imp C; UNE |
| 42:24-43:5 | I, O, R, 403, V | 42:20-23; 43:6-12 | R; 403; Imp C; UNE |
| 43:13-43:25 | F, MIS, O, OB, V | 42:20-43:12; 43:13-16; 43:18-25 | R; 403; Imp C; UNE |
| 56:13-56:20 | F, I, MIS, PK, SPEC, 403, V | 56:12-20; 48:19-23; 50:13-51:7 | F; R; 403; Imp C; UNE |
| 64:6-64:15 | AA, ARG, I, MIS, R, SPEC, 403, V | 64:6-15; 64:16-20; 63:4-18; 50:13-51:7; 58:14-20 | F; R; 403; Imp C; UNE |
| 71:23-72:3 | F, I, R, SPEC, V | 71:18-22; 72:18-20; 69:18-25 | R; 403; CS; 602; Imp C; UNE |
| 72:18-73:17 | F, I, MIS, R, SPEC, 403, V | 73:18-74:19; 79:17-80:6; 69:18-25 | R; 403; CS; Imp C; UNE |
| 81:5-82:5 | CP, F, I, MIS, O, R, 403, V | 80:25-81:4; 81:12-82:5; 82:7-12; 72:18-73:17; 79:17-80:6; 124:14-18; 124:20-125:6; 125:8-15; 125:18-126:10; 69:18-25 | F; R; 403; Imp C; UNE; 602; 701; MIL |
| 92:15-92:18 | CP, F, I, R, 403, V | 91:25-92:10 | R; 403; Imp C; UNE |
| 92:19-92:22 | F, PK, 403, V | | |
| 93:10-93:13 | F, R, 403, V | 92:23-93:9 | R; 403; Imp C; UNE |
| 100:22-101:21 | F, MIS, O, R, 403, V | 86:5-19; 86:22-87:13; 87:15-24 | V; R; 403; Imp C; UNE; 701 |
| 103:8-103:23 | F, I, O, OB, R, 403, V | 41:16-43:16; 43:18-25; 103:25-104:25 | C; R; 403; Imp C; UNE |
| 103:25-104:25 | F, I, O, PK, R, SPEC, 403, V | 103:8-17; 103:22-23; 103:25-104:25; 41:16-43:16; 43:18-25 | F; R; 403; Imp C; UNE |
| 109:17-110:9 | F, I, IH, O, R, SPEC, 403, V | 110:10-14; 81:12-82:5 | R; 403; Imp C; UNE |
| 111:15-112:13 | F, I, O, OB, SPEC, V | 86:5-19; 86:22-87:13; 87:15-24; 41:16-43:16; 43:18-25 | V; R; 403; Imp C; UNE |
| 112:15-112:24 | F, I, MIS, PK, R, 403, V | 112:25-113:2; 88:2-24; 41:16-43:16; 43:18-25 | R; 403; Imp C; UNE; NT |
| 113:14-114:17 | F, O, PK, R, V | 92:23-93:9 | R; 403; Imp C; UNE |
| 114:18-114:20 | I, R, 403, V | 113:14-114:17 | Imp C; UNE |
| 119:2-119:5 | I, R, 403, V | 119:1-5; 12:19-23; 13:8-13 | R; 403; Imp C; UNE |
| 131:4-131:13 | F, I, IH, PK, R, SPEC, 403, V | 130:18-23; 130:25-131:2 | F; R; 403; CS; Imp C; UNE; NT |
| 131:14-132:16 | F, I, IH, R, SPEC, V | 132:17-18; 132:21 | F; R; 403; CS; Imp C; UNE |
| 133:11-134:19 | F, I, IH, OB, R, SPEC, 403, V | 133:3-10 | R; 403; Imp C; UNE |
| 135:14-135:23 | F, I, IH, MIS, R, SPEC, 403, V | 135:24-25; 136:1-2; 136:7-16 | R; 403; CS; Imp C; UNE |
| 137:5-140:23 | F, I, MIS, OB, R, SPEC, 403, V | 140:25-141:24; 130:2-9 | R; 403; CS; Imp C; UNE |

Sham Dholakia

| Natera's Opening Designations | CareDx's Objections | CareDx's Counter-Designations | Natera's Objections |
|---|---|---|---|
| 142:15-143:4 | AA, ARG, I, MIS, OB, R, 403, V | 137:15-139:10; 130:2-9 | R; 403; Imp C; UNE |
| 143:13-144:10 | I, OB, R, 403, V | 143:5-15; 143:21-144:10 | R; 403; Imp C; UNE; NT |

Sham Dholakia

# EXHIBIT 11

Pursuant to D. Del. LR 16.3, Defendant CareDx, Inc. ("CareDx") hereby submits its list of deposition designations that it may offer at trial.

CareDx makes these disclosures without prejudice to amending or supplementing the disclosures in the future if necessary, including but not limited to further reducing the designations set forth below. CareDx reserves the right to use any deposition testimony, whether designated or not, for purposes of cross-examination, impeachment, and/or rebuttal. CareDx reserves the right to designate additional deposition testimony or call any witness for live testimony in response to any of Natera's deposition designations or for any other reason. CareDx's designations include all exhibits that are referenced in the specified pages and lines, whether or not such exhibits are separately identified. CareDx reserves the right to use any deposition testimony designated by Natera.  Inclusion on this list is neither an admission nor a representation as to the admissibility of or relevance to any issue of any deposition designation.  By designating deposition testimony, CareDx is neither representing nor admitting that CareDx has the burden of proof on any topic.

CareDx generally objects to any deposition testimony counter-designated by Natera that is the subject of the parties' stipulations, agreed motions in limine (if any), CareDx's motions in limine, motions to exclude certain evidence, Daubert motions and challenges to experts, and any dispositive motions. CareDx reserves the right to make additional objections leading up to and at trial.

CareDx reserves the right to add to, remove from, and/or supplement these lists of objections to Natera's counter-designations and CareDx's counter-counter designations.

Regarding CareDx's objections to Natera's counter-designations and CareDx's counter-counters, CareDx reserves the right to assert any one, part, or all of its objections. CareDx also reserves the right to assert additional objections or counter-counter designations. CareDx also reserves the right to assert its original affirmative designation as a counter-counter designation to any counter-designation listed by Natera.

Defendant's Cover

| Abbr. | Objection |
|---|---|
| 403 | Relevance Outweighed By Other Factors (undue prejudice, confusion, cumulative) |
| 408 | Improper use of Settlement Negotiations Evidence to prove liability or damages |
| 602 | Lack of Personal Knowledge or foundation (for fact testimony) |
| 701 | Improper opinion testimony by lay witness |
| 702 | Improper expert testimony |
| AF | Assumes facts not in evidence |
| CLC | Calls for a legal conclusion |
| COMP | Compound |
| CS | Calls for speculation |
| F | Lacks Foundation |
| H | Hearsay |
| IMP C | Improper Counter (Fed. R. Evid. 611(b)) |
| I | Incomplete designation |
| INQA | Improper question or answer |
| L | Leading |
| LA | Legal argument |
| MD | Mischaracterizes the document |
| MT | Mischaracterizes testimony |
| MIL | Subject to a motion *in limine* |
| MOT | Subject to pending or resolved motion - e.g., Daubert motion, SJ motion |
| NAR | Improper Narrative |
| NR | Non-responsive testimony |
| NT | Not testimony |
| PRIV | Privileged |
| R | Relevance (Fed. R. Evid. 401, 402) |
| SCOPE | Beyond the scope of the FRCP 30(b)(6) designation |
| TR | Testimony requires translation from foreign language |
| UNE | Unavailability of deponent not established |
| V | Vague |

Objection Codes (QE)

| AA | Asked and answered; Fed. R. Evid. 611(a). |
|---|---|
| ARG | Argumentative, or attorney argument; Fed. R. Evid. 611(a). |
| BTS | Beyond the scope of examination or of 30(b)(6) topic; Fed R. Evid. 611, Fed. R. Civ. P. 30(b)(6). |
| BSD | Counter-Designation Beyond the Scope of the Designation(s). |
| CP | Compound question. |
| F | No foundation or assumes facts not in evidence; Fed. R. Evid. 602, 703, 901. |
| FOW | An objection to form is waived if it was not timely made during the deposition, Fed. R. Civ. P. 32(d)(3)(B). |
| H | Hearsay if offered for the truth of the matter asserted; Fed. R. Evid. 801, 803, 805. |
| I | Incomplete designation; Fed. R. Evid. 106, 403. |
| IH | Incomplete Hypothetical. |
| L | Leading; Fed. R. Evid. 611(c). |
| LC | Calls for Legal Conclusion; Fed. R. Evid. 701. |
| LW | Witness will be testifying live at trial. |
| MIS | Mischaracterization of testimony or evidence. |
| NARR | Narrative. |
| NR | Not responsive; Fed. R. Evid. 611(a). |
| O | Unqualified Opinion; Calls for improper expert opinion from lay witness; Fed. R. Evid. 701, 702. |
| OB | Attorney Objection improperly designated/Improper designation. |
| P | Privileged; Fed. R. Evid. 501, Fed. R. Civ. P. 26(b)(3),(4). |
| PK | Lack of personal knowledge; Fed. R. Evid. 602. |
| R | Not relevant; Fed. R. Evid. 401, 402. |
| SPEC | Calls for Speculation; Fed. R. Evid. 602, 701, 702. |
| 403 | Unfairly prejudicial; cumulative, waste of time, Fed. R. Evid. 403. |
| V | Vague or ambiguous; Fed. R. Evid. 611(a). |

| Natera, Inc. v. CareDx Inc. (Case No. 20-cv-038)(CFC-CJB) | | | |
|---|---|---|---|
| Witness: Milena Banjevic | | | |
| Date of Deposition: 2023-03-24 | | | |
| CareDx's Opening Designations | Natera's Objections | Natera's Counter-Designations | CareDx's Objections to Natera's Counter-Designations |
| 6:19-7:2 | R; 403 | | |
| 21:2-4 | R; 403, 701, CLC | 45:8-21 | R, 403, V, SPEC, LC, O, BTS |
| 21:7-9 | R; 403, 701, CLC | | |
| 21:11-12 | R; 403, 701, CLC | | |
| 21:14-19 | R; 403, 701, CLC | | |
| 23:19-22 | R; 403; 602 | | |
| 24:1-3 | R; 403; 602 | | |
| 30:15-21 | R; 403; 602; V | 45:8-21 | R, 403, V, SPEC, LC, O, BTS |
| 47:24-48:5 | R; 403; 602 | | |
| 48:8-12 | R; 403; 602 | | |
| 67:11-14 | R; 403 | 95:19-96:24 | R, 403, V, BTS, O, NARR |
| 67:17-19 | R; 403 | | |
| 72:11-17 | R; 403; 602 | 45:8-21 | R, 403, V, SPEC, LC, O, BTS |
| 72:20-23 | R; 403; 602 | | |
| 93:16-20 | R; 403; 602 | | |
| 93:22-23 | R; 403; 602 | | |
| 104:3-5 | R; 403 | 98:20-99:3; 99:21-100:18; 101:4-102:10; 104:17-105:23 | R, 403, SPEC, V, CP, NR, PK, F, BTS |
| 104:8-15 | R; 403 | | |
| 108:2-5 | R; 403 | | |
| 108:9-24 | R; 403 | | |
| 112:4-12 | R; 403 | | |
| 112:14-15 | R; 403 | | |
| 112:21-23 | R; 403 | | |
| 113:1-3 | R; 403 | | |
| 114:2-8 | R; 403; 701, CLC | 45:8-21 | R, 403, V, SPEC, LC, O, BTS |
| 114:10-17 | R; 403, 701, CLC | | |
| 114:19-21 | R; 403 | | |
| 114:24 | R; 403 | | |

| Natera, Inc. v. CareDx Inc. (Case No. 20-cv-038)(CFC-CJB) | | | |
|---|---|---|---|
| Witness: Zachary Demko | | | |
| Date of Deposition: 2023-02-03 | | | |
| CareDx's Opening Designations | Natera's Objections | Natera's Counter-Designations | CareDx's Objections to Natera's Counter-Designations |
| 6:25-7:3 | R; 403; V; F | 10:15-20; 10:24-11:7; 23:5-24 | R, 403, V, I, BSD, NARR, OB, F, H, MIS, NR |
| 9:19-23 | R; 403; V; F | | |
| 10:3-8 | R; 403; V; F | | |
| 10:10-13 | R; 403; V; F | | |
| 11:9-11 | R; 403; V; F | | |
| 11:21-23 | R; 403; V | 12:24-13:7 | R, 403, V, BSD, NARR, H |
| 16:3-6 | R; 403; 602 | 16:8-10; 17:2-10; 34:6-24 | R, 403, V, BSD, NARR, H, SPEC |
| 18:12-25 | R; 403; 701 | | |
| 26:9-15 | R; 403; V; F | 12:24-13:7; 15:4-16:2 | R, 403, V, BSD, NARR, H, LC |
| 39:25-40:12 | R; 403; V; CS; 602 | 38:6-23; 38:24-39:19 | R, 403, V, BSD, NR, NARR, H |
| 40:14-41:12 | R; 403; V; CS; 602 | | |
| 42:2-43:3 | R; 403; CS; F; CLC | 41:13-42:1; 42:23-43:7; 34:6-24; 145:14-146:6 | R, 403, V, OB, F, BSD, NARR, H, NR |
| 43:5-14 | R; 403; CS; F; CLC | | |
| 43:16-44:1 | R; 403; CS; F; CLC | | |
| 44:3-46:18 | R; 403; CS; F; CLC | | |
| 46:22-50:7 | R; 403; CS; F; CLC | | |
| 52:16-20 | R; 403; CS; CLC; 701 | 19:16-20:11; 20:14-22; 23:5-24:5; 58:15-24; 144:21-145:5 | R, 403, V, NARR, NR, BSD, I, H, OB, F, O, LC |
| 53:9-13 | R; 403; CS; F; CLC; 701 | 53:20-54:3; 34:6-24 | R, 403, V, I, BSD, NARR, H, MIS |
| 54:21-55:2 | R; 403; CS; F; CLC; 701 | | |
| 55:11-16 | R; 403; CS; F; CLC; 701 | | |
| 56:15-25 | R; 403; CS; F; CLC; 701 | 19:16-20:11; 20:14-22; 23:5-24:5; 58:15-24 | R, 403, V, NARR, NR, BSD, H, I, OB, F, SPEC |
| 57:1-59:3 | R; 403; CS; F; CLC; 701 | | |
| 62:8-13 | R; 403; CS; F; CLC; 701 | 19:16-20:11; 20:14-22; 23:5-24:5; 58:15-24 | R, 403, V, NARR, NR, BSD, H, I, OB, F, SPEC |
| 62:17-22 | R; 403; CS; F; CLC; 701 | | |
| 62:25 | R; 403; CS; F; CLC; 701 | | |
| 63:2-4 | R; 403; CS; F; CLC; 701; MT | 53:20-54:3; 63:18-24 | R, 403, V, I, BSD, MIS, LC, H, F |
| 63:6-64:3 | R; 403; CS; F; CLC; 701; MT | | |
| 64:6 | R; 403; CS; F; CLC; 701; MT | | |
| 64:16-18 | R; 403; CS; CLC; 701 | 64:20-24; 135:9-136:1 | R, 403, V, I, NARR, OB, LC, NR, BSD |
| 64:20-65:5 | R; 403; CS; CLC; 701 | | |
| 65:7-8 | R; 403; CS; CLC; 701 | | |
| 65:12-24 | R; 403; CS; CLC; 701 | | |
| 67:13-68:3 | R; 403; CS; CLC; 701 | 66:19-67:11; 67:18-25;  135:9-136:1 | R, 403, V, I, OB, LC, NR, BSD |
| 68:6-21 | R; 403; CS; CLC; 701 | | |
| 68:23-69:2 | R; 403; CS; CLC; 701 | | |
| 69:4-18 | R; 403; CS; CLC; 701 | | |
| 69:20-70:15 | R; 403; CS; CLC; 701 | 38:24-39:19; 71:3-14 | R, 403, V, BSD, H, NR, O |
| 70:17-71:19 | R; 403; CS; CLC; 701 | | |
| 72:11-73:1 | R; 403; CS; V; F; CLC | 72:11-16; 73:8-19; 76:23-77:11 | R, 403, V, I, NARR, LC |
| 73:8-74:4 | R; 403; CS; V; F; CLC | | |
| 74:19-21 | R; 403; CS; V; F; CLC | | |
| 74:23-24 | R; 403; CS; V; F; CLC | | |
| 75:2-23 | R; 403; CS; V; F; CLC | 76:7-8 | I, V |
| 76:10-79:5 | R; 403; CS; V; F; CLC | | |
| 79:8-16 | R; 403; CS; V; F; CLC | | |
| 80:11-13 | R; 403; CS; CLC; 701; MOT | 80:21-81:15 | R, 403, V, I, BSD, PK, H, NR |
| 80:17-19 | R; 403; CS; CLC; 701; MOT | | |
| 83:8-13 | R; 403; CS; CLC; 701 | 80:21-81:15; 83:14-20; 87:2-88:12 | R, 403, V, I, BSD, PK, H, NR, OB, O, LC |
| 84:19-86:7 | R; 403; CS; CLC; 701; MT | | |
| 86:10 | R; 403; CS; CLC; 701; MT | | |
| 86:17-20 | R; 403; CS; CLC; 701; MT | | |
| 91:23 | R; 403; CS; CLC; 701; V | 92:5-93:15; 94:24-96:5 | R, 403, V, OB, LC, H, NR, F, NARR, MIS, O, PK, BSD |
| 91:25-92:3 | R; 403; CS; CLC; 701; V | 92:5-93:15; 94:24-96:5 | R, 403, V, OB, LC, H, NR, F, NARR, MIS, O, PK, BSD |
| 93:22-24 | R; 403; CS; CLC; 701; V | | |
| 94:2-22 | R; 403; CS; CLC; 701; V | | |
| 101:19-22 | R; 403; CS; CLC; 701; V | 98:25-103:22 | R, 403, V, OB, MIS, NARR, NR, O, LC, BSD, SPEC |
| 101:25-102:2 | R; 403; CS; CLC; 701; V | | |
| 102:8-11 | R; 403; CS; CLC; 701; V | | |
| 102:13-14 | R; 403; CS; CLC; 701; V | | |

