IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NATERA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 20-038 (CFC) (CJB) |
| | ) | (CONSOLIDATED) |
| CAREDX, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S RULE 50(a) MOTION FOR
<u>JUDGMENT AS A MATTER OF LAW</u>**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Derek J. Fahnestock (#4705)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
dfahnestock@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Plaintiff Natera, Inc.*

OF COUNSEL:

Kevin P.B. Johnson
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, CA 94065
(650) 801-5000

Andrew M. Holmes
Jeff Nardinelli
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600

Sandra L. Haberny, Ph.D.
Sarah M. Cork, Ph.D.
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
865 South Figueroa Street, 10th
Floor
Los Angeles, CA 90017
(213) 443-3000

Bianca Fox
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

January 25, 2024

# **TABLE OF CONTENTS**

**Page**

A.   No Reasonable Jury Could Conclude That CareDx Does Not Infringe the Asserted Claims ................................................................................................... 1

   1.   Infringement of the '544 Patent ..................................................... 2

   2.   Infringement of the '180 Patent ..................................................... 4

B.   No Reasonable Jury Could Conclude That CareDx Carried Its Burden To Prove Invalidity ............................................................................................ 5

   1.   Legal Standards ............................................................................. 6

      (a)   Obviousness ............................................................................... 6

      (b)   Priority ....................................................................................... 7

      (c)   Written Description .................................................................... 8

      (d)   Patent Eligibility ....................................................................... 9

   2.   CareDx Failed To Prove Invalidity Of Any Claim Of The '544 Patent .... 11

      (a)   Obviousness ............................................................................. 11

      (b)   Written Description .................................................................. 16

      (c)   Patent Eligibility ..................................................................... 18

   3.   CareDx Failed To Prove Invalidity Of Any Asserted Claim Of The '180 Patent .................................................................................................. 19

      (a)   Obviousness ............................................................................. 19

      (b)   Written Description .................................................................. 19

      (c)   Patent Eligibility under Section 101 ....................................... 21

CONCLUSION ......................................................................................................... 22

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**Cases**

*Alice Corp. Pty. v. CLS Bank Int'l,*
 573 U.S. 208 (2014)...................................................................................11

*ArcherDX, Inc. v. QIAGEN Sciences, LLC,*
 No. 18-1019 (MN), 2020 WL 3316055 (D. Del. June 18, 2020).......................9

*Ariad Pharms., Inc. v. Eli Lilly & Co.,*
 598 F.3d 1336 (Fed. Cir. 2010) (en banc) .....................................................8, 9

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.,*
 788 F.3d. 1371 (Fed. Cir. 2015) ........................................................................11

*Arrhythmia Research Tech., Inc. v. Corazonix Corp.,*
 958 F.2d 1053 (Fed. Cir. 1992) ...........................................................................9

*Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC,*
 915 F.3d. 743 (Fed. Cir. 2019) .........................................................................11

*Bascom Global Internet Services, Inc. v. AT&T Mobility LLC,*
 827 F.3d 1341 (Fed. Cir. 2016) .........................................................................11

*Berkheimer v. HP Inc.,*
 881 F.3d 1360 (Fed. Cir. 2018) ......................................................................9, 10

*CardioNet, LLC v. InfoBionic, Inc.,*
 955 F.3d 1358 (Fed. Cir. 2020) .........................................................................10

*CareDx, Inc. v. Natera, Inc.,*
 40 F.4th 1371 (Fed. Cir. 2022) ..........................................................................11

*Chamberlain Grp., Inc. v. Techtronic Indus. Co.,*
 935 F.3d 1341 (Fed. Cir. 2019) .........................................................................10

*Duncan Parking Techs., Inc. v. IPS Grp., Inc.,*
 914 F.3d 1347 (Fed. Cir. 2019) ...........................................................................1

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016) ..........................................................................10

*Fairchild Semiconductor Corp. v. Power Integrations*,
100 F. Supp. 3d 357 (D. Del. 2015)......................................................................7

*Graham v. John Deere Co. of Kansas City*,
383 U.S. 1 (1966).................................................................................................6

*In re Chu*,
66 F.3d 292 (Fed. Cir. 1995) ...............................................................................8

*In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Pat. Litig.*,
676 F.3d 1063 (Fed. Cir. 2012) ............................................................................7

*KSR Int'l Co. v. Teleflex Inc.*,
550 U.S. 398 (2007)..............................................................................................6

