IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NATERA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 20-038 (CFC) (CJB) |
| | ) | (CONSOLIDATED) |
| CAREDX, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF NATERA, INC.'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE A NEW TRIAL ON THE ISSUE OF INFRINGEMENT**

OF COUNSEL:

Kevin P.B. Johnson
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, CA  94065
(650) 801-5000

Andrew M. Holmes
Jeff Nardinelli
Jocelyn Ma
Andrew E. Naravage
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA  94111
(415) 875-6600

May 1, 2024

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Derek J. Fahnestock (#4705)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
dfahnestock@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Plaintiff Natera, Inc.*

Sandra L. Haberny, Ph.D.
Sarah M. Cork, Ph.D.
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017
(213) 443-3000

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ...................................................................................................1

II.    LEGAL STANDARD.............................................................................................2

    A.    JMOL ............................................................................................................2

    B.    New Trial ......................................................................................................3

III.   ARGUMENT ........................................................................................................4

    A.    Natera Established Infringement of the '180 Patent as a Matter of Law and No Reasonable Jury Could Have Found Non-Infringement......................................4

         1.    The Overwhelming Evidence Demonstrates That The Accused Products Practice Step 14(b) ..........................................................6

         2.    CareDx Relied Entirely On Non-Evidentiary Demonstratives, Conclusory Expert Opinions, And Erroneous Claim Interpretation At Trial.................................................................................................11

             (a)    There Is No Evidence Of Record To Support Dr. Van Ness's Opinion Or The Jury's Finding Of Non-Infringement........................................................................................12

             (b)    CareDx's Unsupported Attorney Argument Also Is Not Evidence Sufficient To Support The Jury Verdict.........................19

             (c)    CareDx's Non-Infringement Argument Contradicts The Plain Meaning Of The Measuring-By-Sequencing Term..............20

    B.    A New Trial Is Appropriate In Light Of The Evidence Presented At Trial .........21

         1.    Allowing The Verdict To Stand Would Be A Miscarriage Of Justice...........................................................................................................21

         2.    CareDx's Attorney's Closing Argument Improperly Misled The Jury..............................................................................................................22

IV.   CONCLUSION...................................................................................................23

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

## <u>Cases</u>

*Allied Chem. Corp. v. Daiflon, Inc.*,
    449 U.S. 33 (1980)...............................................................................4

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)..............................................................................3

*Applied Med. Res. Corp. v. United States Surgical Corp.*,
    448 F.3d 1324 (Fed. Cir. 2006) ....................................................... 20

*In re Baby Food Antitrust Litig.*,
    166 F.3d 112 (3d Cir. 1999) ............................................................18

*Carrier Corp. v. Goodman Global, Inc.*,
    162 F. Supp. 3d 345 (D. Del. 2016)..................................................23

*CIF Licensing, LLC v. Agere Systems Inc.*,
    727 F.Supp.2d 337 (D. Del. 2010)....................................................13

*Dawn Equip. Co. v. Ky. Farms Inc.*,
    140 F.3d 1009 (Fed. Cir. 1998) ..........................................................3

*EMC Corp. v. Zerto, Inc.*,
    No. 12–956(GMS), 2016 WL 1291757 (D. Del. Mar. 31, 2016).....................19

*GNB Battery Technologies, Inc. v. Exide Corp.*,
    876 F.Supp. 582 (D. Del. 1995)........................................................14

*Gomez v. Allegheny Health Servs. Inc.*,
    71 F.3d 1079 (3d Cir. 1995) ..............................................................3

*Hanna v. Giant Eagle Inc.*,
    777 F. App'x 41 (3d Cir. 2019) ........................................................12

*Intellectual Ventures I, LLC v. Motorola Mobility, LLC*,
    72 F. Supp. 3d 496 (D. Del. 2014).....................................................3

*Invitrogen Corp. v. Clontech Labs., Inc.*,
    429 F.3d 1052 (Fed. Cir. 2005) ........................................................23

*IPPV Enter., LLC v. Echostar Commc'ns, Corp.*,
    191 F.Supp.2d 530 (D. Del. 2002)....................................................13

*Libas, Ltd. v. U.S.*,
    193 F.3d 1361 (Fed. Cir. 1999) ........................................................18

*Markman v. Westview Instruments, Inc.*,
    52 F.3d 967, 971 (Fed. Cir. 1995), aff'd, 517 U.S. 370
    (1996) ............................................ ........................................21

*Lightning Lube, Inc. v. Witco Corp.*,
    4 F.3d 1153 (3d Cir. 1993) ............................................3

*MobileMedia Ideas LLC v. Apple Inc.*,
    780 F.3d 1159 (Fed. Cir. 2015) ........................................19

*Moore USC, Inc. v. Standard Register Co.*,
    229 F.3d 1091 (Fed. Cir. 2000) ........................................11

