## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NATERA, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 20-38 (CFC) (CJB) |
| | ) |
| CAREDX, INC., | ) (CONSOLIDATED) |
| | ) |
| Defendant. | ) |
| | ) |

**CAREDX, INC.'S OPPOSITION TO NATERA, INC.'S RENEWED
MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE
ALTERNATIVE A NEW TRIAL ON THE ISSUE OF INFRINGEMENT**

Dated: May 31, 2024

Of Counsel:

Edward R. Reines
Derek C. Walter
Nate Ngerebara
August Melcher
Concord Cheung
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

W. Sutton Ansley
WEIL, GOTSHAL & MANGES, LLP
2001 M Street, NW Suite 600
Washington, DC 20036
(202) 682-7000

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market St., 12th Floor
Wilmington, DE 19801
(302) 777-0300
(302) 777-0301 (Fax)
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Defendant, CareDx, Inc.*

# <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION .............................................................................1

II.   BACKGROUND ..............................................................................2

    A.    The Disputed Claim Element .................................................2

    B.    The Evidence at Trial ...........................................................3

III.  LEGAL STANDARD ........................................................................4

IV.   THE    JURY'S    FINDING    OF    NON-INFRINGEMENT    IS SUPPORTED BY SUBSTANTIAL EVIDENCE .........................................4

    A.    CareDx Presented Substantial Evidence of Non-Infringement.............5

    B.    The Court Should Not Reweigh the Evidence ...................................13

    C.    The Court Should Ignore Natera's Waived Claim Construction Argument.........................................................................17

V.    NATERA IS NOT ENTITLED TO A NEW TRIAL...................................19

VI.   CONCLUSION.................................................................................19

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)............................................................................4, 13

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
   839 F.3d 1034 (Fed. Cir. 2016) ...........................................................4

*In re Baby Food Antitrust Litig.*,
   166 F.3d 112 (3d Cir. 1999) ...............................................................11

*Conoco, Inc. v. Energy & Env't Int'l, L.C.*,
   460 F.3d 1349 (Fed. Cir. 2006) .........................................................18

*Deere & Co. v. AGCO Corp.*,
   659 F. Supp. 3d 418 (D. Del. 2023)....................................................5

*Hewlett-Packard Co. v. Mustek Sys., Inc.*,
   340 F.3d 1314 (Fed. Cir. 2003) .........................................................18

*Libas, Ltd. v. United States*,
   193 F.3d 1361 (Fed. Cir. 1999) .........................................................11

*Lightning Lube, Inc. v. Witco Corp.*,
   4 F.3d 1153 (3d. Cir. 1993) .....................................................4, 13, 16

*Markman v. Westview Instruments, Inc.*,
   517 U.S. 370 (1996)............................................................................13

*MobileMedia Ideas LLC v. Apple Inc.*,
   780 F.3d 1159 (Fed. Cir. 2015) .........................................................11

*Moore USC, Inc. v. Standard Register Co.*,
   229 F.3d 1091 (Fed. Cir. 2000) .........................................................11

*Perreira v. Dep't of Health and Human Serv.*,
   33 F.3d 1375 (Fed. Cir. 1994) ...........................................................12

*PharmaStem Therapeutics, Inc. v. Viacell, Inc.*,
    491 F.3d 1342 (Fed. Cir. 2007) ..........................................................................12

*Reeves v. Sanderson Plumbing Products, Inc.*,
    530 U.S. 133 (2000)...................................................................................13, 16

*TQ Delta, LLC v. CISCO Sys., Inc.*,
    942 F.3d 1352 (Fed. Cir. 2019) ........................................................................11

*VLSI Tech. LLC v. Intel Corp.*,
    87 F.4th 1332 (Fed. Cir. 2023) .........................................................................18

**Other Authorities**

FED. R. CIV. P. 50(a).................................................................................................2

## I.     INTRODUCTION

Natera's JMOL motion asks this Court to conclude that the jury was legally required to find that Natera carried its burden of proving CareDx infringed claims 14-15 of U.S. Patent No. 10,655,180 (the "'180 patent").    Natera's motion fails.

