# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

NATERA, INC., )
                Plaintiff, )
         v. )
CAREDX, INC., )
                Defendant. )

C.A. No. 20-038 (CFC) (CJB)

(CONSOLIDATED)

**FILED UNDER SEAL**

## DEFENDANT CAREDX, INC.'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO REOPEN THE RECORD

Dated: September 30, 2024

Edward R. Reines (admitted *pro hac vice*)
Derek C. Walter (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000
edward.reines@weil.com
derek.walter@weil.com

W. Sutton Ansley (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
2001 M Street, NW, Suite 600
Washington, DC 20036
(202) 682-7000
sutton.ansley@weil.com

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market St., 12th Floor
Wilmington, DE 19801
(302) 777-0300
(302) 777-0301 (Fax)
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Defendant CareDx, Inc.*

# TABLE OF CONTENTS

I.     NATURE AND STAGE OF THE PROCEEDINGS ...................................... 1

II.    SUMMARY OF THE ARGUMENT ................................................................ 1

III.   STATEMENT OF THE FACTS ...................................................................... 3

IV.   LEGAL STANDARD ...................................................................................... 6

V.    ARGUMENT .................................................................................................... 7

      A.    Dr. Quackenbush Provided New And Contradictory Testimony To Support Natera's RFS AlloSure Infringement Claim ..................... 9

      B.    CareDx Would Be Prejudiced Absent Reopening Because The New Testimony Provides Important Evidence Supporting CareDx's Post-Trial Arguments On Section 101 ................................ 13

      C.    Reopening The Record Will Not Unduly Burden The Parties Or Witnesses And Does Not Raise Concerns Of Judicial Economy ....... 19

VI.   CONCLUSION .............................................................................................. 20

# TABLE OF AUTHORITIES

**Page**

**Cases**

*AstraZeneca LP v. Apotex, Inc.*,
   633 F.3d 1042 (Fed. Cir. 2010) ............................................................... 16

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
   760 F. App'x 1013 (Fed. Cir. 2019) .................................................. 14, 15

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
   776 F.3d 1343 (Fed. Cir. 2014) ......................................................... 17, 18

*Ferranti Int'l, PLC v. Jasin*,
   47 F. App'x 103 (3d Cir. 2002) ................................................................. 6

*Genetic Technologies Ltd. v. Merial L.L.C.*,
   818 F.3d 1369 (Fed. Cir. 2016) ................................................................. 4

*In re AE Liquidation, Inc.*,
   573 B.R. 104 (D. Del. 2017) .............................................................. 6, 18

*In re Chemed Corp., S'holder Derivative Litig.*,
   No. 13-1854-LPS-CJB, 2017 WL 1712530 (D. Del. Apr. 25, 2017) ................. 20

*In re Distefano*,
   808 F.3d 845 (Fed. Cir. 2015) ................................................................... 3

*In re Docteroff*,
   133 F.3d 210 (3d Cir. 1997) ...................................................................... 8

*In re W.R. Grace & Co.*,
   475 B.R. 34 (D. Del. 2012) ....................................................................... 9

*Intellectual Ventures I LLC v. Symantec Corp.*,
   838 F.3d 1307 (Fed. Cir. 2016) ............................................................... 17

*IOENGINE, LLC v. Ingenico Inc.*,
   100 F.4th 1395 (Fed. Cir. 2024) ........................................................ 15, 16

*Meyer Intell. Properties Ltd. v. Bodum, Inc.*,
   690 F.3d 1354 (Fed. Cir. 2012) ................................................................. 9

ii

*PersonalWeb Techs. LLC v. Google LLC*,
    8 F.4th 1310 (Fed. Cir. 2021) ................................................................. 2, 16, 17

*Rochez Bros., Inc. v. Rhoades*,
    527 F.2d 891 (3d Cir. 1975) ..................................................................................6

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
    401 U.S. 321 (1971) ................................................................................................6

**Statutes**

35 U.S.C. § 101 ................................................................................. *passim*

35 U.S.C. § 271(a) ................................................................................10

**Rules**

Fed. R. Civ. P. 50(b) ..............................................................................5

Fed. R. Civ. P. 52 ............................................................................ 1, 3, 5

Fed. R. Civ. P. 59 ....................................................................................5

## I.    NATURE AND STAGE OF THE PROCEEDINGS

Defendant CareDx, Inc. has moved under Federal Rule of Civil Procedure 52 for judgment that Plaintiff Natera, Inc.'s '544 patent is not eligible for patenting under 35 U.S.C. § 101. CareDx now moves to reopen the record so that the Court can consider new and important evidence in connection with CareDx's Rule 52 motion.