Demko Zachary 2023-02-03

| CareDx's Opening Designations | Natera's Objections | Natera's Counter-Designations | CareDx's Objections to Natera's Counter-Designations |
|---|---|---|---|
| 103:24-104:1 | R; 403; CS; CLC; 701; V | | |
| 104:3-9 | R; 403; CS; CLC; 701; MT; F | 38:24-39:19; 71:3-14; 104:24-105:10; 108:12-25 | R, 403, V, BSD, H, NR, O, OB, F, SPEC, LC |
| 106:9-107:1 | R; 403; CS; CLC; 701 | | |
| 108:19-22 | R; 403; CS; CLC; 701 | | |
| 108:24-25 | R; 403; CS; CLC; 701 | | |
| 115:2-18 | R; 403; CS; V; F; CLC | 72:11-16; 73:8-19; 76:23-77:11 | R, 403, V, BSD,  NR, I |
| 115:20 | R; 403; CS; V; F; CLC | | |
| 116:1-13 | R; 403; CS; CLC; 701 | 38:24-39:19; 71:3-14; 104:24-105:10; 108:12-25 | R, 403, V, BSD, H, NR, O, OB, F, SPEC, LC |
| 116:15-22 | R; 403; CS; CLC; 701 | | |
| 116:24-25 | R; 403; CS; CLC; 701 | | |
| 117:2-19 | R; 403; CS; F; CLC | 71:3-14; 104:24-105:10; 108:12-25 | R, 403, V, BSD, O, OB, F, SPEC, NR |
| 117:21-118:4 | R; 403; CS; F; CLC | 19:16-20:11; 20:14-22; 23:5-24:5;38:24-39:19; 71:3-14; 104:24-105:10; 108:12-25 58:15-24 | R, 403, V, BSD, H, O, OB, F, NARR, MIS, SPEC, LC |
| 121:7-9 | R; 403; CS; F; CLC | | |
| 121:12-15 | R; 403; CS; F; CLC | | |
| 121:17-22 | R; 403; CS; F; CLC | | |
| 122:6-13 | R; 403; CS; V; F | 19:16-20:11; 20:14-22; 23:5-24:5; 58:15-24 | R, 403, V, BSD, OB, F, NARR, MIS, SPEC, LC |
| 122:23-123:3 | R; 403; CS; V; F; 602 | 72:11-16; 73:8-19; 76:23-77:11 | R, 403, V, BSD,  NR, I |
| 136:16-18 | R; 403; CS; CLC; 701; MOT | | |
| 136:20-137:3 | R; 403; CS; CLC; 701; MOT | | |
| 137:5-7 | R; 403; CS; CLC; 701; MOT | | |
| 137:10 | R; 403; CS; CLC; 701; MOT | | |
| 137:12-17 | R; 403; CS; CLC; 701; MOT | | |
| 139:24-140:2 | R; 403; CS; V; F; 602 | 72:11-16; 73:8-19; 76:23-77:11 | R, 403, V, BSD,  NR, I |
| 140:6-8 | R; 403; CS; F; CLC | 19:16-20:11; 20:14-22; 23:5-24:5; 58:15-24 | R, 403, V, BSD, I, H, OB, F, NARR, MIS, SPEC, LC, O |
| 140:10-21 | R; 403; CS; F; CLC | | |
| 140:24 | R; 403; CS; F; CLC | | |
| 141:1-7 | R; 403; CS; F; CLC | | |
| 141:9-25 | R; 403; CS; F; CLC | | |
| 146:7-9 | R; 403; CS; CLC; 701; V | 98:25-103:22 | R, 403, V, OB, MIS, NARR, NR, O, LC, BSD, SPEC |
| 146:11-13 | R; 403; CS; CLC; 701; V | | |
| 146:25-147:3 | R; 403; CS; F; CLC | 19:16-20:11; 20:14-22; 23:5-24:5; 58:15-24 | R, 403, V, BSD, I, H, OB, F, NARR, MIS, SPEC, LC, O |
| 147:5-11 | R; 403; CS; F; CLC | | |
| 147:13-16 | R; 403; CS; F; CLC | | |

| Natera; Inc. v. CareDx Inc. (Case No. 20-cv-038)(CFC-CJB) | | | |
|---|---|---|---|
| Witness: George Gemelos | | | |
| Date of Deposition: 2023-02-07 | | | |
| CareDx's Opening Designations | Natera's Objections | Natera's Counter-Designations | CareDx's Objections to Natera's Counter-Designations |
| 5:9-12 | | | |
| 5:14 | | | |
| 9:15-19 | F; V; 602 | 9:9-14, 119:11-120:2 | BSD, F, FOW, I, MIS, NR, OB, PK, R, SPEC, 403 |
| 11:21-25 | F | 12:1-21 | BSD, F, FOW,I, NR, PK, R, 403 |
| 19:25-20:17 | F; V; NT | | |
| 20:19-24:8 | F; V; R; NT; NAR; SCOPE | 24:9-25:9 | BSD, F, FOW,I, NR, OB, R, 403 |
| 30:2-13 | R; 403; CLC; SCOPE | | |
| 30:16-22 | R; 403; CLC; SCOPE | | |
| 30:25-31:17 | R; 403; CLC; SCOPE | | |
| 31:25-32:20 | R; 403; CLC; SCOPE | | |
| 32:23-33:18 | R; 403; CLC; SCOPE | | |
| 33:20-22 | R; 403; CLC; SCOPE | | |
| 37:22-24 | R; 403; CLC; SCOPE | | |
| 38:2-16 | R; 403; CLC; SCOPE | | |
| 38:18-39:2 | R; 403; CLC; SCOPE | | |
| 39:9-13 | F; R; 403; CLC; SCOPE | | |
| 39:16-23 | F; R; 403; CLC; SCOPE | | |
| 39:25-40:14 | F; R; 403; CLC; SCOPE | | |
| 40:16-17 | F; R; 403; CLC; SCOPE | | |
| 40:19-42:13 | F; R; 403; CLC; SCOPE; MD | | |
| 42:17-43:3 | F; R; 403; CLC; SCOPE; MD | | |
| 44:4-17 | F; R; 403; CLC; SCOPE; MD | | |
| 44:18-46:5 | F; R; 403; CLC; SCOPE; MD | | |
| 46:16-17 | R; 403; CLC; SCOPE | | |
| 46:20-25 | R; 403; CLC; SCOPE | | |
| 47:3-10 | R; 403; CLC; SCOPE | | |
| 47:12-15 | R; 403; CLC; SCOPE; 602 | | |
| 47:19-21 | R; 403; CLC; SCOPE; 602 | | |
| 54:6-9 | R; 403; CLC; SCOPE; 602 | | |
| 54:12-19 | R; 403; CLC; SCOPE; 602 | | |
| 54:22-55:5 | R; 403; CLC; SCOPE; 602 | | |
| 56:3-14 | R; 403; CLC; SCOPE; 602; MOT; MIL | | |
| 56:22-57:1 | R; 403; CLC; SCOPE; 602; MOT; MIL | | |
| 57:3-7 | R; 403; CLC; SCOPE; 602; MOT; MIL | | |
| 59:18-22 | CLC; SCOPE; 602 | | |
| 60:1-16 | CLC; SCOPE; 602 | 60:18-20; 60:23-61:3 | BSD, F, FOW, I, NR, PK, R, 403 |
| 61:5-14 | F; R; 403; SCOPE | | |
| 61:16-24 | F; R; 403; SCOPE | | |
| 62:1-3 | F; R; 403; SCOPE | | |
| 65:6-10 | F; CLC; SCOPE; 403 | | |
| 65:13-20 | F; CLC; SCOPE; 403 | | |
| 65:22-66:2 | F; CLC; CS; 701; SCOPE; 403 | | |
| 66:6-7 | F; CLC; CS; 701; SCOPE; 403 | | |
| 66:9-20 | F; CLC; CS; 701; SCOPE; 403 | | |
| 68:19-24 | F; CLC; CS; 701; SCOPE; 403 | | |
| 69:5-9 | F; CLC; CS; 701; SCOPE; 403 | | |
| 82:25-83:1-2 | F; V; CLC; SCOPE; 403 | | |
| 83:7-84:1 | F; V; CLC; SCOPE; 403 | | |
| 84:4-12 | F; V; CLC; SCOPE; 403 | | |
| 84:15-85:12 | F; V; CLC; SCOPE; 403 | | |
| 85:15-86:6 | F; V; CLC; SCOPE; 403 | | |
| 86:9-22 | F; V; CLC; SCOPE; 403 | | |
| 86:25-87:4 | F; V; CLC; SCOPE; 403 | | |
| 87:10-16 | F; V; CLC; SCOPE; 403 | | |
| 87:19-88:9 | F; V; CLC; SCOPE; 403 | | |

G. Gemelos 2023-02-07

| CareDx's Opening Designations | Natera's Objections | Natera's Counter-Designations | CareDx's Objections to Natera's Counter-Designations |
|---|---|---|---|
| 88:14-20 | F; V; CLC; SCOPE; 403 | | |
| 88:24-89:2 | F; V; CLC; SCOPE; 403 | | |
| 89:4-9 | F; V; CLC; SCOPE; 403 | | |
| 89:12-17 | F; V; CLC; SCOPE; 403 | | |
| 90:12-15 | F; V; CLC; SCOPE; 403; 701 | | |
| 90:20-91:1 | F; V; CLC; SCOPE; 403; 701; 602 | | |
| 91:12-15 | F; V; CLC; SCOPE; 403; 701; 602 | | |
| 91:17-21 | F; V; CLC; SCOPE; 403; 701; 602 | | |
| 91:23-92:12 | F; V; CLC; SCOPE; 403; 701; 602 | | |
| 94:23 | R; 403; SCOPE; MOT; 602; 701 | | |
| 95:1-6 | R; 403; SCOPE; MOT; 602; 701 | | |
| 113:17-18 | R; 403; 701; F; SCOPE; CLC | | |
| 113:21-23 | R; 403; 701; F; SCOPE; CLC | | |
| 130:12-15 | F; MT; MD; R; 403; SCOPE | | |
| 130:19-131:5 | F; MT; MD; R; 403; SCOPE | | |
| 131:8-19 | F; MT; MD; R; 403; SCOPE | | |
| 131:23-132:21 | F; MT; MD; R; 403; SCOPE | | |
| 139:22-142:5 | R; 403; CLC; MOT | 142:6-10 | BSD, F, FOW, I, NR, O, PK, R, 403 |
| 145:24-146:18 | R; 403 | 146:19-20 | BSD, F, FOW, I, NR, R, 403 |
| 147:7-9 | R; 403; F; V; 602 | | |
| 147:12-149:8 | R; 403; F; V; 602 | | |
| 150:5-9 | R; 403; F; V; 602; CS | | |
| 150:22-151:6 | R; 403; F; V; 602; CS | | |
| 151:7-152:17 | R; 403; F; V; 602; CS | | |
| 155:12-157:2 | F; V; R; 403 | | |
| 160:13-161:12 | F; V; R; 403 | | |
| 163:19-24 | F; V; R; 403 | | |
| 164:1-5 | F; V; R; 403 | | |
| 165:4-23 | F; V; R; 403 | | |
| 166:3-168:10 | R; 403 | | |
| 168:12-13 | R; 403 | | |
| 176:2-14 | V; R; 403; COMP; MT; SCOPE | | |
| 176:17-179:24 | V; R; 403; NT; SCOPE | | |
| 182:25-183:5 | R; 403; CLC; SCOPE | | |
| 183:20-184:1 | R; 403; CLC; SCOPE | | |
| 184:3-13 | R; 403; CLC; SCOPE | | |
| 184:15-16 | R; 403; CLC; SCOPE | | |
| 191:1-6 | F; R; 403; SCOPE; MOT | | |
| 194:25-195:2 | F; V; 701; SCOPE; CLC; MOT | | |
| 195:6-16 | F; V; 701; SCOPE; CLC; MOT | | |
| 195:20-196:6 | F; V; 701; SCOPE; CLC; MOT | | |
| 196:10-18 | F; V; 701; SCOPE; CLC; MOT | | |
| 196:22-197:3 | F; V; 701; SCOPE; CLC; MOT | | |
| 197:5-18 | R; 403; SCOPE; F; 602 | | |
| 198:20-199:5 | F; R; 403; SCOPE; CS | | |
| 199:8-11 | F; R; 403; SCOPE; CS | | |
| 199:14-16 | F; R; 403; SCOPE; CS | | |

G. Gemelos 2023-02-07

| Natera, Inc. v. CareDx Inc. (Case No. 20-cv-038)(CFC-CJB) | | | |
|---|---|---|---|
| Witness: Matthew Hill | | | |
| Date of Deposition: 2023-03-03 | | | |
| CareDx's Opening Designations | Natera's Objections | Natera's Counter-Designations | CareDx's Objections to Natera's Counter-Designations |
| 6:18-24 | | | |
| 16:24-17:20 | V | | |
| 19:10-20:2 | | | |
| 21:3-7 | | | |
| 25:5-10 | | | |
| 28:19-24 | F; V; R; 403 | | |
| 29:15-30:19 | F; V; R; 403 | 30:20-31:13 | R, 403, V, NR, NARR |
| 55:16-56:17 | R; 403; NT; CLC | 56:19-57:15 | R, 403, V, I, OB, LC, NR, NARR |
| 65:7-66:7 | R; 403 | | |
| 70:8-11 | F; R; 403; 701; CS; MOT | 72:4-74:2 | R, 403, SPEC, V, I, IH, LC, O, NARR, BSD |
| 70:16-71:12 | F; R; 403; 701; CS; MOT | | |
| 77:10-14 | NT | 80:21-81:2 | R, 403, SPEC, V, BSD |
| 78:24-79:9 | NT | | |
| 95:5-8 | R; 403; CLC; F | 94:8-95:3 | R, 403, SPEC, V, O, LC |
| 95:11-23 | R; 403; CLC; F | | |
| 100:22-101:3 | F; R; 403; 701; CS | | |
| 101:7-9 | F; R; 403; 701; CS | | |
| 101:11-15 | F; R; 403; 701; CS | | |
| 103:13-20 | F; R; 403; 701; CS | | |
| 103:24-105:4 | F; R; 403; 701; CS | | |
| 105:6-8 | F; R; 403; 701; CS | | |
| 105:12-107:2 | F; R; 403; 701; CS | | |
| 108:22-109:2 | F; R; 403; 701; CLC | | |
| 109:6-10 | F; R; 403; 701; CLC | 109:12-110:11 | R, 403, V, NR, BSD, F |
| 110:19-24 | F; R; 403; 701; CLC | | |
| 111:3-16 | F; R; 403; 701; CLC | | |
| 112:14-17 | F; R; 403; 701; CLC; CS | | |
| 112:21-113:15 | F; R; 403; 701; CLC; CS | | |
| 119:16-21 | F; R; 403 | 118:22-119:14 | R, 403, SPEC, V, O, LC, NARR, PK |
| 119:23-120:2 | F; R; 403 | | |
| 120:4-7 | R; 403 | 121:20-122:12; 123:4-23 | R, 403, SPEC, V, F, PK, BSD, H |
| 124:7-21 | R; 403 | | |
| 128:4-14 | NT | | |
| 129:6-11 | R; 403; NT | | |
| 130:11-15 | F; R; 403; 602 | | |
| 131:16-21 | R; 403; NT | 132:9-15 | R, 403, V, F, BSD |
| 133:11-17 | F; R; 403; 602; MOT | | |
| 138:6-9 | NT | 138:18-19 | R, 403, V, BSD |
| 139:19-141:6 | F; R; 403; CS; 602 | | |
| 142:14-19 | R; 403 | | |
| 142:21-24 | NT | | |
| 143:9-144:14 | R; 403; H | | |

M. Hill 2023-03-03

| CareDx's Opening Designations | Natera's Objections | Natera's Counter-Designations | CareDx's Objections to Natera's Counter-Designations |
|---|---|---|---|
| **Natera, Inc. v. CareDx Inc. (Case No. 20-cv-038)(CFC-CJB)** | | | |
| **Witness: David Johnson** | | | |
| **Date of Deposition: 2019-07-19** | | | |
| 8:16-19 | | | |
| 32:21-24 | R; 403; CS; MOT; Deposition from different case | 30:7-14; 30:18-31:4; 31:17-23; 33:3-6; 33:11-24 | BSD, F, I, MIS, OB, PK, R, SPEC, 403, V |
| 33:1-2 | R; 403; CS; MOT; Deposition from different case | | |
| 110:1-24 | R; 403; MOT; Deposition from different case | | |
| 111:1 | R; 403; MOT; Deposition from different case | | |

D. Johnson Illumina

| Natera, Inc. v. CareDx Inc. (Case No. 20-cv-038)(CFC-CJB) | | | |
|---|---|---|---|
| Witness: David Johnson | | | |
| Date of Deposition: 2023-02-10 | | | |
| CareDx's Opening Designations | Natera's Objections | Natera's Counter-Designations | CareDx's Objections to Natera's Counter-Designations |
| 7:4-5 | | | |
| 7:9-10 | | | |
| 10:15-20 | R; 403; CS | | |
| 14:16-19 | R; 403 | 15:4-16:14; 16:19-25 | BSD, F, FOW, I, MIS, OB, PK, R, SPEC, 403 |
| 14:23-15:3 | R; 403 | | |
| 17:19-23 | R; 403; 602; CS; F; V | | |
| 17:25-18:1 | R; 403; 602; CS; F; V | | |
| 19:7-9 | R; 403; 602; CS; F; V | 19:10-14 | BSD, F, FOW, R, SPEC, 403 |
| 19:18-20 | R; 403; 602; 701; CS; F; V; I | 18:5-15; 18:17-18; 18:23-24; 19:1-5; 19:10-14; 19:22; 21:13-19; 22:12-15 | BSD, F, FOW, I, OB, R, 403 |
| 19:24-20:1 | R; 403; 602; 701; CS; F; V | | |
| 20:3 | R; 403; 602; 701; CS; F; V | | |
| 20:5-7 | R; 403; 602; 701; CS; F; V | | |
| 20:9 | R; 403; 602; 701; CS; F; V | | |
| 20:11-13 | R; 403; 602; 701; CS; F; V | | |
| 20:16-19 | R; 403; 602; 701; COMP; CS; F; V | | |
| 20:21 | R; 403; 602; 701; COMP; CS; F; V | | |
| 25:8-9 | R; 403; 602; CS; F; V | 25:2-6; 26:19-27:6; 27:22-28:2; 28:11-20 | BSD, CP, F, FOW, I, O, OB, PK, R, SPEC, 403 |
| 25:11-14 | R; 403; 602; CS; F; V | | |
| 25:16-23 | R; 403; 602; 701; CS; F; V | | |
| 26:1-3 | R; 403; 602; 701; CS; F; V | | |
| 28:23-25 | R; 403; 602; 701; CS; F; V | | |
| 29:2 | R; 403; 602; 701; CS; F; V | | |
| 29:4-10 | R; 403; 602; 701; CS; F; V | | |
| 29:13-15 | R; 403; 602; 701; CS; F; V | | |
| 29:17-22 | R; 403; 602; 701; CS; F; V | | |
| 29:24 | R; 403; 602; 701; CS; F; V | | |
| 30:2-5 | R; 403; 602; 701; CS; F; V | | |
| 30:8-12 | R; 403; 602; 701; CS; F; V | | |
| 30:14 | R; 403; 602; 701; CS; F; V | | |
| 30:16-18 | R; 403; 602; 701; CS; F; V | | |
| 30:21-24 | R; 403; 602; 701; CS; F; V | | |
| 31:2 | R; 403; 602; 701; CS; F; V | | |
| 37:9-38:7 | R; 403; 602; CS | | |
| 38:9-12 | R; 403; 602; CS | | |
| 38:14-18 | R; 403; 602; CS | | |
| 39:2-40:12 | R; 403; CS; H; V | | |
| 40:14-25 | R; 403; CS; H; V | | |
| 41:2-5 | R; 403; CS; H; V | | |
| 43:18-24 | R; 403; CS; V | 42:20-43:11 | BSD, F, FOW, I, OB, PK, R, SPEC, 403 |
| 44:1-10 | R; 403; CS; V | | |
| 44:12-45:2 | R; 403; CS; V | | |
| 48:11-25 | R; 403; H; V; F | 47:21-48:10 | BSD, F, FOW, I, PK, R, SPEC, 403 |
| 49:11-19 | R; 403; H; V; F | | |
| 50:25-51:7 | R; 403; H; F; CS | | |
| 51:10-22 | R; 403; H; F; CS | | |
| 51:24-52:6 | R; 403; H; F; CS | | |
| 52:9-11 | R; 403; H; F; CS | | |
| 55:2-3 | R; 403; 602; 701; CS; F; I; V; MOT | 54:18-24; 55:18-56:3; 56:9-18; 63:10-21 | BSD, F, FOW, I, MIS, NR, O, OB, PK, R, SPEC, 403, V |
| 55:5-7 | R; 403; 602; 701; CS; F; I; V; MOT | | |
| 56:20-22 | R; 403; 602; 701; CS; F; I; V; MOT | | |
| 56:24-57:2 | R; 403; 602; 701; CS; F; I; V; MOT | | |