*Markman v. Westview Instruments, Inc.*,
52 F.3d 967 (Fed. Cir. 1995) (en banc) ...............................................................1

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
566 U.S. 66 (2012)..........................................................................................10, 11

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
837 F.3d 1299 (Fed. Cir. 2016) ..........................................................................11

*Morgan v. Covington Township*,
563 F. App'x 896 (3d Cir. 2014) ...........................................................................1

*NexStep, Inc. v. Comcast Cable Communs., LLC*,
No. 19-1031-RGA, 2021 WL 4943627 (D. Del. Sept. 17, 2021) ......................11

*Norman v. Elkin*,
860 F.3d 111 (3d Cir. 2017) .................................................................................1

*PowerOasis, Inc. v. T-Mobile USA, Inc.*,
522 F.3d 1299 (Fed. Cir. 2008) .......................................................................7, 8

*Ralston Purina Co. v. Far-Mar-Co, Inc.*,
772 F.2d 1570 (Fed. Cir. 1985) ............................................................................7

*Roche Molecular Sys., Inc. v. CEPHEID*,
  905 F.3d. 1363 (Fed. Cir. 2018) ............................................................................... 11

*Tech. Licensing Corp. v. Videotek, Inc.*,
  545 F.3d 1316 (Fed. Cir. 2008) ............................................................................... 8

*Vas–Cath Inc. v. Mahurkar*,
  935 F.2d 1555 (Fed. Cir. 1991) ............................................................................... 8

**Rules and Statutes**

35 U.S.C. § 103 ............................................................................................................. 6

35 U.S.C. § 112 ........................................................................................................ 7, 8

Fed. R. Civ. P. 50(a) .................................................................................................. 1

Plaintiff Natera, Inc. respectfully moves pursuant to Fed. R. Civ. P. 50(a) for judgment as a matter of law ("JMOL") that Defendant CareDx, Inc. infringes claims 21, 26, and 27 of the '544 Patent and claims 14 and 15 of the '180 Patent, and that CareDx has failed to prove invalidity.

## LEGAL STANDARDS

Judgment as a matter of law is appropriate "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a). A court must "view[] the evidence in the light most favorable to the nonmoving party," *Morgan v. Covington Township*, 563 F. App'x 896, 899 (3d Cir. 2014), but "a scintilla of evidence is not enough" to tip the scales in favor of the non-moving party. *Norman v. Elkin*, 860 F.3d 111, 129 (3d Cir. 2017).

## ARGUMENT

### A.     No Reasonable Jury Could Conclude That CareDx Does Not Infringe the Asserted Claims

"An infringement analysis entails two steps." *Duncan Parking Techs., Inc. v. IPS Grp., Inc.*, 914 F.3d 1347, 1360 (Fed. Cir. 2019) (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc)). "The first step is determining the meaning and scope of the patent claims asserted to be infringed." *Id.* "The second step is comparing the properly construed claims to the device accused of infringing." *Id.*

1

## 1.    Infringement of the '544 Patent

No reasonable jury could conclude that Natera has failed to meet its burden to prove infringement of claims 21, 26, and 27 of the '544 Patent by a preponderance of the evidence.  CareDx agreed that it uses AlloSure and AlloSeq (the "Accused Products"), in the United States.  JPTO Ex. 1, ¶¶10-11.  In Natera's case-in-chief, Natera's expert, Dr. Quackenbush, offered testimony establishing how the Accused Products practice all elements of  independent claim 21 of the '544 Patent (PTX-0003.00076), and then the additional elements of dependent claims 26 and 27.  (PTX-0003.00075).

CareDx's expert Dr. Van Ness did not assert any affirmative evidence that the Accused Products do not practice the asserted claims of the '544 Patent, except "extracting cell-free DNA from the biological sample." There, CareDx's rebuttal is completely dependent on the Court adopting its claim construction that would restrict "extracting cell-free DNA" to "isolating cfDNA from the first individual", *i.e.*, separating the cfDNA of the first individual from the second individual in a mixed sample—and Dr. Van Ness admitted as much.  1/25/2014 Tr., 246:12-19.