*Olefins Trading, Inc. v. Han Yang Chem. Corp.*,
    9 F.3d 282 (3d Cir. 1993) ............................................4

*Pannu v. Iolab Corp.*,
    155 F.3d 1344 (Fed. Cir. 1998) ........................................2

*PharmaStem Therapeutics, Inc. v. Viacell, Inc.*,
    491 F.3d 1342 (Fed. Cir. 2007) ........................................11

*Perkin-Elmer Corp. v. Computervision Corp.*,
    732 F.2d 888 (Fed. Cir. 1984) ........................................2

*Perreira v. Dep't of Health and Human Serv.*,
    33 F.3d 1375 (Fed. Cir. 1994) ........................................18

*Reeves v. Sanderson Plumbing Products, Inc.*,
    530 U.S. 133 (2000)............................................3

*TQ Delta, LLC v. Cisco Sys.*,
    942 F.3d 1352 (Fed. Cir. 2019) ........................................18

*Williamson v. CONRAIL*,
    926 F.2d 1344 (3d Cir. 1991) ........................................4, 21

*Zarow-Smith v. N.J. Transit Rail Operations, Inc.*,
    953 F. Supp. 581 (D.N.J. 1997)............................................4

## Statutes

35 U.S.C. §271(a) ............................................5

## Other Authorities

2 McCormick on Evidence § 214 (6th ed. 2006)....................................15

9B Charles Alan Wright & Arthur R. Miller, Federal Practice and
   Procedure § 2524 (3d ed. 2008)..............................................................................3

Fed. R. Civ. P. 59 .................................................................................................4, 22

Fed. R. Civ. P. 59(a)(1)(A) ........................................................................................3

Pursuant to Federal Rules of Civil Procedure 50(b) and 59, Plaintiff Natera, Inc. ("Natera") respectfully moves for judgment as a matter of law that Defendant CareDx, Inc. ("CareDx"), by making, using, selling, and offering for sale its AlloSure and AlloSeq Tests (the "Accused Products"), infringes U.S. Patent No. 10,655,180 (the "'180 Patent"), or, in the alternative, for a new trial on this issue.

## I.    INTRODUCTION

At trial, the jury was presented with overwhelming evidence that CareDx's Accused Products infringed asserted claims 14 and 15 of the '180 Patent. CareDx contested only one element of the claims, on only one basis. Specifically, CareDx argued that it did not infringe because its methods did not involve "measuring a quantity of each allele at a plurality of amplified SNP loci … wherein the quantity of each allele at a plurality of amplified SNP loci *are measured by high-throughput sequencing*."[1]  The jury saw irrefutable evidence that this element was met, including admissions from CareDx witnesses, CareDx's own technical documents, and testimony from Natera's expert, Dr. Quackenbush.

CareDx's contrary theory was based on what is essentially a limiting claim construction, by which its products do not measure allele frequencies "by sequencing" because, despite there being no dispute that all of the data used in the CareDx process is obtained by sequencing, the "measuring" happens during

---

[1]  Emphasis is supplied herein unless otherwise noted.

1

algorithmic processing of that data and is therefore not accomplished "by sequencing." This theory has no basis in the record and makes no logical sense. But CareDx led the jury astray by both a demonstrative presented through a lay witness that mischaracterized how the tests were performed and *ipse dixit* testimony from its expert. The evidence is inadequate to support the jury's finding as to this issue, and JMOL is appropriate.

Alternatively, Natera requests that the Court order a new trial on infringement of the '180 Patent. This narrow, straightforward request is appropriate in light of the overwhelming factual evidence and submissions presented at trial.

## II.     LEGAL STANDARD

### A.     JMOL

"To prevail on a renewed motion for JMOL following a jury trial, a party must show that the jury's findings, presumed or express, are not supported by substantial evidence or, if they were, that the legal conclusion(s) implied [by] the jury's verdict cannot in law be supported by those findings." *Pannu v. Iolab Corp*., 155 F.3d 1344, 1348 (Fed. Cir. 1998) (alterations in original) (internal quotation marks omitted). "'Substantial' evidence is such relevant evidence from the record taken as a whole as might be accepted by a reasonable mind as adequate to support the finding under review." *Perkin-Elmer Corp. v. Computervision Corp*., 732 F.2d 888, 893 (Fed. Cir. 1984).

In assessing sufficiency of the evidence, the Court must determine whether the evidence supports the jury's verdict. *See Dawn Equip. Co. v. Ky. Farms Inc*., 140 F.3d 1009, 1014 (Fed. Cir. 1998); *Gomez v. Allegheny Health Servs. Inc*., 71 F.3d 1079, 1083 (3d Cir. 1995) (describing standard as "whether there is evidence upon which a reasonable jury could properly have found its verdict"); 9B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2524 (3d ed. 2008) ("The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury might reasonably find a verdict for that party."). If the evidence "'is merely colorable, or is not significantly probative,' the court must grant judgment to the movant." *Lightning Lube, Inc. v. Witco Corp*., 4 F.3d 1153, 1184 (3d Cir. 1993) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249-50 (1986)). "[T]he standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" *Intellectual Ventures I, LLC v. Motorola Mobility, LLC*, 72 F. Supp. 3d 496, 502-503 (D. Del. 2014) (quoting *Reeves v. Sanderson Plumbing Products, Inc*., 530 U.S. 133, 150 (2000)).