First, the jury rejected Natera's arguments on a record featuring ample evidence of non-infringement.    This included the testimony of CareDx's expert, the supporting admissions of Natera's expert, and documentary evidence of CareDx's AlloSure process.

Second, Natera's motion improperly invites the Court to reweigh the evidence and fails to afford CareDx the benefit of every favorable inference to which CareDx is now deserved.    At trial, the parties focused their infringement arguments on whether CareDx's measurement process occurred by sequencing, or after.    Natera principally relied on cherry-picked and decontextualized excerpts from CareDx documents to argue that CareDx had admitted that measurement occurred by sequencing.    CareDx presented to the jury the missing context, as well as additional testimony showing that CareDx measures allele quantities after sequencing.    The jury resolved this factual dispute in CareDx's favor.    Natera provides no basis to disturb the jury's conclusion.

Third, in view of the factual nature of the infringement inquiry, and the on-point record supporting the verdict, Natera strains to try to convert the factual

1

infringement dispute presented to the jury into some sort of legal claim construction issue.    Natera argues that CareDx's non-infringement position at trial was improper because it was actually a "limiting" and "unorthodox" claim construction argument that should not go to the jury.    D.I. 490 at 1, 6, 20.

Natera's objection that CareDx improperly presented a claim construction argument to the jury is belied by the record and is in any event long waived.    Natera did not ask the Court to construe that claim element during claim construction. Natera did not object in opening, during fact or expert testimony, during closings, or even in its Rule 50(a) JMOL motion that CareDx was supposedly presenting to the jury claim construction positions regarding the "measuring-by-sequencing" claim element.    Instead, as discussed above, the parties presented factual arguments to the jury.

Natera's new trial request is likewise flawed and the motion should be denied in total.

## II.    BACKGROUND

### A.    The Disputed Claim Element

Independent claim 14 of the '180 patent, in relevant part, reads:

14.    A method for measuring an amount of DNA in a biological sample, the method comprising:

…

(b) measuring a quantity of each allele at a plurality of amplified SNP loci that comprise an allele present in the genetically distinct

2

> individual but not the subject, wherein *the quantity of each allele at a plurality of amplified SNP loci are <u>measured by</u> high-throughput sequencing*….

Claim 15 depends from claim 14.

The parties presented to the jury the factual dispute regarding whether CareDx's AlloSure and AlloSeq products (the "Accused Products") measure allele quantities by sequencing or after sequencing using its unique five-step software approach.

## B.    The Evidence at Trial

CareDx presented substantial evidence at trial that supports the jury's finding of non-infringement.

CareDx's expert, Dr. Brian Van Ness, explained that, after sequencing, "[y]ou have to go through *five steps* in order to get your quantified allele counts."  Tr. 906:2-11.[1]   As Dr. Van Ness explained, the Accused Products "use[] a mathematical process to quantitate the alleles by advanced mathematics, not measuring alleles [by] high-throughput sequencing."  Tr. 906:25-907:6.

Indeed, Natera's expert witness, Dr. John Quackenbush, acknowledged at trial that the CareDx five-step software process is "used to *measure* the amount of donor-

---

[1]  Emphases are supplied unless otherwise noted.

derived cell-free." Tr. 498:9-13. He also admitted that the fifth step in CareDx's software "counts how many sequences are in each pile." Tr. 495:8-25.

The jury agreed with Dr. Van Ness and found that CareDx does not infringe claims 14-15 of the '180 patent. Tr. 1426:10-23.

## III. LEGAL STANDARD

Natera can prevail on its motion "only if, viewing the evidence in the light most favorable to [CareDx] and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d. Cir. 1993).