## II.    SUMMARY OF THE ARGUMENT

CareDx's request for judgment under Rule 52 that Natera's '544 patent is invalid under Section 101 is currently before the Court. *See* D.I. 487.  But all the relevant evidence is not.

In the second phase of this case, as part of Natera's (now forfeited) effort to accuse CareDx's new AlloSure process ("RFS AlloSure") of infringement, Natera's expert impeached his prior testimony by providing important new testimony that confirms that the '544 patent claims ineligible subject matter.

At trial, Natera's expert Dr. Quackenbush testified that the '544 patent's main step—to determine the genetic data of an individual—is met by using algorithms to analyze data.  Natera relied on this testimony to support its claim that the patent is valid under Section 101, arguing that the patent's "algorithms solved technological problems with" applying the claim's routine techniques.  D.I. 509 at 9.

But Dr. Quackenbush has now testified in the second phase of this case that the '544 patent's "determining" step in fact does ***not encompass*** the use of any "algorithms" or any solutions to "technological problems" associated with the application of the claim's routine techniques. *Id.* Dr. Quackenbush thus admits that the claim is generic where Natera contends there is supposedly patent-eligible inventiveness.

Specifically, Dr. Quackenbush has now testified that "the claim language does not require a mathematical computation" and the "determining" step is met when a scientist simply (1) "retrieves the information" produced by the claim's routine techniques and (2) "include[s that information] in the report that is provided back to the patient." Quackenbush Post-Trial Deposition Tr. 395:10-14, 412:3-9, 463:12-14.[1] His testimony that is the subject of this motion is set forth on pages 11-12 below.

This Court should reopen the record to consider this helpful evidence when deciding whether to follow the advisory jury verdict on Section 101 because it further confirms that the '544 patent is indeed invalid. Generically collecting and recognizing data, as Dr. Quackenbush now testifies that "determining" entails, is nothing more than an abstract mental process. *See PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1317 (Fed. Cir. 2021). And the Federal Circuit has long

---

[1] Dr. Quackenbush's Post-Trial Deposition transcript is attached to the Declaration of Edward R. Reines filed contemporaneous herewith as Exhibit A.

held that one cannot obtain a patent on "printed matter," *i.e.*, "the content of information." *In re Distefano*, 808 F.3d 845, 848 (Fed. Cir. 2015). Natera's expert's about-face in the second-phase of this case also casts doubt on the credibility of his trial testimony. Dr. Quackenbush's new testimony thus further supports CareDx's contentions that this Court should not follow the advisory verdict.

This Court should reopen the record, consider this new evidence when adjudicating the Rule 52 motion, and grant judgment that the '544 patent is invalid under Section 101.

## III. STATEMENT OF THE FACTS

Natera brought three lawsuits asserting that CareDx's AlloSure organ rejection tests infringe three patents, the '724 patent, its twin the '544 patent, and the later-filed '180 patent. The suits were consolidated for pretrial purposes. The court also divided the case into two phases, the first concerning Natera's claims that pre-RFS AlloSure infringed the patents and the second covering Natera's claims that RFS Allosure also infringed.

At summary judgment, this Court invalidated the '724 patent under Section 101 because it "teach[es] a method of observation of DNA that employs only conventional techniques." D.I. 402 at 7. The Court specifically rejected Natera's argument that the determining step was enough to make the claims patentable. *Id.* ("[T]he mental process of 'subsequent analysis' to what are admittedly conventional

techniques cannot save the #724 patent from § 101's bar."). *See Genetic Technologies Ltd. v. Merial L.L.C.,* 818 F.3d 1369, 1380 (Fed. Cir. 2016) ('We thus hold that the simple mental process step of 'detect[ing] the allele' in [the asserted] claim 1, either alone or in combination with [conventional techniques, including DNA amplification], does not supply sufficient inventive concept to make the claim patent-eligible under § 101.')").