D. Johnson 2023-02-10

| CareDx's Opening Designations | Natera's Objections | Natera's Counter-Designations | CareDx's Objections to Natera's Counter-Designations |
|---|---|---|---|
| 64:13-18 | R; 403; 602; CS; F; V ; MOT | 65:3-14 | BSD, F, FOW, I, NR, O, OB, PK, R, SPEC, 403 |
| 64:20-21 | R; 403; 602; CS; F; V ; MOT | | |
| 65:16-17 | R; 403; 602; CS; F; V ; MOT | | |
| 65:19-21 | R; 403; 602; CS; F; V ; MOT | | |
| 66:22 | R; 403; 602; 701; CLC MOT | 66:11-20; 69:3-13 | BSD, F, FOW, I, MIS, O, OB, R, 403 |
| 66:25-67:3 | R; 403; 602; 701; CLC MOT | | |
| 67:6 | R; 403; 602; 701; CLC MOT | | |
| 67:13-14 | R; 403; 602; 701; CLC MOT | | |
| 67:16-18 | R; 403; 602; 701; CLC MOT | | |
| 68:6-9 | R; 403; 602; 701; CLC MOT | 67:20-68:5 | BSD, F, FOW, I, O, OB, R, 403 |
| 68:13-14 | R; 403; 602; 701; CLC MOT | | |
| 68:16 | R; 403; 602; 701; CLC MOT | | |
| 70:11-16 | R; 403; 602; 701; CLC MOT | 66:11-15; 67:20-68:5 | BSD, F, FOW, I, O, OB, R, 403 |
| 70:18-19 | R; 403; 602; 701; CLC MOT | | |
| 71:20-22 | R; 403; 602; CS; F; V | | |
| 71:24-72:6 | R; 403; 602; CS; F; V | | |
| 72:8-13 | R; 403; 602; CS; F; V | | |
| 72:15-19 | R; 403; 602; CS; F; V | | |
| 72:21 | R; 403; 602; CS; F; V | | |
| 73:4-6 | R; 403; CS; V | 73:16-22 | BSD, F, FOW, I, OB, R, 403 |
| 73:12-15 | R; 403; CS; V | | |
| 74:9-10 | R; 403; CS; V | | |
| 74:12 | R; 403; CS; V | | |
| 74:14-15 | R; 403; CS; V | | |
| 74:17 | R; 403; CS; V | | |
| 79:14-17 | R; 403; 602; CS; F; V | | |
| 79:19 | R; 403; 602; CS; F; V | | |
| 80:3-6 | R; 403; 602; CS; F; V | | |
| 80:8 | R; 403; 602; CS; F; V | | |
| 84:2-6 | R; 403; 701; CLC; V | 80:19-81:18; 88:22-89:11; 90:17-91:15 | BSD, F, FOW, I, MIS, NR, OB, R, 403 |
| 84:8-19 | R; 403; 701; CLC | | |
| 84:22-85:9 | R; 403; 701; CLC | | |
| 85:12-13 | R; 403; 701; CLC | | |
| 85:20-86:1 | R; 403; 701; CLC | | |
| 86:4-13 | R; 403; 701; CLC | | |
| 86:15-87:2 | R; 403; 701; CLC | | |
| 87:3-4 | R; 403; 701; CLC | | |
| 89:13-16 | R; 403; 701; CLC | | |
| 89:18-20 | R; 403; 701; CLC | | |
| 92:25-93:4 | R; 403; 701; CLC | | |
| 93:6-11 | R; 403; 701; CLC | | |
| 94:14-20 | R; 403; 701; CLC | | |
| 94:23-95:6 | R; 403; 701; CLC | | |
| 95:7-23 | R; 403; 602; 701; COMP; CS; F; V | 25:2-6; 54:18-24; 55:18-56:3; 56:9-18; 63:10-21 | BSD, F, FOW, I, MIS, NR, O, OB, PK, R, SPEC, 403, V |
| 95:25-96:3 | R; 403; 602; 701; CS; F; V | | |
| 96:12-15 | R; 403; 602; 701; CS; F; V | | |
| 96:17-18 | R; 403; 602; 701; CS; F; V | | |

D. Johnson 2023-02-10

| Natera, Inc. v. CareDx Inc. (Case No. 20-cv-038)(CFC-CJB) | | | |
|---|---|---|---|
| Witness: Dusan Kijacic | | | |
| Date of Deposition: 2023-03-22 | | | |
| CareDx's Opening Designations | Natera's Objections | Natera's Counter-Designations | CareDx's Objections to Natera's Counter-Designations |
| 6:17-21 | | | |
| 12:12-13 | V | | |
| 12:20 | V | | |
| 17:17-18:16 | R, 403, CS, F | 16:8-17:13 | BSD, F, FOW, I, NR, OB, PK, R, 403 |
| 18:18-19:2 | R, 403, CS, F | | |
| 26:16-20 | R, 403 | | |
| 36:22-37:3 | R, 403, CLC, F | 34:9-15; 35:4-18; 101:7-23 | BSD, F, FOW, I, NR, OB, PK, R, SPEC, 403 |
| 37:6-8 | R, 403, CLC, F | | |
| 58:2-6 | R, 403, F | 58:7-59:15 | BSD, F, FOW, I, NR, OB, R, 403 |
| 93:25-95:11 | R, 403, CLC, F | 98:9-25; 103:14-105:12 | BSD, F, FOW, I, MIS, NARR, NR, O, OB, PK, R, 403 |
| 110:14-17 | R, 403, CLC, F | | |
| 111:4-23 | R, 403, CS, F | 15:12-23 | BSD, F, FOW, I, OB, R, 403 |

| Natera, Inc. v. CareDx Inc. (Case No. 20-cv-038)(CFC-CJB) | | | |
|---|---|---|---|
| Witness: Dmitri Petrov | | | |
| Date of Deposition: 2023-04-14 | | | |
| CareDx's Opening Designations | Natera's Objections | Natera's Counter-Designations | CareDx's Objections to Natera's Counter-Designations |
| 7:9-12 | | | |
| 19:5-15 | R; 403; F; 602 | | |
| 22:21-23:2 | R; 403 | | |
| 23:7-24 | R; 403 | | |
| 24:9-16 | R; 403 | | |
| 30:5-8 | R; 403 | 29:21-30:21; 32:9-20 | R, 403, V, OB, BSD, I |
| 30:10-31:1 | R; 403 | | |
| 35:11-36:6 | R; 403; V | 34:18-35:10 | R, 403, V, BSD, NR, MIS |
| 41:11-21 | R; 403; V | 42:7-18; 43:20-44:1 | R, 403, V, BSD, I, NR |
| 44:2-5 | R; 403; V; CS | | |
| 44:7-10 | R; 403; V; CS | | |
| 44:22-45:5 | R; 403; V; CS | | |
| 47:18-22 | R; 403; V; F; 701 | 50:13-51:9; 51:13-25 | R, 403, V, I, NR, BSD, MIS |
| 48:3-11 | R; 403; V; F; 701 | | |
| 53:10-15 | R; 403; V; F; 701 | 51:13-25; 54:4-24 | R, 403, V, NR, BSD, NARR, I, SPEC |
| 62:8-13 | R; 403; V; CLC; 701 | 32:9-21; 91:4-15 | R, 403, V, BSD, OB, NR, AA |
| 62:15-19 | R; 403; V; CLC; 701 | | |
| 62:22-25 | R; 403; V; CLC; 701 | | |
| 63:14-64:8 | R; 403; V; CLC; 701 | | |
| 64:12 | R; 403; V; CLC; 701 | | |
| 64:15-24 | R; 403; V; CLC; 701 | | |
| 65:6-15 | R; 403; V; CLC; 701 | | |
| 65:18 | R; 403; V; CLC; 701 | | |
| 66:2-7 | R; 403; V; CLC; 701 | | |
| 66:10 | R; 403; V; CLC; 701 | | |
| 91:25-92:5 | R; 403; V; F | | |
| 93:11-17 | R; 403; V; F | 91:4-15 | R, 403, V, BSD, OB, AA |
| 93:19 | R; 403; V; F | | |
| 93:21-94:4 | R; 403; V; F; CS | 32:9-21; 42:6-18; 91:4-15 | R, 403, V, BSD, OB, AA, I, NR |
| 94:7-10 | R; 403; V; F; CS | | |
| 106:23-107:3 | R; 403 | | |
| 109:4-9 | R; 403 | | |
| 110:3-6 | R; 403 | 111:9-112:7 | R, 403, V, NR, I, OB, MIS |
| 110:10-16 | R; 403 | | |
| 122:20-25 | R; 403; V; F; CS | | |
| 123:4-25 | R; 403; V; F; CS | | |
| 126:4-16 | R; 403 | 32:9-21; 42:6-18; 91:4-15 | R, 403, V, BSD, OB, AA, I, NR |
| 126:20-127:3 | R; 403 | | |
| 127:17-19 | R; 403; 602 | 42:7-18; 43:20-44:1 | R, 403, V, I, NR, BSD |
| 127:22-24 | R; 403; 602 | | |
| 129:20-24 | R; 403; CLC; 701 | 128:4-18 | R, 403, V, OB, NR, BSD, F, NARR |
| 130:1 | R; 403; CLC; 701 | | |
| 135:20-25 | R; 403; CLC; 701; F | | |
| 136:5-7 | R; 403; CLC; 701; F | | |
| 137:14-17 | R; 403; CLC; 701; F | | |
| 137:21-23 | R; 403; CLC; 701; F | | |
| 139:25-140:2 | R; 403; V; F; 701; CLC | 140:7-21; 143:7-23; 144:1-11 | R, 403, V, NR, O, OB, SPEC, F, NARR |
| 140:4-5 | R; 403; V; F; 701; CLC | | |
| 142:6-8 | R; 403; V; F; 701; CLC | | |
| 142:12-25 | R; 403; V; F; 701; CLC | | |
| 143:4-5 | R; 403; V; F; 701; CLC | | |

| Natera, Inc. v. CareDx Inc. (Case No. 20-cv-038)(CFC-CJB) | | | |
|---|---|---|---|
| Witness: Adam Prewett | | | |
| Date of Deposition: 2023-03-30 | | | |
| CareDx's Opening Designations | Natera's Objections | Natera's Counter-Designations | CareDx's Objections to Natera's Counter-Designations |
| 5:13-6:1 | -- | | |
| 10:8-18 | R; 403; F; 602 | | |
| 18:18-23 | R; 403; F; 602 | | |
| 26:24-27:17 | R; 403; 602; 701; CS; F; SCOPE; MOT | 143:16-144:22 | R, 403, LW |
| 31:9-21 | R; 403; 602; 701; CS; F; SCOPE; MOT | | |
| 31:24-32:10 | R; 403; 602; 701; CS; F; SCOPE; MOT | | |
| 38:8-11 | SCOPE; 602; CS | | |
| 38:14-16 | R; 403; SCOPE; MOT; 602; CS | | |
| 45:2-6 | R; 403; SCOPE; MOT; 602; CS | | |
| 53:4-17 | V; SCOPE; 701 | 154:6-17 | R, 403, NR, LW |
| 57:12-18 | SCOPE | | |
| 59:8-21 | R; 403; SCOPE; H; MD | | |
| 59:24 | R; 403; SCOPE; H; MD | | |
| 66:24-67:24 | R; 403; 602; 701; CS; F; SCOPE | | |
| 105:18-20 | R; 403; 602; F; H; SCOPE | | |
| 105:25-106:7 | R; 403; 602; F; H; SCOPE | | |
| 106:10-12 | R; 403; 602; F; H; SCOPE | | |
| 106:14-24 | R; 403; 602; F; H; SCOPE | | |
| 107:1-10 | R; 403; 602; F; H; SCOPE | | |
| 114:6-115:4 | R; 403; 701 | | |
| 115:12-25 | R; 403; 701 | | |
| 116:8-117:20 | R; 403; 701; CLC | | |
| 117:25-118:2 | R; 403; 701; CLC | | |
| 118:6-25 | R; 403; 701 | | |
| 119:24-120:12 | R; 403; 701 | | |
| 120:17-23 | R; 403; 701; 602; CS | | |
| 121:1-2 | R; 403; 701; 602; CS | | |
| 121:19-21 | R; 403 | | |
| 122:3-17 | R; 403 | | |
| 122:19-123:13 | R; 403; MOT | 123:14-21 | R, 403, LW |
| 124:2-9 | R; 403 | | |
| 125:10-17 | NT | | |
| 126:15-18 | R; 403; 602; CLC; 701 | | |
| 126:21 | R; 403; 602; CLC; 701 | | |
| 127:18-25 | -- | 128:16-18; 129:15-18 | R, 403, LW |
| 129:23-130:10 | R; 403; 701; CLC | | |
| 130:14-131:10 | R; 403; 701; CLC; 602 | | |
| 131:25-132:6 | -- | | |
| 132:17-19 | -- | | |
| 134:24-136:1 | R; 403; V | | |
| 138:2-7 | -- | | |
| 138:21-139:9 | R; 403; V; 602; CS; 701 | | |
| 139:11-140:5 | R; 403; V; 602; CS; 701 | | |
| 140:10-14 | R; 403; 602 | | |
| 141:20-142:7 | R; 403; V; SCOPE | | |
| 156:3-24 | R; 403; 602; 701; CS; F; SCOPE; V | 157:8-159:3; 159:23-160:4 | R, 403, NR, MIS, LW |
| 164:4-18 | R; 403; SCOPE | | |
| 176:9-177:11 | R; 403; 701; CS; SCOPE | | |

A. Prewett 2023-03-30

| Natera, Inc. v. CareDx Inc. (Case No. 20-cv-038)(CFC-CJB) | | | |
|---|---|---|---|
| Witness: Matthew Rabinowitz | | | |
| Date of Deposition: 2023-04-18 | | | |
| CareDx's Opening Designations | Natera's Objections | Natera's Counter-Designations | CareDx's Objections to Natera's Counter-Designations |
| 10:5-8 | -- | | |
| 40:13-22 | SCOPE | | |
| 41:6-11 | R; 403; 602; CS; V; SCOPE | | |
| 44:20-22 | R; 403; SCOPE | 48:6-50:10 | R, 403, NR, LW |
| 46:19-24 | R; 403; MIL | | |
| 52:20-53:11 | R; 403; MIL | 53:12-54:19; 54:23-55:24; 57:7-58:6; 61:23-62:13; 107:19-108:8 | R, 403, NARR, LW, SPEC, PK |
| 58:12-15 | NT; R; SCOPE | | |
| 60 9-13 | NT; R; SCOPE | 90:14-18 | R, 403, LW |
| 62:19-23 | NT; R; SCOPE | | |
| 66:1-4 | R; 403; V; SCOPE | 66:5-20; 249:22-250:15 | R, 403, NR, LW |
| 69:16-20 | NT; R; SCOPE | | |
| 74:4-20 | R; 403; 602; V | 74:21-77:18; 87:14-89:13 | R, 403, NARR, SPEC, LW |
| 85:1-15 | R; 403; V; SCOPE | | |
| 94:24-95:4 | R; 403; H; NT | 96:22-97:3; 97:18-98:6; 98:10-16 | R, 403, NR, LW |
| 95:12-21 | R; 403; H | | |
| 99:1-5 | R; 403; NT | | |
| 100:22-101:7 | R; 403; 602; CS; F; V; SCOPE | | |
| 103:4-6 | R; 403; NT | | |
| 107:11-18 | R; 403; 602; CS; H; SCOPE | 109:5-22 | R, 403, LW |
| 112:24-113:9 | R; 403; 701; CS; F; SCOPE | | |
| 117:1-8 | R; 403; 701; CS; F; SCOPE | | |
| 118:19-21 | R; 403; F; CS; SCOPE | | |
| 119:17-21 | R; 403; 602; MIL; SCOPE | | |
| 126:9-11 | R; 403; SCOPE | | |
| 126:24-127:6 | R; 403; SCOPE | | |
| 130:24-131:4 | R; 403; NT | | |
| 135:10-14 | R; 403; NT | | |
| 136:3-12 | R; 403; 602; CS; V; SCOPE | 137:20-139:5 | R, 403, NARR, NR, LW |
| 142:1-14 | R; 403; 701; V; SCOPE | 142:15-143:6; 257:22-259:18 | R, 403, SPEC, PK, LW, L, NARR |
| 143:7-17 | R; 403; 701; V; SCOPE | | |
| 144:10-12 | R; 403; 701; V; SCOPE; INQA | 144:13-146:6; 146:13-22 | R, 403, NR, NARR, LW |
| 148:18-22 | R; 403; 701; SCOPE | | |
| 149:7-10 | R; 403; 701; SCOPE | | |
| 150:4-151:9 | R; 403; V; CS | 151:10-152:2 | R, 403, PK, SPEC, LW |
| 152:3-7 | R; 403; NT | | |
| 154:23-155:1 | R; 403; INQA; MD | 152:14-153:10; 156:3-9; 160:2-9; 165:17-166:2 | R, 403, SPEC, PK, LW, NARR |
| 161:20-21 | R; 403 | 162:1-3 | R, 403, LW |
| 162:4-22 | R; 403; SCOPE | | |
| 167:3-12 | R; 403; CS; 602; SCOPE | | |
| 169:14-18 | R; 403; CS; 602; SCOPE | | |
| 170:22-171:14 | R; 403; CS; 602; SCOPE | | |
| 173:25-174:18 | R; 403; 701; SCOPE | | |
| 176:4-16 | R; 403; CLC | | |
| 177:24-178:9 | R; 403; V | | |
| 179:1-180:5 | R; 403; F; CS; V; INQA | 178:10-25; 180:6-21 | R, 403, NR, LW |
| 189:25-190:24 | R; 403; 602; 701; CLC; CS; F; V | | |
| 193:23-194:25 | R; 403; 602; 701; CLC; CS; F; V | | |
| 197:17-198:1 | R; 403; 701; SCOPE | | |
| 198:10-18 | R; 403; 701; SCOPE | | |
| 203:16-204:22 | R; 403; 701; CLC; SCOPE | 256:21-257:14 | R, 403, L, NARR, LW |
| 206:16-22 | R; 403; NT; CLC; 602; CS | | |
| 206:24-207:19 | R; 403; NT; CLC; 602; CS | | |
| 208:11-210:15 | R; 403; NT; CLC; 602; CS; V; MT | | |
| 211:2-23 | R; 403; NT; CLC; 602; CS; V; F | | |
| 212:22-213:1 | R; 403; V; 701; SCOPE | | |
| 213:3-4 | R; 403; V; 701; SCOPE | | |
| 213:6-17 | R; 403; 602; F; CLC | | |
| 214:18-25 | R; 403; 602; 701; CLC | | |
| 215:20-216:4 | R; 403; 701; CLC; MOT | | |
| 216:7-18 | R; 403; 701; CLC; MOT | | |
| 217:3-7 | R; 403; 701; CLC; MOT | | |
| 217:9-20 | R; 403; 701; CLC; MOT | | |
| 217:22-25 | R; 403; 701; CLC; MOT | | |
| 218:2-11 | R; 403; 701; CLC; MOT | | |
| 218:13-17 | R; 403; 701; CLC; MOT | | |
| 218:19-219:9 | R; 403; 701; CLC; MOT | 219:11-24 | R, 403, LW |

| CareDx's Opening Designations | Natera's Objections | Natera's Counter-Designations | CareDx's Objections to Natera's Counter-Designations |
|---|---|---|---|
| 221:25-222:16 | R; 403; 701; CLC; MOT | 221:11-24 | R, 403, NR, LW |
| 222:19-223:25 | R; 403; 701; CLC; MOT; V | | |
| 224:1-12 | R; 403; 701; SCOPE | | |
| 225:4-226:10 | R; 403; CLC; 701; 602; CS; F; SCOPE | | |
| 229:19-230:18 | R; 403; CLC; 701; 602; CS; F; SCOPE | | |
| 230:24-231:9 | R; 403; CLC; 701; 602; CS; F; SCOPE | | |
| 232:7-12 | R; 403; 701; PRIV; SCOPE | | |
| 235:4-16 | R; 403; 701; PRIV; SCOPE | | |
| 235:25-236:1 | R; 403; 701; PRIV; SCOPE | | |
| 236:6-24 | R; 403; 701; PRIV; SCOPE | | |
| 237:2-4 | R; 403; 701; PRIV; SCOPE | | |
| 239:8-17 | R; 403; F; 602; SCOPE | | |
| 240:17-241:1 | R; 403; F; 602; SCOPE | | |
| 243:9-16 | R; 403; F; 602; SCOPE | | |
| 244:25-245:5 | R; 403; NT | | |
| 248:22-249:21 | R; 403; V | | |
| 250:20-251:1 | R; 403; NT | | |
| 252:11-253:15 | R; 403; SCOPE | | |
| 254:11-21 | R; 403; SCOPE; H | | |
| 255:4-5 | -- | 255:6-21 | R, 403, SPEC, PK, LW, L, NR |
| 255:22-256:10 | R; 403; SCOPE; CS; 602 | | |
| 261:10-15 | R; 403; SCOPE | | |
| 263:1-15 | R; 403; 602; 701; AF; CLC; CS; SCOPE | | |
| 266:16-267:6 | R; 403; 602; 701; CLC; CS; SCOPE; MT; V | | |
| 267:25-268:13 | R; 403; 602; 701; CLC; CS; SCOPE; MT; V | 276:10-277:5 | R, 403, L, LW |