In Natera's case-in-chief, Natera's expert, Dr. Quackenbush, relying on CareDx documents, explained that "extracting cell-free DNA from the biological sample" bears its plain and ordinary meaning, i.e. "you extract DNA, and that's what DNA extraction methods do." *Id.*, 138:7-8.  Dr. Quackenbush further

2

explained that use of CareDx's Accused Products meets this element because the Accused Products "pull out this mixture of cell-free DNA" ("cfDNA") from the biological sample using a Qiagen DNA extraction kit. *Id.*, 142:21-143:1. CareDx offered no rebuttal on these elements under Natera's proposed construction. Instead, CareDx's noninfringement position is entirely dependent upon the Court adopting its "isolating" construction. With the proper claim construction applied, which requires only pulling the cfDNA out from other components of the biological sample, CareDx does not contest infringement of any asserted '544 claim, and JMOL is appropriate.

Under the correct claim construction of "extracting," CareDx can only cling to one remaining non-infringement theory with respect to the '544 Patent: that the Accused Products do not practice the "determining the most likely genetic data ... of target loci" claim limitation of 21[c] "because AlloSure does not "separately genotyp[e]" the donor and the recipient, whereas the claims require "determining the most likely genetic data for DNA from the first individual." D.I. 233, pg. 3. CareDx was bound by Judge Burke's Order, D.I. 390, that "none of its experts w[ould] put forward the theory at issue during trial." Dr. Van Ness was thus not permitted to discuss this late-disclosed and, frankly, unsupported non-infringement theory. Dr. Grskovic, CareDx's only fact witness, confirmed that her testimony was "no expert opinion, just the facts." 1/24/2024, Tr. 104:21-25. Dr. Grskovic

3

offered no interpretation of the asserted claims for that reason. And, in fact, Dr. Woodward, considering CareDx's own analytical validation paper in response to the following question: "So then, to clean it up, as described in the Grskovic paper [DTX-0035], in the percent donor-derived cell-free DNA calculation section, you and your coauthors are describing how AlloSure ***determines the most likely percent of donor-derived cell-free DNA by estimating it***, right?" testified by deposition that "Yes, that sounds right." 1/23/2024 Tr., 88:3-8. Dr. Woodward admitted AlloSure practices this claim limitation. With only vague facts untethered to any discrete noninfringement theory in the record, and especially with those facts actively contested by both Dr. Quackenbush and Dr. Woodward, no reasonable jury could find that CareDx rebutted Natera's infringement evidence. As a matter of law, use of the Accused Products infringes all asserted claims of the '544 Patent.

## 2. Infringement of the '180 Patent

No reasonable jury could find that Natera failed to meet its burden that the Accused Products practice the asserted claims, 14 and 15, of the '180 Patent. As explained above, it is undisputed that CareDx uses the Accused Products in the United States. Moreover, CareDx admitted that both Accused Products practice all elements of claims 14 and 15 except element 14[b], JPTO Ex. 1, ¶¶11-12, 14-15, and as to that element, the only defense CareDx maintains is that neither Accused

Product involves "measuring" by high-throughput sequencing. Dr. Quackenbush submitted to the jury that the Accused Products "measur[e] ... by high-throughput sequencing" because a sequencer reads the physical DNA molecules to determine their sequence, which constitutes measuring. 1/23/2024 Tr., 194:5-8. CareDx's own documents, as endorsed by CareDx's corporate representative Dr. Guhlbace, *id*., 99:9-22 (citing PTX-0055.0001), confirm Dr. Quackenbush's opinion that AlloSure and AlloSeq "practice each and every element of the claims and, therefore, infringe." 1/23/2014 Tr., 200:9-13. CareDx's only colorable attempt at establishing noninfringement is Dr. Van Ness's unfounded assertion that the sequencer only produces "raw data," and that "You take the sequence and you go through all of these five steps that AlloSure has developed to determine your allele counts." 1/24/2025 Tr., 240:2-5. But Dr. Van Ness's argument does not address CareDx's own SOPs that state "AlloSure measures the amount of donor-derived cfDNA relative to the total amount of cfDNA in a plasma sample by sequencing 405 SNPs." PTX-0055.0001. CareDx does not meaningfully address Natera's infringement case, or present evidence to rebut Natera's invocation of CareDx's own documents and testimony. No reasonably jury could find that the Accused Products do not practice claim 14[b] of the '180 Patent.

**B.    No Reasonable Jury Could Conclude That CareDx Carried Its**

### Burden To Prove Invalidity[1]

CareDx bears the burden of proving invalidity of the asserted claims by clear and convincing evidence. As of the close of its case-in-chief on invalidity, it has failed to meet its burden as to each of the asserted claims.