## B.    New Trial

Rule 59(a)(1)(A) of the Federal Rules of Civil Procedure provides: "The court may, on motion, grant a new trial on all or some of the issues—and to any party—. . . after a jury trial, for any reason for which a new trial has heretofore been granted

in an action at law in federal court. . . ." Fed. R. Civ. P. 59. Among the most common reasons for granting a new trial are: (1) the jury's verdict is against the clear weight of the evidence, and a new trial must be granted to prevent a miscarriage of justice; (2) newly discovered evidence exists that would likely alter the outcome of the trial; (3) improper conduct by an attorney or the court unfairly influenced the verdict; or (4) the jury's verdict was facially inconsistent. *See Zarow-Smith v. N.J. Transit Rail Operations, Inc.*, 953 F. Supp. 581, 584-85 (D.N.J. 1997) (collecting cases).

The decision to grant or deny a new trial is committed to the sound discretion of the district court. *See Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980); *Olefins Trading, Inc. v. Han Yang Chem. Corp.*, 9 F.3d 282, 289 (3d Cir. 1993). Although the standard for granting a new trial is less rigorous than the standard for granting judgment as a matter of law—in that the Court need not view the evidence in the light most favorable to the verdict winner—a new trial should be granted where "a miscarriage of justice would result if the verdict were to stand," the verdict "cries out to be overturned," or where the verdict "shocks [the] conscience." *Williamson v. CONRAIL*, 926 F.2d 1344, 1352-53 (3d Cir. 1991).

## III. ARGUMENT

### A. Natera Established Infringement of the '180 Patent as a Matter of Law and No Reasonable Jury Could Have Found Non-Infringement

The evidence required a reasonable jury to find, by a preponderance of the

evidence, that the Accused Products literally infringe claims 14 and 15 of the '180 Patent under 35 U.S.C. §271(a).

Independent claim 14 of the '180 Patent, in relevant part, reads:

14. A method for measuring an amount of DNA in a biological sample, the method comprising: . . .

> (b) measuring a quantity of each allele at a plurality of amplified SNP loci that comprise an allele present in the genetically distinct individual but not the subject, ***wherein the quantity of each allele at a plurality of amplified SNP loci are measured by high-throughput sequencing***;

> (c) measuring an amount of the DNA from the genetically distinct individual in the biological sample using the quantity of each allele at the SNP loci and an expected quantity of each allele at the SNP loci for different DNA fraction.

The parties stipulated that all elements of the asserted claims were met with one exception.  D.I. 426-1, ¶¶11-15. At trial CareDx would challenge only whether the Accused Products practice the "wherein" clause of claim step 14(b) (hereafter, the "measuring-by-sequencing" step for short), emphasized in the claim above.  D.I. 426-1, ¶¶11-15.  Specifically, CareDx argued that it did not infringe because it did not measure allele quantities ***by*** high-throughput sequencing, as required.  D.I. 426-1, ¶13; D.I. 468, (Van Ness) at 902:7-14, 906:12-20, 906:25-907:6, 916:13-20.  CareDx further stipulated that if the jury found it infringed claim 14, it would also infringe claim 15. D.I. 426-1, ¶16.

As explained below, Natera presented detailed expert and fact witness testimony—including from Dr. Natali Gulbahce (CareDx's Bioinformatics Team

Lead and Rule 30(b)(6) corporate designee on this claim limitation) and Dr. Robert Woodward (CareDx's Chief Scientific Officer)—as well as CareDx's own documents, to prove that the Accused Products practice all elements of Claims 14 and 15, including the measuring-by-sequencing step of element 14(b). CareDx, in turn, argued for non-infringement based purely on an unorthodox claim construction that it did not seek from the Court, demonstratives created for trial showing purported "codes" that are not described anywhere in its technical documents, and conclusory expert testimony about irrelevant informatic processing that happens after measuring-by-sequencing—all of which contradicts CareDx's own exhibits and fact witness admissions. JMOL of infringement is proper here.