This Court must "presume the jury resolved underlying factual disputes in favor of the verdict winner and leave those presumed findings undisturbed if supported by substantial evidence." *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 839 F.3d 1034, 1047 (Fed. Cir. 2016) (citing *Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1356-57 (Fed. Cir. 2012)).

The Court may not make credibility determinations or weigh the evidence because these "are jury functions, not those of a judge." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## IV. THE JURY'S FINDING OF NON-INFRINGEMENT IS SUPPORTED BY SUBSTANTIAL EVIDENCE

Substantial evidence supports the jury's determination that CareDx does not infringe the "measuring-by-sequencing" element. Natera's motion improperly

4

asks the Court to reweigh the evidence and make credibility determinations. *See Deere & Co. v. AGCO Corp.*, 659 F. Supp. 3d 418 (D. Del. 2023) ("That is precisely the type of factual inquiry that is properly left to the jury.") (citing *Asetek Danmark A/S v. CMI USA Inc.*, 852 F.3d 1352, 1360 (Fed. Cir. 2017) (it was proper for jury to evaluate competing expert testimony to determine if the accused products met the ordinary meaning of the relevant claim limitation)). The motion also improperly advances a waived claim construction objection. Natera's motion should be rejected.

### A. CareDx Presented Substantial Evidence of Non-Infringement

The jury was presented with substantial evidence to reject Natera's position that CareDx infringes the measuring-by-sequencing element.

At trial, Dr. Van Ness provided a full explanation of the Accused Products, laying out the post-sequencing steps and explaining that allele quantities are determined by software, five steps after sequencing. Tr. 902:3-907:9. Dr. Van Ness also provided demonstratives illustrating the claim requirement that allele quantities be measured by sequencing:



DDX2.278 (depicting requirement that allele quantities be output of sequencing apparatus).

Dr. Van Ness explained, based on CareDx's software workflow, that the sequencing step in the Accused Products merely produces raw sequencing data, which "doesn't give you any information [such as allele quantities] other than the raw DNA that you've sequenced." Tr. 902:23-903:18; DTX61.8-9 (CareDx software workflow). He clarified that directly after the sequencing step, measurement of allele quantities has not occurred. *Id.* Dr. Van Ness also explained that in the Accused Products there are a number of intervening steps between sequencing and measuring allele quantities, including "cleaning the data, doing quality controls, [and] getting [] pile-up counts." *Id.* He went on to explain each of these steps in detail, relying on CareDx's software workflow, DTX61.8-9.

First, Dr. Van Ness explained that the raw sequencing data is processed by software called bcl2fastq, which transforms the raw data "into a computer file, which

6

is called a FASTQ file."    Tr. 903:19-25.    This opinion is supported by CareDx's software workflow:    "The raw Illumina bcl files are processed through Illumina software bcl2fastq to derive the fastq base call reads."    DTX61.8.    Dr. Van Ness confirmed that allele quantities still are not measured at this step.    Tr. 904:1-5.

Second, Dr. Van Ness explained that the fastq files from the first step are cleaned or "trimmed" by the software package trim-galore.    Tr. 904:6-16.    This opinion is supported by CareDx's software workflow:    "trim-galore is used to remove MiSeq primer information and poor quality sequence."    DTX61.8.    Dr. Van Ness confirmed that allele quantities still are not measured at this post-sequencing quality control step, and that at this stage, "[a]ll you have is a bunch of As, Gs, Cs, and Ts" rather than allele quantities.    Tr. 904:17-905:4.

Third, Dr. Van Ness stated that the trimmed fastq files from the second step are aligned by a software package called BWA-MEM, which attaches "location[s] of a segment of DNA" to "tell[] you where you are in the genome."    Tr. 904:21-905:4.    This opinion is supported by CareDx's software workflow:    "BWA-MEM is used to map the fastq reads to the genome."    DTX61.8.    Dr. Van Ness again confirmed that allele quantities still have not been measured at this post-sequencing alignment step.    Tr. 905:5-8.