The Court allowed Natera to proceed to the phase-one trial on the '544 patent, without deciding the '544 patent's validity at *either* Alice step. *See* D.I. 429 at 73, 76.

The relevant claim of the '544 patent contains four steps:

(1) "extracting cell-free DNA";

(2) "amplifying a plurality of target loci on the cell-free DNA";

(3) "analyzing the … amplified DNA by … using sequencing-by-synthesis to obtain genetic data of the plurality of target loci"; and

(4) "determining the most likely genetic data for" an individual's DNA.

'544 patent, Claim 21 (PTX3 at 76-77).

This motion concerns that claim's fourth, "determining" step.

Dr. Quackenbush testified on that question during the phase-one trial. He maintained that "software and algorithms" accomplish the "determining" step when the "algorithms … try to make good estimates" of an individual's genetic data. Trial Tr. 455:4-456:1 (D.I. 467).

The jury issued a verdict finding that CareDx's pre-RFS AlloSure infringed the '544 patent, as well as an advisory verdict on the patent's eligibility under step two of the *Alice* framework, and awarded $96,307,371 in damages.  *See* D.I. 460, 462.  This Court, however, has yet to rule on whether the '544 patent is patent-eligible under the two-step *Alice* test.

CareDx filed post-trial motions, including a Rule 52 motion asking the Court to enter judgment that the '544 patent is invalid under Section 101.  *See* D.I. 487.  In that motion, CareDx argued that (1) this Court's summary judgment decision invalidating the '724 patent precluded a different result for '544 patent, which is materially identical, and (2) the jury's advisory verdict that the patent was valid is wrong, and the Court should not follow it.  *See* D.I. 488.[2]  Natera opposed by arguing, among other things, that Dr. Quackenbush's trial testimony regarding the "determining" step supports the advisory verdict.  *See* D.I. 509 at 9-10.  That motion is pending.

After the phase-one trial, the parties began phase-two discovery regarding RFS AlloSure.  On August 26, 2024, Dr. Quackenbush was deposed.  At that deposition, Dr. Quackenbush provided new testimony about the '544 patent's "determining" step.  He testified that the "determining" step "does ***not*** require a

---

[2] CareDx also moved in the alternative for judgment under Rule 50(b) that the '544 patent is invalid or for a new trial on invalidity under Rule 59.  See *id.*

mathematical computation." Ex. A at 463:12-14. Rather, he asserted that the step is generic and met when a scientist merely (1) "retrieves the information" produced by the claim's routine techniques and (2) "include[s that information] in the report that is provided back to the patient." *Id.* at 395:10-14, 412:3-9.

Just over two weeks later, on September 11, 2024, Natera stated it was abandoning its phase-two claims.

CareDx brings this motion to reopen the record so the Court can consider Dr. Quackenbush's new testimony in evaluating the '544 patent's validity.

## IV.    LEGAL STANDARD

"It is well-established that a motion to reopen to submit additional proofs is addressed to the sound discretion of the district court." *Ferranti Int'l, PLC v. Jasin*, 47 F. App'x 103, 105 (3d Cir. 2002) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 331 (1971)). "In deciding whether to reopen a case" to consider new evidence "a court should consider (i) the burden, if any, on the parties and their witnesses, (ii) whether undue prejudice may result if the relief is not granted, and (iii) concerns about judicial economy." *In re AE Liquidation, Inc.*, 573 B.R. 104, 110 (D. Del. 2017) (Stark, J.); *accord Rochez Bros., Inc. v. Rhoades*, 527 F.2d 891, 894 n.6 (3d Cir. 1975). Courts evaluate a "motion to reopen in light of all the surrounding circumstances and either grant or deny it in the interest of fairness and substantial justice." *AE Liquidation*, 573 B.R. at 110.