M. Rabinowitz 2023-04-18

| Natera, Inc. v. CareDx Inc. (Case No. 20-cv-038)(CFC-CJB) | | | |
| Witness: Matthew Rabinowitz | | | |
| Date of Deposition: 2023-07-17 | | | |
| CareDx's Opening Designations | Natera's Objections | Natera's Counter-Designations | CareDx's Objections to Natera's Counter-Designations |
|---|---|---|---|
| 7:18-23 | -- | | |
| 14:8-15:9 | -- | 12:13-14:7 | R, 403, NARR |
| 18:8-15 | -- | 17:16-18:7; 23:6-14 | R, 403, O, I, PK, F, BSD |
| 23:19-24:5 | R; 403 | | |
| 24:7-25:25 | R; 403 | | |
| 34:24-35:2 | R; 403 | | |
| 35:5-20 | R; 403 | | |
| 36:5-37:8 | R; 403; F; CS | 37:9-24 | R, 403, PK, F, LW |
| 39:1-10 | R; 403; F; CS | 39:11-41:8 | R, 403, PK, F, NARR, LW |
| 42:4-8 | -- | | |
| 43:24-25 | R; 403; NT | | |
| 44:2-5 | -- | | |
| 51:11-20 | R; 403; F | | |
| 55:1-58:20 | R; 403; MT | 60:19-61:12 | R, 403, NR, LW |
| 61:14-22 | R; 403; INQA | 61:23-62:19; 63:10-14 | R, 403, NR, LW, I |
| 63:3-6 | R; 403; INQA | | |
| 64:13-20 | R; 403 | 64:22-65:11 | R, 403, NR, LW |
| 66:23-67:8 | R; 403; F | | |
| 71:17-76:17 | R; 403; F; 602; CLC; V | | |
| 80:7-12 | R; 403 | 82:11-17 | R, 403, NR, LW |
| 83:2-6 | R; 403 | | |
| 85:13-19 | R; 403; CLC | 86:10-87:6 | R, 403, NR, LW |
| 87:7-19 | R; 403 | | |
| 91:6-15 | R; 403; SCOPE | | |
| 92:1-14 | -- | | |
| 93:6-12 | R; 403 | 93:13-94:11 | R, 403, NR, NARR, LW |
| 98:20-100:7 | R; 403 | 97:13-24; 100:8-24 | R, 403, NR, LW |
| 100:25-101:11 | R; 403 | | |
| 104:1-7 | R; 403 | | |
| 108:21-109:1 | R; 403 | | |
| 113:4-10 | R; 403; V | | |
| 114:19-25 | R; 403; V | 115:1-116:2 | R, 403, NR, NARR, LW |
| 116:3-117:7 | R; 403; CS | | |
| 120:2-9 | R; 403; CS | | |
| 125:21-126:3 | R; 403; CS | | |
| 150:6-151:16 | R; 403 | | |
| 161:16-163:25 | R; 403; SCOPE | | |

| Natera, Inc. v. CareDx Inc. (Case No. 20-cv-038)(CFC-CJB) | | | |
|---|---|---|---|
| Witness: Allison Ryan | | | |
| Date of Deposition: 2023-02-28 | | | |
| CareDx's Opening Designations | Natera's Objections | Natera's Counter-Designations | CareDx's Objections to Natera's Counter-Designations |
| 8:3-6 | | | |
| 13:19-14:2 | R; 403; 602; CS | 11:12-20; 12:3-13; 14:12-15; 152:12-21 | R, 403, V, BSD, O, OB, PK, SPEC |
| 21:10-17 | R; 403; V | | |
| 23:24-24:4 | R; 403; 602; CS; F; V | 24:25-25:5; 29:9-18 | R, 403, V, BSD, SPEC, PK, O, H |
| 24:6-7 | R; 403; 602; CS; F; V | | |
| 39:5-24 | R; 403 | | |
| 62:4-7 | R; 403; V; CLC; 701 | 62:24-63:24; 132:17-133:13 | R, 403, V, O, OB, BSD, MIS, LC |
| 62:11-15 | R; 403; V; CLC; 701 | | |
| 62:17-22 | R; 403; V; CLC; 701 | | |
| 76:1-19 | R; 403 | | |
| 76:22-23 | R; 403 | | |
| 79:6-80:20 | R; 403; 602; CS; MIL | | |
| 83:16-19 | R; 403; CS; MIL; 602 | | |
| 83:23-84:2 | R; 403; CS; MIL; 602 | | |
| 100:6-10 | R; 403; 602; 701; CLC | 100:19-101:6; 139:9-20; 148:11-21 | R, 403, V, NR, BSD, O, NARR, AA, F, LC, OB |
| 100:14-17 | R; 403; 602; 701; CLC | | |
| 104:20-25 | R; 403; 701; CLC; MIL; MOT | 103:17-20; 104:2-10; 105:12-24;  106:18-107:20; 125:8-14; 159:13-17 | R, 403, V, NR, O, OB, LC, I, MIS, BSD |
| 105:4-10 | R; 403; 701; CLC; MIL; MOT | | |
| 110:18-111:1 | R; 403; 602; 701; CS; F; V | 14:16-15:1; 108:22-109:14 | R, 403, V, BSD, NARR, F |
| 111:4-8 | R; 403; 602; 701; CS; F; V | | |
| 111:18-23 | R; 403; 602; 701; CS; F; V | | |
| 112:2-6 | R; 403; 602; 701; CS; F; V | | |
| 114:7-11 | R; 403; 602; 701; CS; F; V | | |
| 114:14-23 | R; 403; 602; 701; CS; F; V | | |
| 114:25-115:8 | R; 403; 602; 701; CS; F; V | | |
| 115:11-25 | R; 403; 602; 701; CS; F; V | | |
| 116:4-10 | R; 403; 602; 701; CS; F; V | | |
| 117:3-6 | R; 403; 602; 701; CS; F; V | | |
| 117:9-17 | R; 403; 602; 701; CS; F; V | | |
| 117:20-25 | R; 403; 602; 701; CS; F; V | | |
| 118:3-8 | R; 403; 602; 701; CS; F; V | | |
| 118:11-18 | R; 403; 602; 701; CS; F; V | | |
| 118:23-119:1 | R; 403; 602; 701; CS; F; V | | |
| 119:19-22 | R; 403; 602; CS; F; V | 14:3-15:1 | R, 403, V, I, BSD, NR, PK |
| 119:25-120:10 | R; 403; 602; CS; F; V | | |
| 120:13-22 | R; 403; 602; CS; F; V | | |
| 120:25-121:10 | R; 403; 602; CS; F; V | | |
| 121:13-22 | R; 403; 602; CS; F; V | | |
| 121:24-122:3 | R; 403; 602; CS; F; V | | |
| 123:14-17 | R; 403; 602; 701; CS; F; V | | |
| 123:20-24 | R; 403; 602; 701; CS; F; V | | |
| 124:1-2 | R; 403; 602; 701; CS; F; V | | |
| 124:5-10 | R; 403; 602; 701; CS; F; V | | |
| 128:2-3 | R; 403; 602; CS; F; V | | |
| 128:6-7 | R; 403; 602; CS; F; V | | |
| 155:22-156:3 | R; 403; MIL; F; V; CS | | |
| 156:5-7 | R; 403; MIL; F; V; CS | | |

A. Ryan 2023-02-28

| Natera, Inc. v. CareDx Inc. (Case No. 20-cv-038)(CFC-CJB) | | | |
|---|---|---|---|
| Witness: Joshua Sweetkind-Singer | | | |
| Date of Deposition: 2023-04-21 | | | |
| CareDx's Opening Designations | Natera's Objections | Natera's Counter-Designations | CareDx's Objections to Natera's Counter-Designations |
| 7:24-8:6 | | | |
| 13:5-8 | NT | | |
| 14:12-15:18 | R;403 | | |
| 19:14-22 | | | |
| 20:3-16 | R; 403 | | |
| 20:19-21 | R; 403 | | |
| 20:23-21:24 | | | |
| 26:1-23 | R; 403 | | |
| 27:17-28:4 | R; 403 | | |
| 29:20-30:6 | F; R; 403; CS | | |
| 32:20-33:1 | F; R; 403; CS | | |
| 33:5-6 | F; R; 403; CS | | |
| 33:8-19 | F; R; 403; CS | | |
| 33:23-34:10 | F; R; 403; CS; V | | |
| 35:10-14 | NT | | |
| 38:2-6 | F; R; 403; CS | | |
| 38:10-13 | F; R; 403; CS | | |
| 39:4-20 | R; 403 | | |
| 40:3-14 | F; R; 403; CS | | |
| 40:18-41:5 | F; R; 403; CS | | |
| 42:11-19 | F; MT | | |
| 42:23-43:1 | | | |
| 43:3-11 | V; CLC; CS; R; 403 | | |
| 43:15-45:11 | V; CLC; CS; R; 403 | | |
| 49:7-11 | F; 701 | | |
| 52:21-53:1 | NT | 162:16-163:16 | R, 403, SPEC, V, F, BSD, NARR |
| 60:17-21 | F; MT | | |
| 61:1-6 | F; MT | | |
| 61:16-19 | F; MT | | |
| 61:23-62:4 | F; MT | | |
| 65:24-66:22 | F; R; 403; CS; CLC; 701 | | |
| 67:12-13 | F; R; 403; CS; CLC; 701 | | |
| 70:16-71:1 | F; CS | | |
| 71:5-12 | F; CS | | |
| 71:14-17 | F; CS; R; 403 | | |
| 71:20-72:12 | F; CS; R; 403 | | |
| 72:24-73:6 | NT | | |
| 77:9-22 | F; R; 403 | | |
| 81:10-20 | R; 403 | 81:21-23; 82:16-20 | R, 403, SPEC, V, H, MIS, BSD, NR, I |
| 83:16-17 | F; R; 403 | | |
| 84:3-4 | F; R; 403 | | |
| 86:1-3 | F; R; 403; CS; CLC | | |
| 86:8 | F; R; 403; CS; CLC | | |
| 88:13-17 | F; R; 403; CS; CLC | | |
| 89:4-21 | F; R; 403; CS; CLC | | |
| 89:23-90:6 | F; R; 403; V; CLC; 701 | | |
| 90:15-91:7 | F; R; 403; V; CS; CLC; 701 | | |
| 91:9-12 | F; R; 403 | 91:13-15; 91:24-92:4 | R, 403, SPEC, V, NARR, NR, BSD |
| 96:24-97:4 | NT | 161:12-162:5 | |
| 97:20-98:5 | NT | | |
| 101:6-18 | F; R; 403 | | |
| 107:15-18 | F; R; 403; CS; CLC | 161:12-162:5 | R, 403, V, L, NARR, BSD |
| 107:23-108:8 | F; R; 403; CS; CLC | | |
| 108:10-109:1 | F; R; 403; CS; CLC | | |
| 111:7-12 | NT | | |
| 114:11-13 | F; R; 403; CLC; CS | | |
| 114:18-115:6 | F; R; 403; CLC; CS | | |
| 115:8-9 | F; R; 403; CLC; CS | | |

| CareDx's Opening Designations | Natera's Objections | Natera's Counter-Designations | CareDx's Objections to Natera's Counter-Designations |
|---|---|---|---|
| 115:12-117:13 | F; R; 403; CLC; CS | | |
| 117:15-17 | F; R; 403; CLC; CS; 701 | | |
| 117:24-118:13 | F; R; 403; CLC; CS; 701 | | |
| 118:15-16 | F; R; 403; CLC; CS | | |
| 118:21-119:5 | F; R; 403; CLC; CS | | |
| 119:7-9 | F; R; 403; CS | | |
| 119:14-20 | F; R; 403; CS | | |
| 121:18-122:8 | F; R; 403; MT; CS | | |
| 122:12-13 | F; R; 403; MT; CS | | |
| 124:16-18 | F; R; 403; V; CLC; 701 | | |
| 125:5-18 | F; R; 403; V; CLC; 701 | | |
| 127:19-23 | F; R; 403; V; CLC; 701 | | |
| 128:2-20 | F; R; 403; V; CLC; 701 | | |
| 132:9-11 | F; R; 403; CS; CLC; 701 | 161:12-162:5 | R, 403, V, L, NARR, BSD |
| 132:19-133:12 | F; R; 403; CS; CLC; 701 | | |
| 133:14-17 | F; R; 403; CLC; 701 | | |
| 133:21-135:5 | F; R; 403; CLC; 701 | | |
| 138:7-8 | F; R; 403; CLC; CS | | |
| 138:15-24 | F; R; 403; CLC; CS | | |
| 139:2-4 | F; R; 403; CLC; CS | | |
| 139:9-12 | F; R; 403; CLC; CS | | |
| 140:11-12 | F; R; 403; CLC; CS | | |
| 140:18-20 | F; R; 403; CLC; CS | | |
| 140:22-141:2 | F; R; 403; CLC; CS; 701 | | |
| 141:6 | F; R; 403; CLC; CS; 701 | | |
| 142:16-18 | F; R; 403; CLC; CS; I | | |
| 146:1-8 | NT | | |
| 148:2-3 | F; R; 403; CLC; CS | 161:12-162:5 | R, 403, V, L, NARR, BSD |
| 148:8 | F; R; 403; CLC; CS | | |
| 148:10-11 | F; R; 403; CLC; CS | | |
| 148:14-19 | F; R; 403; CLC; CS | | |
| 148:22-23 | F; R; 403; CLC; CS; I | 149:11-12; 149:21-150:10; 161:12-162:5 | R, 403, V, L, LC, F, SPEC, O, NARR, BSD |
| 149:5-9 | F; R; 403; CLC; CS | | |
| 154:3-9 | NT | | |
| 156:2-5 | F; R; 403; MT; CLC | 161:12-162:5; 163:17-18; 163:19-22 | R, 403, V, L, NARR, BSD, F |
| 156:17-19 | F; R; 403; CLC; CS | | |
| 156:24-157:2 | F; R; 403; CLC; CS | | |
| 157:19-24 | F; R; 403; CLC; CS | | |
| 158:4-19 | F; R; 403; CLC; CS | | |
| 158:21-23 | F; R; 403; CLC; CS | | |
| 159:6-10 | F; R; 403; CLC; CS | | |
| 164:6-9 | F; R; 403 | | |
| 164:13 | F; R; 403 | | |
| 164:16-19 | F; R; 403 | | |
| 164:21-24 | F; R; 403 | | |
| 165:6-13 | F; R; 403 | | |

J. Sweetkind-Singer 2023-04-21

| CareDx's Opening Designations | Natera's Objections | Natera's Counter-Designations | CareDx's Objections to Natera's Counter-Designations |
|---|---|---|---|
| Natera, Inc. v. CareDx Inc. (Case No. 20-cv-038)(CFC-CJB) | | | |
| Witness: Xu Jing | | | |
| Date of Deposition: 2023-02-24 | | | |
| 6:18-21 | | | |
| 25:24-26:4 | R, 403 | 26:5-17 | BSD, F, I, R, 403 |
| 27:8-10 | R, 403, F | 26:21-27:7; 27:11-24 | BSD, F, I, R, 403 |
| 38:18-21 | R, 403, CS, V | | |
| 38:24 | R, 403, CS, V | | |
| 56:5-57:5 | R, 403, CLC, CS, 701 | 41:16-43:3; 46:4-14; 85:2-89:3 | BSD, F, I, NR, OB, PK, R, SPEC, 403 |
| 57:16-22 | R, 403, CLC, CS, 701 | | |
| 57:25-58:4 | R, 403, CLC, CS, 701 | | |
| 67:3-68:22 | R; 403; CS | | |
| 68:25-69:3 | R; 403; CS | | |
| 69:12-15 | R; 403; CS | | |
| 69:18-70:17 | R; 403; CS | | |
| 70:21-71:16 | R; 403; CS | | |
| 79:16-18 | R, 403, CLC, CS, 701 | | |
| 79:23-80:1 | R, 403, CLC, CS, 701 | | |
| 81:7-10 | R; 403 | 80:17-81:6 | BSD, F, I, NR, OB, R, 403 |
| 81:13-17 | R; 403 | 41:16-43:3; 46:4-14; 85:2-89:3 | BSD, F, I, NR, OB, PK, R, 403 |
| 95:11-12 | R, 403, CS, V | 47:19-48:3; 95:21-96:1 | BSD, F, I, R, 403 |
| 95:15-19 | R, 403, CS, V | | |

J. Xu 2023-02-24

| Natera, Inc. v. CareDx Inc. (Case No. 20-cv-038)(CFC-CJB) | | | |
|---|---|---|---|
| Witness: Bernhard Zimmerman | | | |
| Date of Deposition: 2023-03-08 | | | |
| CareDx's Opening Designations | Natera's Objections | Natera's Counter-Designations | CareDx's Objections to Natera's Counter-Designations |
| 7:24-8:2 | -- | | |
| 20:3-6 | R; 403; 602; 701; CS; SCOPE | 20:12-21:9; 21:18-22; 22:14-17 | R, 403, SPEC, O |
| 20:8-10 | R; 403; 602; 701; CS; SCOPE | | |
| 21:10-13 | R; 403; 602; 701; CS; SCOPE | | |
| 21:16 | R; 403; 602; 701; CS; SCOPE | | |
| 22:5-8 | R; 403; 602; 701; CS; SCOPE | | |
| 22:11-12 | R; 403; 602; 701; CS; SCOPE | | |
| 22:18-21 | R; 403; 602; 701; CS; SCOPE | | |
| 22:24 | R; 403; 602; 701; CS; SCOPE | | |
| 24:24-25 | R; 403; 602; 701; CS; SCOPE | 20:12-21:9; 21:18-22; 22:14-17; 25:15-22 | R, 403, AA, SPEC, O |
| 25:2-5 | R; 403; 602; 701; CS; SCOPE | | |
| 25:8-11 | R; 403; 602; 701; CS; SCOPE | | |
| 25:13 | R; 403; 602; 701; CS; SCOPE | | |
| 32:25-33:2 | R; 403; 602; 701; SCOPE | | |
| 33:5-9 | R; 403; 602; 701; SCOPE | | |
| 33:12-14 | R; 403; 602; 701; SCOPE | | |
| 34:18-24 | R; 403; F; SCOPE | 35:3-10 | R, 403 |
| 38:7 | R; 403; 701; CLC; F; MOT; SCOPE | | |
| 38:9 | R; 403; 701; CLC; F; MOT; SCOPE | | |
| 38:11-13 | R; 403; 701; CLC; F; MOT; SCOPE | | |
| 40:7-11 | R; 403; 701; CLC; F; SCOPE | | |
| 40:14-16 | R; 403; 701; CLC; F; SCOPE | | |
| 40:18-23 | R; 403; 701; CLC; F; SCOPE | | |
| 41:1 | R; 403; 701; CLC; F; SCOPE | | |
| 42:20-24 | R; 403; 701; CLC; F; SCOPE | | |
| 43:2-5 | R; 403; 701; CLC; F; SCOPE | | |
| 49:5-9 | R; 403; 701; CLC; F; SCOPE | | |
| 49:12-13 | R; 403; 701; CLC; F; SCOPE | | |
| 50:24-51:4 | R; 403; 701; SCOPE | | |
| 51:7-8 | R; 403; 701; SCOPE | | |
| 56:6-12 | R; 403; 701; CLC; SCOPE; MOT | 51:17-23; 51:25-52:6; 52:8-53:15; 53:18-21; 53:22-54:11; 54:22-55:3; 55:13-56:5 | R, 403, O, PK, SPEC, BTS, I |
| 56:14-24 | R; 403; 701; CLC; SCOPE; MOT | | |
| 57:2-11 | R; 403; 701; CLC; SCOPE; MOT | | |
| 57:14-15 | R; 403; 701; CLC; SCOPE; MOT | | |
| 57:17-22 | R; 403; 701; CLC; SCOPE; MOT | | |
| 57:24-25 | R; 403; 701; CLC; SCOPE; MOT | | |
| 58:2-7 | R; 403; 701; CLC; SCOPE; MOT | | |
| 58:9-59:1 | R; 403; 701; CLC; SCOPE; MOT | | |
| 59:3-4 | R; 403; 701; CLC; SCOPE; MOT | | |
| 59:6-13 | R; 403; 701; CLC; SCOPE; MOT | | |
| 59:16-60:5 | R; 403; 701; CLC; SCOPE; MOT | | |
| 60:8-21 | R; 403; 701; CLC; SCOPE; MOT | | |
| 60:24-25 | R; 403; 701; CLC; SCOPE; MOT | | |
| 61:2-12 | R; 403; 701; CLC; SCOPE; MOT | | |
| 61:15-25 | R; 403; 701; CLC; SCOPE; MOT | | |
| 62:2-5 | R; 403; 701; CLC; SCOPE; MOT | | |
| 62:8-15 | R; 403; 701; CLC; SCOPE; MOT | | |
| 62:18-63:9 | R; 403; 701; CLC; SCOPE; MOT | | |
| 63:13-14 | R; 403; 701; CLC; SCOPE; MOT | | |
| 63:16-23 | R; 403; 701; CLC; SCOPE; MOT | | |
| 64:1 | R; 403; 701; CLC; SCOPE; MOT | | |
| 67:7-12 | R; 403; 701; CLC; SCOPE; MOT | | |
| 70:3-7 | R; 403; 602; SCOPE | 74:7-21; 93:19-94:17 | R, 403, BTS, LC, O, NARR, NR |
| 70:10-11 | R; 403; 602; SCOPE | | |
| 70:13-14 | R; 403; 602; SCOPE | | |