### 1.    Legal Standards

#### (a)    Obviousness

A patent is invalid as obvious "if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains." 35 U.S.C. § 103. In an obviousness inquiry, the "scope and content of the prior art are determined; differences between the prior art and the claims at issue are ascertained; and the level of ordinary skill in the pertinent art resolved. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 399 (2007) (internal alterations omitted) (quoting *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17-18 (1966)). The

---

[1] Natera's rebuttal case, which is incomplete, will provide additional evidence to rebut CareDx's invalidity defenses, but Natera moves herein on the basis that CareDx failed to meet its burden in its case-in-chief.

obviousness inquiry generally requires a showing "by clear and convincing evidence" that a "skilled artisan would have had reason to combine the teaching of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success from doing so." *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Pat. Litig.*, 676 F.3d 1063, 1069 (Fed. Cir. 2012).

(b)    <u>Priority</u>

"[T]he test for sufficiency of support in a parent application is whether the disclosure of the application relied upon reasonably conveys to the artisan that the inventor had possession at that time of the later claimed subject matter. Precisely how close the original description must come to comply with the description requirement of 35 U.S.C. § 112 must be determined on a case-by-case basis." *Ralston Purina Co. v. Far-Mar-Co, Inc.*, 772 F.2d 1570, 1575 (Fed. Cir. 1985) (internal quotes and citation omitted).

If the party challenging validity comes forward with clear and convincing evidence of invalidating prior art that puts the priority date of any patent claim at issue, the burden shifts to the patentee "to come forward with evidence to prove entitlement to claim priority to a filing date that predates the filing date of the patent." *Fairchild Semiconductor Corp. v. Power Integrations*, 100 F. Supp. 3d 357, 368 (D. Del. 2015) (citing *PowerOasis, Inc. v. T-Mobile USA, Inc.,* 522 F.3d

1299, 1305-06 (Fed. Cir. 2008)). To meet this burden, the patentee must come forward with evidence that "the disclosure of the earlier application provides support for the claims of the later application, as required by 35 U.S.C. § 112." *PowerOasis*, 522 F.3d at 1306 (citing *In re Chu*, 66 F.3d 292, 297 (Fed. Cir. 1995)). However, the burden of proving invalidity by clear and convincing evidence remains on the party challenging validity. *Id.* at 1303; *see also Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1328 (Fed. Cir. 2008) ("Assuming then that [patentee's] evidence and argument in support of the earlier filing date is now before the court, the burden of going forward again shifts to the proponent of the invalidity defense … to convince the court that [patentee] is not entitled to the benefit of the earlier filing date.")

(c)    <u>Written Description</u>

To satisfy § 112's written description requirement, the description "must clearly allow persons of ordinary skill in the art to recognize that the inventor invented what is claimed." *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc) (internal quotation marks and alterations omitted) (*quoting Vas–Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1562-63 (Fed. Cir. 1991)). "[T]he test for sufficiency is whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of

8

the claimed subject matter as of the filing date." *Id.*; *see also id.* at 1354 (patent

presumed valid in adequate written description inquiry).

The "level of detail required to satisfy the written description requirement

varies depending on the nature and scope of the claims and on the complexity and

predictability of the relevant technology." *Ariad*, 598 F.3d at 1351. Although "a

description that merely renders the invention obvious does not satisfy" the written

description requirement, "the description requirement does not demand any

particular form of disclosure" or "that the specification recite the claimed invention

in haec verba." *Id.* at 1352. Moreover, "the written description requirement does

not demand either examples or an actual reduction to practice." *Id.*; *accord*

*ArcherDX, Inc. v. QIAGEN Sciences, LLC*, No. 18-1019 (MN), 2020 WL 3316055,

*3 (D. Del. June 18, 2020) ("[R]eferences cited in the patent … are incorporated

by reference.").

### (d)     Patent Eligibility

"Whether a claim recites patent eligible subject matter is a question of law

which may contain disputes over underlying facts." *Berkheimer v. HP Inc.*, 881

F.3d 1360, 1368 (Fed. Cir. 2018). "Whether a claim is directed to statutory subject

matter is a question of law." *Arrhythmia Research Tech., Inc. v. Corazonix Corp.*,

958 F.2d 1053, 1055–56 (Fed. Cir. 1992)); *see also id.* (recognizing "determination

of this question may require findings of underlying facts specific to the particular

subject matter and its mode of claiming"). "The question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact." *Berkheime*r, 881 F.3d at 1368.