### 1. The Overwhelming Evidence Demonstrates That The Accused Products Practice Step 14(b)

Relying on CareDx documents and witness testimony describing how AlloSure and AlloSeq work, Natera's expert, Dr. John Quackenbush, testified that every limitation of each of the two asserted claims was met. D.I. 467, (Quackenbush) at 503:13-17. He explained that the contested measuring-by-sequencing element is met because the measurement of the allele quantities is reflected in the numbers of sequence reads[2] as they are outputted by the sequencer;

---

[2] As Dr. Quackenbush testified, "The sequence reads are the measurements ... The sequencer measures the series of bases and stores it in a file in the computer... It's an actual count of the number of alleles that are present, right. Remember, the

in other words, the sequencer is generating the measurement as it reads each sequence. D.I. 467, (Quackenbush) at 485:19-492:12.

Dr. Woodward's deposition testimony played at trial confirmed that AlloSure measures by sequencing:

> Q. So here in the second and third lines of this paragraph in the Grskovic paper under "targeted amplification and sequencing," it says, **"measurement by NGS of each allele contribution at each SNP position."** Is that something that's performed in the AlloSure test that's currently in the CLIA lab that was -- has been in the CLIA lab since early 2019?
>
> A. **Yes**.

D.I. 467, (Woodward) at 386:14-21.

Natera also played deposition testimony from CareDx's Rule 30(b)(6) designee, Dr. Gulbahce, who admitted that the reads coming out of the sequencer correspond to the allele frequencies—indicating measuring-by-sequencing as claimed:

> Q. So in high-throughput sequencing in AlloSure, the number of sequence reads produced correspond to the number of different amplification products that were sequenced, right?
>
> A. **Correct.**

D.I. 467, (Gulbahce) at 397:19-23.

---

fraction of donor-derived cell-free DNA is the comparison of the counts of those alleles." D.I. 476, (Quackenbush) at 491:2-19.

Importantly, Dr. Gulbahce's testimony confirmed that the input of data into the Accused Products' algorithm for processing consists of the base calls that were measured by sequencing:

> Q. Okay, but you would agree that in AlloSure, no new sequence data is generated after sequencing, correct?
>
> A. No new sequence data is generated after sequencing, correct.
>
> Q. Is it fair to say that the pileup is ***collecting the base calls that were measured by sequencing***?
>
> A. ***Yes.***

*Id*. at 398:5-11.

Dr. Gulbahce's testimony was not unexpected, as it is entirely consistent with CareDx's internal documents describing how the Accused Products function. Those documents, which include detailed standard operating procedures (SOPs) relied on by CareDx scientists to conduct the accused tests, demonstrate that the quantities of alleles are measured when the sequence reads reflecting them are generated in the sequencer by sequencing. Dr. Quackenbush explained this infringement based on CareDx's internal "AlloSure Test Description" document (PTX-055):

> Q. And can you please show us what the CareDx documents say about whether AlloSure practices this limitation?
>
> A. All right. So this is one of the AlloSure documents we saw earlier. And it tells us that ***AlloSure measures the SNPs***, the variants that are used to determine the cell-free DNA of the donor-derived cell-free DNA in transplant recipients. ***So the next generation sequencing assay measures those SNPs.***

D.I. 467, (Quackenbush) at 486:4-11.

> Q. And do you believe that this Exhibit PTX-0055 shows that AlloSure measures the allele quantities by high-throughput sequencing?
>
> A. ***It does. They tell us that's exactly what their test, the AlloSure test does.***

*Id.* at 487:6-10.

> CareDx's AlloSure document states:
>
> AlloSure ***measures*** the amount of donor-derived cfDNA relative to the total amount of cfDNA in a plasma sample ***by sequencing*** 405 SNPs having an average minor allele frequency greater than 40%.

PTX-0055; *see also* PTX-0048 ("***measurement by NGS*** of each allele contribution"). Dr. Grskovic herself validated the importance and accuracy of CareDx's internal technical documents at trial. D.I. 468, (Grskovic) at 780:18-781:6.

CareDx's witnesses further admitted that CareDx's documents describe AlloSure as measuring allele quantities by sequencing. CareDx's expert, Dr. Van Ness, testified:

> Q. And could you just read the first sentence to me, please.
>
> A. 'AlloSure ***measures*** the amount of donor-derived cell-free DNA relative to the total amount of cell-free DNA in a plasma sample ***by sequencing 405 SNPs*** having an average minor allele frequency greater than 40 percent.'
>
> Q. And you agree that that statement is accurate as far as you are concerned?

A. *As far as I know.*

D.I. 468, (Van Ness) at 918:2-22.   Likewise, CareDx's Rule 30(b)(6) designee admitted:

> Q. Can you take a look at test description on the first page, it's a Roman numeral 3, and here it says, "principle of the procedure." Do you see that?
>
> A. Umm-hmm.
>
> Q. And the first sentence says, "AlloSure *measures* the amount of donor-derived cfDNA relative to the total amount of cfDNA in a plasma sample *by sequencing SNPs*." And then it goes on to describe those SNPs. ...
>
> Q. Do you disagree with this characterization of AlloSure?
>
> A. *I do not disagree.*

D.I. 467, (Gulbahce) at 398:12-25 (discussing PTX-0055).