Fourth, Dr. Van Ness explained that the aligned data from the third step is processed using a software package called SAMtools, which generates a file called

a pileup.     Tr.  905:9-15.     This  opinion  is  supported  by  CareDx's  software workflow:    "Samtools  is  used  to  count  the  number  of  reads  at  each  base  in  the genome."    DTX61.8-9.    Dr. Van Ness explained that allele quantities still had not been determined at this step.    Tr. 905:16-17.

Finally, Dr. Van Ness explained that it is not until the fifth post-sequencing step that allele quantities are finally determined, when the pileup file is processed with a script called pileup.transpose.summary.    Tr. 905:19-906:1.    This opinion is supported by CareDx's software workflow.    DTX61.9 (depicting exemplary output of pileup.transpose.summary script with allele quantities).

Dr. Van Ness explained that these five steps are mathematical calculations performed using software, not sequencing steps performed using a sequencer.    Tr. 906:2-15.    He further provided a demonstrative illustrating the difference between the claimed process and the Accused Products:



DDX2.287.    Natera's brief acknowledges that these steps happen after sequencing: "all of what Dr. Van Ness described happens after the Accused Products perform the []sequencing."    D.I. 490 at 16.

Dr. Van Ness's opinion was also entirely consistent with the testimony of Dr. Natali Gulbahce, the director of bioinformatics at CareDx.    Dr. Gulbahce testified that:

> So the sequencer -- *the sequence will not have the allele info*. It will be merely the -- basically, the identity and the order of the nucleotides, right?    *In order to be allele, an allele, it will have to go through the pipeline* and get mapped to the genome, which will be, you know, specific to each pipeline that the test is designed for.    And then, eventually, with a variant call and whatnot, the whole process, it will turn into an allele for that SNP.    So just from the sequencer, you wouldn't be able to say that amplified product has the, you know, the sequence of alleles.

Tr. 395:25-396:14; *see also id.* 397:24-398:4 (The "sequencer doesn't give you everything you need for the whole pipeline, right?    You need different data.").

CareDx's non-infringement position was also supported by testimony from Natera's expert, Dr. Quackenbush, who admitted that:

- At step 2 of the CareDx bioinformatic process, "Trim Galore…removes adapter, primer, and poly A tails, along with sample-specific bar codes."    Tr. 540:3-8.

9

- At step 3, "after Trim Galore is used, there's a software called BWA-MEM that's used to align the trim sequence reads to a custom reference that's specifically designed for the AlloSure assay."    Tr. 540:9-13.

- At step 4, SAMtools "is definitely not a DNA sequencer," but Dr. Quackenbush's expert report stated "***SAMtools is used to count the number of reads*** at each base in the genome and to create a pile-up file."    Tr. 540:18-20, 533:10-534:12.

- At step 5, "***[i]n the pile-up, the alleles at each SNP are counted***, resulting in a quantity of each allele at the amplified SNP loci that comprise alleles specific to the donor."    Tr. 532:25-533:9; *see also id.* 492:13-493:3 (The pileup "counts up how many are there."); *id.* 495:8-25 ("[P]ile them up and [] count how many are there...that's [what] this software does.").

- The CareDx five-step software process is ultimately "used to ***measure*** the amount of donor-derived cell-free."    Tr. 498:9-13.

Natera's expert is thus in agreement with Dr. Van Ness's opinion that allele quantities (or counts) are not determined until the pile-up step 5 as described above.

Natera's cases are readily distinguished.    Natera cites a parade of cases for the proposition that Dr. Van Ness's testimony was "unsupported" or "conclusory." D.I. 490 at 11, 18-19.    But Natera's reliance is misplaced:

10

- In *TQ Delta, LLC v. CISCO Sys., Inc.*, 942 F.3d 1352, 1362 (Fed. Cir. 2019), the expert opinions were "[u]ntethered to ***any supporting evidence***."