## V.    ARGUMENT

This Court should reopen the record to consider Dr. Quackenbush's new testimony regarding the '544 patent's "determining" step. That testimony given in the second phase of this case further underscores that Natera's '544 patent—over which CareDx potentially faces a nearly $100 million judgment—is invalid under Section 101, just like its twin, the '724 Patent.

First, Dr. Quackenbush's new testimony confirms that—contrary to Natera's trial and post-trial contentions—the '544 patent does not claim an innovative advance that solves problems by combining math with conventional techniques like amplification and sequencing by synthesis. At most, then, the patent adds a nonpatentable information-reporting limitation or a mental process to a method comprised of concededly conventional techniques. Dr. Quackenbush's new testimony thus demonstrates that, consistent with CareDx's argument in its post-trial motion, this Court should not follow the advisory verdict finding that the '544 patent claims an innovative advance at *Alice* step two. *See* D.I. 488 at 7-11.[3]

---

[3] CareDx's post-trial motion separately argues that the '544 patent is invalid as a matter of issue preclusion, because the '544 patent is materially identical to the '724 patent that this Court conclusively invalidated at summary judgment. *See* D.I. 488 at 6-7. That position is not affected by this motion. But that argument stands despite the Federal Circuit's recent ruling that this Court's summary judgment decision invalidating the '724 patent is not yet appealable. *See* D.I. 534. Issue preclusion does not require an appealable judgment, but instead a decision that was "adequately deliberated and firm." Restatement (Second) of Judgments § 13 & cmts. e, g; *see*

Second, CareDx would be substantially prejudiced without reopening. While the existing record establishes the invalidity of the '544 Patent, it would be prejudicial for this Court to be deprived of the more complete record with Dr. Quackenbush's shifted position regarding the determining step.

Third, the burden on Natera, Dr. Quackenbush, and judicial economy would be slight. The Court could consider Dr. Quackenbush's self-defeating testimony on the papers or hold a short hearing to consider the testimony. It could do so as part of the post-trial motions without recalling the jury because the verdict was advisory.[4]

---

also *In re Docteroff*, 133 F.3d 210, 215 (3d Cir. 1997) (rejecting argument that a decision "does not satisfy the finality requirement" for the purposes of issue preclusion "because it is not appealable."). In this case, the Federal Circuit did not identify any infirmity in this Court's summary judgment decision invalidating the '724 patent. Rather, it ruled that this Court's decision was not yet appealable only because the Court did not explicitly adjudicate CareDx's noninfringement counterclaim. *See* D.I. 534 at 2-3. Dr. Quackenbush's new testimony, however, does not directly bear on issue preclusion because Natera has never asserted that there is a material difference between the "determining" step of the two patents.

[4] During the parties' Local Rule 7.1.1 meet and confer on CareDx's instant motion, counsel for Natera stated that the parties' pre-trial stipulation regarding RFS AlloSure (*see* D.I. 430) barred CareDx's motion. That is incorrect. The parties never agreed to shield this Court from evidence relevant to unresolved phase-one issues, such as the '544 patent's validity, simply because the evidence came to light during phase two. Rather, the parties agreed only that the "post-trial proceedings **as to products using the RFS**" would be limited to issues relating to RFS AlloSure— meaning that the parties would not "**re**-litigate" already resolved issues "**in addressing the RFS issues**." *Id.* at 4 (emphasis added). CareDx's motion to reopen does not implicate that stipulation because 1) this motion is not part of "[a]ny post-trial proceedings as to … RFS" AlloSure, and 2) this motion does not attempt to "re-litigate" any resolved issues. *Id.* Rather, CareDx submits this motion to provide

## A.     Dr. Quackenbush Provided New And Contradictory Testimony To Support Natera's RFS AlloSure Infringement Claim

At the phase-one trial, Natera maintained that CareDx's pre-RFS AlloSure infringed the "determining" step of the '544 patent when certain "algorithm[s] in [a] computer" "carr[ied] out" a "series of steps" to "determine[] the fraction of cell-free DNA" in a transplant recipient's blood sample "that's derived from the donor."  Trial Tr. 423:12-20 (D.I. 467).   Dr. Quackenbush testified that these "software and algorithms" accomplish the "determining" step when the "algorithms … try to make good estimates" of an individual's genetic data.  *Id.*  455:4-456:1; *see also id.* 454:17-455:3 (testifying that "AlloSure determines the most likely percent of the donor-derived cell-free DNA by estimating it.").   Dr. Quackenbush presented demonstratives discussing "computation" and "software" in the context of "determining the most likely genetic data."  PDX4, Slides 68-70.