| CareDx's Opening Designations | Natera's Objections | Natera's Counter-Designations | CareDx's Objections to Natera's Counter-Designations |
|---|---|---|---|
| 70:17 | R; 403; 602; SCOPE | | |
| 70:19-20 | R; 403; 602; SCOPE | | |
| 70:22-71:9 | R; 403; 602; SCOPE | | |
| 71:15-19 | R; 403; 602; SCOPE; F | | |
| 71:21-22 | R; 403; 602; SCOPE; F | | |
| 74:23-75:1 | R; 403; 602; SCOPE; F | | |
| 75:4-5 | R; 403; 602; SCOPE; F | | |
| 75:17-20 | R; 403; 602; SCOPE; F | | |
| 75:24-76:8 | R; 403; 602; SCOPE; F | | |
| 78:20-79:1 | -- | 78:11-18 | R, 403, F |
| 79:3-24 | -- | | |
| 80:7-10 | 602; SCOPE; F | | |
| 80:12-19 | 602; SCOPE; F | | |
| 80:21-81:3 | 602; SCOPE; F | | |
| 81:14-23 | 602; SCOPE; F; CS; 701 | | |
| 82:2-25 | 602; SCOPE; F; CS; 701 | | |
| 83:2 | 602; SCOPE; F; CS; 701 | | |
| 83:21-23 | R; 403; 602; SCOPE | | |
| 84:5-7 | R; 403; SCOPE | | |
| 84:10-19 | R; 403; SCOPE | | |
| 84:22-85:23 | R; 403; SCOPE | | |
| 85:25-86:3 | R; 403; SCOPE | | |
| 86:6-17 | R; 403; SCOPE | | |
| 86:19-87:5 | R; 403; SCOPE | | |
| 90:5-7 | R; 403; 602; 701; CS; F; SCOPE | | |
| 90:10-18 | R; 403; 602; 701; CS; F; SCOPE | | |
| 90:21-91:5 | R; 403; 602; 701; CS; F; SCOPE | | |
| 91:8-15 | R; 403; 602; 701; CS; F; SCOPE | | |
| 91:18-24 | R; 403; 602; 701; CS; F; SCOPE | | |
| 92:2-7 | R; 403; 602; 701; CS; F; SCOPE | | |
| 92:10-11 | R; 403; 602; 701; CS; F; SCOPE | | |
| 97:10-16 | R; 403; 602; SCOPE | | |
| 97:18-24 | R; 403; 602; SCOPE | | |
| 98:2-14 | R; 403; 602; F; CS; SCOPE | | |
| 98:16-19 | R; 403; 602; F; CS; SCOPE | | |
| 99:6-8 | R; 403; V | | |
| 99:10-14 | R; 403; V | | |
| 99:16-18 | R; 403; V | | |
| 99:20-24 | R; 403; V | | |
| 100:1-3 | R; 403; V | | |
| 100:5-8 | R; 403; V | | |
| 124:8-22 | R; 403; 602; CS; V; NT | | |
| 126:18-19 | R; 403 | | |
| 128:15-17 | R; 403; SCOPE | 129:6-11 | R, 403, BTS, V |
| 128:22-23 | R; 403; SCOPE | | |
| 129:1-4 | R; 403; SCOPE | | |
| 135:22-136:5 | R; 403; 701, CLC; SCOPE | | |
| 136:9-17 | R; 403; 701, CLC; SCOPE | | |
| 136:21-23 | R; 403; 701, CLC; SCOPE | | |
| 137:4-9 | INQA; R; 403; 701; CLC; SCOPE | 137:1-3 | R, 403, SPEC, O |
| 137:11-16 | R; 403; 701; CLC; SCOPE | | |
| 137:19-138:2 | R; 403; 701; CLC; SCOPE | | |
| 138:4-18 | R; 403; 701; CLC; SCOPE | | |
| 138:23-139:5 | R; 403; 701; CLC; SCOPE | | |
| 139:8-23 | R; 403; 701; CLC; SCOPE | | |
| 140:1-7 | R; 403; 701; CLC; SCOPE | | |
| 141:18-24 | R; 403; 701; CLC; SCOPE | | |
| 142:2-12 | R; 403; 701; CLC; SCOPE | | |
| 142:15-20 | R; 403; 701; CLC; SCOPE; INQA | | |

B Zimmerman 2023-03-08

| CareDx's Opening Designations | Natera's Objections | Natera's Counter-Designations | CareDx's Objections to Natera's Counter-Designations |
|---|---|---|---|
| 143:2-6 | R; 403; 701; CLC; SCOPE | | |
| 143:8-15 | R; 403; 701; CLC; SCOPE | | |
| 143:18 | R; 403; 701; CLC; SCOPE | | |
| 145:24-146:5 | R; 403; V; SCOPE | 146:17-147:4 | R, 403, NR, PK |
| 147:20-23 | R; 403; 602; 701; CLC; F; SCOPE | | |
| 148:1-8 | R; 403; 602; 701; CLC; F; SCOPE | | |
| 148:11-19 | R; 403; 602; 701; CLC; F; SCOPE | | |
| 148:22-149:2 | R; 403; 602; 701; CLC; F; SCOPE | | |
| 151:3-6 | R; 403; 701; CLC | | |
| 151:8-16 | R; 403; 701; CLC | | |
| 151:19-152:1 | R; 403; 701; CLC | | |
| 152:3-11 | R; 403; 701; CLC; F; SCOPE | | |
| 152:13-19 | R; 403; 701; CLC; F; SCOPE | | |
| 152:21-153:2 | R; 403; 701; CLC; F; SCOPE | | |
| 153:4-9 | R; 403; 701; CLC; F; SCOPE | | |
| 153:12 | R; 403; 701; CLC; F; SCOPE | | |
| 154:12-15 | R; 403; V; 602; F; CS; SCOPE | | |
| 154:18 | R; 403; V; 602; F; CS; SCOPE | | |
| 158:2-159:2 | R; 403; SCOPE | | |
| 159:7-10 | R; 403; SCOPE | | |
| 162:12-16 | R; 403; SCOPE; CLC; 701; CS; F | 202:13-203:10 | R, 403, SPEC, O |
| 162:20-22 | R; 403; SCOPE; CLC; 701; CS; F | | |
| 165:6-8 | R; 403; 701; CLC; SCOPE | | |
| 165:11-14 | R; 403; 701; CLC; SCOPE | | |
| 165:16-19 | R; 403; 701; CLC; SCOPE | | |
| 165:21-166:1 | R; 403; 701; CLC; SCOPE | | |
| 166:4-21 | R; 403; 701; CLC; SCOPE | | |
| 166:24-25 | R; 403; 701; CLC; SCOPE | | |
| 167:11-14 | R; 403; 701; CLC; SCOPE | | |
| 167:16-17 | R; 403; 701; CLC; SCOPE | | |
| 168:10-12 | R; 403; 701; CLC; SCOPE | | |
| 168:16-22 | R; 403; 701; CLC; SCOPE | | |
| 168:25-169:3 | R; 403; 701; CLC; SCOPE | | |
| 169:6-16 | R; 403; 701; CLC; SCOPE | | |
| 169:19-20 | R; 403; 701; CLC; SCOPE | | |
| 170:15-18 | R; 403; 701; CLC; SCOPE | | |
| 170:21-22 | R; 403; 701; CLC; SCOPE | | |
| 171:22-172:7 | R; 403; 701; CLC; SCOPE | | |
| 172:10-11 | R; 403; 701; CLC; SCOPE | | |
| 174:20-22 | R; 403; 701; CLC; SCOPE | 175:4-13; 176:7-177:8 | R, 403, V, MIS, BTS, O , SPEC |
| 175:1-2 | R; 403; 701; CLC; SCOPE | | |
| 178:18-21 | R; 403; 701; SCOPE | | |
| 178:24-179:2 | R; 403; 701; SCOPE | | |
| 179:9-14 | R; 403; V; CLC; 701 | | |
| 179:18-180:2 | R; 403; V; CLC; 701 | | |
| 180:5-7 | R; 403; V; CLC; 701 | | |
| 180:10-181:2 | R; 403; V; CLC; 701 | | |
| 184:5-12 | R; 403; 701; CS; F; SCOPE | | |
| 184:15-16 | R; 403; 701; CS; F; SCOPE | | |
| 184:19-185:4 | R; 403; 701; CS; F; SCOPE | | |
| 185:7-12 | R; 403; 701; CS; F; SCOPE | | |
| 185:15-16 | R; 403; 701; CS; F; SCOPE | | |
| 185:19-23 | R; 403; 701; CS; F; SCOPE | | |
| 185:25-186:6 | R; 403; 701; CS; F; SCOPE | | |
| 186:9-15 | R; 403; 701; CS; F; SCOPE | | |
| 188:25-189:9 | R; 403; 602; CS; F; V; SCOPE | | |
| 189:11-19 | R; 403; 602; CS; F; V; SCOPE | | |
| 189:22-190:8 | R; 403; 602; CS; F; V; SCOPE | | |
| 191:8-10 | R; 403; SCOPE | | |

| CareDx's Opening Designations | Natera's Objections | Natera's Counter-Designations | CareDx's Objections to Natera's Counter-Designations |
|---|---|---|---|
| 191:13-20 | R; 403; SCOPE | | |
| 191:24 | R; 403; SCOPE | | |
| 194:9-10 | R; 403; 701; F; CLC; SCOPE | | |
| 194:12-14 | R; 403; 701; F; CLC; SCOPE | | |
| 194:17-22 | R; 403; 701; F; CLC; SCOPE | | |
| 194:24 | R; 403; 701; F; CLC; SCOPE | | |
| 195:2-7 | R; 403; 701; F; CLC; SCOPE | | |
| 195:10-16 | R; 403; 701; F; CLC; SCOPE | | |
| 195:19-24 | R; 403; 701; F; CLC; SCOPE | | |
| 196:1-5 | R; 403; 701; F; CLC; SCOPE | | |
| 196:8-11 | R; 403; 701; F; CLC; SCOPE | | |
| 196:17-18 | R; 403; 701; F; CLC; SCOPE | | |
| 196:24-197:2 | R; 403; 701; F; CLC; SCOPE | | |
| 197:5-16 | R; 403; 701; F; CLC; SCOPE | | |
| 197:19-198:1 | R; 403; 701; F; CLC; SCOPE | | |
| 198:4 | R; 403; 701; F; CLC; SCOPE | | |
| 198:6-11 | R; 403; 701; F; CLC; SCOPE | | |
| 200:10-12 | R; 403; 701; F; CLC; SCOPE | | |
| 200:15-16 | R; 403; 701; F; CLC; SCOPE | | |
| 201:2-7 | R; 403; 701; F; CLC; SCOPE | | |
| 201:10-14 | R; 403; 701; F; CLC; SCOPE | | |
| 201:17-19 | R; 403; 701; F; CLC; SCOPE | | |
| 204:12-16 | R; 403; SCOPE | | |
| 204:18-205:19 | R; 403; SCOPE | | |
| 205:22-206:1 | R; 403; SCOPE | | |

B Zimmerman 2023-03-08

# EXHIBIT 12

REDACTED
IN ITS
ENTIRETY

EXHIBIT 13

REDACTED

IN ITS

ENTIRETY

EXHIBIT 14

**Natera's Motion *in Limine* No. 1**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NATERA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 20-038 (CFC) (CJB) |
| | ) | (CONSOLIDATED) |
| CAREDX, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## NATERA'S MOTION *IN LIMINE* NO. 1 – TO PRECLUDE EVIDENCE AND ARGUMENT THAT NATERA ENGAGED IN FALSE ADVERTISING

**Exhibit 14**

Natera, Inc. moves under Rules 402/403, 602, 701, and 802/803 to preclude CareDx, Inc. from referencing past litigations against Natera, including *CareDx, Inc. v. Natera, Inc.*, C.A. No. 1:19-cv-662-CFC (D. Del.) ("Ads Case"), or from otherwise offering evidence or argument that Natera falsely advertised.[1]

***Background***. In March 2022, a jury empaneled by this Court found that both Natera and CareDx made false claims to promote their respective cell-free DNA products for organ transplant, Prospera and AlloSure. Ex. A (Ads Case verdict). On July 17, 2023, the Court entered judgment as a matter of law that CareDx failed to prove any damages because CareDx failed to show that the challenged advertisements influenced any consumer. Ex. B (Ads Case JMOL Order) at 6-7.

CareDx now seeks to recycle its Lanham Act allegations to sway the jury in this patent case.  CareDx's trial exhibit list includes the Ads Case trial transcripts and verdict form. Ex. C (blue highlighted rows). At deposition, CareDx witnesses repeatedly framed Natera's advertising as improper. *E.g.*, Ex. D at 88:23-91:25; Ex. E at 55:6-56:6, 130:20-131:3. CareDx also questioned Natera's witnesses about the Ads case. *E.g.*, Ex. F at 100:6-104:15.

---

[1]    Also in prior litigation, this Court ruled that CareDx's asserted patents were ineligible under Section 101. *CareDx v. Natera*, 1:19-cv-567 (D. Del), D.I. 183. CareDx should be precluded from referencing that case to argue that Natera's patents are ineligible, but Natera expects to address that issue in response to CareDx's motion *in limine* about that case.

*402/403*. References to the Ads Case are irrelevant and unduly prejudicial. CareDx intends to paint Natera as a bad actor to sway the jury into deciding this *patent* case not on its merits, but based on negative opinions formed from exposure to an unrelated case. And to rebut CareDx's references to the jury's finding that Natera made false claims, Natera may be forced to further detour into the Ads Case to provide context (*e.g.*, the jury's finding that CareDx made false claims in advertising AlloSure, and the Court's ruling that there was no evidence that Natera's advertising swayed consumers). Even short of mentioning the Ads Case specifically, allegations of false advertising will similarly paint Natera in a negative light.

There is no reason CareDx should be able to initiate this wasteful and prejudicial detour. False advertising claims do not relate to infringement or validity. CareDx suggested vaguely at a meet-and-confer that allegations of false advertising relate to damages, but could not articulate this argument with any clarity.

There is no relevance to damages. The reasonable royalty hinges on the *Georgia-Pacific* factors, such as the utility of the claimed invention, that the parties are competitors, the profitability of products using the invention, and the terms of comparable licenses. False advertising allegations do not fit into that framework. Nor is the Ads Case relevant to lost profits. Lost profits are based on what Natera's market share would have been in the but-for world. In that but-for world, AlloSure is off the market, which means the ads at issue—which featured claims that Prospera

was superior to AlloSure—would not have existed. To the extent they existed before the onset of the but-for world, CareDx has already proven its inability to show that the ads affected Natera's market share. Ex. B at 6-7.

Crucially, even if CareDx could show that the ads *did* affect market share, that showing does not inform any issue that this jury will consider. It is beyond *this* jury's purview to determine what Natera's market share would have been if it had not published certain advertisements. *This* jury must determine only Natera's market share in the absence of AlloSure, holding all else the same.

Nor will Natera open the door. Natera's damages expert Lance Gunderson does not rely on any claim by Natera that Prospera is superior to AlloSure. For purposes of his opinion, he concedes the tests are equally effective. Ex. G at 21:1-14; Ex. H at ¶¶86, 116, 240. He does not rely on the claims found to be false in the Ads Case, such as relating to superior "specificity" and "area under the curve." Ex. G at 59:4-60:6.

**Hearsay, 602, 701**. Finally, should CareDx offer evidence that others claimed Natera made false claims or were influenced, that evidence would be inadmissible hearsay. *See* Ex. B at 8 (referencing CareDx's "hearsay-riddled testimony that customers were deceived by or relied on" Natera's advertisements). Allegations from CareDx witnesses that Natera's claims were false are legal arguments or opinions, not percipient factual knowledge. *See* Fed. R. Evid. 602, 701.

OF COUNSEL:

Kevin P.B. Johnson
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, CA 94065
(650) 801-5000

Andrew M. Holmes
Jeff Nardinelli
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600

Sandra L. Haberny, Ph.D.
Sarah M. Cork, Ph.D.
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000

Bianca Fox
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

November 28, 2023

MORRIS, NICHOLS, ARSHT & TUNNELL
LLP

*/s/ Derek J. Fahnestock*
Jack B. Blumenfeld (#1014)
Derek J. Fahnestock (#4705)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
dfahnestock@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Plaintiff Natera, Inc.*

Abigail E. Clark
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
2601 South Bayshore Dr, Suite 1550
Miami, FL 33133
(305) 402-4880

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 28, 2023, copies of the foregoing were

caused to be served upon the following in the manner indicated:

Brian E. Farnan, Esquire                          *VIA ELECTRONIC MAIL*
Michael J. Farnan, Esquire
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Defendant*

Edward R. Reines, Esquire                         *VIA ELECTRONIC MAIL*
Derek C. Walter, Esquire
Shawn Chi, Esquire
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA  94065
*Attorneys for Defendant*

Randi W. Singer, Esquire                          *VIA ELECTRONIC MAIL*
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153
*Attorneys for Defendant*

W. Sutton Ansley, Esquire                         *VIA ELECTRONIC MAIL*
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC  20036
Attorneys for Defendant

/s/ Derek J. Fahnestock
_____
Derek J. Fahnestock (#4705)

EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CAREDX, INC.
                    Plaintiff,

            v.                                    C.A. No. 19-cv-662-CFC-CJB

NATERA, INC.,
                    Defendant.

## [PROPOSED] JURY VERDICT FORM

Case 1:20-cv-00663-CCC-DJB Document 329 Filed 08/14/24 Page 191 of 259

# INSTRUCTIONS

2

In answering the following questions and filling out this Verdict Form, you are to follow all of the instructions I have given you. Your answer to each question must be **unanimous**. Some of the questions contain legal terms that are explained in detail in the Jury Instructions. Please refer to the Jury Instructions if you are unsure about the meaning or usage of any legal term that appears in the questions below.

# CAREDX QUESTIONS

## CareDx Question No. 1

4

**Alleged Advertising Claim A**

More sensitive and specific than current assessment tools across all types of rejection.

# Introducing Prospera

Prospera is powered by highly optimized, proprietary cell-free DNA (cfDNA) technology. As part of your tool kit, Prospera assesses all types of kidney transplant rejection[2] with the greatest precision.[1,3]

- Simpler and less invasive than biopsy

- More sensitive and specific than current assessment tools across all types of rejection[2,4,5]

- Up to 5x less variability than first-generation donor-derived cell-free DNA technology[1,3]

*JTX-7.2 (Brochure)*

- **More sensitive and specific than current assessment tools across all types of rejection:**[2,3,5] Serum creatinine tests are the current baseline screening standard, yet are not accurate enough for kidney transplant injury. Since then, first generation cell-free DNA technology has exhibited high variability. Prospera's published data shows better performance than both assessment methods.