At step one, the "directed to" inquiry "cannot simply ask whether the claims involve a patent-ineligible concept, because essentially every routinely patent-eligible claim involving physical products and actions involves a law of nature and/or natural phenomenon—after all, they take place in the physical world." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016) (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78 (2012) ("For all inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas."). Rather, the "directed to" inquiry "applies a stage-one filter to claims, considered in light of the specification, based on whether their character as a whole is directed to excluded subject matter." *Id.* (internal quotation marks omitted). Thus, claims covering a "constructive process, carried out by an artisan to achieve a new and useful end, is precisely the type of claim that is eligible for patenting." *Rapid Litig. Mgmt.*, 827 F.3d at 1048 (internal quotation marks omitted). Step one involves consideration of "the patent's written description, as it informs our understanding of the claims." *CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1368 (Fed. Cir. 2020); *see also Chamberlain Grp.,*

*Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1346 (Fed. Cir. 2019) ("specification [is] helpful in illuminating what a claim is 'directed to'"); *NexStep, Inc. v. Comcast Cable Communs., LLC*, No. 19-1031-RGA, 2021 WL 4943627, *2 (D. Del. Sept. 17, 2021) (similar).

Step two involves "considering the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014) (*citing Mayo*, 566 U.S. at 66)); *see also McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1312 (Fed. Cir. 2016) (courts must "look to both the claim as a whole and the individual claim elements"); *Bascom Global Internet Services, Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) ("The inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art."); *accord CareDx, Inc. v. Natera, Inc.*, 40 F.4th 1371 (Fed. Cir. 2022); *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d. 1371, 1377 (Fed. Cir. 2015); *Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC*, 915 F.3d. 743, 753-54 (Fed. Cir. 2019); *Roche Molecular Sys., Inc. v. CEPHEID*, 905 F.3d. 1363, 1372 (Fed. Cir. 2018).

### 2.   CareDx Failed To Prove Invalidity Of Any Claim Of The '544 Patent

(a)   <u>Obviousness</u>

- ***Dhallan in view of Leamon***

CareDx failed to prove by clear and convincing evidence that any of claims 21, 26, or 27 is invalid as obvious in view of Dhallan (US 2004/0137470) (DTX 660) and Leamon (US 2006/0228721). 1/24/2024 Tr., 194:6-9. For example, no reasonable jury could conclude from the evidence CareDx presented that either Dhallan or Leamon discloses sequencing-by-synthesis of cfDNA to obtain data suitable for determining allele frequencies, which is required by all three Asserted Claims of the '544 Patent.

The only form of sequencing-by-synthesis disclosed in Dhallan is an older method called "Sanger sequencing" that Dhallan does not use to generate sequence data from cfDNA to determine allele frequencies, as required by the claims. 1/24/2024 Tr., 302:3-20. Further, a POSA would understand that Sanger sequencing is ill-suited to obtaining quantitative data from low abundance DNA, like cfDNA. Dhallan also fails to "determine genetic data," as claimed, using allele frequencies. Instead it uses a discredited and "weird way of detecting the presence of different SNPs using something called 'restriction enzymes.'" *Id*., 302:21-303:1.

Leamon discloses neither cfDNA nor mixed samples, required by the claims, nor does Leamon teach a quantitative method as required by element 21[c] (using allele frequencies.)

12

Nor did CareDx present evidence of a reason to combine Dhallan and Leamon that a reasonable juror could rely on to find the asserted claims obvious. Instead Dr. Van Ness's testimony was entirely conclusory. (1/24 Tr. at 199:22-200:13). Leamon does not involve cfDNA, a low abundance DNA, as opposed to the genomic DNA taught by Leamon. One of skill would not expect Leamon's methods to be applicable to cfDNA. Further, a POSA would not be motivated to combine Dhallan's disclosed gel-based method with any multiplex PCR method such as Leamon, for example, because the gel-based method requires separation of samples.