And both experts agreed that AlloSure and AlloSeq work in the same way as it pertains to claim element 14(b).  D.I. 467, (Quackenbush) at 427:3-10 ("Q. Do the accused AlloSure and AlloSeq products have anything in common? . . . A. Well, they do. Aside from the names, they have many other aspects in common. If you look at the overall workflow and how the tests are run, they are almost identical."); D.I. 468, (Van Ness) at 906:21-24 ("Q. Now, is the same thing done with regard to AlloSeq? A. Yes. Q. Okay. In terms of how the process works? A. Yes.").

CareDx's documents, and its witnesses' testimony about them, make clear that the Accused Products measure allele quantities "by sequencing." These direct admissions, along with Dr. Quackenbush's testimony, are dispositive.

## 2. CareDx Relied Entirely On Non-Evidentiary Demonstratives, Conclusory Expert Opinions, And Erroneous Claim Interpretation At Trial

None of CareDx's evidence addressed, let alone refuted, the conclusion that measurements of allele quantities are generated with each sequence read produced by sequencing, and that the quantities of sequence reads generated during sequencing correspond to the quantities of alleles present in the sample. No CareDx witness suggested that CareDx's documents were using any special or particularized definition of what it means to "measure . . . by sequencing."

Rather, CareDx offered only unsupported expert testimony and attorney argument on infringement of the '180 Patent claims, based on an erroneous claim interpretation, which is insufficient to avoid JMOL as a matter of law. *Moore USC, Inc. v. Standard Register Co.*, 229 F.3d 1091, 1112 (Fed. Cir. 2000) ("A party may not overcome a grant of summary judgment by merely offering conclusory statements."); *c.f., PharmaStem Therapeutics, Inc. v. Viacell, Inc*., 491 F.3d 1342, 1351, 1355 (Fed. Cir. 2007) (district court properly found that testimony "in conclusory terms" is not "substantial evidence in support of [plaintiff's] theory of infringement"). It is particularly insufficient given that the conclusory statements

purport to controvert other specific statements in the record that were confirmed by, among others, CareDx's corporate witness, as established in section III.A.1 above. *See Hanna v. Giant Eagle Inc.*, 777 F. App'x 41, 42 (3d Cir. 2019) ("Rule 30(b)(6) testimony binds a corporation in that it is deemed to be the testimony of the corporation itself. . . . This remains true whether the testimony speaks to factual or legal issues.") (cleaned up).

> **(a)** **There Is No Evidence Of Record To Support Dr. Van Ness's Opinion Or The Jury's Finding Of Non-Infringement**

As explained below, CareDx's non-infringement position at trial boiled down to Dr. Van Ness's opinion that the Accused Products do not measure allele frequencies by sequencing because they allegedly "calculate" information about the organ donor informatically using "codes" in a "Cloud." There are no facts or evidence to support that opinion.

Dr. Van Ness's non-infringement opinion relied foundationally on Dr. Grskovic's testimony about "codes" that are purportedly used in the Accused Products' workflow.[3] Dr. Grskovic introduced the "codes" concept for the first time at trial not through reference to CareDx internal technical documents (which as discussed in section III.A.1 above show infringement) but instead via 15 different

---

[3] Dr. Grskovic testified, without objection, that she was not offering expert testimony. D.I. 468, (Grskovic) at 771:1-11.

slides in a demonstrative slide deck (which is itself not evidence) that CareDx's counsel questioned Dr. Grskovic about during her direct examination. Ex. 1. An example of the trial demonstratives that counsel walked Dr. Grskovic through during her direct testimony is shown below:



Ex. 1 at DDX-3.2; *see also* D.I. 468, (Grskovic) at 757:10-758:2.

As a threshold matter, demonstratives, or visual jury aids, are not admissible evidence to support a jury's verdict. *See* 2 McCormick on Evidence § 214 (6th ed. 2006) ("[D]emonstrative aids do not have independent probative value for determining the substantive issues in the case."); *IPPV Enter., LLC v. Echostar Commc'ns, Corp.,* 191 F.Supp.2d 530, 565 (D. Del. 2002) ("While a demonstrative exhibit . . . may have value in illuminating testimony, such documents are not evidence."); *CIF Licensing, LLC v. Agere Systems Inc.,* 727 F.Supp.2d 337, 360 n.13

(D. Del. 2010) (stating that the demonstrative relied on was not evidence); *GNB Battery Technologies, Inc. v. Exide Corp.*, 876 F.Supp. 582, 604 (D. Del. 1995) ("A trial court has the discretion to allow the parties to show to the jury charts and other visual aids that summarize or organize testimony or documents that have already been admitted in evidence . . . . Such aids are not themselves evidence . . . .").[4]

Not only are Dr. Grskovic's demonstratives not evidence, they do not actually reflect the information that *is* evidence.  On cross examination, Dr. Grskovic admitted the "codes" shown in her demonstratives found no counterpart in CareDx's technical documents—they do not appear at all in any of those documents.  D.I. 468, (Grskovic) at 780:18-781:24.  This inconsistency between record evidence—which the jury was free to consider—and Dr. Grskovic's demonstratives proves that the demonstratives are not based on actual evidence.  Instead, the "codes" that Dr. Grskovic spent the majority of her time testifying about are something CareDx appears to have conceived from thin air to have a non-infringement argument.