- In *MobileMedia Ideas LLC v. Apple Inc.*, 780 F.3d 1159, 1172 (Fed. Cir. 2015), the "expert did not rebut [key] testimony, ***offering only the conclusory statement*** that 'I don't see evidence for that.'"

- *Libas, Ltd. v. United States*, 193 F.3d 1361, 1366, 1369 (Fed. Cir. 1999) is particularly far afield.   There, "a trial court [had] act[ed] as fact finder" and the Federal Circuit found that the trial court clearly erred in crediting expert testimony that failed to satisfy ***any Daubert*** factor.

- In *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 134 (3d Cir. 1999), the expert opinions were "***based on the express assumption*** that the defendants had agreed to conspire" and the expert "knew nothing about the baby food industry other than 'the knowledge one acquires as a casual consumer.'"

- In *Moore USC, Inc. v. Standard Register Co.*, 229 F.3d 1091, 1112 (Fed. Cir. 2000), the court found that the infringement allegations "entirely lacking in factual support" where the claims required a particular spacing but the proffered declarations "***lack[ed] any quantitative description*** of the increase in the relevant spacing."

11

- In *PharmaStem Therapeutics, Inc. v. Viacell, Inc.*, 491 F.3d 1342, 1355 (Fed. Cir. 2007), the expert infringement "opinion was ***based principally on [] assertions by the defendants***."

- In *Perreira v. Dep't of Health and Human Serv.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994), "the expert opinion was ***grounded in neither medical literature nor studies***."

These cases are far afield from the instant motion, where Dr. Van Ness's opinions are supported by the wealth of evidence discussed above.

Natera's assertion that "Dr. Van Ness's non-infringement opinion relied foundationally on Dr. Grskovic's testimony about 'codes'" badly misses the mark. D.I. 490 at 12. In fact, Dr. Grskovic's discussion of "codes" related to non-infringement of the "determining the most likely genetic data" limitation of the '544 patent: "what I wanted to show next was that we simply count the codes. That's what AlloSure does. We count the codes. We don't count -- we don't look whether this one came from the recipient or the donor." *See, e.g.*, Tr. 760:11-761:20; *see also id.* at 1316:4-10 ("On infringement, Dr. Grskovic addressed how the system worked. They said -- they count codes. ***It's blind…in terms of genetic data***."). Natera's suggestion that Dr. Van Ness based his opinions on fact testimony ***concerning a different claim element of a different patent*** is nonsense,

12

especially in light of Dr. Van Ness's heavy reliance on the AlloSure software workflow.    Tr. 902:3-907:9 (discussing DTX61).

The evidence presented at trial is more than enough to support the jury's verdict of non-infringement.

### B.    The Court Should Not Reweigh the Evidence

As the Supreme Court has long since held, an infringement analysis has two steps, which are "construing the patent and determining whether infringement occurred."    *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384-85 (1996). "The first is a question of law, to be determined by the court….The second is a question of fact, to be submitted to a jury."    *Id.*

In reviewing the jury's factual findings, the Court may not reweigh the evidence and must view the evidence in the light most favorable to CareDx. *Anderson*, 477 U.S. at 255; *see also Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 151 (2000) ("the court should review the record as a whole"); *Lightning Lube*, 4 F.3d at 1166 (Natera can prevail on its motion "only if, viewing the evidence in the light most favorable to [CareDx] and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability.").

Here, Natera's motion violates both of these precepts.    It argues that JMOL should be awarded based on a weighing of expert testimony that is allegedly

"contradicted" by other evidence.    This is a red flag that JMOL is inappropriate. In fact, all of the purported "contradictory" evidence is actually entirely consistent with Dr. Van Ness's opinions.