---

further support for its still pending Rule 52 motion and to litigate an issue this Court has made clear remains open. *See* D.I. 429 at 73, 76.  Furthermore, to the extent the stipulation addresses CareDx's motion, CareDx respectfully requests relief from the stipulation for the same reasons CareDx seeks to reopen the record.  "[I]t is well settled that stipulations may be nullified by a court for good cause, such as a change in the parties' conditions or unforeseen factual developments." *In re W.R. Grace & Co.*, 475 B.R. 34, 181 n.160 (D. Del. 2012).  This Court should not permit Natera to leverage the parties' stipulation governing litigation procedure to blind this Court to substantive evidence of the '544 patent's invalidity that Natera's expert held back until after trial.

Thus, Dr. Quackenbush's and Natera's position at the phase-one trial was that CareDx infringed the patent's "determining" step by applying "algorithms" and "software" to "comput[e]" "good estimates" of an individual's genetic data.  Trial Tr. 455:4-456:1 (D.I. 467); PDX4, Slides 68-70.

That position became untenable at phase two. 

Natera plowed ahead anyways.  With the jury's favorable verdict in hand, Dr. Quackenbush changed his tune regarding the meaning of '544 patent's "determining" step.  No longer did he claim that the step called for the application of any algorithms or specific calculations to make estimates.  Rather, in his post-trial report, Dr. Quackenbush stated that an individual "meets the 'determining' step when [she] accesses and retrieves the results" produced by a test "and associates

_____

Dr. Quackenbush's Post-Trial Report is attached to the Reines Declaration as Exhibit B.

those results with an individual patient." *Id.* ¶ 54. 

*Id.*

¶¶ 45, 54-58.

Dr. Quackenbush emphasized this generic view of the "determining" step throughout his second phase deposition, testifying repeatedly that it involves only accessing and reporting information—not the algorithms, calculations, computations, and estimates he discussed at trial. For example, Dr. Quackenbush testified:

- "Numbers on a computer … I don't believe represent the determination that we talked earlier about the meaning of determining." Ex. A at 394:12-15.

- "Claim 21 doesn't require computation or any other particular analyses of data to be performed." *Id.* at 406:2-4.

- "The claim doesn't require computation." *Id.* at 407:16-17.

- "[T]he claim language does not require a mathematical computation." *Id.* at 463:12-14.

- "[C]laim 21 … does not specify the use of any particular calculations. You know, one could potentially conceive of lots of different ways that determination might be made and what could be reported back as the most likely genetic data." *Id.* at 418:1-8.

- "[T]here is no requirement of any particular calculation that is used." *Id.* at 414:6-7.

- "The patent doesn't require any particular mathematical computation." *Id.* at 463:3-4.

- ████████████████████████████████████████████
  ████████████████████████████████████████████
  ████████████████████████████████████ *Id.* at
  453:5-11.

- "[T]he final determination occurs at some point when th[e] percent of donor-derived cell-free DNA is included in the report that is provided back to the patient." *Id.* at 395:10-14.

- "The determination is what is reported back." *Id.* at 362:8-10.

- "[D]etermination … occurs when the clinical laboratory scientist … accesses and downloads or obtains the data [] and then makes the determination." *Id.* at 454:9-16.

- ████████████████████████████████████████████
  ████████████████████████████████████████████
  ████████████████████ *Id.* at 459:6-10.

- "That determination is … made when the scientist … accesses and retrieves the information and then makes the determination of the most likely genetic data of the individual." *Id.* at 412:3-9.