*JTX-5.3 (Website)*

---

**QUESTION NO. 1:**
Did CareDx prove by a preponderance of the evidence that Natera is liable for false advertising for **Alleged Advertising Claim A**?

| YES (for CareDx) | NO (for Natera) |
|:---:|:---:|
|  |  |

## CareDx Question No. 2

5

**Alleged Advertising Claim B**

The advertisement to the right.

4

When comparing published clinical validation studies, Prospera demonstrated better performance in correctly classifying patients with active rejection—including cell-mediated rejection.[2,5] Other tests may incorrectly classify patients experiencing active rejection as normal (up to 1 out of 2 cases).[5]

Of 100 active rejection cases, the number of patients who would be missed, and told they are normal[‡]

| Prospera[2] | 11/100 | First-generation dd-cfDNA[5] | 41/100 | Serum creatinine[2] | 48/100 |

| Sensitivity | 89% | Sensitivity | 59% | Sensitivity | 52% |

*JTX-7.3 (Brochure)*

**QUESTION NO. 2:**
Did CareDx prove by a preponderance of the evidence that Natera is liable for false advertising for **Alleged Advertising Claim B**?

YES (for CareDx) ☒    NO (for Natera) ☐

## CareDx Question No. 3

6

**Alleged Advertising Claim C**

The statements to the right.

Natera Announces Publication of Kidney Transplant Validation Study, Demonstrating Superior Data in Detection of Clinical and Subclinical Rejection

Represents Successful Achievement of All 2018 Commercialization Milestones, on Path to 2019 Launch

SAN CARLOS, Calif., Jan. 7, 2019 /PRNewswire/ -- Natera, Inc. (NASDAQ: NTRA), a leader in cell-free DNA, today announced clinical validation study results published in the *Journal of Clinical Medicine*,[1] demonstrating the highly accurate performance of its donor-derived cell-free DNA (dd-cfDNA) test for active allograft rejection in kidney transplant recipients, including higher sensitivity and nearly 18% higher area under the curve (AUC) than the competitive dd-cfDNA assay.[1,2] The study also reports the first accurate detection of T-cell mediated rejection (TCMR) and subclinical rejection. This marks the successful completion of all 2018 commercialization milestones, and is in line with the company's plan to secure Medicare coverage and commercially launch its test in 2019.

*JTX-12.1 (Press Release)*

**QUESTION NO. 3:**
Did CareDx prove by a preponderance of the evidence that Natera is liable for false advertising for **Alleged Advertising Claim C**?

| YES (for CareDx) | NO (for Natera) |
|:---:|:---:|
| ☒ | ☐ |

| CareDx Question No. 4 | 7 |
|---|---|

**Alleged Advertising Claim D**

The statements to the right.

Natera Announces Publication of Analytical Validation Study Demonstrating Superior Precision of Its Kidney Transplant Rejection Assay

Core Technology Delivers Superior Analytical Performance, Underpins Outstanding Clinical Performance

SAN CARLOS, Calif., Feb. 22, 2019 /PRNewswire/ -- Natera, Inc. results to be published online

---

performance in detecting active allograft rejection (AR). In its recently published clinical validation study,[4] Natera reported higher sensitivity (89% vs. 59%) and higher area under the curve (0.87 vs. 0.74) than the competing dd-cfDNA assay.[4,5] In that study, Natera also

*JTX-14.2 (Natera February 22, 2019 Press Release)*

---

*JTX 16 (Natera June 24, 2019 press release); JTX-17.2 (Natera December 19, 2019 press release);*

---

**QUESTION NO. 4:**

Did CareDx prove by a preponderance of the evidence that Natera is liable for false advertising for **Alleged Advertising Claim D**?

|  | **YES** (for CareDx) | **NO** (for Natera) |
|---|---|---|
|  | ☒ | ☐ |



## CareDx Question No. 5

8

**Alleged Advertising Claim E**

The advertisement to the right.

16% missed

NPV: 84%

First generation dd-cfDNA[4]

5% missed

NPV: 95%

Prospera[2]

Based upon 25% prevalence of active rejection [2,4]

~3x fewer rejections missed

*JTX-6.4 (Website)*

**QUESTION NO. 5:**
Did CareDx prove by a preponderance of the evidence that Natera is liable for false advertising for **Alleged Advertising Claim E**?

| | YES (for CareDx) | NO (for Natera) |
|---|---|---|
| | ☒ | ☐ |

## CareDx Question No. 6

9

**Alleged Advertising Claim F**

The advertisement to the right.



**3** **Lower risk of missing active rejection**

With 98% negative predictive value (NPV), Prospera misses nearly three times fewer rejections† than first-generation dd-cfDNA[2,5] and four times fewer rejections† than serum creatinine.[2]

**Percentage of patients with a negative result who have active rejection**

†At a 10% prevalence of active rejection using a 1% dd-cfDNA threshold to define the patient's risk

| Prospera[2] | First-generation dd-cfDNA[5] | Serum creatinine[2] |
|---|---|---|
| **1.7%** | **5%** | **7.1%** |

~3x fewer rejections missed

4x fewer rejections missed

*JTX-7.3 (Brochure)*

**QUESTION NO. 6:**
Did CareDx prove by a preponderance of the evidence that Natera is liable for false advertising for **Alleged Advertising Claim F**?

| YES (for CareDx) | NO (for Natera) |
|---|---|
|  |  |

## CareDx Question No. 7

10

**Alleged Advertising Claim G**

The advertisement to the right.

**Stronger test performance demonstrated with unique clinical capabilities**

| | natera | CareDx |
|---|---|---|
| • Largest dd- cfDNA validation study (217 patients) | 217 | 107 |
| • Higher area under the curve; driven by superior clinical data | 0.87 | 0.74 |
| • First test to accurately detect TCMR (about 1/3 of all AR cases) | 10/10 | 3/11 |
| • First test to consistently detect subclinical rejection | 92% | N/A |
| • 5x higher repeatability at 0.6% donor fraction (CV) | 1.85 | 9.2 |

11

*JTX-21.11 (CEOT Presentation)*

**QUESTION NO. 7:**

Did CareDx prove by a preponderance of the evidence that Natera is liable for false advertising for **Alleged Advertising Claim G**?

**YES** (for CareDx) ☒

**NO** (for Natera) ☐

## CareDx Question No. 8

11

**Alleged Advertising Claim H**

Unparalleled precision.



*JTX-7.3 (Brochure)*

**QUESTION NO. 8:**
Did CareDx prove by a preponderance of the evidence that Natera is liable for false advertising for **Alleged Advertising Claim H**?



| YES (for CareDx) | NO (for Natera) |
|:---:|:---:|
| ☒ | ☐ |

## CareDx Question No. 9

12

**Alleged Advertising Claim I**

The advertisement to the right.

# Now—catch ALL rejection types with a single blood draw

2

Prospera's unique ability to identify T cell-mediated rejection gives a more comprehensive view of your patient's rejection status.[2,5]

| Rejection Types | Prospera[2] | First-generation dd-cfDNA[6] |
|---|---|---|
| Antibody-mediated rejection (ABMR) | ✓ Yes | ✓ Yes |
| T cell-mediated rejection (TCMR) ≥ IA | ✓ Yes | ✗ No |

*JTX-7.3 (Brochure)*

---

**QUESTION NO. 9:**

Did CareDx prove by a preponderance of the evidence that Natera is liable for false advertising for **Alleged Advertising Claim I**?

**YES**
(for CareDx)



**NO**
(for Natera)



## CareDx Question No. 10                                                              13

**Alleged Advertising Claim J**

The advertisement to the right.

**Highly sensitive across a range of rejection types and patients**



**Broad distribution of rejection types**
- Subclinical rejection
- T-cell mediated rejection IA/IB/IIB
- Antibody-mediated rejection
- C4d-positive antibody-mediated rejection
- Acute rejection



**Variety of ethnic & racial demographics**
- Hispanic / Latino (n=50)
- Caucasian (n=74)
- African American (n=31)
- Asian (n=31)
- Ages:
  - Below 18 years of age (n=49)
  - 18 – 40 years of age (n=68)
  - Above 40 (n=100)

8   Confidential. Not for further reproduction or use.
Sigdel et al. J. Clin. Med. 2019, 8, 19; doi:10.3390/jcm8010019



*JTX-21.8 (CEOT Presentation)*
*JTX23.8 (Billings Presentation)*

**QUESTION NO. 10:**
Did CareDx prove by a preponderance of the evidence that Natera is liable for false advertising for **Alleged Advertising Claim J**?

**YES** (for CareDx)     **NO** (for Natera) 

| **CareDx Question No. 11** | 14 |
|---|---|

*If you answered "Yes" to any one of Questions No. 1 - 10, you must answer Question No. 11.*

*If you answered "No" to all of Questions No. 1 - 10, you should skip Questions No. 11 - 16.*

**QUESTION NO. 11:**

Did CareDx prove by a preponderance of the evidence that Natera intentionally and willfully engaged in false advertising?

|  | YES<br>(for CareDx) | NO<br>(for Natera) |
|---|---|---|
|  |  |  |

## CareDx Question No. 12

15

*If you answered "Yes" to any one of Questions No. 1 - 10, you must answer Question No. 12.*

*If you answered "No" to all of Questions No. 1 - 10, you should skip Questions No. 12 - 16.*

| | | |
|---|---|---|
| **QUESTION NO. 12:** Did CareDx prove by a preponderance of the evidence that Natera is liable for false advertising under the Delaware Deceptive Trade Practices Act? | **YES** (for CareDx) ☒ | **NO** (for Natera) ☐ |

## CareDx Question Nos. 13, 14                                    16

*If you answered "Yes" to any one of Questions No. 1 - 10, you must answer Question No. 13.*

*If you answered "No" to all of Question Nos. 1 - 10, you should skip Questions No. 13 - 16.*

| | YES (for CareDx) | NO (for Natera) |
|---|---|---|
| **QUESTION NO. 13:** Did CareDx prove by a preponderance of the evidence that Natera is liable for unfair competition? | ☒ | ☐ |

*If you answered "Yes" to Question No. 13, you must answer Question No. 14.*

*If you answered "No" to Question No. 13, you should skip Question Nos. 14 and 16.*

| | YES (for CareDx) | NO (for Natera) |
|---|---|---|
| **QUESTION NO. 14:** Did CareDx prove by a preponderance of the evidence that Natera intentionally or recklessly engaged in unfair competition? | ☒ | ☐ |

| CareDx Question No. 15 | 17 |
|---|---|

*If you answered "Yes" to any one of Question Nos. 1 - 10, you must answer Question No. 15.*

*If you answered "No" to all of Question Nos. 1 - 10, you should skip Question Nos. 15 - 16.*

| **QUESTION NO. 15:** What amount, if any, is CareDx entitled to recover as actual damages attributable to Natera's false advertising and/or unfair competition? | *Answer:* $ 21,200,000  L.G. (21.2 m) LG |

| CareDx Question No. 16 | 18 |
|---|---|

If you answered "Yes" to Question No. 14 and you awarded compensatory damages in response to Question No. 15, you must answer Question No. 16.

If you answered "No" to Question No. 14 or you awarded no compensatory damages in response to Question No. 15, you should skip Question No. 16.

| **QUESTION NO. 16:** What amount of punitive damages, if any, do you award CareDx for Natera's unfair competition? | *Answer:* $ __23.7 million__ |
|---|---|

# NATERA QUESTIONS

## Natera Question No. 1

20

| Alleged Advertising Claim | DTX135.00002 | | | | |
|---|---|---|---|---|---|

**1.** The advertisement to the right.

| | Method 1: Rigorous Scientific Method[1] vs. | | Method 2: Lack of Scientific Rigor[2] | |
|---|---|---|---|---|
| | **CareDx 100% Transplant Focused Applying Rigorous Scientific Approach** | | **Other Test: Non-Transplant Focused** | **Applying Other Test Method to DART Data** |
| Scientific Design | Multi-Center Prospective | | Retrospective Single-Center | Multi-Center Prospective |
| Number of Centers | 14 | | 1 | 14 |
| Patient Selection[3,4] | No eGFR selection bias | | Selection bias illustrated by eGFR | Selection bias illustrated by eGFR |
| AUC[5] | 0.74 | | 0.87 | 1.0 |
| Definition of Active Rejection | Banff criteria used[1], accepted in kidney transplant community | | Non-Banff definition used to segment patients[6] | Non-Banff definition used to segment patients[6] |
| Sensitivity | 59% | | 89% | 100% |
| Specificity | 85% | | 73% | 100% |
| NPV | 84% | | 95% | 100% |
| PPV | 60% | | 53% | 100% |
| Journal[7,8] | JASN | | JCM | |



© 2019 CareDx, Inc. All service marks or trademarks are owned or licensed by CareDx, Inc. or its affiliates. All rights reserved.

1. Bloom R. JASN publication Multi-Center (14) including 384 patients and full Banff 2013 criteria is reflective of real incidence and accurate analysis
2. Competitor study is a limited retrospective single center analysis
3. Sample selection bias makes analysis inapplicable to real world patients
4. eGFR pattern between groups demonstrate selection bias
5. AUC's cannot be compared unless same method has been used
6. Banff 2017 criteria used was incomplete, introducing bias
7. Journal of the American Society of Nephrology
8. Journal of Clinical Medicine

**NATERA QUESTION NO. 1:**
Did Natera prove by a preponderance of the evidence that CareDx is liable for false advertising for **Alleged Advertising Claim 1**?

| YES (for Natera) | NO (for CareDx) |
|---|---|
| ☐ | ☒ |



| Natera Question No. 2 | 21 |
|---|---|

| Alleged Advertising Claim | DTX144 |
|---|---|
| 2. " 'While CareDx was not involved in this head-to-head comparison, we are not surprised by the results as AlloSure was developed for transplant specific needs, including accurate testing at low cfDNA levels and fast turnaround times,' said Sham Dholakia, SVP of Medical Affairs at CareDx." | **Press Releases**<br><br>Jun 22, 2020      << Back<br><br>**New Kidney360 Publication Highlights CareDx's AlloSure is Differentiated as the dd-cfDNA Test of Choice**<br><br> Head to head data shows that not all dd-cfDNA is the same <br>SOUTH SAN FRANCISCO, Calif., June 22, 2020 (GLOBE NEWSWIRE) -- CareDx, Inc. (Nasdaq: CDNA), a leading precision medicine company focused on the discovery, development, and commercialization of clinically differentiated, high-value healthcare solutions for transplant patients and caregivers, announces today that the journal of the American Society of Nephrology, *Kidney360*, published a study evaluating AlloSure simultaneously with a different donor-derived cell-free DNA (dd-cfDNA) monitoring tool for allograft rejection.<br><br>This study evaluated 76 kidney transplant patients and surveilled post-transplant kidney rejection utilizing AlloSure and one other dd-cfDNA monitoring tool. Overall, the study found that while there were no significant differences between the diagnostic test characteristics, AlloSure was proven to be more accurate in clinical interpretation and significantly faster in delivering patient results. The study evaluated dd-cfDNA samples and concluded that AlloSure had a significantly superior turnaround time with 75% of the results returned at least one day earlier.<br><br>"Our study findings further validated the published data on AlloSure, a transplant-focused analytical tool for allograft rejection using donor-derived cell-free DNA," said Joseph K. Melancon, MD, The George Washington University Hospital. "Although dd-cfDNA tests are similar, they are not the same."<br><br>"While CareDx was not involved in this head-to-head comparison, we are not surprised by the results as AlloSure was developed for transplant specific needs, including accurate testing at low cfDNA levels and fast turnaround times," said Sham Dholakia, SVP of Medical Affairs at CareDx. |

**NATERA QUESTION NO. 2:**

Did Natera prove by a preponderance of the evidence that CareDx is liable for false advertising for **Alleged Advertising Claim 2**?

|  | YES (for Natera) | NO (for CareDx) |
|---|---|---|
|  |  |  |

## Natera Question No. 3

22

| Alleged Advertising Claims | DTX085.00001, .00005 |
|---|---|
| **3.** "I declare no conflict of interest and performed this study independent of any company involvement."<br><br>and<br><br>"No external funding was received." | **Kidney360 Publish Ahead of Print, published on June 19, 2020 as doi:10.34067/KID.0003512020**<br><br>Donor Derived Cell Free DNA: is it all the same?<br><br>Joseph K. Melancon[1]<br><br>[1]Department of Surgery, The George Washington University Hospital, Washington, D.C., U.S.A.<br><br>Corresponding Author:<br>Joseph K. Melancon, MD<br>2131 K Street NW, Washington, D.C., 20037, U.S.A.<br>Email address: jmelancon@mfa.gwu.edu<br><br>Disclosures<br>J Melancon is on the speaker's bureau of Natera and CareDx. I declare no conflict of interest and performed this study independent of any company involvement.<br><br>Acknowledgements/Funding<br>No external funding was received.<br><br>Author Contributions<br>J Melancon: Conceptualization; Data curation; Formal analysis; Investigation; Writing - original draft; Writing - review and editing |

**NATERA QUESTION NO. 3:**

Did Natera prove by a preponderance of the evidence that CareDx is liable for false advertising for **Alleged Advertising Claims 3**?

| YES (for Natera) | NO (for CareDx) |
|:---:|:---:|
| ☒ | ☐ |

| | Natera Question No. 4 | 23 |
|---|---|---|

| Alleged Advertising Claim | |
|---|---|
| 4. "Allosure can accurately determine active rejection, enabling better management of your kidney transplant patients." | DTX125.00001  |

*Active Rejection = acute/active ABMR; chronic, active ABMR; and TCMR IA and greater
†Prevalence of rejection within the first year post-transplant
‡Prevalence of ABMR in DSA positive patients

**NATERA QUESTION NO. 4:**

Did Natera prove by a preponderance of the evidence that CareDx is liable for false advertising for **Alleged Advertising Claim 4**?

**YES**
(for Natera)

☐

**NO**
(for CareDx)



| Natera Question No. 5 | 24 |
|---|---|

| Alleged Advertising Claim | DTX125.00004 |
|---|---|
| 5. "95% NPV for Active Rejection" |  |

**AlloSure performance characteristics**

**96%** of AlloSure results for samples from DART healthy stable recipients are below the 1% threshold
**50%** of AlloSure results for samples from DART healthy stable recipients are below 0.21%

**ALLOSURE CAN RULE OUT REJECTION**

1% THRESHOLD
0.21%
0.21%
dd-cfDNA (%)

**95% NPV** for Active Rejection*

Sensitivity: 85%
Specificity: 33% } at 0.21% dd-cfDNA
Prevalence: 10%[3]

0.21% is the median from DART healthy stable recipients

*Active Rejection = acute/active ABMR; chronic, active ABMR; and TCMR IA and greater
[1] Prevalence of rejection within the first year post-transplant
[2] Prevalence of ABMR in DSA positive patients

**NATERA QUESTION NO. 5:**
Did Natera prove by a preponderance of the evidence that CareDx is liable for false advertising for **Alleged Advertising Claim 5**?

| YES (for Natera) | NO (for CareDx) |
|---|---|
|  |  |

Case 1:20-cv-00038-CFC Document 363 Filed 03/14/22 Page 673 of 3 Page ID #: 27563
PageID #: 28862

| Alleged Advertising Claim | DTX138.00010 |
|---|---|
| **6.** "95% NPV for Active Rejection" |  |

**NATERA QUESTION NO. 6:**
Did Natera prove by a preponderance of the evidence that CareDx is liable for false advertising for **Alleged Advertising Claim 6**?