- ***Quake***
  - o *Priority*

Natera contends that the Asserted Claims of the '544 Patent are entitled to claim a priority date of September 22, 2006 based on the '610 Provisional Application. CareDx bears the burden to show that Quake, a 2009 reference, is prior art to the '544 Patent. If the Asserted Claims are entitled to the 2006 priority date of the '610 Provisional Application, Quake is not prior art. To prove that Quake is prior art, CareDx bears a burden of production to put the priority of the asserted claims at issue by providing evidence that Quake invalidates the claims. If that burden is met, the burden shifts to Natera to come forth with evidence as to whether the Asserted Claims may claim priority to the '610 Provisional. If that

13

burden is met, CareDx bears the ultimate burden to prove by clear and convincing evidence that the Asserted Claims of the '544 Patent are not entitled to claim priority to the '610 Provisional Application.

No reasonable jury could find that CareDx has met its burden to show that Natera cannot claim priority to the '610 Provisional Application. As an initial matter, the issue of priority is moot because no reasonable jury could find that Quake renders obvious any of the asserted claims. In particular as to claim 26, CareDx has not proven that Quake teaches the required combination of targeted and universal PCR. Quake discloses "shotgun sequencing" of cfDNA, which involves neither targeted (nor universal) PCR, but is instead random. Nor is there motivation to replace shotgun sequencing with a technique using targeted or universal PCR. For these reasons, JMOL is appropriate that CareDx has failed to meet its burden to prove obviousness in view of Quake even if it were prior art.

As to priority, even before its rebuttal case, Natera met its burden to come forward with evidence that claims 21, 26, and 27 are entitled to claim priority to the '610 Provisional, and indeed no reasonable jury could conclude that they are not.[2] The '610 Provisional is record evidence. On cross, Dr. Van Ness admitted that he did not consider the entire file history of the '544 Patent, and Natera

---

[2] Natera expects in its rebuttal case to come forward with further evidence sufficient to meet any burden of production.

introduced evidence that the Patent Office specifically analyzed the priority of the claims (DTX1323) and determined that they were entitled to the 2006 date. Dr. Van Ness admitted that he not considered this key piece of intrinsic evidence.

Nor could any reasonable juror conclude that CareDx has proven by clear and convincing evidence that Natera is not entitled to the 2006 priority date of the '610 Provisional. CareDx, in its case-in-chief, challenged four aspects of the disclosure of the '610 Patent: disclosure of organ transplant, donor-derived cell-free DNA, sequencing-by-synthesis, and allele frequencies. No reasonable juror could conclude that there is clear and convincing evidence that any of these are unsupported by the '610 Provisional.

No reasonable juror could conclude that organ transplant is unsupported. The language of the asserted claims requires a mixed sample including the cfDNA of two individuals, such as the prenatal and transplant contexts. A POSA would understand that disclosure of mixed cfDNA including low abundance fetal DNA also demonstrates possession of the low abundance donor-derived cfDNA from a transplanted organ. Additionally, as Dr. Rabinowitz testified in his capacity as a disclosed expert, the "matched filtering" methods of the '610 provisional are applicable to transplant samples.

Similarly, the '610 Provisional refers to cell-free DNA such as "DNA fragments from maternal blood" and discloses measurement of genetic data such as

15

single nucleotide polymorphisms (SNPs) using cell-free DNA.  Again, the POSA would understand that the same techniques could be used for the other scenario of mixed human cfDNA, transplant.

The '610 Provisional also teaches the use of sequencing-by-synthesis, expressly referring to sequencing-by-synthesis methods and a POSA would understand that sequencing-by-synthesis methods were applicable to the analysis of low abundance DNA disclosed in the '610 Provisional and that the inventors had possession of these techniques.

The methods demonstrating quantification of low abundance DNA of a mixed sample would also demonstrate to the POSA possession of the use of allele frequencies, which also require quantitation of low abundance DNA.

No reasonable juror could determine that CareDx met its burden to show that the Asserted Claims of the '544 Patent are not entitled to claim priority to the date of the '610 Patent and, as such, Quake is not prior art.  Given that CareDx cannot prove that Quake is prior art, no reasonable juror could conclude that it renders obvious any of the Asserted Claims of the '544 Patent

(b)    Written Description

No reasonable juror could conclude that CareDx met its burden to prove its written description defense.  CareDx challenged the adequacy of the written description in five separate ways.