Indeed, Dr. Grskovic's testimony and demonstrative material discussing "codes" for data processing do not appear in the testimony of any other knowledgeable fact witnesses.  For example, CareDx's Rule 30(b)(6) designee, Dr.

---

[4]  *See also Stoker v. Stemco*, No. 2:11-cv-00214-JRG-RSP, 2013 WL 3786346 *4–5 (E.D. Tex. Jul. 16, 2013) ("[D]emonstratives are jury aids only; they are not exhibits and not evidence. By definition, demonstratives are never part of the record.") (internal quotation marks omitted); *Baugh v. Cuprum S.A. De C. V.,* 730 F.3d 701, 707 (7th Cir. 2013) ("[D]emonstrative exhibits are not evidence at all.").

Gulbahce, gave no testimony about "codes" as they were depicted in Dr. Grskovic's demonstratives when asked about the limitation at issue. Certainly Dr. Gulbahce did not offer them as a non-infringement theory, either in her Rule 30(b)(6) capacity or at any other time.

Nor did Dr. Grskovic's testimony address the key issue—how allele quantities were measured. In fact, on cross, Dr. Grskovic conceded that the documentary evidence accurately states that AlloSure *does in fact* perform the measuring-by-sequencing step. D.I. 468, (Grskovic) at 780:24-781:3; *see also* DTX0063 ("The amplified regions are sequenced to establish the number copies of each of the two possible alleles for each SNP.").

Dr. Van Ness' reliance on Dr. Grskovic's testimony about whether measurement happens *by* sequencing based on the "codes" (D.I. 468, (Van Ness) at 903:8-906:20) is therefore unjustified and unsupported, as was his opinion that allele quantities are "calculated" in a "Cloud" rather than measured by sequencing. Dr. Van Ness presented his notion of how alleles are "calculated" in the "Cloud" using the demonstrative slide below:



Ex. 2 at DDX-2.287.

Walking through DTX-61, which Dr. Van Ness called the "software workflow" (D.I. 468, (Van Ness) at 902:23-26), Dr. Van Ness opined that the algorithm "go[es] through these multiple steps of cleaning the data, doing quality controls, getting this pile-up counts in order to get the number of code counts that gives you the information about the transplant." *Id.* at 903:2-18. Dr. Van Ness opined that in the software, there is processing of "pile-up counts of each nucleotide in the genome," with multiple steps. *Id*

Dr. Van Ness's testimony did not refute the plain admissions in CareDx's documents because all of what Dr. Van Ness described happens *after* the Accused Products perform the measuring-by-sequencing step of element 14(b). Indeed, Dr.

Gulbahce—CareDx's Rule 30(b)(6) designee on the topic—admitted that the "pileup" part of the algorithm that was Dr. Van Ness's focus was collected **_after_** the measurements have already been made by sequencing:

> Q. Is it fair to say that the pileup is **_collecting the base calls that were measured by sequencing_**?
>
> A. **_Yes._**

D.I. 467, (Gulbahce) at 398:9-12. On cross examination, Dr. Grskovic testified she had no reason to doubt the accuracy of Dr. Gulbahce's testimony. D.I. 468, (Grskovic) at 780:2-12 ("Q. And you aslso heard the deposition testimony we played from Dr. Gulbahce? . . . A. Yes. Q. Do you have any reason to doubt the accuracy of that testimony that we heard? A. I have no reason to doubt that.").

Dr. Van Ness's testimony further focused on things like cleaning data, quality controls, being able to "see" allele counts, and compiling allele quantities to determine the total percent donor DNA fraction. D.I. 468, (Van Ness) at 902:23-907:6. All of that happens **_after_** the measurement of allele quantities performed by sequencing has already been completed and does not change the fact that CareDx's AlloSure performs measuring-by-sequencing. The fact that the Accused Products involve measuring allele quantities by sequencing means they are infringing. That they allegedly may do additional processing on those measurements does not change the infringement picture.

17

CareDx's contention that the Accused Products do not perform measuring-by-sequencing also defies logic.  Indeed, CareDx's "calculation" to which Dr. Van Ness repeatedly refers must be based on some measurement, otherwise it would not reflect what is actually in the sample.  The tool used to measure the allele frequencies is the sequencer.