First, Natera claims that Dr. Van Ness and Dr. Gulbahce "admitted that CareDx's documents describe AlloSure as measuring allele quantities by sequencing."    D.I. 490 at 9-10.    Not so.    The witnesses simply confirmed that the examining lawyer read quotes from CareDx's AlloSure Test description correctly. Tr. 398:12-25, 918:2-22; PTX55.1.    Natera's request that the Court reimagine this routine confirmation as a smoking-gun admission is both an improper request to reweigh the evidence and a failure to give CareDx every reasonable inference.[2]

Second, Natera incorrectly alleges that "Dr. Grskovic conceded that the documentary evidence accurately states that AlloSure does in fact perform the measuring-by-sequencing step."    D.I. 490 at 15.    In fact, Dr. Grskovic simply confirmed that CareDx's technical documentation is "not written in a way that's intended to be inaccurate, misleading, or wrong in any way."    Tr. 780:24-781:3. This is miles away from the admission Natera imagines.

_____

[2] Natera cites a similar exchange where CareDx CSO Dr. Robert Woodward confirmed a quotation from CareDx's Grskovic publication, but this fails for the same reason.    D.I. 490 at 7; Tr. 386:14-21.

Third, Natera points to other testimony from Dr. Gulbahce, including a statement that "in high-throughput sequencing in AlloSure, the number of sequence reads produced correspond to the number of different amplification products that were sequenced," but this quote simply confirms that sequencing produces raw sequence data in the form of sequence reads, not allele quantities. Tr. 397:19-23.   Next, Natera places emphasis on Dr. Gulbahce's testimony that "the pileup is collecting the base calls that were measured by sequencing."   Tr. 398:5-11.   This is a red herring.   This quote plainly states that at most base calls, not allele quantities, are measured by sequencing.

Fourth, Natera points to CareDx's Grskovic publication, which states that AlloSure performs "measurement by NGS of each allele contribution at each SNP position."   PTX48.3.   But Natera's counsel acknowledged during the deposition of Robert Woodward that the "Grskovic paper might be wrong.   Maybe there's an error here."   D.I. 316-3 at 125:19-20.   In fact, the very next page of the publication clarifies that the "SNP allele counting pipeline" uses "open source and custom software" and involves, among other steps, processing of raw sequencing data into intermediate output files by Samtools, alignment by BWA MEM, and eventual generation of "pileup summary file[s] as the final output of the SNP allele counting  pipeline."   Thus, the full context of the Grskovic publication actually makes clear that allele quantities/counts are not generated until the pileup steps, well

after sequencing.    Interpreting this document as Natera urges would contravene the requirement to give CareDx "the advantage of every fair and reasonable inference." *Lightning Lube*, 4 F.3d at 1166.

Fifth, Natera cites a portion of CareDx's Product Development Report, a document that was never discussed by Dr. Quackenbush in the context of infringement.    DTX63.3 ("The amplified regions are sequenced to establish the number copies of each of the two possible alleles for each SNP.").    This unsupported attorney argument should be rejected.    In any event, the very next sentence after the one quoted by Natera clarifies that "[t]he relative proportions of donor and recipient alleles are ***calculated from the sequence data***."    *Id.*    Again, Natera asks the Court to ignore context.    *See Reeves*, 530 U.S. at 150 (The Court "must consider all evidence presented at trial, not just that evidence" Natera chose to include in its brief.).

Finally, Natera alleges a contradiction between Dr. Van Ness's opinions and a statement in CareDx's "AlloSure Test Description," which states: "AlloSure measures the amount of donor-derived cfDNA relative to the total amount of cfDNA in a plasma sample by sequencing 405 SNPs."    But Natera again selectively omits the clarification in the very next sentence: "The contributions of the recipient and donor alleles are inferred and the %dd-cfDNA is calculated by the CareDx algorithms."    PTX55.1.