Claim 21's "determining" step thus does not involve any "particular analyses of data," "particular calculations," or "particular mathematical computation." *Id.* at 406:2-4, 418:1-8, 463:3-4. Indeed, Natera's expert testified the claim does not "require computation," "estimates," or "numbers on a computer" at all. *Id.* at 394:12-15, 406:2-4, 453:5-11. Rather, according to Dr. Quackenbush, "determination" happens when a scientist merely accesses information, "makes the determination" in an unspecified manner, and then writes down that determination by including it "in the report." *Id.* at 395:10-14, 454:9-16.

**B.    CareDx Would Be Prejudiced Absent Reopening Because The New Testimony Provides Important Evidence Supporting CareDx's Post-Trial Arguments on Section 101**

Although the current record safely establishes the '544 patent's invalidity, Dr. Quackenbush's new testimony confirms that CareDx's post-trial motion on patent eligibility should be granted.  This new testimony puts the lie to Natera's position that the '544 patent satisfies *Alice* step two, and shows that this Court should not follow the advisory verdict that ostensibly found for Natera on that issue.  D.I. 460 at 6; *see* D.I. 488 at 9 (explaining that this portion of the jury's verdict form "is incoherent" (emphasis omitted)).

The '544 patent sets forth a method to determine genetic data using concededly conventional techniques: extracting cell-free DNA, amplifying it, and applying sequencing by synthesis to the amplified sample.  But, as this Court held at the summary judgment stage, "a method of observation of DNA that employs only conventional techniques" is not eligible for patenting under Section 101.  D.I. 402 at 7.

To evade that issue, Natera relied on Dr. Quackenbush's testimony about math and algorithm-based "determining."   Natera elicited testimony from Dr. Quackenbush that the '544 patent claimed an advance that lied in the "combination" of patent's purported "math" and "signal processing techniques" with "conventional" techniques like amplification and sequencing by synthesis.  Trial Tr.

13

1113:16-1115:25 (D.I. 469).  Natera's founder and chairman testified at trial that specific "math [is] so important to the claimed inventions of '544 Patent" because "apply[ing] that math directly to a transplant sample … shows that there is a very generally applicable method" taught by the patent. *Id.* at 317:9-318:4 (D.I. 467). Natera's closing statement emphasized the "ingenuity that went into" "the math." *Id.* at 1289:23-25 (D.I. 469).  And Natera's opposition to CareDx's motion for a judgment of invalidity argued that the '544 patent "recite[s] math" and claims "an innovative 'advance' because … Dr. Quackenbush explained that the [patent's] algorithms solved technological problems with [applying] amplification and sequencing [to] 'analyzing low-abundance DNA, such as cell-free DNA.'"  D.I. 509 at 9 (quoting Trial Tr. 1111:20-1112:6).

This Court has already expressed skepticism regarding Natera's position.  At trial, the Court stated that it was "not fully persuaded … that this patent is eligible for patenting" because Dr. Quackenbush never explained "how … the math ma[de] the sequencing [by] synthesis" or the amplification "better."  Trial Tr. 1240:11-22 (D.I. 469).[6]

---

[6] CareDx has similarly explained that Dr. Quackenbush's trial testimony plainly cannot support the '544 Patent's validity because "he did not claim that the application of those conventional techniques was anything but standard in the context of th[e] invention," D.I. 519 at 5, and "neither he nor the patent … explained what, if any, 'significant adjustments needed to be made [to those tools] to accommodate its use'" in the context of the invention, D.I. 488 at 8 (quoting

Dr. Quackenbush's new testimony confirms that this Court's skepticism was right on target. Dr. Quackenbush has now explained that the patent does not claim any algorithms or math, nor does it teach any solutions to any problems regarding the application of routine techniques like amplification and sequencing to low-abundance DNA. To the contrary, his new testimony is that the '544 patent "doesn't require computation or any other particular analyses of data" and that its "determining" step is met when a scientist simply "retrieves the information" produced by the claim's routine techniques and "include[s it] in the report that is provided back to the patient." Ex. A at 395:10-14, 406:2-4, 412:3-9.