 **YES** (for Natera)

 **NO** (for CareDx)





## Natera Question No. 7

26

| Alleged Advertising Claim | DTX128.004, .005 |
|---|---|
| **7.** "Allosure <0.21% has 95% NPV for Active Rejection" | **REASSURANCE WITH A LOW ALLOSURE SCORE**<br><br><br><br>**ALLOSURE** <0.21% **has 95% NPV** for Active Rejection[4]<br><br>0.21% is the median from DART healthy stable recipients<br><br>1. Jordan SC et al. Transplant Direct 2018; 4:e379<br>2. Bloom RD et al. J Am Soc Nephrol 2017; 28:2221–2232<br>3. Stites E et al. Am J Transplant 2020 Feb; doi: 10.1111/ajt.15822 [Epub ahead of print]<br>4. Bromberg JS et al. J Appl Lab Med 2017; 2:309–321<br><br>DTX128.005 |

**NATERA QUESTION NO. 7:**

Did Natera prove by a preponderance of the evidence that CareDx is liable for false advertising for **Alleged Advertising Claim 7**?

**YES** (for Natera) ☐

**NO** (for CareDx) ☒

## Natera Question No. 8

<span style="float:right">27</span>

| Alleged Advertising Claim | DTX128.005 |
|---|---|
| **8.** "95% NPV for active rejection" |  |

**NATERA QUESTION NO. 8:**

Did Natera prove by a preponderance of the evidence that CareDx is liable for false advertising for **Alleged Advertising Claim 8**?

| **YES** (for Natera) | **NO** (for CareDx) |
|:---:|:---:|
| ☐ | ☒ |

| Natera Question No. 9 | 28 |
|---|---|

*If you answered "Yes" to any one of Natera Questions No. 1 - 8, you must answer Natera Question No. 9.*

*If you answered "No" to all of Natera Questions No. 1 - 8, you should skip Natera Questions No. 9 - 12.*

**NATERA QUESTION NO. 9:**
Did Natera prove by a preponderance of the evidence that CareDx is liable for false advertising under the Delaware Deceptive Trade Practices Act?

YES
(for Natera)
☐

NO
(for CareDx)


| Natera Question No. 10 | 29 |
|---|---|

*If you answered "Yes" to any one of Natera Questions No. 1 - 8, you must answer Natera Question No. 10.*

*If you answered "No" to all of Natera Questions No. 1 - 8, you should skip Natera Question No. 10.*

**NATERA QUESTION NO. 10:**
Did Natera prove by a preponderance of the evidence that CareDx intentionally and willfully engaged in false advertising?

**YES**
(for Natera)

☐

**NO**
(for CareDx)



| Natera Questions No. 11, 12 | 30 |
|---|---|

If you answered "Yes" to any one of Natera Questions No. 1 - 8, you must answer Natera Question No. 11.

If you answered "No" to all of Natera Questions No. 1 - 8, you should skip Natera Questions No. 11 - 12.

**NATERA QUESTION NO. 11:**
Did Natera prove by a preponderance of the evidence that CareDx is liable for unfair competition?



YES (for Natera) ☐  NO (for CareDx) ☒

If you answered "Yes" to Natera Question No. 11, you must answer Natera Question No. 12.

If you answered "No" to Natera Question No. 11, you should skip Natera Question No. 12.

**NATERA QUESTION NO. 12:**
Did Natera prove by a preponderance of the evidence that CareDx intentionally or recklessly engaged in unfair competition?



YES (for Natera) ☐  NO (for CareDx) ☒

You have reached the end of the verdict form. Review the completed form to ensure that it accurately reflects your **unanimous** determinations. The Foreperson should then sign and date the verdict form in the space below and notify the Court Security Officer that you have reached a verdict. The Foreperson should place the completed verdict form in the envelope provided to you and retain possession of it until the jury returns to the courtroom.

Dated: 3/14/2022

_____
Foreperson

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CAREDX, INC.,

               Plaintiff,

      v.

NATERA, INC.,

               Defendant.

Civil Action No. 19-662-CFC

---

Brian E. Farnan and Michael J. Farnan, FARNAN LLP, Wilmington, Delaware;
Edward R. Reines and Derek C. Walter, WEIL, GOTSHAL & MANGES LLP,
Redwood Shores, California; Randi Singer and Elizabeth McLean, WEIL,
GOTSHAL & MANGES LLP, New York, New York

      *Counsel for Plaintiff*

Jack B. Blumenfeld, Derek J. Fahnestock, and Anthony D. Raucci, MORRIS,
NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; Kristin J.
Achterhof, Julia L. Mazur, and Martin S. Masar III, KATTEN MUCHIN
ROSENMAN LLP, Chicago, Illinois; Christina L. Costley and Paul S. Yong,
KATTEN MUCHIN ROSENMAN LLP, Los Angeles, California; Bruce G.
Vanyo, KATTEN MUCHIN ROSENMAN LLP, New York, New York; Timothy
H. Gray, KATTEN MUCHIN ROSENMAN LLP, Washington, DC

      *Counsel for Defendant*

## MEMORANDUM OPINION

July 17, 2023
Wilmington, Delaware

_Col. F. Connolly_

COLM F. CONNOLLY
CHIEF JUDGE

Plaintiff CareDx, Inc. and Defendant Natera, Inc. make and sell competing diagnostic tests used to help treat kidney transplant patients. CareDx's test is called AlloSure. Natera's test is called Prospera. Both tests rely on technology that measures donor-derived cell-free DNA in the transplant patient's bloodstream.

Natera launched a marketing campaign in which it claimed that Prospera was superior in various ways to AlloSure. It based these claims of superiority on results from the so-called Sigdel Study, a retrospective study of blood samples from kidney transplant patients.

CareDx sued Natera for false advertising. In a trial held last year, it asked the jury to find that ten specific advertisements in Natera's marketing campaign were false and that Natera was liable for: (1) false advertising under the Lanham Act, 15 U.S.C. § 1125(a); (2) false advertising under the Delaware Deceptive Trade Practices Act (DTPA), 6 Del. C. § 2532; and (3) unfair competition under Delaware common law. The jury found that CareDx proved by a preponderance of the evidence at trial that: (a) nine of the ten alleged false advertisements were false; (b) Natera intentionally and willfully engaged in false advertising; (c) Natera was liable for false advertising under the DTPA; (d) Natera was liable for unfair

competition; and (e) Natera intentionally or recklessly engaged in unfair

competition.  The jury also found that CareDx was entitled to $21.2 million in

actual damages "attributable to Natera's false advertising and/or unfair

competition," D.I. 329 at 17, and that CareDx was entitled to $23.7 million in

punitive damages "for Natera's unfair competition," D.I. 329 at 18.

Pending before me is Natera's Motion for Judgment as a Matter of Law

Pursuant to Federal Rule of Civil Procedure 50(b), New Trial pursuant to Federal

Rule of Civil Procedure 59, or Remittitur (D.I. 339).

## I.  Legal Standards

### A.  Judgment as a Matter of Law

"If the court does not grant a motion for judgment as a matter of law made

under Rule 50(a), . . . the movant may file a renewed motion for judgment as a

matter of law [under Rule 50(b)] and may include an alternative or joint request for

a new trial under Rule 59." Fed. R. Civ. P. 50(b).  Upon a Rule 50(b) motion, a

jury verdict should be overturned "only if, viewing the evidence in the light most

favorable to the nonmovant and giving it the advantage of every fair and

reasonable inference, there is insufficient evidence from which a jury reasonably

could find liability." *Fultz v. Dunn*, 165 F.3d 215, 218 (3d Cir. 1998) (internal

quotation marks and citation omitted).

2

## B. New Trial

Rule 59(a) permits a district court judge, "on motion," to grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). A new trial may be granted when the verdict is contrary to the evidence, where a miscarriage of justice would result if the jury's verdict were to stand, or when the court believes the verdict results from confusion. *Brown v. Nutrition Mgmt. Servs. Co.*, 370 F. App'x 267, 270 (3d Cir. 2010); *see also Nissho-Iwai Co. v. Occidental Crude Sales, Inc.*, 729 F.2d 1530, 1538 (5th Cir. 1984) ("A trial judge may order a new trial if he suspects that the jury verdict reflects confusion.").

## II. The Lanham Act, the Actual Deception Element, and the Parties' Stipulation

The Lanham Act "provide[s] a remedy by way of civil damages or injunction against anyone who[] in connection with goods or services in commerce uses a false designation of origin [or] any false description or representation." *Parkway Baking Co. v. Freihofer Baking Co.*, 255 F.2d 641, 648 (3d Cir. 1958).

To establish liability for a false advertising claim under the Lanham Act, a plaintiff must prove five elements:

> 1) that the defendant has made false or misleading statements as to his own product [or another's]; 2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; 3) that the deception is material in that it is likely to influence

3

purchasing decisions; 4) that the advertised goods
traveled in interstate commerce; and 5) that there is a
likelihood of injury to the plaintiff in terms of declining
sales, loss of good will, etc.

*Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 248 (3d Cir. 2011)

(alterations in the original) (citation omitted). The second element—actual

deception—is presumed and need not be proven for liability purposes if a plaintiff

"proves that an advertisement is unambiguous and literally false." *Id.* But under

Third Circuit law, if a plaintiff alleges that an advertisement is misleading—as

opposed to unambiguous and literally false—then the plaintiff must prove

customer deception in order to establish liability under the Lanham Act.

Actual deception, however, must still be proven to establish damages for a

Lanham Act violation, even if based on an unambiguous and literally false

advertisement. *See Parkway Baking Co.*, 255 F.2d at 648 ("[A] plaintiff in order to

make out a cause of action for damages under [the Lanham Act] must show not

only that the defendant's advertisement is false but also that this falsification

actually deceives a portion of the buying public."); *id.* ("[T]here must be a showing

of some customer reliance on the false advertisement" to establish damages under

the Lanham Act.); *TRUSTID, Inc. v. Next Caller, Inc.*, 2023 WL 2298748, at *3

(Fed. Cir. Mar. 1, 2023) ("[T]he seminal Lanham Act case in the Third Circuit,

*Parkway Baking v. Freihofer Baking Co.*, 255 F.2d 641 (3d Cir. 1958)[,] holds

4

that, for cases involving monetary damages, 'there must be a showing of some customer reliance on the false advertisement.'").

Although CareDx alleged in its Amended Complaint that Natera's advertisements were false and misleading, the parties stipulated on the eve of trial that CareDx was not asserting "a claim that any advertising is misleading" and that "Natera will not use testimony, evidence, or argument about whether CareDx has proven 'actual deception' . . . to argue, suggest, or imply that CareDx cannot prove that Natera is liable for false advertising." D.I. 301-1 at 113. The parties further stipulated that "[b]oth parties can use testimony, evidence, or argument about whether the other party can prove 'actual deception' for other purposes, including for whether damages have been proven." D.I. 301-1 at 13.

## III. Judgment as a Matter of Law

Natera argues that it is entitled to a judgment as a matter of law "because CareDx did not present evidence of actual deception and customer reliance, which precludes an award of damages, nor did it present evidence sufficient for a reasonable jury to find any of the advertisements literally false." D.I. 340 at 4. Natera also argues that CareDx failed to establish common-law unfair competition and a DTPA violation and that Natera is entitled to a judgment as a matter of law on these claims. D.I. 340 at 18–20. I address these arguments in the order Natera presented them in its briefing.

5

## A.    Damages

### 1.    Lanham Act

The parties agreed at trial and the jury was instructed that

> to recover damages under the Lanham Act, the plaintiff
> must prove by a preponderance of the evidence that, one,
> the defendant's false advertising actually deceived a
> portion of the purchasing public in that customers relied
> on the false advertising in making a purchasing decision.
> There's no presumption here for the damages question.
> The burden rests on the plaintiff to prove that by a
> preponderance of the evidence.
>
>       All right.  And then the second thing that the
> plaintiff must prove by a preponderance of the evidence
> is that, as a result of the false advertising, the plaintiff
> sustained injury.  If you find that CareDx proved these
> things, then you consider what amount of money to
> award to CareDx as damages.

3/14 Tr. 1462:14–1463:2.

Natera argues, and I agree, that CareDx adduced at trial no evidence that any

person was deceived by or relied on any of the nine advertisements found by the

jury to be false.  CareDx insists otherwise, but the evidence it points to does not

establish directly or even circumstantially that a person was in fact deceived by or

relied on Natera's advertisements.

CareDx cites, for example, testimony from a Natera employee and Natera's

expert that Natera internally characterized a PowerPoint slide that contained at

least one of the false advertisements as "the money slide."  D.I. 348 at 2.  But that

6

testimony is not probative of actual customer behavior. CareDx also insists that

financial statements it introduced at trial "show significant growth [of Prospera

sales] from the start of [Natera's] marketing campaign in early 2020 to the end of

2021." D.I. 348 at 2. But it fails to identify any evidence adduced at trial that

linked those increased sales to customers' actual deception or reliance on Natera's

advertisements. CareDx's reliance on Natera's marketing plans and its training of

marketing personnel, *see* D.I. 348 at 3–4, similarly fails. Proof of what Natera

intended to accomplish or thought it could achieve with its marketing plans and

training efforts in no way establishes that those plans and efforts succeeded.

CareDx says that Dr. Maag and Ms. King's testimony at trial "confirmed

[that] Natera's false advertisements led to confusion among customers." D.I. 348

at 2. But here is the testimony of Dr. Maag cited by CareDx:

> Q.     Okay. All right.
>
> And did this concern you, that they were
> marketing that their specificity was better in the Sigdel
> study than in the Bloom study?
>
> A.     You [i.e., counsel] kind of mentioned how many
> phone calls I got from the University of Pennsylvania,
> from Cleveland Clinic, from all around the country about
> their claiming superiority based on what, they have a
> better assay. So this caused a lot of confusion internally
> and externally with our customers.

3/7 Tr. 212:4–12. And here is the testimony of Ms. King cited by CareDx:

7

> A.     So the Brave Heart team was a group of our executives who were meeting to respond to these kind of messages that were coming from Natera. So we would talk about things like – you know, we would review messaging that we were seeing out in the field, we would review centers that we were hearing were coming back and getting messages, these kind of superiority claim messages from Natera, that sort of thing.
>
> Q.     And were you included in the Brave Heart team?
>
> A.     Yes, I was.
>
> * * * *
>
> Q.     So does it matter whether the other party is claiming superiority or not?
>
> A.     Absolutely.
>
> Q.     Isn't it true that CareDx is going to respond?
>
> A.     Oh, we respond on a very different level if somebody is coming out and claiming superiority in an inappropriate way when they're basing these two publications as the basis for these claims.
>
>         You know, these two publications are ones that are not apples to apples, and they're going around as if they are and confusing clinicians, confusing patients. And that is why we have to have, you know, a much bigger response to that than what we have with a company, a competitor, that's coming in and messaging their data appropriately.

3/8 Tr. 364:23–365:7, 378:15–379:4. No rational juror could conclude from this vague, conclusory, and hearsay-riddled testimony that customers were deceived by or relied on false advertisements published by Natera.

8

Finally, CareDx argues that "[c]ourts routinely recognize that deliberately false advertising campaigns, in which substantial resources are devoted, support a reasonable inference that customers were actually deceived." D.I. 348 at 4. But the cases it cites in support of this assertion are decisions issued in three circuits that have held that actual deception may be presumed from evidence of deliberate engagement in false advertising. *See* D.I. 348 at 4–5 (citing *U-Haul Int'l., Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1041 (9th Cir. 1986); *Resource Dev. V. Statue of Liberty-Ellis Island*, 926 F.2d 134, 140 (2d Cir. 1991); *FTC v. Brown & Williamson Tobacco Corp.*, 778 F.2d 35, 42 (D.C. Cir. 1985)). In the Third Circuit, evidence of an intent to mislead does not warrant a presumption of actual deception. *Johnson & Johnson-Merck Consumer Pharms. Co. v. Rhone-Poulenc Rorer Pharms., Inc.*, 19 F.3d 125, 132 (3d Cir. 1994); *see also TRUSTID, Inc. v. Next Caller, Inc.*, 2022 WL 318299, at *9 (D. Del. Jan. 5, 2022) ("[T]he Third Circuit held [in *Johnson*] that an intent to mislead alone cannot create a presumption of actual deception[.]" (citing *Johnson*, 19 F.3d at 132)), *aff'd*, 2023 WL 2298748 (Fed. Cir. Mar. 1, 2023).

For these reasons, I will grant Natera's request for judgment as a matter of law of no damages under the Lanham Act.

9

## 2.    State Law Claims

Natera argues, and I agree, that because CareDx failed to prove customer deception from and reliance on Natera's advertisements, CareDx failed to establish the causation and injury necessary to recover damages for CareDx's state law claims.  D.I. 340 at 5, 9, 11, 19.  CareDx does not dispute that proof of causation and injury is necessary to establish damages.  On the contrary, it proposed, *see* D.I. 292 at 40, 46, and I read to the jury the following instructions:

> Actual damages refers to the amount of money that will reasonably and fairly compensate the plaintiff *for any injury you find was caused by* the other party's false advertising.
>
> * * * *
>
> If you decide that Natera's . . . false advertising *caused [CareDx] harm* under Delaware common law for unfair competition, and if you award compensatory damages, then you must decide whether the conduct justifies an award of punitive damages.

3/14 Tr. 1463:4–7, 1464:12–16 (emphasis added).  Having failed, for the reasons stated above, to establish customer deception or reliance on Natera's advertisements, CareDx also failed to establish the causation and injury required to sustain a damages award arising from its state law claims.  I will therefore grant Natera's request for judgment as a matter of law of no damages.

10

## B. Literal Falsity

As noted above, the jury found that nine of ten Natera advertising statements challenged by CareDx were literally false. Natera argues that "CareDx failed to adduce sufficient evidence of literal falsity" because "the challenged statements are ambiguous" and, "even assuming the statements were unambiguous, CareDx failed to show falsity." D.I. 340 at 11–15 (some capitalization removed).

The first advertisement found by the jury to be false (*see* D.I. 329 at 4) refutes Natera's contentions. In that advertisement, Natera stated, among other things, that Prospera is "[m]ore sensitive and specific than current assessment tools across all types of rejection." JTX-7.2; *see also* JTX-5.3 (stating that Prospera is "more sensitive and specific than current assessment tools across all type of rejection"). Natera's designated corporate representative admitted at trial, however, that both the Sigdel Study and CareDx's Bloom study found that Prospera's specificity was lower than AlloSure's specificity and that AlloSure was a "current assessment tool[,]" as that phrase is used in the advertisement. 3/8 Tr. 440:14–441:15, 442:4–13, 444:13–445:1. Based on this testimony, a rational juror could conclude that the statement that Prospera was more sensitive *and* specific than the current assessment tools was unambiguous and false.

Natera adduced evidence at trial to support its contention that the phrase "sensitive and specific" "reasonably refers to 'AUC'—a measure familiar to

11

physicians that combines both sensitivity and specificity." D.I. 354 at 10. And it argues that "[s]ince a physician could reasonably interpret Natera's advertisements either way [i.e., under either CareDx's or Natera's reading of 'sensitivity and specificity'], the[] [advertisements] are ambiguous" and therefore cannot sustain a liability finding of literal falsity under the Lanham Act. D.I. 354 at 10. Ambiguity, however, is a fact question for the jury. *See Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 199 (3d Cir. 2014) (reviewing "district court's findings that an advertising claim is unambiguous and literally false for clear error"); *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 589 (3d Cir. 2002) (treating "ambiguity" finding under Lanham Act as fact question subject to clearly erroneous standard of review); *see also Wing Enterprises, Inc. v. Tricam Indus., Inc.*, 511 F. Supp. 3d 957, 968 (D. Minn. 2021) (noting that majority of circuits, including the Third Circuit, have treated ambiguity determination for literal falsity under Lanham Act as a fact question). And, as just noted, there was record evidence from which a rational juror could find that the "sensitivity and specificity" advertisement was unambiguous and literally false.

For these reasons, I will deny Natera's motion insofar as it seeks a judgment as a matter of law of no liability on CareDx's Lanham Act claim.

12

## C.    Unfair Competition

Under Delaware law, "[t]o state a claim for unfair competition, a plaintiff must [prove] a reasonable expectancy of entering a valid business relationship, with which the defendant wrongfully interferes, and thereby defeats the plaintiff's legitimate expectancy and causes him harm." *Agilent Techs., Inc. v. Kirkland*, 2009 WL 119865, at *5 (Del. Ch. Jan. 20, 2009) (internal quotation marks and citation omitted).  Natera argues that it is entitled to judgment as a matter of law with respect to CareDx's unfair competition claim because CareDx failed to adduce evidence of a reasonable expectation of entering into a business relationship, causation, and injury.