16

*1.  **Sequencing-by-synthesis other than pyrosequencing**.*  CareDx failed to meet its burden that the patent is limited to only pyrosequencing.  It is not.  For example, the patent itself recites "mini-sequencing", another form of SBS.  As the Jarvie reference discloses (and as CareDx argues in the context of its patent eligibility defense, and Dr. Van Ness opined), SBS was a nascent but known technology—indeed, when it serves CareDx, CareDx (and Dr. Van Ness) refer to the technique as routine—and the reference to SBS in the '544 Patent demonstrates possession of this technique to a POSA.

*2.  **Mixed samples (other than fetal)**.*  CareDx cannot prove that a POSA would not understand that the inventors had possession of mixed samples other than fetal and maternal DNA.  The '544 Patent's disclosure of matched filtering, which is in no way limited to one low abundance mixed sample scenario, would leave the POSA no doubt as to possession of a broader class of mixed samples.  Moreover, Dr. Rabinowitz's testimony regarding his own application of matched filtering to transplant data confirms this applicability.

*3.  **Allele frequencies**.*  The written description clearly discloses the use of allele frequencies ('544 Patent at 55:18-30), and Dr. Van Ness's testimony was purely conclusory in this regard.

*4.  **Analysis beyond parental data**.*  The "Parental Support" techniques of the '544 Patent themselves do not require the use of parental genetic information

17

(29:2-5), and the '544 Patent discloses matched filtering in addition to "Parental Support") (*See, e.g.*, '544 Patent, 55:18-30).

**5.    *Claim as an integrated whole.*** CareDx cannot prove that the elements of the claims are not disclosed as an integrated whole. The patent clearly discloses powerful and transformative methods that of obtaining low abundance DNA samples, amplifying the low abundance DNA and sequencing the products, all with sufficient quality to use the analytical techniques of the patent. A POSA would understand how these elements work together and that the inventors possessed the full claim scope, including the claims as an integrated whole. CareDx failed to prove otherwise.

As these are the aspects of the asserted claims challenged by CareDx, CareDx failed to meet its burden, and JMOL is appropriate.

### (c)    Patent Eligibility

CareDx cannot meet its burden to show that the Asserted Claims would fail step two of the Alice/Mayo analysis.[3] For example, in the context of the claims, requiring sequencing amplified cell-free DNA, sequencing-by-synthesis was unconventional. In particular, considered as an ordered combination, the claimed

---

[3] Natera further maintains that the claims pass step one of the Alice/Mayo test and are not directed to unpatentable subject matter. As such, there would be no need for a step two analysis, but irrespective of step one, the claims are patentable because they pass step two.

techniques allowed a fundamental advance in the field of genetic testing, allowing the acquisition of precise data from minute quantities of DNA in a "noisy" environment through specific laboratory techniques.

### 3. CareDx Failed To Prove Invalidity Of Any Asserted Claim Of The '180 Patent

#### (a)    Obviousness

No reasonable juror could find that CareDx has met its burden to prove that either of the Asserted Claims of the '180 Patent is invalid as obvious.

- ***Quake and Dhallan*** CareDx failed to meet its burden to show that the Asserted Claims of the '180 Patent would have been obvious to a POSA in view of Quake of Dhallan.  Neither Quake nor Dhallan teaches multiplex targeted PCR of more than 100 SNP loci in a single reaction mixture, as required by the claims.  Quake teaches only "shotgun" (non-targeted) sequencing and "digital PCR". Using Dhallan's gel method, a separate PCR amplification was required for each target locus.  Further, both Quake and Dhallan require prior knowledge of genotypes. The asserted claims are performed without such prior knowledge, an element of the claims.  As such, CareDx has failed to meet its burden to prove obviousness in view of Quake and Dhallan.

#### (b)    Written Description

CareDx has failed to meet its burden to show invalidity of the asserted claims of the '180 Patent for inadequate written description.  CareDx offers four

arguments for why the claims are invalid, arguing that specific concepts are inadequately described.

1. ***Methods that do not involve primer selection to avoid primer dimers.*** The '180 Patent discloses other goals for primer selection, including avoiding allelic bias and allele drop outs.  Moreover, the patent teaches other methods for avoiding unwanted reaction products, such as adjusting reaction conditions.  (PTX-005 at )  The POSA would understand that the inventors had possession of methods that do not involve primer selection to avoid primer dimers.

2. ***Methods where the genetically distinct individual is not a fetus.*** The POSA would understand that the inventors were in possession of methods broader than the prenatal context.  The patent refers generally to low abundance DNA, including transplantation.  The POSA would understand that the disclosed methods were applicable to these scenarios.