CareDx's expert's attempt to avoid measuring-by-sequencing by pointing to later data processing steps in its workflow cannot support the jury's verdict.  And there is no factual evidence in the record to refute what CareDx's own documents say it does: measuring-by-sequencing.  *See In re Baby Food Antitrust Litig.,* 166 F.3d 112, 135 (3d Cir. 1999) ("When an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict.") (citation omitted); *Perreira v. Dep't of Health and Human Serv.*, 33 F.3d 1375, 1377 n. 6 (Fed. Cir. 1994) ("An expert opinion is no better than the soundness of the reasons supporting it."); *Libas, Ltd. v. U.S.,* 193 F.3d 1361, 1366 (Fed. Cir. 1999) ("[E]ven less weight should be accorded to expert testimony the reliability of which is controverted by the evidence in the record.").

None of Dr. Van Ness's opinion was based on concrete evidence pertaining to the measuring-by-sequencing limitation at issue.  Conclusory expert opinions are not evidence that is sufficient to support a jury verdict.  *TQ Delta, LLC v. Cisco Sys.*,

942 F.3d 1352, 1358 (Fed. Cir. 2019) ("Conclusory expert testimony does not qualify as substantial evidence."); *MobileMedia Ideas LLC v. Apple Inc.*, 780 F.3d 1159, 1172 (Fed. Cir. 2015) ("Conclusory statements by an expert, however, are insufficient to sustain a jury's verdict.").

Based on what was presented and submitted at trial, there is no substantial evidence on the record that a jury could rely on to find non-infringement. *EMC Corp. v. Zerto, Inc.*, No. 12–956(GMS), 2016 WL 1291757, at *11 (D. Del. Mar. 31, 2016) (concluding that "the jury did not act reasonably when it found that [the claim] of the [asserted patent] is not directly infringed" because "the only reasonable inference a jury could draw from the evidence on record is in favor of [plaintiff]," where plaintiff provided "technical documents" explaining how a claim limitation is met and defendant relied only on conclusory expert opinion).

### (b) CareDx's Unsupported Attorney Argument Also Is Not Evidence Sufficient To Support The Jury Verdict

In its closing argument, CareDx's attorney further confused the jury with an unsupported statement that "[t]he way we do it is the – you know, the cloud and computational regarding the quantity of alleles, and that's done downstream by mathematics." D.I. 469, (CareDx's counsel) at 1317:1-18. CareDx referenced a "document" that purportedly "states that the contributions of the recipient and donor alleles are inferred and is calculated by the CareDx algorithms, which is different than the sequencer." *Id.* But that statement is a distraction from what is actually

claimed by element 14(b) because, as CareDx's documents and witnesses confirm, measuring allele quantities by sequencing is different than calculating the overall percent donor DNA, which is the focus of element 14(c), and which CareDx already admitted it practices.  D.I. 426-1, ¶14.

> ### (c)    CareDx's Non-Infringement Argument Contradicts The Plain Meaning Of The Measuring-By-Sequencing Term

At bottom, CareDx's non-infringement defense is inconsistent with the plain meaning of the claim and would require a special, unsupported meaning for the claim term "measuring" as it relates to the "quantity of each allele."[5]  CareDx's expert based his opinion on an interpretation that, notwithstanding how CareDx's own documents describe the term according to its plain meaning (*see* Section III.A.1 above), "measuring" allele quantities in step 14(b) must ***preclude*** any later bioinformatic data processing.  *See* D.I. 315 at 3; D.I. 468, (Van Ness) at 903:19-906:15.  This interpretation of the claim presupposes non-infringement, and is

---

[5]  CareDx never sought construction of this term during the *Markman* phase of the case—CareDx raised this non-infringement theory for the first time in its expert's opening report after fact discovery and *Markman* were completed.  During summary judgment, Natera flagged the issue for the Court and noted that Dr. Van Ness' opinion appeared to be based on an erroneous claim construction.  D.I. 253 at 7-10; *see also* D.I. 315 at 11 (CareDx denying in its Opposition that its non-infringement theory relied on a claim construction).  The Court denied summary judgment without construing the term.  D.I. 415.

completely inconsistent with the plain meaning of the term, which is set forth in Section III.A.1 above.

For this additional reason, the Court should construe the measuring-by-sequencing term to have its plain and ordinary meaning, and on that basis grant Natera's motion for JMOL. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 971 (Fed. Cir. 1995), aff'd, 517 U.S. 370, 116 (1996) ("Thus, in this case the district court properly discharged its obligation to delineate the scope of the claim on motion for judgment as a matter of law when the jury had rendered a verdict that was incompatible with a proper claim construction.")

## B.    A New Trial Is Appropriate In Light Of The Evidence Presented At Trial

Should the Court find that Natera is not entitled to JMOL for infringement of the '180 Patent, the Court should order a new trial on this issue.  Fed. R. Civ. P. 59.