16

Ultimately, Natera's quest for a contradiction only highlights the genuine factual disputes presented at trial.    Even if the Court were to find some evidence of contradiction, this would not justify JMOL, a point confirmed by the *ZF Meritor, LLC v. Eaton Corp.* case relied upon by Natera in its summary judgment briefing.    696 F.3d 254, 290 (3d Cir. 2012) ("[A]lthough some of DeRamus's testimony may have been contradicted by other evidence, including the testimony of Eaton's expert, the existence of conflicting evidence was not a basis on which to exclude DeRamus's testimony.    The respective credibility of Plaintiffs' and Eaton's experts was a question for the jury to decide."); D.I. 253 at 6, 10.

## C.    The Court Should Ignore Natera's Waived Claim Construction Argument

Natera argues that CareDx's non-infringement argument improperly presented to the jury the legal issue of claim construction and misconstrued the measuring-by-sequencing element.    D.I. 490 at 1 ("CareDx's contrary theory was based on what is essentially a limiting claim construction"), 6 ("CareDx, in turn, argued for non-infringement based purely on an unorthodox claim construction that it did not seek from the Court"), 20-21 ("Dr. Van Ness' opinion appeared to be based on an erroneous claim construction.").    Natera argues that CareDx's defense "would require a special, unsupported meaning for the claim term 'measuring' as it relates to the 'quantity of each allele.'"    *Id.* at 20.

17

Natera failed to timely raise its claim construction objection.    *See Conoco, Inc. v. Energy & Env't Int'l, L.C.*, 460 F.3d 1349, 1358-59 (Fed. Cir. 2006) ("[L]itigants waive their right to present new claim construction disputes if they are raised for the first time after trial."); *see also Hewlett-Packard Co. v. Mustek Sys., Inc.*, 340 F.3d 1314, 1320 (Fed. Cir. 2003) ("[P]arties cannot reserve issues of claim construction for the stage of post-trial motions.").    This argument is thus waived. In this circumstance, the Court defers to the "jury's view of the claim element unless that view is contrary to the only reasonable view of the claim element," a standard Natera failed to even acknowledge.    *VLSI Tech. LLC v. Intel Corp.,* 87 F.4th 1332, 1341 (Fed. Cir. 2023).

Contrary to Natera's suggestion, Dr. Van Ness applied the plain and ordinary meaning of the measuring-by-sequencing element, not some "special, unsupported meaning."    D.I. 490 at 20.    Despite Natera's urging, the plain and ordinary meaning of the word "by" does not encompass the word "after," and "base calls" are different from "allele quantities."    Natera ignores that the claims require measuring the ***quantity*** of alleles.

To the extent the plain and ordinary meaning "presupposes non-infringement," Natera's attorneys were responsible for drafting the claims and this is not a basis to second-guess the jury.    *See id*.    Regardless, there is no evidence

or argument that the claimed measuring cannot be performed by the sequencer in the processes described in the patent or otherwise.

## V.    NATERA IS NOT ENTITLED TO A NEW TRIAL

For all the reasons discussed above with respect to Natera's JMOL, the Court should deny Natera's request for a new trial.

## VI.    CONCLUSION

For these reasons, the Court should deny Natera's motion.

Dated:    May 31, 2024

Respectfully submitted,

FARNAN LLP

*/s/ Brian E. Farnan*

_____

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market St., 12th Floor
Wilmington, DE 19801
(302) 777-0300
(302) 777-0301 (Fax)
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Defendant, CareDx, Inc.*

*Of Counsel:*

Edward R. Reines
Derek C. Walter
Nate Ngerebara
August Melcher
Concord Cheung
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

W. Sutton Ansley
WEIL, GOTSHAL & MANGES, LLP
2001 M Street, NW Suite 600
Washington, DC 20036
(202) 682-7000

20

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this brief has been prepared in Times New Roman 14-point typeface using Microsoft Word, and contains 3,746 words as determined by the Word Count feature of Microsoft Word.

Dated: May 31, 2024

*/s/ Brian E. Farnan*
Brian E. Farnan (Bar No. 4089)