This new testimony neutralizes Natera's key defenses to CareDx's motion for a judgment of invalidity and further highlights that the patent claims ineligible subject matter. Dr. Quackenbush's new testimony can be understood in either of two ways—both of which confirm the patent's invalidity.

On one account, Dr. Quackenbush's testimony is that the "determining" step involves simply reporting the data the scientist retrieves from the computers that run the test's algorithms. If that is true, then the patent claims ineligible printed matter.

The Federal Circuit has "long recognized that certain 'printed matter' falls outside the scope of patentable subject matter under U.S. patent law." *IOENGINE,*

*Cleveland Clinic Found. v. True Health Diagnostics LLC*, 760 F. App'x 1013, 1019 (Fed. Cir. 2019)).

*LLC v. Ingenico Inc*., 100 F.4th 1395, 1403 (Fed. Cir. 2024). "A 'limitation is printed matter … if it claims the content of information,'" "regardless of medium." *Id.* at 1404. So, if the "determining" step involves only accessing the results of unclaimed algorithmic calculations and then reporting that information to a patient, then the step merely claims "the content of information" that the scientist retrieves—making it a claim to printed matter. *Id.*

Printed matter is patentable only "if the claimed informational content has a functional or structural relation to the substrate." *Id.* No such relationship exists here because the information that is claimed is just the result that has already been produced by the unclaimed algorithms. That information "do[es] nothing more than explain" the existing test results and does not "function with the" claim's routine techniques "to create" anything "new." *AstraZeneca LP v. Apotex, Inc.*, 633 F.3d 1042, 1065 (Fed. Cir. 2010).

Alternatively, Dr. Quackenbush's new testimony may be that the "determining" step teaches a method where an individual accesses data and then makes some unspecified determination about that data before reporting it. If that is the case, the "determining" step claims an ineligible mental process.

The Federal Circuit has consistently "treated analyzing information by steps people go through in their minds, or by mathematical algorithms, without more, as essentially mental processes within the abstract-idea category." *PersonalWeb*

16

*Techs. LLC v. Google LLC*, 8 F.4th 1310, 1317 (Fed. Cir. 2021).  Here, while much of Dr. Quackenbush's new testimony suggests that the "determining" step involves nothing more than a scientist retrieving information and reporting it, he at times asserted the step also involves "merg[ing] … streams of information" in some unspecified manner before reporting that information back to a patient.  Ex. A at 363:14-364:3; *see also id.* 369:19-22 ("[T]hat determination happens after things are … brought together.").    On that account, the step mirrors claims repeatedly invalidated by the Federal Circuit as claiming the "abstract idea of 1) collecting data and 2) recognizing certain data within the collected data set."  *PersonalWeb Techs.*, 8 F.4th at 1317 (cleaned up) (quoting *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1314-15 (Fed. Cir. 2016)).

For example, the Federal Circuit invalidated a patent that recited a method comprising of "(a) receiving output representing a diversity of types of hard copy documents," "(b) recognizing portions of said hard copy documents," and "(c) storing information from said portions of said hard copy documents."  *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1345 (Fed. Cir. 2014).  Per Dr. Quackenbush's new testimony, the '544 patent's "determining" step is no different.  It merely involves "receiving output" from a test, "recognizing" something about that output, and "storing [that] information" in the

17

report provided to the patient. *Id.* Such a claim is "invalid as patent-ineligible under § 101." *Id.* at 1351.

CareDx also had no opportunity to elicit this new testimony at trial. Dr. Quackenbush only formulated his current interpretation of the "determining" step in the second phase of this case when Natera needed to explain how CareDx's RFS AlloSure infringed the '544 patent. Dr. Quackenbush's trial testimony presented a different account of the patent's "determining" step that involved "software" on a computer "carrying out" a "series of steps" using "algorithms," in order "to make good estimates" of an individual's genetic data. Trial Tr. 423:12-20, 455:4-456:1 (D.I. 467). There was no reasonable basis for CareDx to foresee that Dr. Quackenbush would testify in such a contradictory fashion.