CareDx's unfair competition claim was based on its claims of false advertising.  But, as I have already found, it failed to adduce record evidence that customers were deceived by or relied on Natera's false advertisements, and therefore it did not provide an evidentiary basis for a rational juror to conclude that Natera caused CareDx any injury.

I also agree with Natera that CareDx failed to adduce any evidence that CareDx had a reasonable expectancy of entering into a valid business relationship that Natera interfered with.  CareDx says that its evidence of lost sales is sufficient to show that CareDx had a reasonable expectation of entering into a valid business relationship.  D.I. 348 at 21.  That may be the case, but CareDx neither cited in its

13

briefing nor adduced at trial evidence to show that Natera interfered with (i.e., caused harm to) a valid business relationship.

Accordingly, I will grant Natera's motion insofar as it seeks a judgment as a matter of law of no liability on CareDx's unfair competition claim.[1]

## D.     The DTPA

Natera argues that it is entitled to judgment as a matter of law on CareDx's DTPA claim because CareDx failed to establish causation and injury.  But as CareDx notes, Natera misstates the law with respect to the DTPA, which expressly provides that for liability purposes "a complainant need not prove competition between the parties or actual confusion or misunderstanding."  6 Del. C. § 2532(b). Consistent with that express provision and at the request of both parties, I instructed the jury that CareDx "d[id] not need to prove . . . actual confusion or misunderstanding in order to prove a violation of the [DTPA]." 3/14 Tr. 1461:14–16.

For these reasons, I will deny Natera's motion insofar as it seeks judgment as a matter of law of no liability on CareDx's DTPA claim.

---

[1] CareDx's unfair competition claim is the only claim for which CareDx sought punitive damages. *See* D.I. 329 at 18.  Accordingly, my granting Natera's motion for judgment as a matter of law of no liability on CareDx's unfair competition claim provides an independent reason to grant judgment as a matter of law of no punitive damages.

14

## IV.    Conditional Ruling on Motion for a New Trial

Under Rule 50(c), "[i]f the court grants a renewed motion for judgment as a matter of law, it must also conditionally rule on any motion for a new trial by determining whether a new trial should be granted if the judgment is later vacated or reversed." Fed. R. Civ. P. 50(c).  I believe a new trial would be warranted for the same reasons I will grant judgment as a matter of law of no damages for any claim and no liability for CareDx's unfair competition claim—that is, the verdict is contrary to the evidence and, accordingly, a miscarriage of justice.

## V.    Remittitur

Because I will grant judgment as a matter of law of no damages, I need not and do not address Natera's request for a remittitur.

## VI.    Conclusion

For the reasons discussed above, I will grant in part and deny in part Natera's motion for judgment as a matter of law.  I will grant the motion insofar as it seeks judgment as a matter of law of no damages for any claim and no liability for CareDx's unfair competition claim.  I will otherwise deny the motion.

The Court will issue an Order consistent with this Memorandum Opinion.

15

# EXHIBITS C-H

# REDACTED IN ITS ENTIRETY

**CareDx's Opposition to Natera's Motion *in Limine* No. 1**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

NATERA, INC.,

            Plaintiff,

    v.

CAREDX, INC.,

            Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. 20-038 (CFC) (CJB)
(CONSOLIDATED)

## CAREDX, INC.'S OPPOSITION TO NATERA'S MOTION IN LIMINE NO. 1: TO PRECLUDE EVIDENCE AND ARGUMENT THAT NATERA ENGAGED IN FALSE ADVERTISING

Dated: December 4, 2023

OF COUNSEL:

Edward R. Reines (admitted *pro hac vice*)
Derek C. Walter (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000
edward.reines@weil.com
derek.walter@weil.com

W. Sutton Ansley (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
2001 M Street, NW, Suite 600
Washington, DC 20036
(202) 682-7000
sutton.ansley@weil.com

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market St., 12th Floor
Wilmington, DE 19801
(302) 777-0300
(302) 777-0301 (Fax)
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Defendant CareDx, Inc.*

Contrary to Natera's assertion, evidence regarding Natera's false statements, made to siphon CareDx's market share, are admissible and directly relevant to rebut arguments Natera intends to make regarding (1) the alleged superiority of its product and (2) reasonable royalty and lost profits.

First, Natera has designated transcript materials for trial in which false superiority claims are made. During his deposition, Natera's 30(b)(6) witness, Dr. Rabinowitz, repeatedly testified that Natera believed (and still believes) that Prospera is superior to AlloSure. *See, e.g.*, Ex. 1 at 93:6-11 ███████████████████

███████████████████████████████████████████);

*id.* at 94:18-20 ████████████████████████████████████

███████████████████████████████████████); *id.* at 107:1-5 (██████████

███████████████████████████████████); *id.* at 107:19-108:8 ████████████

███████████████████████████████████████████████████

███████████████████████); *id.* at 110:14-███████████████████

███████████████████████).

While Natera claims that it will not "open the door" to such evidence, this is belied by the fact that Natera has designated several portions of Dr. Rabinowitz's deposition reiterating these false claims. *See, e.g.*, Ex. 2 (designating Rabinowitz Depo. Tr. at 90:14-18; 137:20-139:5; 107:19-108:8). Indeed, at trial, Natera will likely seek to trumpet the alleged superiority of Prospera and portray CareDx as

offering an inferior product that is harming Natera in the marketplace. CareDx should be permitted to respond with probative evidence that such claims of superiority are based on false allegations.

Second, the evidence is relevant to rebut Natera's reasonable royalty and lost profits claims. With respect to royalties, this evidence is relevant to *Georgia-Pacific* Factors 5 and 9, which are the parties' commercial relationship and "the utility and advantages of the patent property over the old modes or devices," respectively. *Georgia Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (emphasis added). Because Natera contends that Prospera practices the asserted claims of the '724 and '544 Patents, Natera will likely claim that Prospera's market performance and any market share taken from CareDx, the undisputed first entrant to the market, is attributable to the patented features. *See* D.I. 330-33 ¶¶ 447-492. Natera's false statements about the supposed advantages of Prospera over AlloSure are relevant to rebut this claim. This is probative of the parties' commercial relationship as competitors and whether any gain in market share by Prospera is truly due to the patented features instead of a misunderstanding in the marketplace about whether Prospera is superior to AlloSure.

Evidence of Natera's allegations of false advertising are likewise relevant to rebut Natera's lost profits arguments, which are based on the theory that every sale made by CareDx would have gone to Natera absent CareDx's alleged infringement.

That claim is undercut by evidence that Natera's market share was driven by false claims regarding the performance of its product relative to AlloSure. This evidence helps establish that potential customers would **not** necessarily have turned to Natera's questionable Prospera even if AlloSure was unavailable, but would have instead relied on other techniques such as biopsy or serum creatinine, or other market players like Viracor. Natera nonetheless argues that such evidence is irrelevant to lost profits, because "in th[e] but-for world, AlloSure is off the market, which means the ads would not have existed." But CareDx's AlloSure was on the market before both Prospera and the issuance of Natera's patents, and Natera's false advertising traces to the earliest days of Prospera.

Natera's lost profits argument also relies on the commonality of customers. *See* D.I. 330-37 ¶¶ 83-89. Natera argues that 60% of AlloSure Tests were acquired by CareDx's customers that also bought Prospera. *Id.* ¶ 87. The conversion of CareDx's customers, however, was based on Natera's false claims of superiority.

At bottom, the probative value of this evidence is not outweighed by any risk of undue prejudice, given that Natera's designated testimony on its purported superiority and its market performance is inexorably intertwined with its false claims. To the extent Natera believes an alternative explanation exists for the increase in its market share coinciding with its claim of superiority to AlloSure, Natera is free to present them through cross-examination or its own witnesses.

3

Dated: December 4, 2023

Respectfully submitted,

FARNAN LLP

/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market St., 12th Floor
Wilmington, DE 19801
(302) 777-0300
(302) 777-0301 (Fax)
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Edward R. Reines (admitted *pro hac vice*)
Derek C. Walter (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000
edward.reines@weil.com
derek.walter@weil.com

W. Sutton Ansley (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
2001 M Street, NW, Suite 600
Washington, DC 20036
(202) 682-7000
sutton.ansley@weil.com

*Attorneys for Defendant*

4

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 4, 2023, a copy of CareDx, Inc.'s Opposition to Natera's Motion in Limine No. 1 – To Preclude Evidence and Argument That Natera Engaged in False Advertising was served on the following as indicated:

<table>
<tr>
<td>

<u>Via E-Mail</u>
Jack B. Blumenfeld
Derek J. Fahnestock
Anthony D. Raucci
MORRIS, NICHOLS, ARSHT &
TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
dfahnestock@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Plaintiff Natera, Inc.*

</td>
<td>

<u>Via E-Mail</u>
Andrew M. Holmes
Jeff Nardinelli
Kevin P.B. Johnson
Sandra L. Haberny, Ph.D.
Sarah M. Cork, Ph.D.
Bianca Fox
Abigail E. Clark
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Natera-qeteam@quinnemanuel.com

*Attorneys for Plaintiff Natera, Inc.*

</td>
</tr>
</table>

/s/ Brian E. Farnan
Brian E. Farnan

# EXHIBIT 1

REDACTED

IN ITS

ENTIRETY

# EXHIBIT 2

| Natera, Inc. v. CareDx Inc. (Case No. 20-cv-038)(CFC-CJB) | | | |
|---|---|---|---|
| Witness: Matthew Rabinowitz | | | |
| Date of Deposition: 2023-04-18 | | | |
| CareDx's Opening Designations | Natera's Objections | Natera's Counter-Designations | CareDx's Objections to Natera's Counter-Designations |
| 10:5-8 | -- | | |
| 40:13-22 | SCOPE | | |
| 41:6-11 | R; 403; 602; CS; V; SCOPE | | |
| 44:20-22 | R; 403; SCOPE | 48:6-50:10 | |
| 46:19-24 | R; 403; MIL | | |
| 52:20-53:11 | R; 403; MIL | 53:12-54:19; 54:23-55:24; 57:7-58:6; 61:23-62:13; 107:19-108:8 | |
| 58:12-15 | NT; R; SCOPE | | |
| 60:9-13 | NT; R; SCOPE | 90:14-18 | |
| 62:19-23 | NT; R; SCOPE | | |
| 66:1-4 | R; 403; V; SCOPE | 66:5-20; 249:22-250:15 | |
| 69:16-20 | NT; R; SCOPE | | |
| 74:4-20 | R; 403; 602; V | 74:21-77:18; 87:14-89:13 | |
| 85:1-15 | R; 403; V; SCOPE | | |
| 94:24-95:4 | R; 403; H; NT | 96:22-97:3; 97:18-98:6; 98:10-16 | |
| 95:12-21 | R; 403; H | | |
| 99:1-5 | R; 403; NT | | |
| 100:22-101:7 | R; 403; 602; CS; F; V; SCOPE | | |
| 103:4-6 | R; 403; NT | | |
| 107:11-18 | R; 403; 602; CS; H; SCOPE | 109:5-22 | |
| 112:24-113:9 | R; 403; 701; CS; F; SCOPE | | |
| 117:1-8 | R; 403; 701; CS; F; SCOPE | | |
| 118:19-21 | R; 403; F; CS; SCOPE | | |
| 119:17-21 | R; 403; 602; MIL; SCOPE | | |
| 126:9-11 | R; 403; SCOPE | | |
| 126:24-127:6 | R; 403; SCOPE | | |
| 130:24-131:4 | R; 403; NT | | |
| 135:10-14 | R; 403; NT | | |
| 136:3-12 | R; 403; 602; CS; V; SCOPE | 137:20-139:5 | |

| 142:1-14 | R; 403; 701; V; SCOPE | 142:15-143:6; 257:22-259:18 | |
|---|---|---|---|
| 143:7-17 | R; 403; 701; V; SCOPE | | |
| 144:10-12 | R; 403; 701; V; SCOPE; INQA | 144:13-146:6; 146:13-22 | |
| 148:18-22 | R; 403; 701; SCOPE | | |
| 149:7-10 | R; 403; 701; SCOPE | | |
| 150:4-151:9 | R; 403; V; CS | 151:10-152:2 | |
| 152:3-7 | R; 403; NT | | |
| 154:23-155:1 | R; 403; INQA; MD | 152:14-153:10; 156:3-9; 160:2-9; 165:17-166:2 | |
| 161:20-21 | R; 403 | 162:1-3 | |
| 162:4-22 | R; 403; SCOPE | | |
| 167:3-12 | R; 403; CS; 602; SCOPE | | |
| 169:14-18 | R; 403; CS; 602; SCOPE | | |
| 170:22-171:14 | R; 403; CS; 602; SCOPE | | |
| 173:25-174:18 | R; 403; 701; SCOPE | | |
| 176:4-16 | R; 403; CLC | | |
| 177:24-178:9 | R; 403; V | | |
| 179:1-180:5 | R; 403; F; CS; V; INQA | 178:10-25; 180:6-21 | |
| 189:25-190:24 | R; 403; 602; 701; CLC; CS; F; V | | |
| 193:23-194:25 | R; 403; 602; 701; CLC; CS; F; V | | |
| 197:17-198:1 | R; 403; 701; SCOPE | | |
| 198:10-18 | R; 403; 701; SCOPE | | |
| 203:16-204:22 | R; 403; 701; CLC; SCOPE | 256:21-257:14 | |
| 206:16-22 | R; 403; NT; CLC; 602; CS | | |
| 206:24-207:19 | R; 403; NT; CLC; 602; CS | | |
| 208:11-210:15 | R; 403; NT; CLC; 602; CS; V; MT | | |
| 211:2-23 | R; 403; NT; CLC; 602; CS; V; F | | |
| 212:22-213:1 | R; 403; V; 701; SCOPE | | |
| 213:3-4 | R; 403; V; 701; SCOPE | | |
| 213:6-17 | R; 403; 602; F; CLC | | |
| 214:18-25 | R; 403; 602; 701; CLC | | |
| 215:20-216:4 | R; 403; 701; CLC; MOT | | |
| 216:7-18 | R; 403; 701; CLC; MOT | | |
| 217:3-7 | R; 403; 701; CLC; MOT | | |
| 217:9-20 | R; 403; 701; CLC; MOT | | |

| 217:22-25 | R; 403; 701; CLC; MOT | | |
|---|---|---|---|
| 218:2-11 | R; 403; 701; CLC; MOT | | |
| 218:13-17 | R; 403; 701; CLC; MOT | | |
| 218:19-219:9 | R; 403; 701; CLC; MOT | 219:11-24 | |
| 221:25-222:16 | R; 403; 701; CLC; MOT | 221:11-24 | |
| 222:19-223:25 | R; 403; 701; CLC; MOT; V | | |
| 224:1-12 | R; 403; 701; SCOPE | | |
| 225:4-226:10 | R; 403; CLC; 701; 602; CS; F; SCOPE | | |
| 229:19-230:18 | R; 403; CLC; 701; 602; CS; F; SCOPE | | |
| 230:24-231:9 | R; 403; CLC; 701; 602; CS; F; SCOPE | | |
| 232:7-12 | R; 403; 701; PRIV; SCOPE | | |
| 235:4-16 | R; 403; 701; PRIV; SCOPE | | |
| 235:25-236:1 | R; 403; 701; PRIV; SCOPE | | |
| 236:6-24 | R; 403; 701; PRIV; SCOPE | | |
| 237:2-4 | R; 403; 701; PRIV; SCOPE | | |
| 239:8-17 | R; 403; F; 602; SCOPE | | |
| 240:17-241:1 | R; 403; F; 602; SCOPE | | |
| 243:9-16 | R; 403; F; 602; SCOPE | | |
| 244:25-245:5 | R; 403; NT | | |
| 248:22-249:21 | R; 403; V | | |
| 250:20-251:1 | R; 403; NT | | |
| 252:11-253:15 | R; 403; SCOPE | | |
| 254:11-21 | R; 403; SCOPE; H | | |
| 255:4-5 | -- | 255:6-21 | |
| 255:22-256:10 | R; 403; SCOPE; CS; 602 | | |
| 261:10-15 | R; 403; SCOPE | | |
| 263:1-15 | R; 403; 602; 701; AF; CLC; CS; SCOPE | | |
| 266:16-267:6 | R; 403; 602; 701; CLC; CS; SCOPE; MT; V | | |
| 267:25-268:13 | R; 403; 602; 701; CLC; CS; SCOPE; MT; V | 276:10-277:5 | |

**Natera's Reply in Support of Motion *in Limine* No. 1**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NATERA, INC.,                    )
                                 )
            Plaintiff,           )
                                 )
      v.                         )   C.A. No. 20-038 (CFC) (CJB)
                                 )   (CONSOLIDATED)
CAREDX, INC.,                    )
                                 )
            Defendant.           )


**NATERA'S REPLY IN SUPPORT OF ITS MOTION *IN LIMINE* NO. 1 –
TO PRECLUDE EVIDENCE AND ARGUMENT THAT NATERA
<u>ENGAGED IN FALSE ADVERTISING</u>**

CareDx offers two incorrect reasons the patent jury in this case should hear about the allegations, trial, and jury verdict from an unrelated false advertising case (the "Ads Case"). First, it argues Natera will open the door by repeating a claim that Prospera is superior to AlloSure. Opp. 1-2. But Natera need not and will not repeat its superiority claims here. Second, CareDx argues the false advertising case is relevant to damages. Opp. 2. But the Ads Case verdict does not render any of the *Georgia-Pacific* factors more or less applicable, for at least the following reasons.

**Competitors**: It is undisputed that Natera and CareDx are competitors. *See, e.g.*, Ex. AA (Napper Tr.) at 222:6-7. The Ads Case is not needed to establish this.

**Patent Utility:** Natera's expert explains patent utility by stating the claims enable—through cfDNA testing—more accurate and less invasive testing than non-cfDNA tests. Mot., Ex. H (Gunderson Rpt.) ¶240. This does not create any comparison to, or claim of superiority over, AlloSure, since it also uses on cfDNA.

**Lost Profits:** This Court already rejected CareDx's evidence-free assertion (arising from the Ads Case) that Natera used false advertising to gain the market share that now justifies its lost profits claims. Opp. 2-3; Mot., Ex. B at 6-7.

CareDx has not shown that the verdict or allegations from the Ads Case have any relevance here. But there is no doubt that introducing the jury verdict from that case would have the prejudicial effect of (among other things) inviting the jury here to follow the lead of the prior jury. *See* Fed. R. Evid. 403.

1

OF COUNSEL:

Kevin P.B. Johnson
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
555 Twin Dolphin Dr., 5th Flr.
Redwood Shores, CA 94065
(650) 801-5000

Andrew M. Holmes
Jeff Nardinelli
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
50 California Street, 22nd Flr.
San Francisco, CA 94111
(415) 875-6600

Sandra L. Haberny, Ph.D.
Sarah M. Cork, Ph.D.
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
865 South Figueroa Street, 10th Flr.
Los Angeles, CA 90017
(213) 443-3000

Bianca Fox
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
51 Madison Avenue, 22nd Flr.
New York, NY 10010
(212) 849-7000

Abigail E. Clark
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
2601 South Bayshore Dr, Ste. 1550
Miami, FL 33133
(305) 402-4880

December 11, 2023

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Derek J. Fahnestock*

Jack B. Blumenfeld (#1014)
Derek J. Fahnestock (#4705)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
dfahnestock@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Plaintiff Natera, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 11, 2023, copies of the foregoing were

caused to be served upon the following in the manner indicated:

Brian E. Farnan, Esquire                    *VIA ELECTRONIC MAIL*
Michael J. Farnan, Esquire
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Defendant*

Edward R. Reines, Esquire                   *VIA ELECTRONIC MAIL*
Derek C. Walter, Esquire
Shawn Chi, Esquire
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA  94065
*Attorneys for Defendant*

Randi W. Singer, Esquire                    *VIA ELECTRONIC MAIL*
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153
*Attorneys for Defendant*

W. Sutton Ansley, Esquire                   *VIA ELECTRONIC MAIL*
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC  20036
*Attorneys for Defendant*

/s/ Derek J. Fahnestock
_____
Derek J. Fahnestock (#4705)

# EXHIBIT AA

REDACTED
IN ITS
ENTIRETY