3. ***Amplification of SNP loci on chromosomes 1, 2, or 3.*** The '180 Patent refers to chromosomes 1, 2, and 3.  The claim requires the use of any one or more of the chromosomes, and the POSA would readily understand that one or more of those three chromosomes could be used.  The POSA would not understand the disclosure to be limited to other chromosomes or to the specific chromosomes used in a given working example, nor does the law require it.

**4. The claim as an integrated whole.** CareDx cannot prove that the elements of the Asserted Claims of the '180 Patent are not disclosed as an integrated whole. The patent clearly discloses particular methods meeting all elements of the claims arranged as in the claim, with a workflow proceeding from multiplex PCR of at least 100 SNP loci from mixed samples through sequencing and quantification of alleles, all without prior knowledge of genotypes. CareDx fails to prove a lack of disclosure of the claims as integrated wholes.

As these are the aspects of the asserted claims challenged by CareDx, CareDx failed to meet its burden, and JMOL is appropriate.

(c)    Patent Eligibility under Section 101

CareDx cannot meet its burden to show that the Asserted Claims would fail step two of the *Alice/Mayo* analysis.[4] For example, the claims as ordered combinations involve nonroutine uses of PCR and sequencing: targeted PCR of at least 100 SNP loci from low abundance DNA in a single reaction vessel. CareDx has failed to adduce any evidence that each of the claimed laboratory techniques considered individually, let alone as an ordered whole. Doing that, and obtaining data allowing quantitative analysis of alleles of a genetically distinct individual,

---

[4] Natera further maintains that the claims pass step one of the Alice/Mayo test and are not directed to unpatentable subject matter. As such, there would be no need for a step two analysis, but irrespective of step one, the claims are patentable because they pass step two.

21

was inventive and transformative. CareDx has not introduced sufficient evidence on which a reasonable jury could conclude that the Asserted Patents are invalid under Section 101.

## **CONCLUSION**

The Court should enter judgment as a matter of law for Natera as to both infringement and CareDx's defenses of invalidity.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Derek J. Fahnestock*

_____

OF COUNSEL:

Kevin P.B. Johnson
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, CA 94065
(650) 801-5000

Andrew M. Holmes
Jeff Nardinelli
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600

Jack B. Blumenfeld (#1014)
Derek J. Fahnestock (#4705)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
dfahnestock@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Plaintiff Natera, Inc.*

Sandra L. Haberny, Ph.D.
Sarah M. Cork, Ph.D.
QUINN EMANUEL URQUHART
    & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017
(213) 443-3000

Bianca Fox
QUINN EMANUEL URQUHART
    & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY  10010
(212) 849-7000

Abigail E. Clark
QUINN EMANUEL URQUHART
    & SULLIVAN, LLP
2601 South Bayshore Dr, Suite 1550
Miami, FL 33133
(305) 402-4880

January 25, 2024

## CERTIFICATION OF COMPLIANCE

The foregoing document complies with the type-volume limitation for this Court's November 10, 2022 Standing Order Regarding Briefing in All Cases. The text of this brief, including footnotes, was prepared in Times New Roman, 14 point. According to the word processing system used to prepare it, the brief contains 4,824 words, excluding the case caption, signature block, table of contents, and table of authorities.

Dated: January 24, 2024

*/s/ Derek J. Fahnestock*
_____
Derek J. Fahnestock (#4705)

## CERTIFICATE OF SERVICE

I hereby certify that on January 25, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on January 25, 2024, upon the following in the manner indicated:

Brian E. Farnan, Esquire                          *VIA ELECTRONIC MAIL*
Michael J. Farnan, Esquire
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE 19801
*Attorneys for Defendant*

Edward R. Reines, Esquire                          *VIA ELECTRONIC MAIL*
Derek C. Walter, Esquire
Shawn Chi, Esquire
Nate Ngerebara, Esquire
August Melcher, Esquire
Concord Cheung, Esquire
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
*Attorneys for Defendant*

Randi W. Singer, Esquire                          *VIA ELECTRONIC MAIL*
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
*Attorneys for Defendant*

W. Sutton Ansley, Esquire                    *VIA ELECTRONIC MAIL*
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC  20036
*Attorneys for Defendant*


                                    /s/ Derek J. Fahnestock
                                    _____
                                    Derek J. Fahnestock (#4705)