### 1.    Allowing The Verdict To Stand Would Be A Miscarriage Of Justice

As demonstrated above, the jury's verdict goes against the clear weight of the evidence presented at trial to demonstrate infringement.  The jury's verdict also goes against the lack of evidence to support non-infringement.  Thus, "a miscarriage of justice would result if the verdict were to stand."  *Williamson*, 926 F.2d at 1352-53.

At trial, Dr. Quackenbush set forth an element-by-element infringement analysis that included explaining how CareDx infringes claim 14 of the '180 Patent

based on CareDx's own internal documents and testimony of CareDx's witnesses. D.I. 467, (Quackenbush) at 485:19-492:12; PTX-0048; PTX-0055; PTX-294. Dr. Quackenbush's infringement opinions were not rebutted at trial by either CareDx's expert or its fact witness. The evidence presented by Dr. Quackenbush was sufficient for a finding of infringement of the '180 Patent, but the jury returned a verdict of non-infringement instead, based on testimony that conflicted with the pre-litigation documentation relied on by CareDx and on the algorithmic processing of alleged "codes" that occurs after the claim step at issue, thus going against the clear weight of the evidence. Allowing the jury verdict to stand as-is would be a miscarriage of justice because Natera had the burden to prove infringement by a preponderance of the evidence at trial and it did just that.

## 2. CareDx's Attorney's Closing Argument Improperly Misled The Jury

Further, CareDx's counsel unfairly influenced the jury during its closing argument with confusing references to "codes" and irrelevant descriptions of algorithmic processing of data after measuring-by-sequencing occurs. *See* Section III.A.2 above. Despite the fact that infringement of the '180 Patent was not rebutted by CareDx's witnesses with actual evidence, CareDx's counsel improperly argued in its closing that there **was** evidence demonstrating non-infringement of the '180 Patent. D.I. 469, (CareDx's counsel) at 1317:1-18; *see also Carrier Corp. v. Goodman Global, Inc.*, 162 F. Supp. 3d 345, 368 (D. Del. 2016) (ordering new trial

in part because defendant made arguments using evidence unrelated to the actual claim element at issue); *Invitrogen Corp. v. Clontech Labs., Inc.,* 429 F.3d 1052, 1068 (Fed. Cir. 2005) ("Unsubstantiated attorney argument regarding the meaning of technical evidence is no substitute for competent, substantiated expert testimony."). The jury could have mistaken CareDx's counsel's attorney argument as evidence and found in favor of CareDx on that basis. This is further grounds for a new trial.

## IV.  CONCLUSION

Natera's judgment as a matter of law with respect to CareDx's infringement of the '180 Patent should be granted. Alternatively, the Court should order a new trial.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Derek J. Fahnestock*

OF COUNSEL:

Kevin P.B. Johnson
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, CA  94065
(650) 801-5000

Andrew M. Holmes
Jeff Nardinelli
Jocelyn Ma
Andrew E. Naravage
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA  94111
(415) 875-6600

Sandra L. Haberny, Ph.D.
Sarah M. Cork, Ph.D.
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017
(213) 443-3000

May 1, 2024

Jack B. Blumenfeld (#1014)
Derek J. Fahnestock (#4705)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
dfahnestock@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Plaintiff Natera, Inc.*

## <u>CERTIFICATION OF COMPLIANCE</u>

The foregoing document complies with the type-volume limitation for this Court's November 10, 2022 Standing Order Regarding Briefing in All Cases. The text of this brief, including footnotes, was prepared in Times New Roman, 14 point. According to the word processing system used to prepare it, the brief contains 4,958 words, excluding the case caption, signature block, table of contents, and table of authorities.

Dated: May 1, 2024                    */s/ Derek J. Fahnestock*

_____

Derek J. Fahnestock (#4705)

## CERTIFICATE OF SERVICE

I hereby certify that on May 1, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on May 1, 2024, upon the following in the manner indicated:

| | |
|---|---|
| Brian E. Farnan, Esquire<br>Michael J. Farnan, Esquire<br>FARNAN LLP<br>919 North Market Street, 12th Floor<br>Wilmington, DE 19801<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Edward R. Reines, Esquire<br>Derek C. Walter, Esquire<br>Shawn Chi, Esquire<br>Nate Ngerebara, Esquire<br>August Melcher, Esquire<br>Concord Cheung, Esquire<br>WEIL, GOTSHAL & MANGES LLP<br>201 Redwood Shores Parkway<br>Redwood Shores, CA 94065<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Randi W. Singer, Esquire<br>WEIL, GOTSHAL & MANGES LLP<br>767 Fifth Avenue<br>New York, NY 10153<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |

W. Sutton Ansley, Esquire                    *VIA ELECTRONIC MAIL*
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC  20036
*Attorneys for Defendant*


                              */s/ Derek J. Fahnestock*
                              _____
                              Derek J. Fahnestock (#4705)