The fact that Natera has since stated it is forfeiting its claim that RFS AlloSure infringes the '544 patent does nothing to reduce the prejudice to CareDx of declining to reopen. The jury verdict awards Natera $96,307,371 on the ground that pre-RFS AlloSure infringes the '544 patent, and Dr. Quackenbush's new testimony now calls that patent—and his prior testimony—even further into doubt. Moreover, Natera used Dr. Quackenbush's new testimony as a basis to pursue a months' long litigation against CareDx with respect to RFS AlloSure, forcing CareDx to expend significant time and resources in discovery to defend itself. This constitutes "undue prejudice." *AE Liquidation.*, 573 B.R. at 110.

18

## C.    Reopening The Record Will Not Unduly Burden The Parties Or Witnesses And Does Not Raise Concerns Of Judicial Economy

Granting CareDx's motion will not impose an undue burden on either party or on Dr. Quackenbush. Dr. Quackenbush has already provided the important testimony, and CareDx will merely need to lodge the transcript with the Court.

The burden would remain small even if Natera insists on calling Dr. Quackenbush to testify before the Court. That would require, at the most, an hour or so appearance, where Dr. Quackenbush would be shown his deposition testimony if he tried to again change his position. When Natera has needed him, Dr. Quackenbush has made himself available for depositions and court appearances throughout this case. There is no reason to think he cannot do so again, for such a short appearance.

As for this Court, admitting Dr. Quackenbush's new testimony will provide a fuller picture of Natera's witnesses and the '544 patent's validity. And because subject-matter eligibility presents a question for the Court (*see* D.I. 488 at 10-11; D.I. 519 at 4-5), there will be no need to recall the jury or impanel a new one. In particular, the jury in this case acted only in an "advisory" capacity with regard to CareDx's Section 101 defense. D.I. 429 at 88. The Court can thus consider Dr. Quackenbush's new testimony along with the briefing on CareDx's instant motion and CareDx's motion for a judgment of invalidity, when assessing what weight to

give the jury's advisory determination.  Doing so would advance judicial decision-making by empowering this Court to make a better informed decision.

Indeed, courts in the district have reopened the record to consider important evidence even in cases where the moving party had access to evidence before the record initially closed. *See In re Chemed Corp., S'holder Derivative Litig.*, No. 13-1854-LPS-CJB, 2017 WL 1712530, at *5-10 (D. Del. Apr. 25, 2017), *report and recommendation adopted*, No. CV 13-1854-LPS-CJB, D.I. 79 (Stark, J.).  Here, Dr. Quackenbush's new testimony is highly probative of and conclusively demonstrates the '544 patent's invalidity, and (unlike in *Chemed*) CareDx could not have presented this evidence earlier.  Dr. Quackenbush's decided to hold back this new testimony until after trial.

The Court should grant CareDx's motion.

## VI.    CONCLUSION

For the foregoing reasons, this Court should reopen the record, consider Dr. Quackenbush's new testimony, and grant judgment to CareDx that the '544 patent is invalid under Section 101.

Dated: September 30, 2024

Respectfully submitted,

FARNAN LLP

*/s/ Brian E. Farnan*

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market St., 12th Floor
Wilmington, DE 19801
(302) 777-0300
(302) 777-0301 (Fax)
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Edward R. Reines (admitted *pro hac vice*)
Derek C. Walter (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000
edward.reines@weil.com
derek.walter@weil.com

W. Sutton Ansley (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
2001 M Street, NW, Suite 600
Washington, DC 20036
(202) 682-7000
sutton.ansley@weil.com

*Attorneys for Defendant, CareDx, Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

The foregoing document complies with the type-volume limitation of this Court's November 10, 2022 Standing Order Regarding Briefing In All Cases. The text of this brief, including footnotes, was prepared in Times New Roman, 14 point. According to the word processing system used to prepare it, the brief contains 4,756 words, excluding the case caption, signature block, table of contents and table of authorities.

Dated: September 30, 2024

*/s/ Brian E. Farnan*
Brian E. Farnan (Bar No. 4089)
